**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

APOTEX INC. and APOTEX CORP.,   :

      Plaintiffs,   :

          v.   :   Civil Action No. 1:04-CV-2922 (WHP, ECF)

BRISTOL-MYERS SQUIBB COMPANY,   :

      Defendant.   :

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

THE RELEVANT STATUTORY SCHEME ............................................................... 3

STATEMENT OF FACTS ........................................................................................... 6

    A.    Bristol's NDA ............................................................................... 6

    B.    "Paragraph (IV)" Certification Notices Received By Bristol ................... 7

    C.    Apotex's Efforts To Manufacture A Controversy ................................. 8

ARGUMENT .............................................................................................................. 10

I.    APOTEX'S DECLARATORY JUDGMENT ACTION SHOULD BE
    DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION .......................... 10

    A.    Apotex Has Not And Cannot Demonstrate That An Actual Case Or
        Controversy Exists ............................................................................. 10

        i)    The test for an "actual controversy." ........................................ 10

        ii)    Apotex was unable to plead sufficient facts to establish an actual
            controversy because they do not exist. ...................................... 11

    B.    Apotex Is Not Entitled To The Declaratory Relief It Has Requested ................ 15

        i)    The existence of a patent, even one listed in the Orange Book,
            does not create a case or controversy ......................................... 15

        ii)    Apotex should not succeed in its attempt to manipulate the
            statutory balance. .................................................................. 17

    C.    The Medicare Act Does Not Create An Artificial Case Or Controversy
        For The Purpose Of Bringing A Declaratory Judgment Action ........................ 19

II.    EVEN IF THE COURT FINDS AN ACTUAL CONTROVERSY, DISMISSAL
    IS WARRANTED ......................................................................................... 23

CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937).......................................................... 1

*Andrx Pharms., Inc. v. Biovail Corp.*, 276 F.3d 1368 (Fed. Cir. 2002)............................ 3

*BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir. 1993) ............... 10, 11, 15, 22, 23

*BP Chems. Ltd. v. Union Carbide Corp.*, 757 F. Supp. 303 (S.D.N.Y. 1991) ...................... 11, 18

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942) ......................................... 23

*Charles Mach. Works, Inc. v. Digital Control Inc.*, 264 F. Supp. 2d 980
    (W.D. Okla. 2003) .......................................................................................... 15

*Demby v. Schweiker*, 671 F.2d 507 (D.C. Cir. 1981) .................................................. 21

*Disabled in Action of Metro. N.Y. v. Hammons*, 202 F.3d 110 (2d Cir. 2000)............................ 21

*Dr. Reddy's Labs., Ltd. v. Pfizer Inc.*, No. CIV.A.03-CV-726, 2003 WL 21638254
    (D.N.J. July 8, 2003)..................................................................................... 14, 16-19

*DuPont Dow Elastomers, L.L.C. v. Greene Tweed of Del., Inc.*,
    148 F. Supp. 2d 412 (D. Del. 2001)........................................................................ 15

*EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996)........................................ 23, 24

*Gillette Co. v. Optiva Corp.*, No. 99 CIV. 402, 2000 WL 307389
    (S.D.N.Y. Mar. 23, 2000) .................................................................................. 10

*Mutual Pharm. Co. v. Pfizer, Inc.*, 307 F. Supp. 2d 88 (D.D.C. 2004) ......................... 10, 14, 22

*Mylan Pharms., Inc. v. Thompson*, 268 F.3d 1323 (Fed. Cir. 2001) ............................... 3

*National Presto Indus., Inc. v. Dazey Crop.*, 107 F.3d 1576 (Fed. Cir. 1997) ........................... 10

*Premo Pharm. Labs., Inc. v. Pfizer Pharms., Inc.*, 465 F. Supp. 1281
    (S.D.N.Y. 1979) ........................................................................................... 10, 14

*Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037 (Fed. Cir. 1995) ..................................... 24

*SGM Elettronica v. Vari-Lite, Inc.*, No. 99CIV.11684, 2000 WL 977701
    (S.D.N.Y. July 14, 2000) ................................................................................ 6, 11

*Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885 (Fed. Cir. 1992)........................................ 10, 11, 15

*SmithKline Beecham Corp. v. Geneva Pharms., Inc.*, 210 F.R.D. 547 (E.D. Pa. 2002)................................................................................................ 18

*Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631 (Fed. Cir. 1991) .............................. 10, 11, 23

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) .................... 13

*Teva Pharms. USA, Inc. v. USFDA*, 182 F.3d 1003 (D.C. Cir. 1999) ...................................... 6

*Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 69 U.S.P.Q.2d 1791 (D. Mass. 2003) .................... 16, 19

*West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295 (Fed. Cir. 1992)................................................................................................ 11, 15

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ............................................................ 23


## Statutes and Rules

21 U.S.C. § 355 ........................................................................................................... 1

21 U.S.C. § 355(a)-(b)(1) .......................................................................................... 3

21 U.S.C. § 355(b)(1) ............................................................................................ 3, 16

21 U.S.C. § 355(j)(1) .................................................................................................. 4

21 U.S.C. § 355(j)(2)(A) ............................................................................................. 4

21 U.S.C. § 355(j)(2)(A)(vii) ...................................................................................... 4

21 U.S.C. § 355(j)(2)(A)(vii)(III) ................................................................................ 4

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ............................................................................... 4

21 U.S.C. § 355(j)(2)(B) ............................................................................................. 4

21 U.S.C. § 355(j)(5)(B)(ii) ........................................................................................ 6

21 U.S.C. § 355(j)(5)(B)(iii) ................................................................................... 5, 14

21 U.S.C. § 355(j)(5)(B)(iv) .................................................................................... 5, 7

21 U.S.C. § 355(j)(5)(B)(iv) (old) ...................................................................... 5, 7, 18

35 U.S.C. § 271 ........................................................................................................... 1

35 U.S.C. § 271(e)(1) ................................................................................................. 4

35 U.S.C. § 271(e)(5)) ............................................................................................... 20

Fed. R. Civ. P. 12(b)(1) ............................................................................ 1

U.S. CONST. art. III, § 2, cl. 1 ................................................................ 10


**Congressional Acts and Legislative Materials**

149 CONG. REC. S15562-69 at S15567 (daily ed. Nov. 22, 2003) (statement of
    Sen. Hatch)........................................................................................ 20

Drug Price Competition and Patent Term Restoration Act of 1984 ............................................. 1

*Examining the Senate and House Versions of the "Greater Access to Affordable
    Pharmaceuticals Act": Hearings Before the Senate Comm. on the
    Judiciary,* 108th Cong. (2003) (statement of Jon W. Dudas, Deputy Under
    Secretary of Commerce for Intellectual Property and Deputy Director of
    the United States Patent and Trademark Office) ...................................... 20

