UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

TEVA PHARMACEUTICALS USA, INC., )
)
)
)
Plaintiff, )
)
)
v. )   CIVIL NO. 1:05-CV-01469-JDB
)
FOOD AND DRUG ADMINISTRATION, )
MICHAEL O. LEAVITT, and )
LESTER M. CRAWFORD, )
)
)
Defendants. )
)

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION BY RANBAXY TO INTERVENE

Ranbaxy Laboratories Limited, Ranbaxy Inc., and Ranbaxy Pharmaceuticals, Inc. (collectively "Ranbaxy") have moved to intervene in this action because they have an interest in the subject matter of this action, disposition of the action may impair their interest and Ranbaxy's interest is not adequately represented by the existing parties. Accordingly, Ranbaxy is entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a). Ranbaxy also satisfies the standards of Fed. R. Civ. P. 24(b) for permissive intervention.

Counsel for FDA has informed undersigned counsel that it takes no position on this motion. Counsel for Teva Pharmaceuticals USA, Inc. ("Teva"), however, has informed undersigned counsel that it opposes Ranbaxy's motion because it has already consented to the intervention of one of Ranbaxy's competitors, Apotex, Inc. ("Apotex"). Teva apparently believes that one generic company, here Apotex, can adequately represent the interests of another, and that intervention by more than one additional generic applicant might unduly complicate the proceedings. In fact, Ranbaxy's interests are not adequately represented by a competing generic company. Nor will Ranbaxy's participation unduly delay these proceedings.

As explained more fully below, neither of these proffered grounds suffices to defeat Ranbaxy's right to intervene in this litigation.

I. Factual Background.

Plaintiff Teva distributes generic drugs that are FDA-approved for marketing by means of an approved abbreviated new drug application ("ANDA"). Teva has submitted an ANDA seeking approval for generic pravastatin sodium tablets in 10 mg, 20 mg, and 40 mg strengths. Teva's product is a generic version of Bristol-Meyers Squibb Co.'s ("BMS") Pravachol®. Pravachol is subject to patent protection, and BMS has listed with FDA four unexpired Pravachol patents, U.S. Patent Nos. 4,346,227 ("the '227 patent"), 5,030,447 ("the '447 patent"), 5,180,589 ("the '589 patent") and 5,622,985 ("the '985 patent").

When an ANDA is submitted to FDA for a drug on which patents are listed, the company submitting the ANDA must make one of four certifications as to each patent. 21 U.S.C. § 355(j)(2)(A)(vii). Teva included in its ANDA a paragraph III certification to the '227 patent, signifying that it would wait until the expiration of that patent before FDA approval of its ANDA becomes final. Teva included paragraph IV certifications to the other three patents listed by BMS. A paragraph IV certification certifies the applicant's belief that the generic product described in the ANDA does not infringe the identified patent or that the identified patent is invalid. Id.

In its Complaint, Teva alleges that it was the first to file an ANDA for pravastatin sodium. Complaint for Injunction and Declaratory Relief ¶¶ 22-25. The Hatch Waxman amendments to the Food, Drug, and Cosmetic Act ("Hatch Waxman") provide that the first ANDA applicant to submit a paragraph IV certification (the "first filer") will receive 180-day exclusivity, that is, FDA may not approve a subsequent ANDA containing a paragraph IV certification for 180 days after the first filer's exclusivity begins. 21 U.S.C. § 355(j)(5)(B)(iv). Pursuant to Hatch Waxman, 180-day exclusivity begins on the earlier of the date on which the first filer first commercially markets the generic drug or "the date of a decision of a court in an

action described in clause (ii) holding the patent which is the subject of the certification to be invalid or not infringed." 21 U.S.C. § 355(j)(5)(B)(iv)(II)(2002).[1]

On June 28, 2005, FDA informed Teva that, as a result of the decision of the court in a declaratory judgment action filed by another ANDA applicant, Apotex, the 180-day exclusivity period for pravastatin sodium tablets had expired on February 18, 2005. Complaint ¶ 43. As a result of this decision by FDA, Teva will not benefit from 180-day exclusivity because the 180-day exclusivity period will not preclude FDA from approving the ANDAs of competitors at the same time that it approves Teva's ANDA. In this lawsuit, Teva challenges FDA's decision that the exclusivity period expired as of February 18, 2005.

