UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOOD AND DRUG ADMINISTRATION, MICHAEL O. LEAVITT, and LESTER M. CRAWFORD, <br><br> Defendants. | CIVIL NO. 1:05-CV-01469-JDB |

## DECLARATION OF JAYADEEP R. DESHMUKH

I, Jayadeep R. Deshmukh, declare as follows:

1. I am the Vice President - Intellectual Property for Ranbaxy Laboratories Limited. Ranbaxy Laboratories Limited is a publicly traded company engaged in the development, manufacturing and marketing of pharmaceuticals in the United States and worldwide. Ranbaxy Pharmaceuticals, Inc. is a wholly owned subsidiary of Ranbaxy Inc., which is ultimately a wholly owned subsidiary of Ranbaxy Laboratories Limited. Ranbaxy Inc. is the agent of Ranbaxy Laboratories Limited in the United States. Ranbaxy Laboratories Limited has dealt and continues to deal with the United States Food and Drug Administration ("FDA") through Ranbaxy Inc. and Ranbaxy Pharmaceuticals, Inc.

2. As the Vice President - Intellectual Property for Ranbaxy Laboratories Limited, I am responsible for all intellectual property and regulatory legal aspects of Ranbaxy Laboratories

Limited's pharmaceutical business in the United States and in the rest of the world. I am familiar with the marketing of drug products in general and with the marketing of generic drugs in particular. This document is based on my personal knowledge and records retained by Ranbaxy in the ordinary course of business.

3. I obtained a B.S. in Chemical Engineering in 1984 from Manipal Institute of Technology in India; an M.S. in Chemical Engineering in 1989 from Cleveland State University; and a J.D. in 1992 from Case Western Reserve University. I joined Ranbaxy Laboratories Limited in 1998. I was a patent attorney at Frost and Jacobs during 1992-1994 and Dinsmore & Shohl LLP during 1994-1998.

4. Ranbaxy Laboratories Limited manufactures and markets generic and branded generic pharmaceuticals, and active pharmaceutical ingredients. The company also is engaged in research and development of several novel drugs.

5. Atherosclerosis, the build-up of cholesterol and fats along the walls of blood vessels, decreases blood flow and, therefore, the oxygen supply to the heart, brain and other parts of the body. The decrease in the flow of blood and oxygen can lead to heart disease, angina, strokes and heart attacks.

6. Millions of Americans suffer from atherosclerosis. Tens of millions of prescriptions are written each year for statin drugs, which are drugs indicated for the treament of atherosclerosis. Collectively, the statins are the most widely prescribed drugs in the United States.

7. Pravastatin sodium, the active ingredient in Pravachol, is in a class of medications called HMG-CoA reductase inhibitors, also known as statins. Statins work by slowing the production of cholesterol in the body.

8. Pravachol has been approved by FDA to, among other things, reduce the risk of myocardial infarction, reduce the risk of undergoing myocardial revascularization procedures, reduce the risk of cardiovascular mortality, reduce the risk of stroke and slow the progression of coronary atherosclerosis.

9. Bristol-Myers Squibb Company ("BMS") is the holder of an approved new drug application ("NDA"), for pravastatin sodium, which it markets in 10 mg, 20 mg, 40 mg, and 80 mg tablets under the trade name Pravachol. BMS has listed four patents in the Orange Book as claiming Pravachol: U.S. Patent No. 4,346,227 ("the '227 patent"), U.S. Patent No. 5,030,447 ("the '447 patent"), U.S. Patent 5,180,589 ("the '589 patent"), and U.S. Patent No. 5,622,985 ("the '987 patent"). BMS has also been awarded pediatric exclusivity which effectively extends the patent's protection for another six months. According to FDA's Orange Book, this means that the '227 patent expires on April 20, 2006, the '447 patent and the '985 patent expire on January 9, 2008, and the '985 patent expires on October 22, 2014.

10. Ranbaxy Laboratories Limited submitted ANDA 76-413 on June 26, 2002, seeking approval to market a generic version of pravastastin sodium tablets 10 mg, 20 mg, 40 mg, and 80 mg. Ranbaxy's ANDA contained a paragraph III certification to the '227 patent, paragraph IV certifications to the '447 and '589 patents and a statement under Section 505(j)(2)(A)(viii) of the FDCA that the '985 is a method of use patent and Ranbaxy does not seek approval for the indications claimed by the '985 patent. Ranbaxy's ANDA received tentative approval on September 30, 2003. A copy of the letter from FDA tentatively approving Ranbaxy's ANDA is

attached at Exhibit 1. BMS did not sue Ranbaxy for patent infringement. Pursuant to FDA regulations, the tentative approval of Ranbaxy's ANDA signified that it had satisfied all requirements for approval, but that the effective date of the approval was deferred until expiration of the exclusivity for the '227 patent.

