# Exhibit 1

**BUC & BEARDSLEY**
919 EIGHTEENTH STREET, N.W.
SUITE 600
WASHINGTON, D.C. 20006-5503

WRITER'S TELEPHONE
202-736-3620

TELEPHONE
202-736-3600
FACSIMILE
202-736-3608

August 23, 2005

Mr. Gary J. Buehler
Director, Office of Generic Drugs
Center for Drug Evaluation and Research
Food and Drug Administration
MPNII, Rm. 287, HFD 600
7500 Standish Place
Rockville, Maryland 20855

Dear Mr. Buehler:

      On behalf of our client, Ranbaxy Pharmaceuticals, Inc. ("Ranbaxy") we write to request reconsideration of the agency's conclusion, conveyed in a letter from you to Ranbaxy dated June 28, 2005 ("FDA's exclusivity decision"), that any 180-day exclusivity for pravastatin sodium tablets 80 mg arising from U.S. Patent Nos. 5,030,447 (the '447 patent), 5,180,589 (the '589 patent) and 5,622,985 (the '985 patent) began to run on August 22, 2004, the date the stipulation and order dismissing <u>Apotex, Inc. v. Bristol-Myers Squibb Co.</u>, No. 04-CV-2922 (S.D.N.Y. July 23, 2004) became final. As we explain below, there is no court decision regarding the 80 mg strength that could have triggered the running of 180-day exclusivity pursuant to Section 505(j)(5)(B)(iv) (2002). In addition, because of pending litigation regarding FDA's exclusivity decision, <u>Teva Pharmaceuticals USA, Inc. v. FDA</u>, C.A. No. 05-1469 (JDB) (D.D.C., filed July 26, 2005), we ask that you confirm prior to August 25, 2005, whether the agency will reconsider FDA's exclusivity decision as it pertains to pravastatin sodium tablets 80 mg.

Background

      Ranbaxy submitted ANDA 76-413 on June 26, 2002, seeking approval to market a generic version of pravastatin sodium tablets in 10 mg, 20 mg, 40 mg, and 80 mg strengths. Bristol-Myers Squibb Company ("BMS") is the holder of the NDA for Pravachol® (pravastatin sodium) tablets, which it markets in 10 mg, 20 mg, 40 mg and 80 mg strengths. BMS has listed four patents in the Orange Book as claiming each strength of Pravachol: U.S. Patent No. 4,346,227 (the '227 patent), the '447 patent, the '589 patent and the '985 patent. Ranbaxy's ANDA contained paragraph IV certifications as to two of these patents, a section viii statement as to the '985 patent and a paragraph III certification as to the '227 patent. Ranbaxy's ANDA received tentative approval on September 30, 2003. Until it received the Administrative Record ("A.R.") in the pending litigation over the FDA exclusivity decision, Ranbaxy was unaware that it may have been the first to file an effective ANDA on the 80 mg strength, and that it may well be entitled to exclusivity on that strength.

Mr. Gary J. Buehler
August 23, 2005
Page 2

      Teva submitted an ANDA for pravastatin sodium tablets 10 mg, 20 mg and 40 mg to FDA on December 20, 2000. A.R., Tab 1. Its application also included paragraph IV certifications to three of the patents and a paragraph III certification to the '227 patent. According to Teva, its ANDA is the first submitted to FDA on the 10 mg, 20 mg and 40 mg strengths containing paragraph IV certifications as to the '447, '589 and '985 patents. BMS did not sue Teva.

      Apotex also submitted an ANDA for three strengths of pravastatin sodium tablets, 10 mg, 20 mg and 40 mg. A.R., Tab 19. Apotex's ANDA included a paragraph III certification to the '227 patent and paragraph IV certifications to the '447, '589 and '985 patents. Id. Apotex gave BMS notice, on March 27, 2002, of its paragraph IV certification for the 10 mg, 20 mg and 40 mg tablets. A.R., Tab 23. BMS did not sue Apotex.

      Beginning in October, 2003, Apotex initiated correspondence with BMS requesting, among other things, that BMS agree in writing that its 10 mg, 20 mg and 40 mg pravastatin drug products do not and would not infringe the '447, '589 and '985 patents. See A.R., Tab 32, Exh. F, at 8-9; A.R., Tab 32, Exh. G, at 4-5. These communications all specifically referred to the 10 mg, 20 mg and 40 mg strengths; none referred to the 80 mg strength, for which Apotex had not requested approval.