*Examining the Senate and House Versions of the "Greater Access to Affordable
    Pharmaceuticals Act": Hearings Before the Senate Comm. on the
    Judiciary,* 108th Cong. (2003) (statement of Sheldon Bradshaw, Deputy
    Assistant Attorney General, Office of Legal Counsel, U.S. Department of
    Justice) ........................................................................................... 20

H.R. CONF. REP. NO. 108-391, at 836 (2003)........................................................ 21

Medicare Act § 1102(b)(1) ...................................................................... 5

Medicare Act § 1102(b)(3) ...................................................................... 5

Medicare Act § 1101(d) .......................................................................... 20

Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ................................ 1

Prescription Drug and Medicare Improvement Act of 2003, S. 1, 108th Cong.
    § 702.............................................................................................. 20

Defendant Bristol-Myers Squibb Company ("Bristol") moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. This Court lacks jurisdiction because no actual case or controversy exists between Bristol and the plaintiffs (Apotex Inc. and Apotex Corp. – together "Apotex"). Further, even if there were jurisdiction, this Court should decline to accept it to avoid conflict with the policies and interests embodied in the Hatch-Waxman and Medicare Acts.[1]

## INTRODUCTION

Apotex, a generic drug manufacturer, brought this action seeking a declaration that a drug product that it does not yet sell, and does not yet have FDA approval to sell, does not infringe any valid claim of certain Bristol patents. As the facts will show there is no basis for declaratory judgment jurisdiction here because there is no controversy.

The essential Constitutional predicate for subject matter jurisdiction in a declaratory judgment action is that there be a real "case or controversy." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). In the context of an action seeking a declaration of invalidity or non-infringement of a patent:

1.    The patent owner must have engaged in conduct that creates a reasonable apprehension by the plaintiff that it will be sued, i.e., the patent owner must have "threatened" the plaintiff; and

2.    The plaintiff's allegedly infringing activity must be imminent or ongoing.

---

[1]    The Drug Price Competition and Patent Term Restoration Act of 1984, commonly known as the "Hatch-Waxman Act," is the legislation that governs the approval of generic drugs and is codified in pertinent part at 21 U.S.C. § 355 and 35 U.S.C. § 271. Additional amendments were recently made by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "Medicare Act"). Except as otherwise noted the Medicare Act revisions do not apply to the issues presently before the Court.

The lack of a real controversy between Apotex and Bristol could not be more plain. Apotex cannot reasonably fear being sued by Bristol, because Bristol has repeatedly affirmed in writing, in absolute terms, that it has *no* intention of suing Apotex.

On November 10, 2003, counsel for Bristol wrote to counsel for Apotex (then TorPharm[2]):

> Based on the information and representations in [Apotex's] paragraph IV notice, and so long as such information and representations remain accurate, *BMS does not intend to file suit against [Apotex] alleging infringement of any of these three patents by the product described in ANDA No. 76-341.*

In a letter on February 13, 2004, Bristol's in-house counsel reassured Apotex that based on Apotex's prior representations,

> *[Apotex] has no reason, now or in the future, to be apprehensive that BMS will sue it for infringement based on any of those three patents.*

In a third letter dated February 20, 2004, Bristol's in-house counsel stated yet again that it

> *has no intention, now or in the future, of suing [Apotex] for infringement of any of the three BMS patents* so long as [Apotex's] previous representations about its proposed generic products remain accurate.[3]

Therefore, in the face of Bristol's unequivocal written representations, the fears of suit that Apotex pleads are sham. Its real objective is not to resolve any concerns it has about being sued, but rather to use this suit as an end run to erode another generic pharmaceutical company's marketing exclusivity as granted by the Hatch-Waxman Act.

---

[2]    TorPharm, Inc. is now Apotex Inc. (Complaint ¶ 66). "Apotex" is used in place of "TorPharm" throughout this Memorandum of Law.

[3]    Apotex has never disavowed its representations regarding its product.

Recognizing that its purported standing to sue finds no support in judicial precedent, Apotex asserts that the recent Medicare Act created a new cause of action with relaxed jurisdictional standards. However, as the legislators expressly acknowledged, that is not so, indeed could not be so, because the existence of a legitimate "case or controversy" is a Constitutional requirement for an Article III court. The statutory changes enacted in December 2003 simply did not change or eliminate that fundamental constitutional requirement, nor could they.

## THE RELEVANT STATUTORY SCHEME

The Hatch-Waxman Act is the product of a carefully constructed balance between the policy interest in "inducing pioneering research and development of new drugs" with that of "enabling competitors to bring low-cost, generic copies of those drugs to market." *Andrx Pharms., Inc. v. Biovail Corp.*, 276 F.3d 1368, 1371 (Fed. Cir. 2002). Further balancing was done in the Medicare Act, enacted on December 8, 2003.

A company, such as Bristol, that develops a new drug must submit a comprehensive New Drug Application ("NDA") to the FDA to obtain approval to manufacture and market that drug. *See* 21 U.S.C. § 355(a)-(b)(1). An NDA consists of thousands of pages of safety, pharmacokinetic, efficacy and manufacturing studies and data. "Preparing an NDA is frequently a time-intensive and costly process, because among other things, it must contain detailed clinical studies of the drug's safety and efficacy." *Mylan Pharms., Inc. v. Thompson*, 268 F.3d 1323, 1325 (Fed. Cir. 2001). The NDA holder is also required to inform the FDA of any patents that cover the new drug, which the FDA then "lists" in what is known as the "Orange Book." 21 U.S.C. § 355(b)(1).

After an NDA has been approved by the FDA, a company that wants to manufacture and market a generic version of the drug may submit an Abbreviated New Drug

Application ("ANDA") to the FDA for approval.  21 U.S.C. § 355(j)(1).  The generic drug

company is only required to submit information showing that its generic drug is bioequivalent (*i.e.*

provides the same amount of drug in the blood) to the brand-name drug; it is allowed to rely on all

of the safety and efficacy studies previously submitted in the brand-name drug company's NDA

and is spared the investment of time and effort to create that body of data.  21 U.S.C. §

355(j)(2)(A).

       The Hatch-Waxman Act states: "It shall not be an act of infringement to make, use,

offer to sell, or sell . . . a patented invention . . . solely for uses reasonably related to the

development and submission of information under a Federal law which regulates the manufacture,

use, or sale of drugs . . . ."  35 U.S.C. § 271(e)(1).  Therefore, a company that wants to bring a

generic drug to the market may do the bioequivalency studies required for an ANDA application

without fear that it will be sued for patent infringement.  As part of its ANDA application,

however, the generic drug manufacturer must include a certification regarding any patents that

have been listed in the Orange Book for the relevant brand-name drug.  21 U.S.C.