Ranbaxy Laboratories Limited also markets generic drugs, and also has submitted an ANDA for pravastatin sodium tablets. Ranbaxy's ANDA 76-445, submitted on June 26, 2002, also contains a paragraph III certification to the '227 patent, and paragraph IV certifications to several of the other patents listed by BMS. On September 30, 2003, FDA tentatively approved Ranbaxy's ANDA, which means that its ANDA is ready for final approval when all applicable patent related exclusivities have expired. Final approval would allow Ranbaxy to market its generic pravastatin sodium tablets.

In this action Teva seeks to have the court determine that the 180-day exclusivity period has not begun and seeks to prevent FDA from approving other ANDAs for 180 days while Teva markets its pravastatin sodium tablets. If Teva prevails, Ranbaxy's final approval would be delayed during the 180-day exclusivity period.

Ranbaxy believes that FDA's decision that 180-day exclusivity expired in February 2005 is correct. As FDA concluded, under Hatch Waxman and prior decisions of this and other courts, the disposition of the Apotex case was a decision of a court holding that the relevant patents were not infringed, and, therefore, began the period of 180-day exclusivity. Delay in the

---

1. The Medicare Modernization Act of 2003 amended the Hatch Waxman provisions governing 180-day exclusivity. Those amendments do not apply in this case because Teva's ANDA was submitted prior to the 2003 amendments. See Pub. L. No. 108-173 § 1102(b)(1).

3

approval of Ranbaxy's ANDA beyond expiration of the '227 patent would be a significant hardship for Ranbaxy, substantially limiting its ability to successfully compete with Teva and costing it millions of dollars. Ranbaxy therefore seeks to intervene in this action so that its interest is represented.

II. Legal Standard for a Motion to Intervene.

Federal Rule of Civil Procedure 24 sets forth the requirements for intervention as of right and permissive intervention. In relevant part, Rule 24(a) provides that:

> Upon timely application anyone shall be permitted to intervene in an action…when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed R. Civ. P. 24(a)(2). Thus, a prospective intervenor must be permitted to intervene if the applicant claims an interest in the subject matter of the case, if the disposition of the case stands to impair that interest and if the applicant's interest is not adequately represented by the existing parties. Acree v. Republic of Iraq, 370 F.3d 41, 49 (D.C. Cir. 2004). Alternatively, an applicant may be permitted to intervene pursuant to Rule 24(b)(2) if its claim shares a question of law or fact in common with the underlying action and if the intervention will not unduly delay or prejudice the rights of the original parties. Id. Under either test, a party must seek intervention timely. Id.; Fund for Animals v. Norton, 322 F.3d 728, 732 (D.C. Cir. 2003). These requirements for intervention are construed liberally in favor of intervention. Wilderness Society v. Babbitt, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) ("[T]he D.C. Circuit has taken a liberal approach to intervention . . . .").

As shown below, Ranbaxy has met the requirements for intervention as of right under Rule 24(a)(2) and for permissive intervention under Rule 24(b)(2).