11. In addition to Ranbaxy, other generic applications for pravastatin sodium have received tentative approval, including one submitted by Teva Pharmaceuticals, USA, Inc ("Teva").

12. Ranbaxy is ready to begin to market pravastatin sodium tablets in April 2006 in competition with BMS, Teva, Apotex, Inc. and other marketers of generic pravastatin sodium tablets.

Effect of granting Teva exclusivity following expiration of the '227 patent.

13. Ranbaxy will be seriously harmed if a period of exclusivity is awarded following the expiration of BMS' '227 patent and Ranbaxy is excluded from the market for 180 days.

14. Teva, if it obtains the exclusivity it seeks, will obtain a substantial advantage in capturing market share for pravastatin sodium tablets, while Ranbaxy and other competitors are excluded.

15. According to BMS' 2004 Annual Report, sales of Pravachol in the United States in 2004 were $1.4 billion. Ranbaxy projects that, once generics enter the market for pravastatin sodium tablets, the total generic market share would rapidly climb to 90% or more.

16. Assuming that the generic market share will be shared equally by several generic companies, I estimate that Ranbaxy will achieve tens of millions of dollars of pravastatin sodium sales during the first six months of marketing. This estimate is based on the market share exhibited in other products launched by Ranbaxy.

17. If Teva were to a obtain 180 day period of exclusivity following expiration of the '227 patent, Ranbaxy would be deprived of millions in projected profits over the first six months of marketing, despite the millions of dollars in development costs Ranbaxy incurred preparing for distribution of pravastatin sodium.

18. Ranbaxy and Apotex have different commercial interests, as each will seek to maximize its share of the market for pravastatin sodium tablets. How Apotex will seek to do so will likely depend on facts that are unique to its situation, such as, for example, its ability to obtain final approval and any opportunity to enter into risk-sharing agreements. For these reasons, Apotex's participation in this litigation may be inadequate to represent Ranbaxy's intersets. In addition, because of its position in seeking approval to market other drugs, Apotex may well take different legal positions regarding the trigger for exclusivity than those presented by Ranbaxy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of August 2005.

_____
Jayadeep R. Deshmukh

# Exhibit 1

ANDA 76-445



# *OFFICE OF GENERIC DRUGS*

Food and Drug Administration
HFD-600, Metro Park North II
7500 Standish Place, Room 150
Rockville, MD 20855-2773
Fax: 301-594-0180

## FAX TRANSMISSION COVER SHEET

**APPLICANT:** Ranbaxy Pharmaceuticals, Inc.          **TEL:** 609-720-5666
U.S. Agent for Ranbaxy Laboratories Limited
   **ATTN:** Abha Pant                                **FAX:** 609-514-9797

**FROM:** Peter Chen                                   **PROJECT MANAGER:** 301-827-5848

Dear Madam:

This facsimile is in reference to your abbreviated new drug application dated June 26, 2002, submitted pursuant to Section 505(j) of the Federal Food, Drug, and Cosmetic Act for Pravastatin Sodium Tablets, 10 mg, 20 mg, 40 mg, and 80 mg.

We are pleased to inform you that this application is TENTATIVELY APPROVED!

**THIS DOCUMENT IS INTENDED ONLY FOR THE USE OF THE PARTY TO WHOM IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, OR PROTECTED FROM DISCLOSURE UNDER APPLICABLE LAW.**
If received by someone other than the addressee or a person authorized to deliver this document to the addressee, you are hereby notified that any disclosure, dissemination, copying, or other action to the content of this communication is not authorized. If you have received this document in error, please immediately notify us by telephone and return it to us by mail at the above address.

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

ANDA 76-445

Food and Drug Administration
Rockville MD 20857

SEP 30 2003

Ranbaxy Pharmaceuticals, Inc.
Attention: Abha Pant
U.S. Agent for: Ranbaxy Laboratories Limited
600 College Road East
Princeton, NJ 08540

Dear Madam:

This is in reference to your abbreviated new drug application (ANDA) dated June 26, 2002, submitted pursuant to Section 505(j) of the Federal Food, Drug, and Cosmetic Act (the Act), for Pravastatin Sodium Tablets, 10 mg, 20 mg, 40 mg, and 80 mg.