      Apotex subsequently filed a declaratory judgment action against BMS on April 15, 2004, seeking a declaratory judgment that its 10 mg, 20 mg and 40 mg formulations did not infringe the '447, '589 and '985 patents. The 80 mg formulation was never mentioned, directly or indirectly in the complaint. BMS moved to dismiss Apotex's complaint, likewise without mentioning the 80 mg strength.

      The Apotex declaratory judgment action was dismissed, through Stipulation and Order, on July 23, 2004. This order states that Apotex's complaint seeking a declaratory judgment is dismissed for lack of subject matter jurisdiction, "based on BMS's pre-Complaint representations that it has no intention to sue Apotex for infringement of the '447, '985, '589 patents." A.R., Tab 32, Tab A at 3.

      It appears that while the lawsuit was pending, Apotex attempted to amend its ANDA to include the 80 mg strength of pravastatin sodium.[1] Apotex, however, did not submit the patent certifications required to amend its ANDA under Section 505(j)(2)(vii) until August 9, 2004,

---

1. The Administrative Record in the pending litigation over FDA's exclusivity decision suggests that Apotex might have attempted to do so on June 29, 2004. See A.R., Tab 29, Section II Patent Certification at 2 (describing paragraph IV certification as relating to a June 29, 2004 Major Amendment.)

Mr. Gary J. Buehler
August 23, 2005
Page 3

well after its declaratory judgment action had been dismissed. A.R., Tab 29, Section II Patent Certification. It is unclear when or if Apotex provided the notice required pursuant to Section 505(j)(2)(B)(ii).[2]

At the time of the dismissal of the declaratory judgment action, Apotex had not submitted a complete amendment to add the 80 mg strength to its ANDA, had not submitted the required paragraph IV certifications to FDA, nor had it submitted an effective notice to BMS. Apotex never amended its declaratory judgment action to include the 80 mg drug. In fact, it could not have done so, because it was precluded by statute from instituting a declaratory judgment action prior to 45 days after receipt of the Section 505(j)(2)(B)(ii) notice by BMS.

By letter of September 7, 2004, Apotex asked FDA to decide that dismissal of its declaratory judgment action had triggered 180-day exclusivity on all four strengths of pravastatin sodium tablets. Apotex's letter, however, did not provide a full description of the underlying proceedings as they pertain to the 80 mg drug. Specifically, Apotex did not reveal that: (1) the 80 mg drug had not been the subject of the declaratory judgment litigation; (2) BMS had made no representation regarding whether it would seek to enforce its patents as to the 80 mg formulation; (3) Apotex's complaint had not sought a declaration as to whether the patents were infringed by Apotex's proposed 80 mg formulation; (4) Apotex had not even submitted a paragraph IV certification until after the Apotex v. BMS case had concluded; and (5) as a matter of law, during the time in question Apotex could not have brought a declaratory judgment action against BMS based on the 80 mg drug.

On June 28, 2005, FDA issued the determination finding that exclusivity on all four strengths of pravastatin sodium had expired in February 2005. FDA's decision does not reflect the critical facts missing from Apotex's September 7, 2004 submission, and therefore reaches a conclusion as to the effect of the declaratory judgment Stipulation and Order on exclusivity for the 80 mg strength that is not warranted by these facts.

Discussion

Section 505(j)(5)(B)(iv) of the FDCA provides that the first ANDA applicant to file a paragraph IV certification for a drug will receive a 180-day period of exclusivity ("180-day exclusivity" or "exclusivity"). Exclusivity is triggered by the earlier of (1) the ANDA applicant's first commercial marketing of the drug or (2) a decision of a court finding the patent invalid, unenforceable, or not infringed:

> If the application contains a certification described in subclause
> (IV) of paragraph (2)(A)(vii) and is for a drug for which a previous

---

2. The Administrative Record does not include a copy of the notice provide to BMS, so it is unclear when Apotex may have provided the paragraph IV notice to BMS for the 80 mg drug. While the Stipulation and Order recites that Apotex provided notice to BMS of its paragraph IV certifications as to the 80 mg strength, no effective notice could have been sent prior to Aug. 9, 2004, since no paragraph IV certification as to the 80 mg drug had been submitted to FDA prior to that date.

Mr. Gary J. Buehler
August 23, 2005
Page 4

> application has been submitted under this subsection continuing [sic] such a certification, the application shall be made effective not earlier than one hundred and eighty days after -
>
> > (I)      the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or
> >
> > (II)     the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed,
>
> whichever is earlier.