§ 355(j)(2)(A)(vii).  If the generic drug company elects to wait to market its generic drug product

until a listed patent has expired, it files what is known as a "paragraph (III)" certification.

21 U.S.C. § 355(j)(2)(A)(vii)(III).  If the generic company seeks to sell its generic drug product

before a listed patent has expired, it must file what is known as a "paragraph (IV)" certification, in

which it certifies that the listed patent "is invalid or will not be infringed by the manufacture, use,

or sale of the new [generic] drug."  21 U.S.C. § 355(j)(2)(A)(vii)(IV).  The ANDA applicant must

also provide the patentee with notice and a detailed statement of the basis for the applicant's belief

that the patent is invalid or not infringed.  21 U.S.C. § 355(j)(2)(B).

After receiving the ANDA applicant's "paragraph (IV)" certification statement, the patent owner evaluates the information provided by the ANDA applicant to determine whether to sue for patent infringement. If the patent owner sues the ANDA applicant within 45 days of receiving the "paragraph (IV)" certification statement, the ANDA cannot be finally approved by the FDA (and therefore the generic company cannot enter the market) until the earlier of (i) 30 months from the date that the detailed statement is received, or (ii) the date of a court decision holding the patent invalid or not infringed. 21 U.S.C. § 355(j)(5)(B)(iii). If the patent owner does not sue within the 45-day window, any patent-based impediment to FDA approval of the generic company's ANDA application is removed, including the statutory 30-month stay.

To encourage ANDA filers to design around or challenge a patent listed in the Orange Book, the Hatch-Waxman Act provides an incentive for early ANDA applicants. It grants a 180-day exclusivity period, during which time the first applicant who makes a "paragraph (IV)" certification (whether based on avoiding infringement or contesting validity) may market its generic drug without competition from all subsequent generic filers. 21 U.S.C. § 355(j)(5)(B)(iv). That exclusivity period expires 180 days after the earlier of (i) actual marketing of the drug by that first ANDA filer, or (ii) a court decision holding the involved patent invalid or not infringed. 21 U.S.C. § 355(j)(5)(B)(iv) (old).[4] Of course, if the first ANDA filer is not sued, there can be no adjudication of the patent in a litigation involving that applicant as a party and, absent any other triggering event, its exclusivity period begins when it commences actual marketing. However, actions involving a subsequent ANDA filer (*e.g.* an adverse adjudication) can prematurely trigger

---

[4]  For ANDA's filed prior to the Medicare Act, a court decision will still start the 180-clock for the first filer. *See* Medicare Act § 1102(b)(1). However, the Medicare Act's definition of a "court decision" as "a final decision of a court from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken" does apply to these earlier-filed ANDA's. *See* Medicare Act § 1102(b)(3).

the first filer's exclusivity period.[5]  If that happens before the first ANDA filer has its FDA

approval, its marketing exclusivity is eroded or totally lost.  *See generally Teva Pharms. USA, Inc.*

*v. USFDA*, 182 F.3d 1003 (D.C. Cir. 1999).

## STATEMENT OF FACTS

**A.**    **Bristol's NDA**

Bristol developed a formulation of pravastatin sodium, a drug used to treat high

cholesterol conditions and cardiovascular disease. (Blischak Decl. ¶ 3).[6]  Bristol did the required

extensive studies for an NDA and obtained approval from the FDA to market and sell its

pravastatin sodium formulation, which is currently sold under the brand name Pravachol®.

(Blischak Decl. ¶¶ 3-4).  In addition, the United States Patent and Trademark Office issued a

number of patents to Bristol, which cover Bristol's pravastatin sodium formulation.

United States Patent No. 4,346,227 ("the '227 patent") issued on August 24, 1982

and covers the pravastatin compound.  That patent expires on October 20, 2005 and is not the

subject of a "paragraph (IV)" certification from any ANDA filer.  (Blischak Decl. ¶ 5).  With an

additional 6 months for "pediatric exclusivity" as granted by the FDA, no generic pravastatin

product can thus receive final FDA approval before April 20, 2006.  *See* Blischak Decl. ¶ 5;

21 U.S.C. § 355(j)(5)(B)(ii).

---

5       *See* footnote 4 *supra.*

6       "Blischak Decl." refers to the Declaration Of Matthew P. Blischak Under 28 U.S.C. § 1746
In Support Of Defendant's Motion To Dismiss Plaintiffs' Complaint.  "In deciding a
motion to dismiss for lack of subject matter jurisdiction, a court may consider evidentiary
matters outside the pleadings."  *SGM Elettronica v. Vari-Lite, Inc.*, No. 99CIV.11684, 2000
WL 977701, at * 3 (S.D.N.Y. July 14, 2000) (Exhibit 1 to the accompanying Declaration of
Lori A. Klucsarits, Esq. (hereafter "Klucsarits Decl.")).

United States Patent Nos. 5,030,447 ("the '447 patent"), and 5,180,589 ("the '589 patent"), issued July 9, 1991, and January 19, 1993, respectively. These two patents cover a "reduced mass formulation" of pravastatin sodium. Finally, United States Patent No. 5,622,985 ("the '985 patent") issued on April 22, 1997 and covers a method of using pravastatin sodium for one specific class of patients — to reduce the risk of or prevent a second heart attack. (Blischak Decl. ¶ 5). As it was required to do, Bristol informed the FDA of the '227, '447, '589, and '985 patents, and the FDA listed them in the Orange Book for Pravachol®. (Blischak Decl. ¶ 6).

**B.    "Paragraph (IV)" Certification Notices Received By Bristol**

At least eight generic drug manufacturers submitted ANDA's seeking to market generic pravastatin products. The '447, '589, and '985 patents were the subject of multiple "paragraph (IV)" certification notices and statements from different generic manufacturers explaining why each company believes that its intended generic product will not infringe these patents and/or why one or more of the patents were believed to be invalid. (Blischak Decl. ¶ 7).

Apotex was not the first generic company from which Bristol received a "paragraph (IV)" certification notice. (Blischak Decl. ¶ 7). As Apotex was not the first to file an ANDA with a "paragraph (IV)" certification, it is not entitled to the 180-days of exclusivity provided by the Hatch-Waxman Act. *See* Complaint ¶ 73; *see also* 21 U.S.C. § 355(j)(5)(B)(iv). To the contrary, pursuant to the time periods provided under the Hatch-Waxman Act, Apotex cannot obtain FDA approval to market until 180 days after the first ANDA filer commences marketing its generic product, unless, prior to that time, there is a court decision finding Bristol's patents invalid or not infringed. *See* Complaint ¶ 77; *see also* 21 U.S.C. § 355(j)(5)(B)(iv) (old).[7]

---

[7]    *See* footnote 4 *supra.*

Bristol has not sued, threatened to sue, or charged infringement of the '447, '589 and '985 patents by *any* of the generic drug companies that have provided Bristol with detailed "paragraph (IV)" certification statements pertaining to the '447, '589 and '985 patents. (Blischak Decl. ¶ 9). Bristol has not taken any action to preclude or delay any generic companies from entering the market with or obtaining FDA approval for their generic pravastatin sodium formulations. (Blischak Decl. ¶ 20).