4

III. Ranbaxy Has An Interest in the Subject Matter of the Case Which Could Be Impaired by Disposition of This Case.

Ranbaxy has a substantial interest in this action because it is committed to launch its generic pravastatin sodium tablets immediately upon the expiration of BMS's '227 patent. See Declaration of Jayadeep R. Deshmukh ("Deshmukh Decl.") ¶ 12. This commercial and legal interest constitutes an interest in the property or transaction which is the subject of the action sufficient to satisfy Rule 24(a)(2). This Court has routinely allowed competing drug manufacturers to intervene in actions involving FDA drug approval and exclusivity decisions so that manufacturers may protect their unique and substantial interests. See, e.g., Torpharm, Inc. v. Thompson, 260 F. Supp. 2d 69 (D.D.C. 2003), aff'd 354 F.3d 877 (D.C. Cir. 2004); Purepac Pharm. Corp. v. Thompson, 238 F. Supp. 2d 191 (D.D.C. 2002), aff'd 354 F.3d 877 (D.C. Cir. 2004); Teva Pharm. Indus., LTD v. FDA, 355 F. Supp. 2d 111 (D.D.C. 2004); Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998). Indeed, Teva itself has intervened to safeguard its own interest in a pending ANDA. See Purepac Pharm. Co. v. Friedman, 162 F.3d 1201, 1202 n.2 (D.C. Cir. 1998); Merck & Co. v. FDA, 148 F. Supp. 2d 27 (D.D.C. 2001).

If Teva prevails in this action, Ranbaxy's interest will be impaired. To determine whether an interest will be impaired, the court must look at the "'practical consequences' of denying intervention . . . ." Fund for Animals, 322 F.3d at 735. In this case, the consequences of deciding the case in favor of Teva are that Ranbaxy would face the immediate loss of substantial revenue that would likely be unrecoverable. The injury to Ranbaxy is fairly traceable to the regulatory action Teva seeks to compel – the award of 180-day exclusivity and the exclusion of Ranbaxy for 180 days from the market for generic pravastatin sodium. A decision favorable to the FDA, rejecting Teva's legal challenge, would prevent that loss from occurring. Thus,

Ranbaxy can demonstrate both the substantial interest and impairment necessary to satisfy Rule 24(a)(2).[2]

IV. <u>Ranbaxy's Interest Is Not Adequately Represented By the Existing Parties.</u>

The requirement that an intervenor show that the existing defendants do not adequately represent the proposed intervenor is not onerous. <u>Fund for Animals</u>, 322 F.3d at 735. An intervenor need only show that representation of its interest "may be" inadequate – not that it will in fact be inadequate, <u>Dimond v. District of Columbia</u>, 792 F.2d 179, 192 (D.C. Cir. 1986), and the burden of making this showing is "minimal," <u>Trbovich v. United Mine Workers of Am.</u>, 404 U.S. 528, 538 n.10 (1972) (quoting Moore's Federal Practice). Ranbaxy amply satisfies this showing.

First, the plaintiff's interests in this case are squarely adverse to Ranbaxy's. Teva seeks to prevent Ranbaxy from competing with it in the market for generic pravastatin sodium tablets for 180 days. Accordingly, it does not in any way represent Ranbaxy's interests.

Second, the Federal defendants represent a different set of interests from those Ranbaxy seeks to protect. Both Ranbaxy and the Federal defendants will seek to show that the plaintiff's arguments are inconsistent with the Hatch-Waxman scheme, language, legal precedent and Congressional intent. Nevertheless, the Federal defendants have neither a commercial nor financial interest in this case. Their interest lies in exercising the authority delegated by Congress. Ranbaxy, by contrast, has an independent commercial and financial interest in the outcome of this case. As the D.C. Circuit has often concluded, "governmental entities do not adequately represent the interests of aspiring intervenors." <u>Fund for Animals</u>, 322 F.3d at 736; See also <u>People for the Ethical Treatment of Animals v. Babbitt</u>, 151 F.R.D. 6 (D.D.C. 1993).

---

2. Indeed, Ranbaxy's interest and potential impairment certainly is no less substantial than that of Apotex, whose proposed intervention Teva apparently does not oppose.