Reference is also made to your amendments dated August 28, and September 26, 2003. We also acknowledge receipt of your correspondence dated August 14, August 20, October 10, and November 26, 2002, pertaining to patent issues noted below.

We have completed the review of this abbreviated application, and based upon the information you have presented to date we have concluded that the drug is safe and effective for use as recommended in the submitted labeling. Although we are unable to approve your application at this time due to patent issues explained below, the application is **tentatively approved**. This determination is based upon information available to the agency at this time (i.e., information in your application and the status of current good manufacturing practices (cGMPs) of the facilities used in the manufacture and testing of the drug product). The determination is subject to change on the basis of new information that may come to our attention. This letter does not address notice issues related to the 180-day exclusivity provisions under Section 505(j)(5)(B)(iv) of the Act.

The reference listed drug product (RLD) upon which you have based your application, Pravachol® Tablets of Bristol Myers Squibb, is subject to periods of patent protection. As noted in the agency's publication entitled <u>Approved Drug Products with Therapeutic Equivalence Evaluations,</u> (the "Orange Book"), U.S. Patent Nos. 4,346,227 (the '227' patent), 5,030,447 (the '447

patent), 5,180,589 (the '589 patent), and 5,622,985 (the '985 patent) are scheduled to expire on April 20, 2006, January 9, 2009, January 9, 2009, and October 22, 2014, respectively. Your application contains a paragraph III certification under Section 505(j)(2)(A)(vii)(III) of the Act stating that you will not market this drug product prior to the expiration of the '227 patent. Your application also contains a patent statement under Section 505(j)(2)(A)(viii) of the Act indicating that the '985 patent is a method of use patent, and that this patent does not claim any of the indications for which you are seeking approval. In addition, your application contains paragraph IV certifications to the '447 and '589 patents under Section 505(j)(2)(A)(vii)(IV) of the Act stating that the '447 and '589 patents will not be infringed by your manufacture, use, or sale of Pravastatin Sodium Tablets 10 mg, 20 mg, 40 mg, or 80 mg. Section 505(j)(5)(B)(iii) of the Act provides that approval shall be made effective immediately unless an action is brought against Ranbaxy Laboratories Limited (Ranbaxy) for infringement of the '447 and/or the '589 patents which were the subject of the certifications. This action must be brought before the expiration of forty-five days from the date the notice you provided under paragraph (2)(B)(i) was received by the NDA/patent holder(s). You have notified the agency that Ranbaxy has complied with the requirements of Section 505(j)(2)(B) of the Act and that no action for patent infringement was brought against Ranbaxy within the statutory forty-five day period. Therefore, final approval of your application may not be made effective pursuant to 21 U.S.C. 355(j)(5)(B)(ii) of the Act until the '227 patent has expired; i.e., currently April 20, 2006.

In order to reactivate your application prior to final approval, please submit a MINOR AMENDMENT - FINAL APPROVAL REQUESTED 90 days prior to the date when you believe that your application will be eligible for final approval. This amendment should identify changes, if any, in the conditions under which the product was tentatively approved, and should include updated information such as final-printed labeling or chemistry, manufacturing, and controls data as appropriate. This amendment should be submitted even if the application remains unchanged from the date of tentative approval. The cover letter accompanying this amendment should clearly identify the submission as a MINOR AMENDMENT - FINAL APPROVAL REQUESTED.

In addition to the amendment requested above, the agency may request at any time prior to the final date of approval that you

submit an additional amendment containing the information described above.

Failure to submit either or, if requested, both amendments may result in rescission of the tentative approval status of this application, or may result in a delay in the issuance of the final approval letter.

Any significant changes in the conditions outlined in this ANDA as well as changes in the status of the manufacturing and testing facilities' compliance with current good manufacturing practices (CGMPs) are subject to agency review before final approval of the application will be made. Such changes should be categorized as representing either "major" or "minor" changes, and they will be reviewed according to OGD policies in effect at the time of receipt. The submission of multiple amendments prior to final approval may delay the issuance of the final approval letter.

This drug product may not be marketed without final agency approval under Section 505 of the Act. The introduction or delivery for introduction into interstate commerce of this drug before the effective final approval date is prohibited under section 501 of the Act and 21 U.S.C. 331(d). Also, until the Agency issues the final approval letter, this drug product will not be deemed approved for marketing under 21 U.S.C. 355 and will not be listed in the Orange Book. Should you believe that there are grounds for issuing the final approval letter prior to April 20, 2006, you should amend this application accordingly.

When amending this application, please contact Peter Chen, R.Ph., Project Manager, at (310) 827-5848, for further instructions.

Sincerely yours,

Gary Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research