21 U.S.C. § 355(j)(5)(B)(iv) (2002).[3] Because each strength of a drug is a separate drug, exclusivity is triggered only as to the strength or strengths that are commercially marketed or are the subject of a court decision holding that the patent is invalid or not infringed. Apotex, Inc. v. Shalala, 53 F. Supp. 2d. 454, 461-63 C.D.D.C. 1999) aff'd No. 99-5231 1999 U.S. App. LEXIS 29571 (D.C. Cir. Oct. 8, 1999).

A triggering court decision generally results from patent infringement litigation brought by the NDA holder, whether the suit is filed against the first applicant to file an ANDA or a subsequent one. A triggering court decision also may result from a decision in a declaratory judgment action holding that the patent is invalid, not infringed or unenforceable, so long as the declaratory judgment action is brought no earlier than 45 days after the NDA holder is provided notice of the paragraph IV certification. 21 U.S.C. § 355(j)(5)(B).

Whether an order dismissing a declaratory judgment action can trigger 180-day exclusivity has been the subject of litigation. In Teva I, the Court of Appeals for the District of Columbia Circuit held that an order dismissing a declaratory judgment action could, under certain limited circumstances, trigger exclusivity.

Teva I involved an ANDA to market a generic version of a drug marketed by Syntex. Syntex did not sue Teva within 45 days of receiving notice that Teva had filed an ANDA containing a paragraph IV certification. Teva subsequently sued Syntex seeking a declaratory judgment of noninfringement of Syntex's patent for its drug. Following Syntex's statement that it would make no claim of patent infringement based on the formulation disclosed in the paragraph IV notice, Syntex successfully moved to dismiss the complaint for lack of subject

---

3. Congress has since amended these Hatch Waxman provisions governing exclusivity. MMA, Pub. L. No. 108-173, § 1102, 117 Stat. 2066, 2457-60 (2003). These amendments do not apply to this case because the ANDAs at issue in this case were filed prior to the date of enactment of the amendments. Id. § 1102(b)(1), 117 Stat. at 2460 (stating that the MMA amendments shall be effective only with respect to an application filed after the date of the Act).

Mr. Gary J. Buehler
August 23, 2005
Page 5

matter jurisdiction. The court entered an order dismissing the claim, specifically finding that Teva lacked a reasonable apprehension of suit by Syntex for infringement of the patent. See Teva Pharms USA, Inc. v. FDA, 182 F.3d at 1003, 1006 (D.C. Cir. 1999) ("Teva I"); Teva Pharms USA, Inc. v. FDA, 1999 U.S. Dist. LEXIS 14531, *8-13 (D.D.C. Jan. 20, 1999).

The D.C. Circuit addressed the question of whether the order dismissing the declaratory judgment action could trigger exclusivity. The court observed that, while a dismissal for lack of subject matter jurisdiction in general has no preclusive effect because the court "lacked authority or competence to decide a case", Teva I, at 1008, some dismissals could suffice to estop a party from suing for patent infringement, id. at 1009, and thus trigger exclusivity. On remand, FDA decided to recognize the dismissal of a declaratory judgment order as a triggering court decision based solely on the face of the court order, explaining that going beyond the face of the order would place an excessive burden on its staff. Teva Pharms USA, Inc. v. FDA, No. 99-67, 1999 U.S. Dist. LEXIS 14575 at *17-18 (D.D.C. Aug. 18, 1999). Applying its approach to the facts of that case, FDA concluded that, on its face, the order dismissing the declaratory judgment action brought by Teva for lack of subject matter jurisdiction had not triggered 180-day exclusivity.

On review, the District Court decided that, in light of the Court of Appeals' finding that the significance of a triggering decision lies in its estoppel effect, FDA must make inquiry into the basis of the declaratory judgment order. Id. at *22-23. Because the concessionary letters from the NDA holder together with the order dismissing the declatory judgment action in that case were sufficient to estop the NDA holder from suing Teva for patent infringement, the court held that the order constituted a triggering court decision pursuant to 21 U.S.C. § 355(j)(5)(B)(iv)(II). Id., aff'd Teva v. FDA, No. 99-5287, 2000 U.S. App. LEXIS 38667 (D.C. Cir. Nov. 15, 2000) ("Teva II"). Following Teva II, FDA has applied this standard in other situations. See A.R., Tab 37, 38.