C.    **Apotex's Efforts To Manufacture A Controversy**

In correspondence with Apotex regarding the '447, '589, and '985 patents, Bristol has repeatedly affirmed that it does not intend to sue Apotex.

A letter from Apotex's counsel, dated October 27, 2003, (Blischak Decl., Exh. A), asserted that the '447, '589, and '985 patents were improperly listed in the Orange Book and demanded that Bristol withdraw those patents immediately. That letter also demanded that Bristol agree in writing that Apotex's proposed generic pravastatin sodium product "does not and will not infringe the '447, '589, and '985 patents." Counsel for Bristol responded on November 10, 2003 (Blischak Decl., Exh. B), calling Apotex's assertions regarding the listing of the patents, "baseless," but assuring Apotex that

> [b]ased on the information and representations in [Apotex's] paragraph IV notice, and so long as such information and representations remain accurate, *BMS does not intend to file suit against [Apotex] alleging infringement of any of these three patents by the product described in ANDA No. 76-341.*

On December 4, 2003, Bristol sent Apotex's counsel a follow-up letter (Blischak Decl., Exh. C) responding in more detail to Apotex's contentions regarding the Orange Book listing of Bristol's patents. Bristol said it would not withdraw the '447, '589, and '985 patents from the Orange Book and explained why the patents are properly listed. But it did not retract its

-8-

previously expressed intention not to sue Apotex or in anyway suggest that its position had changed. Apotex made no further challenge to the listing of the patents.

In a letter dated February 3, 2004 (Blischak Decl., Exh. D), counsel for Apotex extended to Bristol an Offer of Confidential Access to Application. On February 13, 2004, Bristol declined Apotex's offer, and reminded Apotex that Bristol had already indicated that it had no intention of suing Apotex for infringement of Bristol's patents relating to pravastatin. (Blischak Decl., Exh. E). In the February 13 letter, Bristol again reassured Apotex that it had no intention of bringing a suit for the infringement of the '447, '589 and '985 patents, stating that unless Apotex disavowed its prior representations regarding its generic pravastatin sodium product,

> *[Apotex] has no reason, now or in the future, to be apprehensive that BMS will sue it for infringement based on any of those three patents.*

In a letter dated February 15, 2004 (Blischak Decl., Exh. F), Apotex took issue with what it asserted were "glaring inconsistencies in BMS' prior letters" regarding Bristol's position on what was covered by the listed Orange Book patents and Apotex's ANDA. Even though Bristol had explicitly stated in two separate letters that it would not sue Apotex for infringement of the '447, '589, and '985 patents, Apotex accused Bristol of "impliedly" accusing Apotex's product of infringing those patents.

Bristol responded with a letter dated February 20, 2004 (Blischak Decl., Exh. G):

> While [Apotex] may continue to disagree with BMS' interpretation of the claims of the three BMS patents, *BMS nonetheless has no intention, now or in the future, of suing [Apotex] for infringement of any of the three BMS patents* so long as [Apotex's] previous representations about its proposed generic products remain accurate.

Despite Bristol's three clear and timely statements that it has no intention of suing Apotex for infringement of the '447, '589, and '985 patents, Apotex filed this suit for declaratory judgment against Bristol on April 15, 2004.

## ARGUMENT

I.   **APOTEX'S DECLARATORY JUDGMENT ACTION SHOULD
     BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

   A.   **Apotex Has Not And Cannot Demonstrate
        That An Actual Case Or Controversy Exists**

   i)   *The test for an "actual controversy."*

When subject matter jurisdiction is challenged, the burden rests on the plaintiff to

establish its presence. *National Presto Indus., Inc. v. Dazey Crop.*, 107 F.3d 1576, 1580 (Fed. Cir.

1997) ("[T]he party seeking jurisdiction, bears the burden of showing jurisdiction.").

Under Article III of the United States Constitution, federal jurisdiction does not

exist in the absence of an actual case or controversy. U.S. CONST. art. III, § 2, cl. 1; *see Mutual*

*Pharm. Co. v. Pfizer, Inc.*, 307 F. Supp. 2d 88, 91 (D.D.C. 2004); *Spectronics Corp. v. H.B. Fuller*

*Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991). Although the Declaratory Judgment Act created a new

remedy, it could not eliminate the requirement of "a case of actual controversy" between the

parties. 28 U.S.C. § 2201(a); *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir.

1993) ("[T]he controversy must be actual, not hypothetical or of uncertain prospective

occurrence.").[8] If there is no actual controversy between the parties regarding the subject matter

on which a declaratory judgment is sought, the court must dismiss the action for lack of subject

matter jurisdiction. *Spectronics*, 940 F.2d at 634 ("When there is no actual controversy, the court

has no discretion to decide the case."); *see also Gillette Co. v. Optiva Corp.*, No. 99 CIV. 402,

2000 WL 307389, at *3 (S.D.N.Y. Mar. 23, 2000) (Klucsarits Decl., Exh. 2); *Premo Pharm. Labs.,*

*Inc. v. Pfizer Pharms., Inc.*, 465 F. Supp. 1281, 1284 (S.D.N.Y. 1979). A complaint that seeks

declaratory relief "must plead facts *initially* sufficient to establish the existence of an actual

---

[8]   Any appeal in this case would be heard by the Court of Appeals for the Federal Circuit.
      *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 n.4 (Fed. Cir. 1992).

controversy." *Spectronics*, 940 F.2d at 634 & n.1; *BP Chems. Ltd. v. Union Carbide Corp.*, 757 F.

Supp. 303, 304 (S.D.N.Y. 1991) ("The legal standard is an objective one, and its elements must

exist at the time the suit is filed."), *aff'd, BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed.

Cir. 1993).

      For declaratory judgment actions involving patents, a two-pronged test is used to

determine whether an "actual controversy" exists. *Spectronics*, 940 F.2d at 634. When subject

matter jurisdiction is challenged, the burden is on the plaintiff to show that 1) the patentee's

conduct has created a reasonable apprehension on the part of the plaintiff that the patentee will

initiate a suit for patent infringement, and 2) the plaintiff has either produced the potentially

infringing device or prepared to produce it. *West Interactive Corp. v. First Data Resources, Inc.*,

972 F.2d 1295, 1297 (Fed. Cir. 1992). The court considers the conduct of the patentee-defendant

under the first prong and that of the plaintiff under the second prong. *BP Chems.*, 4 F.3d at 978.