6

Ranbaxy also meets the minimal burden of showing that no other generic company – whether Apotex or any other – would adequately represent Ranbaxy's interest.[3] While Apotex's and Ranbaxy's positions may appear similar, they either are or may be quite different. First, while both Ranbaxy and Apotex believe that FDA's decision that exclusivity had run in February 2005 was correct, their views on why exclusivity has run may differ significantly. Each generic company is pursuing multiple ANDAs and, often, 180-day exclusivity, for a different set of drugs. Thus, their factual situations may dictate positions that differ in subtle but important respects. Second, whether and when each may procede to market will be determined by different circumstances. Final approval for Apotex's ANDA will depend on facts particular to Apotex. Should Apotex run into trouble with its supplier, or fail to satisfy FDA regarding its manufacturing, for example, Apotex may no longer be in a position to defend FDA's interpretation.

Moreover, "a partial congruence of interests . . . does not guarantee the adequacy of representation." Fund for Animals, 322 F.3d at 737. The commercial, financial and legal differences between Apotex and Ranbaxy are enough to satisfy the requirements for intervention. As the Court of Appeals for the District of Columbia has held, interests need not be wholly adverse before concluding that existing representation may be inadequate. Id.

Even if Ranbaxy's and Apotex's interests were aligned today, there is no certainty that they will be aligned tomorrow. The generic drug industry is characterized by shifting alliances. Just two weeks ago, for example, Teva and IVAX were competitors in the market for generic drugs; today they are aligned, as Teva has agreed to acquire IVAX. See Press Release, Teva, Teva to Acquire IVAX for $7.4 Billion (July 25, 2005) available at http://www.tevapharm.com/pr/2005/pr_536.asp ("Today TEVA and IVAX have taken the bold step of consolidating to create what we believe will be the largest company in the generic

---

3. According to counsel for Teva, only Ranbaxy and Apotex had sought plaintiff's consent to a motion to intervene. As far as Ranbaxy can ascertain, as of Aug. 1, 2005, neither Apotex nor any other generic applicant had filed a motion to intervene.

industry . . . ."). Moreover, generic companies not infrequently advance their economic interests by entering into agreements to resolve litigation. Teva, in fact, previously has benefited from such agreements. See Teva Pharms. Inc. v. FDA, 355 F. Supp. 2d 111, 116 n.6 (D.D.C. 2004). If Teva and Apotex were to reach some agreement, Apotex might well withdraw from this litigation or change its position.

As the D.C. Circuit has held, an intervenor should not be precluded from the opportunity to appear in its own behalf merely by "a tactical similarity of the present legal contentions of the parties." Fund for Animals, 322 F.3d at 737. Because Ranbaxy's interests are not the same as Apotex, representation by Apotex "may be" inadequate. No more is required for intervention.

V. Ranbaxy's Motion is Timely and Will Not Unduly Delay the Proceedings.

The last requirement for intervention is that the intervention be timely. In this case, there can be no doubt that Ranbaxy's motion is timely. Ranbaxy filed this motion within days after Teva filed its suit and its motion for a preliminary injunction. Counsel for Ranbaxy understands that the plaintiff and the Federal defendants have approached the Court with a proposed briefing schedule. Ranbaxy is prepared to comply with any schedule set by this Court.

Ranbaxy's intervention is timely and will cause no delay in the resolution of this case nor any other prejudice to the parties. Certainly there is no reason to believe that the proceedings may be unduly delayed or complicated by Ranbaxy's intervention. In any event, the Court can prevent any delay or prejudice without denying intervention. Fund for Animals, 322 F.3d at 737 n.11.

Conclusion

The issues in this case are important for the future application of 180-day exclusivity. This Court is entitled to and should hear the range of views on this question. Teva's desire to decide who should and who should not participate in this case cannot defeat Ranbaxy's right to intervene.

For the reasons set forth above, Ranbaxy meets the test for intervention as of right and its motion to intervene should be granted. In the alternative, the Court should allow Ranbaxy to intervene pursuant to Rule 24(b)(2).

Respectfully submitted,

*Kate C. Beardsley*

Kate C. Beardsley
D.C. Bar No. 416806
Carmen M. Shepard
D.C. Bar No. 331314

Buc & Beardsley
919 Eighteenth Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 736-3600

Counsel for Ranbaxy
 Pharmaceuticals, Inc.