Under the controlling precedent, it is clear that exclusivity for the 80 mg strength has not begun to run. Apotex did not obtain a court order regarding the 80 mg strength. The Apotex v. BMS order of dismissal, when considered together with "the key documentation underlying the . . . dismissal" of the declaratory judgment action, Teva v. FDA, 1999 U.S. Dist. LEXIS 14575, at *23, does not have a preclusive effect on a patent infringement suit based on Apotex's 80 mg formulation. The Stipulation and Order therefore cannot trigger 180-day exclusivity for the 80 mg strength.

There Is No Court Decision Pertaining to Pravastatin Sodium 80 mg Tablets.

There is no court decision holding that the '447, '589, and '985 patents at issue are invalid, not infringed or not enforceable with respect to the 80 mg strength. This is so because there was no litigation between Apotex and BMS regarding the 80 mg strength. Neither the complaint nor any other pleading refers to the 80 mg tablet and the Stipulation and Order contains no finding regarding the 80 mg tablet. In fact, the sole reference in the Stipulation and Order to the 80 mg

Mr. Gary J. Buehler
August 23, 2005
Page 6

strength occurs in the third paragraph, which recites only that BMS received notice that Apotex had filed an ANDA seeking approval from FDA to market Pravachol (pravastatin sodium) tablets in 10 mg, 20 mg, 40 mg and 80 mg strengths.[4]

There Is No Court Decision with Preclusive Effect as to the 80 mg Drug.

To qualify as a court decision under the standard in Teva I and Teva II, the court's decision and the "key documentation" must have a preclusive effect on future patent litigation over the drug. The general rule is that a dismissal for lack of subject matter jurisdiction has no preclusive effect because the court lacked authority or competence to hear and decide a case. Teva I at 1008 (citing Prakash v. American Univ., 727 F.2d 1174, 1182 (D.C. Cir. 1984) (citing 5 C. Wright A. Miller, Federal Practice § 1350, at 554 (1969))). Teva I presented an exception to the general rule because the patent holder's disavowal of any intent to sue for infringement did have a preclusive effect. Id. at 1008-9; Teva v. FDA, 1999 U.S. Dist. LEXIS 14575 at *19-20.

By contrast, neither the "key documentation" nor the court's decision in the Apotex v. BMS litigation have a preclusive effect as to the 80 mg strength because they contain no representation with respect to whether BMS would pursue a claim of infringement regarding the 80 mg formulation.[5] None of the letters from BMS even mentioned the 80 mg drug, let alone represents that BMS would not sue for infringement of Apotex's formulation of its 80 mg tablet. See generally A.R., Tab 32, Tab C. Nor does counsel for BMS make any representation in support of its motion to dismiss regarding the 80 mg strength. See A.R., Tab 32, Tab F. Thus, in sharp contrast to Teva I and Teva II, there exists no underlying document that binds BMS not to sue Apotex for infringement based on the formulation of the 80 mg drug.

Similarly, the language of the Stipulation and Order entered by the court in the Apotex v. BMS litigation does not supply a finding that could have a preclusive effect. To the contrary, the Stipulation and Order explicitly states that the dismissal of the Apotex's complaint is "based upon BMS's pre-Complaint representations . . .," A.R., Tab 32, Tab A at 3, and all of BMS's pre-Complaint representations were confined to the 10 mg, 20 mg and 40 mg drugs. There is no statement regarding BMS's intentions with respect to the 80 mg strength.

Even if the Stipulation and Order had included such a representation, it could have had no preclusive effect because that court had no authority to hear a declaratory judgment suit pertaining to the 80 mg strength. While a fair reading of Apotex's September 2004 submission to FDA would suggest that the 80 mg drug was at issue in the declaratory judgment action, as shown above, this suggestion is incorrect. Because the 80 mg drug was not at issue in the

---

4. As noted above, supra n.2, it is unclear what notice this paragraph refers to since the notice required under Section 505(j)(2)(B)(ii) could not have been received prior to August 9, 2004.

5. When a patent holder has failed to give adequate assurances to eliminate the possibility of a patent suit for infringement, there can be no estoppel. Compare Fina Research S.A. v. Baroid Ltd., 141 F.3d 1479, 1481-82, 1484 (Fed. Cir. 1998) (no estoppel for lack of adequate assurances) with Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1056 (Fed. Cir. 1995) (Super Sack stated that it unconditionally agreed not to sue Chase for patent infringement on any of the products currently manufactured and sold by Chase).

Mr. Gary J. Buehler
August 23, 2005
Page 7

declaratory judgment action, that court could not have issued an order pertaining to the 80 mg drug; a drug over which there was no case or controversy whatsoever.