The declaratory judgment plaintiff must establish by a preponderance of the evidence that a

reasonable apprehension of suit exists in order to satisfy the first prong of the test. *BP Chems.*, 757

F. Supp. at 305.

      ii)   *Apotex was unable to plead sufficient facts to establish an actual*
            *controversy because they do not exist.*

      Under the first prong of the "actual controversy" test, the plaintiff must establish

that it has a reasonable apprehension that it will be sued for patent infringement. To do so it must

show by a preponderance of the evidence that the patentee's conduct indicates an intent to enforce

the specific patent against the plaintiff. *Shell Oil*, 970 F.2d at 887-88. When there are no express

charges of infringement, the court will look at the "totality of the circumstances." *Id.* at 888; *SGM*,

2000 WL 977701, at *3.

Apotex cannot have an objectively reasonable apprehension of suit.  Its attempts to establish the necessary factual support for a declaratory judgment are based on a distorted interpretation of the correspondence between it and Bristol to fabricate a contrived apprehension of suit where one could not possibly exist.  (Complaint ¶¶ 78-89).

Bristol has repeatedly stated that it will *not* sue Apotex for infringement of the '447, '589, and '985 patents, based on the representations Apotex has made regarding its generic pravastatin sodium product.  (Blischak Decl. ¶ 10).  Bristol's November 10, 2003 letter stated that

> ***BMS does not intend to file suit against [Apotex] alleging infringement of any of these three patents by the product described in ANDA No. 76-341.***

(Emphasis added) (Blischak Decl., Exh. B).  Bristol's February 13, 2004 letter, repeated that

> ***[Apotex] has no reason, now or in the future, to be apprehensive that BMS will sue it for infringement based on any of those three patents.***

(Emphasis added) (Blischak Decl., Exh. E).

When Apotex's counsel sought to fabricate a controversy from the fact that Bristol had declined to accede to Apotex's demand that Bristol remove the '447, '589, and '985 patents from the Orange Book, Bristol responded:

> While [Apotex] may continue to disagree with BMS' interpretation of the claims of the three BMS patents, ***BMS nonetheless has no intention, now or in the future, of suing [Apotex] for infringement of any of the three BMS patents*** so long as [Apotex's] previous representations about its proposed generic products remain accurate.

(Emphasis added) (Blischak Decl., Exh. G).

Thus, while Bristol declined to engage in an unnecessary debate over claim interpretation, it stated, in three separate letters, that based on Apotex's representations regarding its generic product, Bristol has no intention of suing Apotex for infringement of the '447, '598, and '985 patents.  Apotex made representations about what its proposed product does and does not

-12-

contain. Bristol said, unequivocally, that if those representations are indeed true, it will not sue

Apotex on the '447, '598 or '985 patents. Apotex knows best whether the representations it made

*are* true, and its complaint nowhere suggests they are not. Nor has Apotex otherwise disavowed

those statements. Whether Apotex and Bristol agree on the reasons *why* Bristol will not sue is a

purely academic question. All Apotex needs to know is the *fact* that Bristol does not intend to sue,

and Bristol has made that manifestly plain.

   Apotex says in paragraph 82 of its Complaint that Apotex's ANDA and pravastatin

sodium product "are subject to change or modification during the FDA approval process." That is

at most a theoretical possibility. Whether changes will be made and, if so, what they will be, is

pure conjecture at this point. Something that is *completely speculative* is not enough to create the

"case or controversy" necessary for maintaining a declaratory judgment action. *Super Sack Mfg.*

*Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059-60 (Fed. Cir. 1995) ("The residual

possibility of a future infringement suit based on [Apotex's] future acts is simply too speculative a

basis for jurisdiction . . . ."). That theoretical possibility cannot overcome the fact that Bristol has

informed Apotex on multiple occasions that it has no present or future intention of suing Apotex

for infringement of the '447, '589, and '985 patents based on Apotex's current representations

regarding its generic product.

   Not only has Bristol affirmatively expressed that it has no intention of suing

Apotex, there are no other actions on the part of Bristol which could have given Apotex an

objectively reasonable apprehension of suit. Unlike the '227 patent on the basic active ingredient

pravastatin, itself, which *none* of the generic filers challenged, the '447 and '589 patents are

directed to specific formulations, with specific, required, additional components. A generic that

does not include those other components would not infringe. The '985 patent covers using

-13-

pravastatin for one specific use – in patients who have already suffered a heart attack.  A generic

that does not seek approval to sell for that use has not infringed.  After receiving several

"paragraph (IV)" certifications, Bristol has not sued any of the ANDA applicants for infringement

of any of those patents (Blischak Decl. ¶ 9), and the 45-day period during which a suit by Bristol

would have invoked the 30-month stay of FDA approval under 21 U.S.C. § 355(j)(5)(B)(iii) has

expired for all of the ANDA filers.  (Blischak Decl. ¶ 8).  Bristol's decision not to bring suit

against Apotex (or any of the generics that filed "paragraph (IV)" certifications regarding the '447,

'589, and '985 patents) is evidence that Bristol has no intention of suing Apotex on these three

patents.  *Dr. Reddy's Labs., Ltd. v. Pfizer Inc.*, No. CIV.A.03-CV-726, 2003 WL 21638254, at *7

(D.N.J. July 8, 2003) ("Furthermore, Pfizer failed to sue DRL within the statutory 45 day period

after the paragraph IV certification for the '699 patent, thus providing some evidence that Pfizer

does not intend to sue DRL.") (Klucsarits Decl., Exh. 3).

      The Apotex Complaint refers to previous litigation between it and Bristol and other

suits by Bristol against third parties, all involving *other* products and *other* patents.  (*See*

Complaint ¶¶ 92-94).  However, a history of patent enforcement against companies that seek to

market generic versions of a patentee's different brand-name drug, does not create a reasonable

apprehension in and of itself.  *Mutual Pharm.*, 307 F. Supp. 2d at 93-94; *Dr. Reddy's Labs*, 2003

WL 21638254, at *7 ("Pfizer's history of enforcing its patent rights does not provide any

indication of Pfizer's intentions with regards to the '699 patent and DRL's generic setraline

product."); *see also Premo Pharm.,* 465 F. Supp. at 1283-84.

      This Court and others have recognized that a history of patent litigation by itself,

even if between the same two parties, does not provide grounds for a reasonable apprehension of

suit.  *See Mutual Pharm.*, 307 F. Supp. 2d at 93-94 (previous litigation between the same two

parties does not create a reasonable apprehension in and of itself); *DuPont Dow Elastomers, L.L.C.*
*v. Greene Tweed of Del., Inc.*, 148 F. Supp. 2d 412, 415 & n.1 (D. Del. 2001) (infringement suits
between the same parties but involving different patents do not create a reasonable apprehension).