Apotex's failure to litigate over the 80 mg drug was not a mere technical error or oversight. Apotex could not, as a matter of law, have sued for a declaratory judgment of noninfringement over the 80 mg drug at that time. The provisions of the FDCA prohibited any declaratory judgment suit over the 80 mg drug until forty-five days after a notice conforming with Section 505(2)(B) has been received by the NDA holder:

> Until the expiration of forty-five days from the date the notice made under paragraph (2)(B)(i) is received, no action may be brought under section 2201 of title 28, Untied States Code, for a declaratory judgment with respect to the patent.

21 U.S.C. § 355(j)(5)(B) (2002). The notice required under paragraph (2)(B)(i) is the notice to the NDA holder to be made by "an [ANDA] applicant who makes a certification described in subparagraph A(vii)(IV) [a paragraph IV certification]" 21 U.S.C. § 355(j)(2)(B)(i).[6]

When an applicant amends an ANDA to request approval for a different strength, the ANDA applicant must provide notice of the paragraph IV certification at the time it submits its amendment. 21 U.S.C. § 355(j)(2)(B)(iii) (2002). Apotex was required to provide the notice at the time it amended its ANDA to include a paragraph IV certification for the 80 mg strength. But Apotex did not file its paragraph IV certification until Aug. 9, 2004, after the date of the Stipulation and Order. Hence, forty-five days from the date of the notice could not have elapsed when the Stipulation and Order was entered. Apotex, could not, as a matter of law, have brought a declaratory judgment action over the 80 mg drug nor could the district court have entertained such action prior to the expiration of the 45 day period.[7] The declaratory judgment court had no authority to entertain a declaratory judgment action nor to issue any order regarding the 80 mg drug at the time it signed the Stipulation and Order. Had it nevertheless done so, such an order would have been void. CFTC v. Nahas, 738 F.2d 487, 492 n.10 (D.C. Cir. 1984) (quoting Valley v. N. Fire & Marine Ins. Co., 254 U.S. 348, 353-54 (1920) ("Courts are constituted by authority and they can not go beyond the power delegated to them. If they act beyond that authority and

---

6. An applicant that makes a paragraph IV certification must "send notice of such certification by registered or certified mail" to the owner of the patent which is the subject of the certification and the NDA holder. 21 U.S.C. § 355(j)(2)(B); 21 C.F.R. § 314.95(a). The notice must include the patent number and expiration date of each patent alleged to be invalid, unenforceable or not infringed and a description of the basis for the paragraph IV certification. 21 C.F.R. § 314.95(c).

7. Even if Apotex had sent a notice on June 29, 2004 to BMS, when Apotex apparently attempted to amend its ANDA to include the 80 mg strength, supra n.1, and even if the notice were effective notwithstanding the lack of a paragraph IV certification, the 45 day prohibition still would have barred any declaratory judgment action over the 80 mg tablet prior to and including July 23, 2004, the date the Stipulation and Order was entered.

certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal."); Nat'l Ass'n for Mental Health, Inc. v. Wagshal, 717 F.2d 1451, 1460 (D.C. Cir. 1983) (holding that a court may ignore a previously entered order that was void). Accordingly, the Stipulation and Order cannot be read to incorporate a finding the court had no authority to make.

Finally, a court decision finding that a patent is not infringed by a particular strength of a drug does not mean that a different strength also does not infringe. FDA has determined, and the courts have agreed, that each strength of a drug is a separate drug. Apotex v. Shalala, 53 F. Supp. 2d at 461-63. A court decision triggering exclusivity with respect to a particular strength does not trigger exclusivity as to all other strengths. Id. Accordingly, even a court decision that might trigger 180-day exclusivity for the 10 mg, 20 mg and 40 mg drugs could not, as a matter of law, trigger exclusivity for the 80 mg drug.

### Conclusion

Ranbaxy requests that the agency reconsider its conclusion that the 180-day exclusivity for pravastatin sodium tablets 80 mg arising from the '447 patent, the '589 patent and the '985 patent began to run on August 22, 2004, the date the Stipulation and Order dismissing Apotex, Inc. v. Bristol Myers Squibb Co. became final. Ranbaxy also requests that the agency confirm prior to August 25, 2005, that it will reconsider the portion of the FDA exclusivity decision pertaining to the 80 mg strength.

Sincerely,

Kate C. Beardsley
Carmen M. Shepard

cc: Elizabeth H. Dickinson
Andrew E. Clark

William A. Rakoczy
Arthur Y. Tsien
Christine J. Siwik

Jay P. Lefkowitz
Pamela J. Auerbach
Steven A. Engel
John C. O'Quinn