   Nor do suits against unrelated third parties necessarily create an objective,
reasonable apprehension in a declaratory judgment plaintiff. *West Interactive*, 972 F.2d at 1298;
*Charles Mach. Works, Inc. v. Digital Control Inc.*, 264 F. Supp. 980, 983, 986 (W.D. Okla.
2003) (even where patentee had asserted multiple patents against multiple defendants, there was
not sufficient evidence that the patentee had formed an intent to sue the declaratory judgment
plaintiff).

   Accordingly, Apotex has failed to establish the jurisdictional predicate of conduct
by Bristol that would give rise to an objectively reasonable apprehension that Bristol will bring an
infringement suit on these patents against Apotex. Absent a credible indication that Bristol intends
to bring suit against Apotex, any apprehension of suit on Apotex's part is unreasonable, and the
Court should dismiss Apotex's Complaint. *See West Interactive*, 972 F.2d at 1296-98.

  **B.**  **<u>Apotex Is Not Entitled To The Declaratory Relief It Has Requested</u>**

    i)  *The existence of a patent, even one listed in*
       *the Orange Book, does not create a case or controversy.*

   "The Declaratory Judgment Act was intended to protect threatened parties, not to
drag a non-threatening patentee into court." *Shell Oil*, 970 F.2d at 889. For an actual controversy
in patent cases, "more is required than the existence of an adversely held patent." *BP Chems.*, 4
F.3d at 978. The mere existence of Bristol's '447, '589, and '985 patents is an "insufficient basis
for a declaratory action to invalidate the patent[s]." *Id.* at 981. Merely having patents does not
equate to brandishing them like a modern-day "Sword of Damocles." (*See* Complaint ¶ 40). More

is required on the part of the patentee than owning patents, even ones listed in the Orange Book, for an ANDA filer to have an objectively reasonable apprehension of suit.

The statute *requires* that the NDA applicant list all patents that might be asserted. In particular, pursuant to 21 U.S.C. § 355(b)(1), an NDA applicant "*shall*" submit information regarding patents for which "a claim of patent infringement *could reasonably be asserted*." Contrary to Apotex's contention, this does *not* mean that "a suit for infringement *can and will be asserted* against any ANDA applicant that attempts to seek approval for and market a generic version of the NDA drug." (Complaint ¶ 25). By listing the subject formulation patents in the Orange Book, Bristol represented that those patents cover the formulation that *Bristol* sells. Bristol did *not* represent that they cover every conceivable formulation that others might seek to sell. The *statutorily required* listing of patents in the Orange Book simply is, therefore, not enough to give rise to a reasonable apprehension of suit by an ANDA applicant. *Dr. Reddy's Labs.*, 2003 WL 21638254, at *5 ("In the absence of strong objective evidence 'sufficient to indicate intent to initiate an enforcement action,' the mere listing of multiple patents does not create declaratory judgment jurisdiction . . . ." (citation omitted)). A blanket inference that listing a patent in the Orange Book means the patentee has expressly declared its intention to sue any potential infringer, would cover every patent holder that has a listed patent, thereby completely eliminating one of the prongs used to determine whether an "actual controversy" actually exists. *Teva Pharms. USA Inc. v. Pfizer, Inc.*, 69 U.S.P.Q.2d 1791, 1794 (D. Mass. 2003). Thus, contrary to Apotex's assertion, the required listing of patents in the Orange Book does not "*alone* objectively create[] the necessary case or controversy and subject matter jurisdiction for an ANDA-filer to file and maintain a declaratory judgment action" if not sued within the statutory 45-day period. (Complaint ¶ 65, emphasis added).

-16-

ii)    *Apotex should not succeed in its attempt to manipulate the statutory balance.*

Apotex cannot substantiate its declaratory judgment action with its claim that it and the American public "will be irreparably harmed by the indefinite delay" of its market entry. (Complaint ¶ 9). The timing of Apotex's market entry is governed by the Hatch-Waxman and Medicare Acts. Apotex's suit is purely an attempt to subvert the statutory balance created by Congress to allow Apotex to put its product on the market sooner than it is entitled to under these Acts. *See Dr. Reddy's Labs.*, 2003 WL 21638254, at *7 (recognizing that the plaintiff "wishes to trigger the 180 day exclusivity period before [the first ANDA applicant] begins to actually market its product, thus negating the benefits conferred upon the first generic entrant as an incentive to encourage generic producers of drugs"). If any party is attempting to "manipulate the statutory scheme" in this action (Complaint ¶ 101), it is Apotex.

Bristol has not sued any ANDA applicants, including what it believes to be the first ANDA applicant, for infringement of the '447, '589, and '985 patents. (Blischak Decl. ¶ 9). So the only "delay" to the late-filer Apotex's entry into the market is that which was purposefully created by the Hatch-Waxman and Medicare Acts to reward the first ANDA applicant with an exclusivity period of 180 days. Apotex cannot blame that "delay" on Bristol. Bristol was not obliged to sue any generic ANDA filer even if it infringed, and especially not any that represented that it had designed around, and did not infringe, the listed patents. That Apotex's market entry is subject to the 180-day marketing exclusivity of another generic who acted more quickly is the result of the statutory provisions, not anything Bristol did. The suggestion that Bristol had some obligation to bring patent infringement suits solely because it would benefit Apotex if Bristol *lost* them, is absurd. (*See* Complaint ¶ 90).

-17-

Apotex's real goal here is not to remove any actual fear that it will be sued. Rather, what Apotex hopes is that by filing suit it will obtain either a decision from the court or a consent order from Bristol that its proposed generic product does not infringe, and thereby prematurely start the clock running on the first ANDA filer's 180 days of marketing exclusivity. 21 U.S.C. § 355(j)(5)(B)(iv) (old);[9] *see also SmithKline Beecham Corp. v. Geneva Pharms., Inc.*, 210 F.R.D. 547, 551 (E.D. Pa. 2002) (first ANDA filer Apotex sought to intervene due to concern that dismissal of declaratory judgment counterclaim based on patentee's covenant not to sue would constitute a "court decision" that could jeopardize its 180-day exclusivity period). Because no one has challenged the basic pravastatin compound patent whose exclusivity runs, in combination with the "periodic exclusivity" granted by the FDA, until April, 2006, Apotex's ploy could cause the first filer's exclusivity to run out before it ever gets to the market. This is not a controversy between Apotex and Bristol. It is a marketing strategy aimed at depriving the ANDA filer that beat Apotex into the FDA from receiving the marketing exclusivity that the Hatch-Waxman Act provided as an incentive for prompt filing.

Courts have recognized that declaratory actions brought for such purposes are improper. *See BP Chems.*, 757 F. Supp. at 310 (dismissing complaint where suit found to be brought as part of a marketing strategy). Apotex's claim, that a patent owner's declining to sue created a bottleneck to prevent full generic competition was specifically rejected in *Dr. Reddy's Laboratories, Ltd.,* where the District Court of New Jersey, aptly called it "unpersuasive" and an attempt "to nullify the statutory benefit given as an incentive for generic companies who take the greatest risk of being the first generic entrant on the market." *Dr. Reddy's Labs.*, 2003 WL 21638254, at *7. "[G]iven the intent of the Hatch-Waxman Amendments to encourage challenges

---

[9]     *See* footnote 4 *supra.*

to market-dominating pharmaceutical patents by" rewarding first filers with 180 days of market exclusivity, any alleged "foot-dragging ... intended to forestall a court decision that might prematurely start the running of [the first ANDA filer's] market exclusivity period" is not actionable. *Teva Pharms.*, 69 U.S.P.Q.2d at 1794-95. Just as the complaints in *Dr. Reddy's Laboratories, Ltd.* and *Teva Pharmaceuticals USA Inc.* were dismissed, so should Apotex's.

The convoluted and unrealistic reasoning Apotex urges on this Court is epitomized by paragraph 90 of its Complaint in which Apotex alleges that Bristol has somehow impeded generic competition by *not* suing Apotex. That bizarre allegation stands logic on its head. By not suing Apotex, Bristol gave up the ability to use the patents in issue to block Apotex's FDA approval. That did not "bottleneck and delay" generic competition, it facilitated it. Indeed, if Bristol *had* sued Apotex, and thereby invoked the statutory 30-month stay on FDA approval, no doubt Apotex would argue that suing was anti-competitive and sham.[10]

### C.    The Medicare Act Does Not Create An Artificial Case Or Controversy For The Purpose Of Bringing A Declaratory Judgment Action

Recognizing that its standing to seek declaratory relief will not pass muster under prior precedent, Apotex pleads that the Medicare Act created a new "statutory right" under which Apotex is "entitled by law" to invoke this Court's limited subject matter jurisdiction. (Complaint ¶¶ 1, 8, 17, 46, 86, 108, 120).

Apotex is wrong because the Medicare Act's modifications of the Hatch-Waxman provisions have not, and in fact cannot, change the constitutional requirement for a "case or

---

[10]    If Bristol sued Apotex and won the case, Apotex would be precluded from final FDA approval until 2009, when the formulation patents and corresponding pediatric exclusivity terms expire, or even 2014, when the method of use patent and corresponding pediatric exclusivity term expire. (Blischak Decl. ¶ 5). Therefore, Apotex's "bottleneck" theory presupposes that Bristol had a legal obligation to bring a suit that it was pre-ordained to lose.

controversy." Rather, both the language of the Medicare Act and its legislative history reaffirm

that an actual case or controversy is still required for subject matter jurisdiction. The Medicare Act

provides that

> the courts of the United States shall, **to the extent consistent with the Constitution,** have subject matter jurisdiction in any action brought by such person under section 2201 of title 28 for a declaratory judgment that such patent is invalid or not infringed.

Medicare Act § 1101(d) (codified at 35 U.S.C. § 271(e)(5)) (emphasis added). The ANDA

applicant must thus still establish that the constitutionally required case or controversy exists.[11]

The limiting phrase "to the extent consistent with the Constitution" was added after

it was recognized that there were "serious flaws" in the language originally passed by the Senate.[12]

*See* 149 CONG. REC. S15562-69 at S15567 (daily ed. Nov. 22, 2003) (statement of Sen. Hatch)

(Klucsarits Decl., Exh. 5). Jon W. Dudas, Deputy Under Secretary of Commerce for Intellectual

Property and Deputy Director of the United States Patent and Trademark Office, provided

testimony to the United States Committee on the Judiciary on August 1, 2003, warning that "the

proposed amendment to establish an 'actual controversy' for declaratory judgment subject matter

---

[11]  Nor does the Act purport to overturn the prior caselaw precedent defining what is required for a "case or controversy" in the context of a suit for a declaration of non-infringement or invalidity of a patent. *See* section I.A.i, *supra*.

[12]      (5) The filing of an application described in paragraph (2) that includes a certification under subsection (b)(2)(A)(iv) or (j)(2)(A)(vii)(IV) of section 505 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355), and the failure of the owner of the patent to bring an action for infringement of a patent that is the subject of the certification before the expiration of the 45 days after the date on which the notice given under subsection (b)(3) or (j)(2)(B) of that section is received, ***shall establish an actual controversy between the applicant and the patent owner sufficient to confer subject matter jurisdiction in the courts of the United States in any action brought by the applicant under section 2201 of title 28 for a declaratory judgment that any patent that is the subject of the certification is invalid or not infringed.***

Prescription Drug and Medicare Improvement Act of 2003, S. 1, 108th Cong. § 702. (Klucsarits Decl., Exh. 4).

purposes could undermine the patent system." (Klucsarits Decl., Exh. 6). Sheldon Bradshaw, Deputy Assistant Attorney General, U.S. Department of Justice, testified to the Administration's view that the provision was "inconsistent with Article III of the Constitution" as it "attempts to vest the lower federal courts with jurisdiction over disputes that, because of Article III's case or controversy requirement, the Constitution does not empower these courts to hear." Accordingly, the Administration suggested that the provision be deleted or rewritten. (Klucsarits Decl., Exh. 7). Congress thus considered and rejected the original language of the provision that would have made the failure to file a lawsuit by the patentee a sufficient basis for Federal jurisdiction.

The subsequent Conference Committee Report[13] then explained:

> Through the modifications in this Act, the conferees do not intend for the courts to modify their application of the requirements under Article III that a declaratory judgment plaintiff must, to the extent required by the Constitution, demonstrate a "reasonable apprehension" of suit to establish jurisdiction. The conferees expect the courts to examine as part of their analysis the particular policies served by the Hatch-Waxman Act.
> In determining whether a reasonable apprehension of suit exists where an ANDA has been filed with a paragraph IV certification and the patentee has not brought an infringement suit within the 45 days, the conferees expect courts to examine these specific factors as part of the totality of the circumstances. In any given case, the conferees expect a court may or may not find a reasonable apprehension of suit where these two specific factors are present.

H.R. CONF. REP. NO. 108-391, at 836 (2003) (citations omitted) (Klucsarits Decl., Exh. 8).

Thus Congress did not, and could not, create a new basis for federal jurisdiction over any and all declaratory judgment actions brought by ANDA applicants. It most certainly did

---

[13] *See Demby v. Schweiker*, 671 F.2d 507, 510 (D.C. Cir. 1981) ("Because the conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent."); *see also Disabled in Action of Metro. N.Y. v. Hammons*, 202 F.3d 110, 124-25 (2d Cir. 2000).

not "explicitly mandate[] that an ANDA applicant is entitled to maintain a declaratory judgment action even when it is not sued," as Apotex alleges. (Complaint ¶ 46, *see also* ¶ 48).

Rather, one of the applicable Medicare Act provisions actually limits the right to seek declaratory relief by requiring the ANDA applicant to meet some specific criteria. These criteria are a required condition for a declaratory judgment action by an ANDA filer, but there is no merit to Apotex's allegation that it is "statutorily entitled to institute and maintain an action for declaratory judgment" if that list of statutory pre-requisites are fulfilled. (Complaint ¶ 48). The Act specifically affirms the Constitutional jurisdiction requirement of an "actual controversy," and the legislative history disclaims any intent to relax that requirement. An ANDA applicant must still prove it has an objectively reasonable apprehension of suit by the patentee before subject matter jurisdiction can attach in any declaratory judgment action, and that burden is not met simply by the fact that the ANDA applicant was *not* sued by the patentee. *See Mutual Pharm.*, 307 F. Supp. 2d at 93 (The Federal Circuit has yet to find "that the jurisdictional prerequisites for a declaratory judgment suit are met anytime an ANDA filer that files a paragraph IV certification is not sued by the pioneer patent holder within the 45-day window.").

As Bristol has done nothing to indicate that it is even contemplating a suit against Apotex under the patents laws, and on the contrary, has repeatedly said it will not sue Apotex for infringement of the '447, '589, and '985 patents, there is presently no live case or controversy, and the Medicare Act did not create an artificial case or controversy for ANDA filers. "The obverse of a definite and concrete dispute may be described as an advisory opinion on a situation not ripe for litigation." *BP Chems.* 4 F.3d at 977. In the absence of any affirmative indication from Bristol that it will bring suit, the need for judicial attention here is "prospective and uncertain of

-22-

occurrence" rather than "real and immediate." *Id.* at 978. Thus, to avoid rendering an advisory opinion, the Court should dismiss Apotex's request for declaratory relief.

## II.     EVEN IF THE COURT FINDS AN ACTUAL CONTROVERSY, DISMISSAL IS WARRANTED

While the court has no discretion to decide a declaratory judgment action where there is no actual controversy, it is well-settled law that, even when there is an actual controversy, it is still within the court's sound discretion to decline to exercise jurisdiction over it. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942); *Spectronics*, 940 F.2d at 634. "[A]s long as the district court acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, the court has broad jurisdiction to refuse to entertain a declaratory judgment action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996). In *EMC*, the Federal Circuit affirmed the district court's dismissal of a declaratory judgment action even though it found that the undisputed facts sufficiently established a controversy between the parties. *Id.* at 809, 811. The district court had found that the action was an abuse of the declaratory device and "not one that furthered the objectives of the Declaratory Judgment Act." *Id.* at 814, 815.

What has happened in the present case is precisely what the Hatch-Waxman Act prescribes. Because Bristol has patents that cover its specific formulation, it was required to inform the FDA, and the FDA properly listed those patents in the Orange Book. Because the patents were so listed, generic ANDA applicants studied them, certified their generic product would not infringe and/or that the patents were believed to be invalid, and explained their reasoning to Bristol. Bristol received those notices, carefully studied them, and chose not to bring suit within 45 days, and thereby the approval of those applicants cannot be delayed by any action of Bristol's. Because the first of those ANDA applicants to provide a "paragraph (IV)"

-23-

certification fulfilled all of the requirements of the Act before Apotex did, it earned a right of 180 days of marketing exclusivity against all later applicants, specifically against Apotex.

Apotex's alleged fear of being sued by Bristol is contrived, and Apotex's real purpose is not to resolve any dispute between it and Bristol, but rather to impair the statutory exclusivity right of another, first-filing generic, to Apotex's marketing advantage. Apotex's suit here is simply an attempt to subvert the provisions of the Hatch-Waxman and Medicare Acts and to achieve a "court decision" in an effort to prematurely start the 180 days of marketing semi-exclusivity at a time when the first-filing party who is entitled to it is unable to benefit from it, thereby accelerating Apotex's market entry. There is no actual case or controversy here between Bristol and Apotex.

However, if the Court concludes that, notwithstanding Bristol's clear and repeated disclaimers of any intention to sue, there was any basis at all for a reasonable apprehension in Apotex's mind, the Court should exercise its discretion and still decline jurisdiction. This Court should not allow Apotex to impose on the Court or on Bristol the significant expense and effort of unnecessary patent litigation to effectuate its attempt to strip a non-party generic applicant of its right to priority of marketing. *See Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (finding that when the investment of the court's time and resources would not be worthwhile, a party has no right to a declaratory judgment). "Simply because there is an actual controversy between the parties does not mean that the district court is required to exercise that jurisdiction." *EMC,* 89 F.3d at 813. Rather, the Declaratory Judgment Act "specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances." *Serco,* 51 F.3d at 1039.

## CONCLUSION

Apotex's suit for a declaratory judgment that Bristol's '447, '589, and '985 patents are invalid and/or not infringed should be dismissed for lack of subject matter as no "actual controversy" exists. Even if this court finds an actual controversy, as required by both the Declaratory Judgment Act and the Medicare Act, this Court should exercise its discretion to deny Apotex's request for declaratory relief where that request is nothing but an attempt to circumvent the Hatch-Waxman and Medicare Acts.

Respectfully submitted,

s\ Thomas H. Beck
Robert L. Baechtold (RB 6866)
Thomas H. Beck (TB 4400)
FITZPATRICK, CELLA, HARPER
   & SCINTO
30 Rockefeller Plaza
New York, New York 10112-3801
Telephone: (212) 218-2100
Facsimile: (212) 218-2200

*Attorneys for Defendant*
*Bristol-Myers Squibb Company*

Dated: May 25, 2004

-25-

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2004, a copy of the foregoing Memorandum of Law in Support of Defendant's Motion To Dismiss Plaintiffs' Complaint was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Marc A. Lebowitz (ML 7381)
Matthew Giger (MG 3731)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Floor
New York, New York 10104

I further certify that on May 25, 2004, a copy of the foregoing was mailed, by Federal Express and properly addressed to the following:

William A. Rakoczy
Deanne M. Mazzochi
Matthew O. Brady
Jane J. Jaang
RAKOCZY MOLINO MAZZOCHI LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610.


　s/ Lori A. Klucsarits　
Lori A. Klucsarits (LK 4560)
FITZPATRICK, CELLA, HARPER & SCINTO
30 Rockefeller Plaza,
New York, NY 10112-3800
Telephone:  (212) 218-2100
Facsimile:   (212) 218-2200