TEVA PHARMACEUTICALS USA, INC.  v. FDA, Case No. 05-1469 (JDB)

# EXHIBIT 2:

Brief of Appellee Teva Pharmaceuticals USA, Inc. in *Teva Pharmaceuticals USA, Inc. v. FDA*, nos. 99-5287, -5342 (D.C. Cir.)

("Teva *Teva III* D.C. Circuit Br.")

ORAL ARGUMENT SCHEDULED SEPTEMBER 8, 2000

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 99-5287 and 99-5342

TEVA PHARMACEUTICALS USA, INC., et al.,
Plaintiffs/Appellees

v.

UNITED STATES FOOD AND DRUG ADMINISTRATION, et al.,
Defendants/Appellants,

and

TORPHARM, A DIVISION OF APOTEX, INC.,
Intervenor/Defendant/Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF OF APPELLEE
TEVA PHARMACEUTICALS USA, INC.

James N. Czaban
Geoffrey M. Levitt
VENABLE, BAETJER, HOWARD & CIVILETTI, LLP
1201 New York Avenue, NW
Suite 1000
Washington, D.C.  20005-3917
202/962-4800

ATTORNEYS FOR APPELLEE TEVA PHARMACEUTICALS USA, INC.

## Rule 28(a)(1) Certificate

### Parties

All parties and intervenors appearing in this case are listed in the brief for the Federal Appellants.

### Rulings Under Review

This is an appeal by the Food and Drug Administration and intervenor TorPharm, a Division of Apotex, Inc., of the August 19, 1999 final order of the United States District Court for the District of Columbia. That order was issued on remand from this Court in accordance with the Court's July 20, 1999 decision and order, reported at 182 F.3d 1003. The district court's order and accompanying opinion are included in the Joint Appendix at pages JA 248 - JA 268.

### Related Cases

The instant case was previously before this court as Teva Pharmaceuticals USA, Inc. v. United States Food and Drug Administration, 182 F.3d 1003 (July 20, 1999).

We hereby certify this 26th day of April, 2000 that the foregoing is a complete and accurate statement regarding the parties, rulings, and related cases.

_____
James N. Czaban
Geoffrey M. Levitt

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Counsel of record for Teva Pharmaceuticals USA, Inc. hereby certify that Teva Pharmaceutical Industries, Ltd. is the parent corporation of Teva. To the best of our knowledge and belief, no other publicly held company owns more than 10% of Teva's stock. We further state that, insofar as relevant to the litigation before this Court, Teva is engaged in the manufacture, marketing, sale and distribution of generic pharmaceutical products.

James N. Czabán
Geoffrey M. Levitt

April 26, 2000

# TABLE OF CONTENTS

<u>Page</u>

RULE 28(a)(1) CERTIFICATE.................................................................ii

RULE 26.1 CORPORATE DISCLOSURE STATEMENT .........................iv

TABLE OF CONTENTS ........................................................................v

TABLE OF AUTHORITIES .................................................................vii

GLOSSARY ..........................................................................................x

CERTIFICATE OF SERVICE AND COMPLIANCE WITH CIRCUIT
RULE 28.........................................................................................xiii

STATEMENT OF SUBJECT MATTER AND APPELLATE
      JURISDICTION ...........................................................................2

ISSUES PRESENTED ON APPEAL .....................................................3

STATUTES AND REGULATIONS .........................................................4

STATEMENT OF THE CASE ...............................................................5

SUMMARY OF ARGUMENT ................................................................6

ARGUMENT ........................................................................................8

I.     THERE IS NO PERMISSIBLE JUSTIFICATION FOR FDA'S
       REFUSAL TO TREAT THE "CASE OR CONTROVERSY"
       DISMISSAL OF TEVA'S DECLARATORY JUDGMENT ACTION
       AS A COURT DECISION TRIGGER ...............................................8

A.  FDA's Claim That Its "Lack of Patent Expertise" Relieves It From Addressing The Merits Of Teva's Position Violates The Agency's Statutory Responsibilities And Its Own Commitment To Address 180-Day Exclusivity Matters On A Case-By-Case Basis ........................... 8

B.  FDA's Belated Attempt To Import A Substantive Rationale For Its Decision Into This Case Is A Post Hoc Rationalization That Is Entitled To No Weight .................................................................. 12

II.  IF FDA HAD PROPERLY CONSIDERED THE MERITS OF TEVA'S REQUEST, THE ONLY REASONABLE RESULT WOULD HAVE BEEN TO TREAT THE CALIFORNIA DISMISSAL AS A TRIGGERING COURT DECISION ................ 15

A.  The Statutory "Court Decision Trigger" Provisions Are Ambiguous, And Do Not Preclude The Interpretation Adopted By This Court In *Teva I* And By The District Court's Final Order........................................................................... 17

B.  FDA's Refusal To Treat The Dismissal Of Teva's Declaratory Judgment Action As A Court Decision Trigger Was Unreasonable Because It Would Produce Absurd Results That Congress Could Not Have Intended ........................... 19

1.  FDA's Position Would Nullify Express Statutory Provisions ........................................ 19

2.  FDA's Interpretation Produces Other Absurd Results... 21

C.  It Is Reasonable And Necessary To Treat The Dismissal of Teva's Declaratory Judgment Action As A Triggering Court Decision ................................................. 23

III.    FDA'S DECISION WAS ALSO ARBITRARY AND CAPRICIOUS
        BECAUSE IT TREATED TEVA'S CASE DIFFERENTLY THAN A
        FUNCTIONALLY EQUIVALENT PREVIOUS COURT DECISION
        ..............................................................................................................32

IV.     TEVA TAKES NO POSITION ON MOOTNESS, BUT URGES THE
        COURT NOT TO VACATE THE DISTRICT COURT DECISION IF
        THE APPEAL IS DISMISSED ........................................................38

CONCLUSION ...............................................................................44

# TABLE OF AUTHORITIES

## Cases

Abbott Laboratories v. Young, 920 F.2d 984 (D.C. Cir. 1990), cert. denied sub nom Abbott Laboratories v. Kessler, 502 U.S. 819 (1991)....................19

Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852 (Fed. Cir. 1999)25, 27

America's Community Bankers v. FDIC, 200 F.3d 822 (D.C. Cir. 2000)...14

*Asiana Airlines v. FAA, 134 F.3d 393 (D.C. Cir. 1998)............................21

BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975 (Fed. Cir. 1993)26, 27

Bracco Diagnostics, Inc. v. Shalala, 963 F. Supp. 20 (D.D.C. 1997)...........32

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) ................................................................................16, 18, 19, 23

Christianson v. Colt Industries Operating Corp., 486 U.S. 800 (1988)..........5

Crocker v. Piedmont Aviation, Inc., 49 F.3d 735 (1995), cert. denied 516 U.S. 865 (1995) ..................................................................................5

*Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479 (Fed. Cir. 1998).........24

Freeman Engineering Associates, Inc. v. FCC, 103 F.3d 169 (D.C. Cir. 1997)............................................................................................32

Glaxo, Inc. v. Boehringer Ingelheim Corp., No. 3:95-CV-01342 (D. Conn. Oct. 7, 1996)........................................................................passim

Glaxo Inc. v. Boehringer, 962 F. Supp. 295 (D. Conn. 1997), aff'd, 119 F.3d 14 (Fed. Cir. 1997). ................................................................................passim

Granutec, Inc. v. Shalala, 139 F.3d 889 (Table), Nos. 97-1873 and 97-1874, 1998 WL 153410 (4ᵗʰ Cir. April 3, 1998) .................................................36, 37

* Authorities upon which Teva chiefly relies.

Humphreys v. DEA, 105 F. 3d 112 (3rd Cir. 1996).................................42, 43

Inwood Laboratories, Inc. v. Young, 723 F. Supp. 1523 (D.D.C. 1989), vacated as moot, 43 F.3d 712 (Table), No. 89-5209, 1989 WL 513201 (D.C. Cir. 1989).................................................................................................41

In Re Abbott Laboratories and Geneva Pharmaceuticals, Inc., File No. 981-0395 .................................................................................................31

In Re Hoechst Marion Roussel, Inc., Administration Docket No. 9293 (F.T.C. complaint filed March 16, 2000) .............................................31

Laffey v. Northwest Airlines, Inc., 740 F.2d 1071, 1090, 1093 (D.C. Cir.1984), cert. denied, 469 U.S. 1181 (1985)......................................5

LaShawn A. v. Barry, 87 F.3d 1389 (D.C. Cir. 1996)....................................4

Merck & Co., Inc. v. Danbury Pharmacal, Inc., 694 F. Supp. 1 (D.Del. 1988), aff'd 873 F.2d 1418 (Fed. Cir. 1989)............................................11, 24

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29 (1983) ................................................................31

*Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998)passim

Northwestern Ind. Tel. Co., Inc. v. FCC, 872 F.2d 465, 471 (D.C. Cir.1989), cert. denied, 493 U.S. 1035 (1990) ....................................................5

Purepac Pharmaceutical Co. v. Friedman, 162 F.3d 1201 (D.C. Cir. 1998) 10

Serono Laboratories, Inc. v. Shalala, 158 F.3d 1313 (D.C. Cir. 1998) ........41

*Spectronics Corp. v. H.B. Fuller Co., Inc., 940 F.2d 631 (Fed. Cir. 1991), cert. denied, 502 U.S. 1013 (1991) .............................................24, 35

State of Cal. By and Through Brown v. Watt, 668 F.2d 1290 (D.C. Cir. 1981)................................................................................................15

* Authorities upon which Teva chiefly relies.

*Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995), cert. denied, 516 U.S. 1093 (1996)...................................25, 35

Teva Pharmaceuticals USA, Inc. v. FDA, No. 99-67 ..................passim
(D.D.C. Jan. 21, 1999) ................................................

*Teva Pharmaceuticals USA, Inc. v. FDA, 182 F. 3d 1003 (D.C. Cir. 1999) .
.........................................................................passim

Teva Pharmaceuticals USA, Inc. v. FDA, No. 99-67, 1999 WL 1042743
(D.D.C. Aug. 19, 1999)..............................................passim

Teva Pharmaceuticals USA, Inc. v. Syntex (U.S.A.) Inc., No. C98-02314
CAL (N.D.Cal Aug. 14, 1998)........................................passim

United States v. Diapulse Corp. of America, 748 F.2d 56 (2d Cir. 1984)....32

U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994)
.........................................................................38, 39

United States v. Munsingwear, Inc., 340 U.S. 36 (1950) .......................39

**Statutes:**

H.R. Rep. No. 857, 98th Cong., 2d Sess., pt. II at 15 (1984) reprinted in 1984
U.S.C.C.A.N. 2686 (excerpt) ..............................................19

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ......................................passim

21 U.S.C. § 355(j)(2)(B) ...............................................passim

21 U.S.C. § 355(j)(2)(B)(ii) ...........................................passim

21 U.S.C. § 355(j)(5)(B)(iii) ..........................................passim

*21 U.S.C. § 355(j)(5)(B)(iv) ..........................................passim

* Authorities upon which Teva chiefly relies.

*21 U.S.C. § 355(j)(5)(B)(iv)(II) ...........................................................passim

**Regulations:**

21 C.F.R. § 314.94(a)(12)(i)(A)(*4*) ...................................................... 11, 24, 25

59 Fed. Reg. 50,338 (Final Rule, October 3, 1994)(excerpts)........... 11, 24, 42

64 Fed. Reg. 42,873 (Aug. 6, 1999)(excerpts)................................................ 40


**Other:**

Black's Law Dictionary (6th ed. 1990) (excerpts)................................... 17, 18

* Authorities upon which Teva chiefly relies.

# GLOSSARY

### ANDA

Abbreviated New Drug Application.

### Commercial Marketing Trigger

A statutory provision pursuant to which a Paragraph IV ANDA applicant's 180-Day Delay Period starts on the date that a previous Paragraph IV ANDA applicant first commercially markets its version of the drug at issue. See 21 U.S.C. § 355(j)(5)(B)(iv)(I).

### Court Decision Trigger

A statutory provision pursuant to which a Paragraph IV ANDA applicant's 180-Day Delay Period starts on the date of a qualifying court decision. FDA's interpretation of this provision is the underlying issue in this appeal. See 21 U.S.C. § 355(j)(5)(B)(iv)(II).

### FDA

The United States Food and Drug Administration.

### FDCA

Federal Food, Drug, and Cosmetic Act.

### Hatch-Waxman Amendments

The Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984). This Act established the current system for review and approval of generic drug applications, including the patent challenge system involved in this case.

x

## Hatch-Waxman Declaratory Judgment Action

A declaratory judgment action brought by a Paragraph IV ANDA applicant against the holder of a Listed Patent, seeking judicial resolution of the claims of patent non-infringement, invalidity, or unenforceability made in the applicant's Paragraph IV Certification. See 21 U.S.C. § 355(j)(5)(B)(iii).

## Listed Patent

A patent covering an FDA-approved drug substance or an approved method of using a drug, which is listed in FDA's publication Approved Drug Products With Therapeutic Equivalence Evaluations, also known as the "Orange Book." See 21 U.S.C. § 355(b)(1).

## Paragraph IV ANDA

An ANDA that seeks FDA approval to market a drug prior to the expiration date of a listed patent covering the drug. See 21 U.S.C. §§ 355(j)(2)(A)(vii)(IV) and 355(j)(2)(B)(ii). Paragraph IV ANDAs, by definition, must contain a Paragraph IV Certification. The filing of a Paragraph IV ANDA is an act of patent infringement that establishes subject matter jurisdiction for federal courts to hear and decide a Paragraph IV Infringement Action or a Hatch-Waxman Declaratory Judgment Action. See 35 U.S.C. § 271(e)(2).

## Paragraph IV Certification

A certification submitted to FDA as part of an ANDA, stating that a listed patent covering the drug is invalid, unenforceable, or will not be infringed by the future commercial marketing of the generic version for which the ANDA was submitted. See 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

## Paragraph IV Infringement Action

xi

A special type of patent infringement lawsuit which may only be brought by a holder of a Listed Patent within 45 days of its receipt of a Paragraph IV ANDA applicant's Paragraph IV Notification. See 21 U.S.C. § 355(j)(5)(B)(iii).

## Paragraph IV Notification

A detailed explanation of the factual and legal bases supporting the claims made in a Paragraph IV Certification. A Paragraph IV Notification must be provided to the holder of the listed patent, and the holder of the approved full New Drug Application for the drug for which the ANDA was submitted. See 21 U.S.C. § 355(j)(2)(B).

## 180-Day Delay Period, or "Generic Exclusivity Period"

The delay period to be imposed upon the effective date of all Paragraph IV ANDAs for which there exists a previously filed Paragraph IV ANDA for the same drug. See 21 U.S.C. § 355(j)(5)(B)(iv). (Because this period may be started (or "triggered"), and may even expire, before the previous applicant has begun marketing, the common term "generic exclusivity period" is a misnomer.)

# CERTIFICATE OF SERVICE AND COMPLIANCE WITH RULE 28

WE HEREBY CERTIFY that on this 26th day of April, 2000, this BRIEF OF APPELLEE TEVA PHARMACEUTICALS USA, INC. was served by hand-delivery on the following persons:

| Counsel for Federal Appellants: | Counsel for Appellee Purepac Pharmaceutical Co.: |
|---|---|
| HOWARD S. SCHER<br>DOUGLAS N. LETTER<br>Department of Justice<br>Appellate Staff, Civil Division<br>601 D Street, N.W., Rm. 9106<br>Washington, D.C. 20530-0001 | ROBERT A. DORMER<br>JAMES R. PHELPS<br>Hyman, Phelps & McNamara, P.C.<br>700 Thirteenth Street, N.W.<br>Washington, D.C. 20005 |
| MARGARET JANE PORTER<br>BARBARA STRADLING<br>ANNE MILLER<br>Office of Chief Counsel<br>United States Food and Drug<br>Administration<br>5600 Fishers Lane<br>Rockville, MD 20857 | Counsel for Appellee Invamed, Inc.:<br><br>JOHN FLEDER<br>Olsson, Frank & Weeda, P.C.<br>1400 16th Street, Suite 400<br>Washington, D.C. 20036 |
| Counsel for Appellant TorPharm, a Division of Apotex, Inc.:<br><br>EUGENE M. PFEIFER<br>JAMES D. MILLER<br>King & Spalding<br>1730 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20006 | |

I FURTHER CERTIFY that the aggregate word count of this Brief and the separate combined brief filed on behalf of Intervenor-Appellees Purepac and Invamed does not exceed 14,000 words, as provided by the February 16, 2000 Scheduling Order.

Geoffrey M. Levitt

# INTRODUCTION

This appeal presents the same issue of statutory construction, under the same set of undisputed facts, that this Court addressed in the previous appeal of this case. See Teva Pharmaceuticals USA, Inc. v. FDA, 182 F.3d 1003 (D.C. Cir. 1999) ("Teva I"). Only the status of the parties (as appellants or appellees) has changed. In Teva I, the Court ruled that FDA's refusal to grant final approval to Teva's ANDA for ticlopidine as of February 10, 1999, was arbitrary and capricious, and remanded to the District Court for reconsideration of its initial denial of mandatory injunctive relief. On remand, FDA relied on the same arguments it presented in Teva I and on which it continues to rely in this appeal. Based on this Court's analysis in Teva I, the district court also rejected FDA's arguments and issued the final judgment and injunction from which FDA and TorPharm now appeal. Teva Pharmaceuticals USA, Inc. v. FDA, No. 99-67, 1999 WL 1042743 (D.D.C. Aug. 19, 1999). Because FDA has not presented any permissible justification for its refusal to grant timely final approval of Teva's ticlopidine ANDA, the district court's final order and injunction should be affirmed.

# STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This action arose under the Administrative Procedure Act, 5 U.S.C. § 551 et seq., and the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 201 et seq. ("FDCA"). Jurisdiction was proper in the district court pursuant to 28 U.S.C. §§ 1331 and 2201, and venue was proper under 28 U.S.C. § 1391(e). The final order of the district court granting Teva declaratory and injunctive relief was entered August 19, 1999. TorPharm and FDA filed notices of appeal on August 19, 1999 and October 12, 1999 respectively. TorPharm asserts that jurisdiction is proper under 28 U.S.C. § 1291, but FDA claims that the appeal is now moot and should be dismissed. Teva takes no position on the mootness issue raised by FDA, but opposes FDA's request that the district court's final order and opinion be vacated if this Court dismisses on mootness grounds.

## ISSUES PRESENTED ON APPEAL

1. Where FDA has issued a policy commitment to the generic drug industry that FDA will make all "180-day exclusivity period" determinations on a "case-by-case basis," may FDA refuse to consider the merits of a particular exclusivity period matter based on the agency's fear that it will lead to additional requests for individualized exclusivity period determinations?

2. May the FDA adopt a statutory interpretation that is "narrower than the statute can support," when that interpretation would effectively nullify other express statutory provisions, and defeat the underlying legislative purposes?

3. May FDA treat two court decisions differently under the statutory "court decision trigger" provisions of the Federal Food, Drug, and Cosmetic Act based on whether the court decision is in the form of a "case or controversy" dismissal of a declaratory judgment action, or the form of a summary judgment order, when in each case the patent holder's concession of non-infringement formed the sole basis for the court's decision resolving the case and the result in each case is to prevent enforcement of the patent?

## STATUTES AND REGULATIONS

The statutes and regulations upon which Teva chiefly relies are included in the addendum attached hereto.

## STANDARD OF REVIEW

This appeal presents a question of law under the FDCA which is generally reviewed de novo by the Court of Appeals. Mova Pharmaceuticals Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998). However, because the Appellants are now, for all practical purposes, relitigating issues of law previously decided by this Court under the same set of facts in Teva I, the Court should treat its prior decision as law of the case, or at least decline TorPharm's invitation to revisit those issues, even though that decision was issued on Teva's appeal of a denial of a preliminary injunction.

"Law-of-the-case" doctrine rests on a simple premise: "the same issue presented a second time in the same case in the same court should lead to the same result." LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996). Thus, the Supreme Court has instructed courts to be "loathe" to reconsider issues already decided "in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Industries Operating

4

Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California 460 U.S. 605, 618 n. 8 (1983)).  Moreover, this Circuit has emphasized that "[w]hen there are multiple appeals taken in the course of a single piece of litigation, law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court." Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 739 (D.C. Cir. 1995), cert denied, 516 U.S. 865 (1995).  As shown herein, Appellants have presented for a "second time" the "same issue" in the "same case" in the "same court," and this Court should reach the same result as in its prior consideration of this case.[1]

## STATEMENT OF THE CASE

The factual and procedural background of Teva's efforts to expedite generic competition in ticlopidine by breaking the logjam created by TorPharm's protracted difficulties in obtaining final approval of its first-filed ANDA is described in detail in this Court's prior opinion in this case, Teva

---

[1]    See also Northwestern Ind. Tel. Co., Inc. v. FCC, 872 F.2d 465, 471 (D.C. Cir. 1989), cert. denied, 493 U.S. 1035 (1990) (appellate court's prior ruling establishing exhaustion requirement is law of the case and cannot be challenged on second appeal); Laffey v. Northwest Airlines, Inc., 740 F.2d 1071, 1090, 1093 (D.C. Cir. 1984), cert. denied, 469 U.S. 1181 (1985) (challenge to district court's correct application of prior appellate decision is barred by law-of-the-case doctrine).

I, 182 F.3d at 1005-1009, and in the district court's final memorandum opinion. JA 252-255.

After the district court issued its final order and injunction, TorPharm filed motions seeking (1) a stay by the district court pending TorPharm's appeal, (2) a stay by this Court pending appeal, and (3) expedited scheduling of its appeal. All of TorPharm's motions were denied.

On November 30, 1999, FDA filed a motion to dismiss its appeal, and that of TorPharm, as moot, because the expiration date of TorPharm's 180-day "exclusivity" period was, at the latest, December 27, 1999 (180 days after TorPharm's first commercial marketing). That motion was referred to the merits panel, and the parties were ordered to brief their positions on mootness in the merits briefs.

## SUMMARY OF ARGUMENT

FDA has failed throughout this case to present any permissible rationale for its refusal to treat the case or controversy dismissal of Teva's Hatch-Waxman Declaratory Judgment Action as a Court Decision Trigger starting the 180-Day Delay Period applicable to final approval of Teva's ANDA for ticlopidine. FDA's reliance on its alleged lack of patent expertise as an excuse for refusing to address the merits of Teva's situation is nothing

more than a disingenuous attempt to evade its responsibility under the FDCA, and its own Guidance to Industry, to interpret and apply the FDCA's 180-Day Delay Period provisions, including the Court Decision Trigger provisions, on a "case-by-case" adjudicatory basis.

Treating the dismissal of Teva's declaratory judgment action as a triggering court decision for Teva's 180-Day Delay Period under the Court Decision Trigger is in fact the only permissible interpretation of this ambiguous statutory provision. This interpretation is the only one that advances the fundamental pro-competitive purposes of the Hatch-Waxman Amendments and avoids the absurd, anti-competitive result of allowing the holder of a weak or narrow patent to block the market to generic competition by refusing to defend its patent in response to a Hatch-Waxman Declaratory Judgment Action.

Moreover, FDA impermissibly gave different effect, under the court decision trigger provisions, to the court decision in Teva's declaratory judgment action than it did to a previous functionally indistinguishable court decision in a patent infringement case. FDA's disparate treatment of these decisions was arbitrary and capricious because FDA has provided no reasonable basis for its differing application of the law to those two decisions.

7

Finally, if the Court grants FDA's motion to dismiss these appeals as moot, the district court's August 19, 1999 final opinion and order should not be vacated, because to do so would encourage FDA to continue to misapply the Court Decision Trigger provisions and cause continued uncertainty within the generic drug industry.

## ARGUMENT

I.    THERE IS NO PERMISSIBLE JUSTIFICATION FOR FDA'S REFUSAL TO TREAT THE "CASE OR CONTROVERSY" DISMISSAL OF TEVA'S DECLARATORY JUDGMENT ACTION AS A COURT DECISION TRIGGER

A.    FDA's Claim That Its "Lack of Patent Expertise" Relieves It From Addressing The Merits Of Teva's Position Violates The Agency's Statutory Responsibilities And Its Own Commitment To Address 180-Day Exclusivity Matters On A Case-By-Case Basis

As its primary justification for refusing to treat the "case or controversy" dismissal of Teva's declaratory judgment action as a court decision trigger, FDA's brief reiterates the now-familiar mantra that the agency "does not have the expertise to review patent information." Brief for the Federal Appellant ("FDA Brief") at 17. Therefore, according to FDA, the agency cannot be expected to look beyond the face of the order in the California case – which did not explicitly state that the patent was invalid, not infringed, or unenforceable –

to determine whether the order in fact constituted a determination of invalidity, non-infringement, or unenforceability. Id. at 17-19.

Although FDA continues to try to avoid the merits of Teva's position by hiding behind its own alleged lack of patent expertise, FDA's explanation is no more persuasive now than it was when this Court rejected it in Teva I:

> [I]t is clear that the FDA, consistent with its statement that it would "regulate directly from the statute" on a "case-by-case basis," cannot avoid the merits of Teva's contention that the California dismissal satisfies the 'court decision' requirement under § 355(j)(5)(B)(iv)(II).

Teva I, 182 F.3d at 1007.

FDA's position on remand is supported solely by the Declaration of Douglas Sporn, Director, Office of Generic Drugs ("OGD") ("Sporn Decl.") (Aug. 2, 1999), JA 106. That declaration clearly reveals that this position was driven not by the law or the facts, but by FDA's desire to prevent future ANDA applicants from requesting the agency to make similar "case-by-case" decisions involving their 180-Day Delay Periods, as the agency had promised to review 180-Day Delay periods on a case-by-case basis in its own June 1998 Guidance for Industry. See Guidance for Industry: 180-Day Generic Drug Exclusivity Under the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act, Center for Drug Evaluation and Research, Procedural Guidance 5 (June 1998), JA 277. As Mr. Sporn explained, addressing the

9

merits of Teva's contention "would require OGD to follow a similar course in future cases. If OGD were to accept that a dismissal of a declaratory judgment action satisfies the court decision trigger, I believe that ANDA applicants would seek to have OGD make similar determinations concerning dismissals of non-declaratory judgment cases." Sporn Decl. ¶ 13, JA 111. Thus, not only has FDA admitted that it refused to consider "the merits of Teva's contention that the California dismissal satisfies the 'court decision' requirement under § 355(j)(5)(B)(iv)(II)," it has affirmatively stated that it did so in order to avoid its obligation under its Guidance and the statute to consider the merits of all future matters on a "case-by-case basis."[2]

FDA's argument here has two basic flaws. First, the agency's reliance on its alleged lack of "patent" expertise ignores the plain fact that what it is being asked to do here is to interpret and apply a provision of the FDCA — specifically, the Court Decision Trigger, section 505(j)(5)(B)(iv)(II) of the Act — and not the patent laws. FDA should not be allowed to evade its basic responsibility to administer its own organic statute by arbitrarily asserting that an issue arising under that statute is a matter of "patent" law and therefore

---

[2]     This explanation is particularly surprising given that FDA itself had relied heavily on the Guidance's promise of a case-by-case adjudicatory approach in defense of a prior decision involving the 180-Day Delay Period, Purepac Pharmaceutical Co. v. Friedman. 162 F.3d 1201 (D.C. Cir. 1998). Indeed, FDA convinced the panel in Purepac to endorse the promised "case-by-case" approach as a permissible stopgap while the agency

outside its mandate. To be sure, some awareness of patent issues on FDA's part is required in order to apply the statutory provision in question, but certainly no more awareness than is assumed as a basic part of the structure of the Hatch-Waxman Amendments in general. Thus, for instance, FDA did not consider it beyond its own expertise to interpret a Federal Circuit patent case, Merck v. Danbury, as requiring it to add a new kind of patent challenge – unenforceability – to the statutorily provided grounds of non-infringement and invalidity as a type of patent certification contemplated under the statute. Merck & Co., Inc. v. Danbury Pharmacal, Inc., 694 F. Supp. 1 (D. Del. 1988), aff'd 873 F.2d 1418 (Fed. Cir. 1989); 21 C.F.R. § 314.94(a)(12)(i)(A)(4); 59 Fed. Reg. 50,338, 50,339 (Final Rule, October 3, 1994). Yet here the agency claims to have suddenly and mysteriously lost its ability to apply a provision of an Act it is charged by Congress to administer because that provision touches upon patent matters. This disingenuous claim violates the Congressional delegation of authority to FDA to interpret, apply, and fairly administer the FDCA.

The second basic flaw in FDA's position, as stated in the Sporn Declaration, is that it is ultimately premised upon nothing more than the agency's unwillingness to come to grips with the application of a statutory

promulgated new regulations. FDA now essentially admits that it did not, and does not,

provision that is squarely within its jurisdiction. Stripped to its essentials, the Sporn Declaration – and FDA's corresponding argument before this Court – says that the agency should not have to address the merits of Teva's position because to do so might require it to address the merits of the cases of other, future applicants in analogous positions. Not only does this assertion fly in the face of FDA's own stated commitment to address such situations on a case-by-case basis, it abrogates the agency's basic responsibility to interpret and apply the provisions of its own Act. As such, it cannot stand.

**B.    FDA's Belated Attempt To Import A Substantive Rationale For Its Decision Into This Case Is A Post Hoc Rationalization That Is Entitled To No Weight**

In Teva I, this Court clearly rejected FDA's reliance on the "face of the document" approach as a substantive interpretation of the statute:

> if the FDA's interpretation. . . is "narrower than the statute [is] able to support," then its interpretation cannot stand without justification because the FDA must interpret the statute to avoid absurd results and further congressional intent. A narrow interpretation cannot be reasonable simply because it is narrower than it *could* be; to the contrary that interpretation may in fact be narrower than it *should* be given the purposes of the statutory scheme and congressional intent. It is the narrowness of the interpretation that must be justified, and the court can only review that choice of narrowness based on the reasons provided by FDA; here it has provided none.

take its own Guidance seriously.

12

Teva I, 182 F.3d at 1011 (italics in original; citations omitted).

Having concluded that the dismissal of Teva's Declaratory Judgment action can qualify as a triggering court decision, the Court invited FDA, on remand, to provide substantive reasons for the agency's refusal to consider and adopt the same conclusion.  Instead, however, FDA provided the same "face of the order" argument that was rejected by this Court in Teva I.  See Brief for the Federal Appellees, Teva Pharmaceuticals USA, Inc. v. FDA, 182 F.3d 1003 (D.C. Cir. 1999) ("FDA Teva I Appeal Brief"), at 18, 19 (the order "did not on its face state or hold that the Syntex patent was not infringed or that it was invalid or unenforceable."); FDA's Memorandum In Opposition to Teva's Renewed Application for a Temporary Restraining Order and Motion for Preliminary Injunction, Teva Pharmaceuticals USA, Inc. v. FDA, No. 99-67, 1999 WL 1042743 (D.D.C. Aug. 19, 1999) ("FDA Opp. To Renewed PI Motion"), JA 93-95 (declining to make any substantive inquiry beyond what is "readily apparent from the face of the court order"); FDA's Memorandum In Opposition to Teva's Application for a Temporary Restraining Order and Motion for Preliminary Injunction, Teva Pharmaceuticals USA, Inc. v. FDA, No. 99-67 (D.D.C. Jan. 21, 1999) ("FDA Opp. to PI Motion"), at 3, 12 (explaining that its decision was based on the conclusion that "the dismissal of Teva's [declaratory judgment] case

13

is not, on its face, a decision of a court holding the patent to be invalid, not infringed, or unenforceable.") (all emphases added).

FDA also states in passing that it "agrees with the merits arguments set forth in TorPharm's opening brief," FDA Brief at 17. However, an agency cannot justify its prior administrative decision based on arguments advanced for the first time in a litigation over that decision, see America's Community Bankers v. FDIC, 200 F.3d 822, 835 (D.C. Cir. 2000), let alone arguments not even advanced by the agency itself, but by a private party in the litigation. As will be shown below, the TorPharm arguments on which FDA now seeks to rely are wrong on the merits. Even if those arguments had some validity in the abstract, however, it is clearly impermissible for FDA to rely upon them here, and they should be given no weight in this proceeding.

In light of the fact that this Court has already concluded that the California dismissal has preclusive effect because it "sufficed to estop Syntex from suing Teva for patent infringement," 182 F.3d at 1009, FDA's reiteration of its prior positions in this appeal amounts to little more than a request that the Court grant a "convenience exception" to the agency's own commitment to adjudicate 180-day exclusivity matters on a "case-by-case basis." The Court should reject that request because by FDA's own admission, see Sporn Decl. at

14

¶¶ 11-14, JA 110-111, FDA did not even made an effort to apply its "case-by-case" approach before it rejected Teva's request out of hand. As this Court has held in analogous circumstances, an agency must at least "make a good faith effort" before concluding that it is "impossible, or impractical, or simply not useful" to perform certain administrative functions. State of Cal. By and Through Brown v. Watt, 668 F.2d 1290, 1312 (D.C. Cir. 1981). As the Court went on to explain:

> This is not a circumstance of an agency seeking relief from a change which, after a good faith effort, it has found it cannot perform. It is, rather, an agency seeking vindication of an approach contrary to the explicit statutory design on the basis of its estimate of its lack of capacity to handle the task delegated to it. . . . The agency's burden of justification in such a case is extremely heavy. We are not convinced that the Secretary has even approached that burden here.

Id. (citing Alabama Power v. Costle, 636 F.2d 323, 359 (D.C. Cir. 1979)).

Thus, the Court should affirm the district court's straightforward application of this Court's opinion in Teva I.

## II.    IF FDA HAD PROPERLY CONSIDERED THE MERITS OF TEVA'S REQUEST, THE ONLY REASONABLE RESULT WOULD HAVE BEEN TO TREAT THE CALIFORNIA DISMISSAL AS A TRIGGERING COURT DECISION

As shown in section I supra, the district court's final judgment and injunction should be affirmed because, on remand from this Court's decision in Teva I, FDA failed to cure its arbitrary and capricious refusal to even consider the merits of Teva's request to treat the California dismissal as a "court decision trigger" under 21 U.S.C. § 355(j)(5)(B)(iv)(II).  As demonstrated in detail in Teva's brief in support of its appeal in Teva I, if FDA had fully considered the merits of Teva's position under the facts of this case, it would have been unreasonable, and thus impermissible under Chevron, to refuse to treat the California dismissal as a court decision trigger.  See Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984.)  FDA and TorPharm have focused their briefs on a few very narrow issues and as a result the deeper and more significant context of this case has been obscured.  To provide the necessary context under which this case arose and was first considered by this Court in Teva I, this section briefly summarizes key substantive issues as presented in Teva's original appeal in this case.

A.    **The Statutory "Court Decision Trigger" Provisions Are Ambiguous, And Do Not Preclude The Interpretation Adopted By This Court In _Teva I_ And By The District Court's Final Order**

TorPharm argues in this appeal that the relevant statutory provisions unambiguously preclude an interpretation that the California dismissal may be treated as a triggering court decision. Unfortunately for TorPharm, this Court, both in _Teva I_ and in _Mova_, has concluded otherwise, and indeed even FDA agrees that 21 U.S.C. § 355(j)(5)(B)(iv) is ambiguous. The statutory provision at issue here – the Court Decision Trigger – operates to begin the 180-Day Delay Period on "the date of a decision of a court in an action described in clause (iii) [21 U.S.C. § 355(j)(5)(B)(iii)] holding the patent which is the subject of the certification to be invalid or not infringed. . . ." 21 U.S.C. § 355(j)(5)(B)(iv)(II). As this court stated in _Teva I_:

> FDA concedes that its refusal to recognize the California dismissal as a triggering "court decision" is not compelled by the statutory language. The statute requires a "decision of a court holding the patent . . . invalid or not infringed." A "decision" can take several forms, including final judgment after a full trial, summary judgment or partial summary judgment, or even a dismissal for failure to state a cause of action.[3] The term "holding," most often contrasted with the

---

3    Black's Law Dictionary refers to the term "decision" as a "popular rather than technical or legal word; a comprehensive term having no fixed, legal meaning," and notes that "though sometimes limited to the sense of judgment, the term . . . may also include various rulings, as well as orders . . . ." Black's Law Dictionary 407 (6th ed. 1990). Black's also defines "decision" as a "determination arrived at after consideration of facts,

> term "dicta," is also susceptible to interpretation.[*] Furthermore, the significance of a court's "decision" or "holding" often lies in its preclusive effect.

Teva I, 182 F.3d at 1007-1008 (emphasis and footnotes added, ellipses in original, citations omitted). See also Mova, 140 F.3d at 1073 n. 18 (noting that FDA could "provide by regulation that a court decision ruling that an ANDA applicant cannot reasonably anticipate suit by a patent-holder is equivalent, for purposes of section 355(j)(5)(B)(iv), to a ruling that the patent is invalid or not infringed.").

Accordingly, because the Court Decision Trigger provision of the statute does not unambiguously preclude treating the California dismissal as a triggering court decision, FDA was required to implement that provision based on a reasonable statutory interpretation. Chevron, 467 U.S. at 842-43. As discussed next, because FDA has never put forth any permissible statutory interpretation to support the outcome it reached in this matter, that outcome does not survive under Chevron.

---

and, in legal context, law." Id. This definition directly applies to the court's Order dismissing Teva's declaratory judgment action, which was based on consideration of the fact that Syntex had conclusively stated that Teva's ticlopidine does not infringe the patent and that it would not sue Teva for infringement.

4    "Holding" is a similarly imprecise term that Black's defines as the "legal principle to be drawn from the opinion (decision) of the court." Black's Law Dictionary at 731.

**B.**   **FDA's Refusal To Treat The Dismissal Of Teva's Declaratory Judgment Action As A Court Decision Trigger Was Unreasonable Because It Would Produce Absurd Results That Congress Could Not Have Intended**

Because Congress did not unambiguously speak to the issue presented here, FDA's decision can only survive review if it is based upon a reasonable application of the statute, Chevron, 467 U.S. at 845, and does not produce absurd results. "The 'reasonableness' of an agency's construction depends on the construction's 'fit' with the statutory language as well as its conformity to statutory purposes." Abbott Laboratories v. Young, 920 F.2d 984, 988 (D.C. Cir. 1990), cert. denied sub nom Abbott Laboratories v. Kessler, 502 U.S. 819 (1991). As discussed further below, FDA's interpretation is unreasonable and cannot stand because it would produce absurd results demonstrably at odds with the underlying statutory purposes, most notably by allowing patent holders to manipulate the Paragraph IV system for anti-competitive purposes. Teva I, 182 F.3d at 1009.

**1.**   **FDA's Position Would Nullify Express Statutory Provisions**

There is no dispute that an integral part of the Act's "flexible schedule of ANDA approval effectiveness dates" for Paragraph IV ANDAs, H.R. Rep. No. 857, 98th Cong., 2d Sess., pt. II at 15 (1984) reprinted in 1984 U.S.C.C.A.N. 2686, 2699, is the provision that a subsequent ANDA

applicant may "bring its own declaratory judgment action against the patent holder, and, if the [subsequent] applicant prevails, the Court Decision Trigger will be satisfied and it will be allowed to market its product". Mova, 140 F.3d at 1073. This statutory mechanism plays a critical role in safeguarding against the otherwise intransigent types of anti-competitive outcomes discussed in both Mova, 140 F.3d at 1067, 1072-74, and Granutec Inc. v. Shalala, 139 F.3d 889 (Table), Nos. 97-1873 and 97-1874, 1998 WL 153140 at *9 (4th Cir. Apr. 3, 1998) (Addendum item # 8). The only difference between the parties on this issue is that FDA and TorPharm would limit applicability of the declaratory judgment action mechanism to fully litigated final decisions on the "merits," whereas Teva's position would recognize "case or controversy" dismissals, at least under the circumstances presented here, as court decision triggers.

A refusal to recognize case or controversy dismissals as triggering events, however, produces the absurd result of effectively nullifying the broader statutory mechanism, because under such an interpretation a patent holder could simply state in a pleading to the court that it does not intend to enforce its patent against the subsequent applicant, resulting in a case or controversy dismissal that would preclude the court from issuing the type of "holding" of non-infringement that FDA and TorPharm would require.

This Court has recognized this absurdity in FDA's position. See Teva I 182 F.3d at 1009 (FDA's view "means that the patent holder could manipulate the system in order to block or delay generic competition by stating that the patent holder will not enforce its patent against the Paragraph IV challenger"). Accordingly, the FDA's position cannot be upheld. See Asiana Airlines v. FAA, 134 F.3d 393, 398 (D.C. Cir. 1998) ("A cardinal principle of interpretation requires [the courts] to construe a statute so that no provision is rendered inoperative, or superfluous, void or insignificant." (citation and internal quotation marks omitted))[5]

### 2.    FDA's Interpretation Produces Other Absurd Results

As the Mova Court observed, the Hatch-Waxman Declaratory Judgment Action "provides a particularly appropriate solution in cases in which the second applicant has done a better job of designing around the pioneer drug manufacturer's patent than the first did." 140 F.3d at 1073. Although ostensibly supporting that solution, FDA's interpretation would actually allow patent holders to nullify it, for the reasons noted above. Similarly, there are a number of other concrete scenarios in which the

---

[5]    In this regard, FDA's suggestion that its position is consistent with the statutory goal of "rely[ing] on private patent litigation to resolve disputes concerning patent

declaratory judgment action mechanism may be the only way to break the anti-competitive effects of a first applicant's refusal or failure to trigger the 180-day period:

- The first Paragraph IV ANDA applicant loses a Paragraph IV Infringement Action, and is thus prohibited from beginning commercial marketing before the patent expires, and no other applicant is sued for infringement, leaving a declaratory judgment action as the only way to trigger the 180-Day Delay Period. 21 U.S.C. § 355(j)(5)(B)(iii)(II).

- The first Paragraph IV ANDA applicant settles with the patent holder by agreeing never to market its version of the drug. See Mova, 140 F.3d at 1072 n.14.

- The first applicant's ANDA encounters prolonged difficulties in obtaining final FDA approval (such as occurred here with TorPharm) while subsequent applicants obtain faster tentative approval.

The absurdity of FDA's position is further reflected by the fact that the opportunity to prevent ANDA applicants from using the declaratory judgment action mechanism will nearly always be used by holders of invalid, unenforceable, or non-infringed patents – the very types of patents the entire Paragraph IV ANDA scheme is designed to defeat – because holders of more defensible patents will simply file a Paragraph IV Infringement Action and get the benefit of the statutory 30-month stay of approval of the ANDA. 21 U.S.C. § 355(j)(5)(B)(iii).

---

validity and applicability," FDA Brief at 18 n. 6, is perverse given that its position would

### C.   It Is Reasonable And Necessary To Treat The Dismissal of Teva's Declaratory Judgment Action As A Triggering Court Decision

The fact that FDA's position is unreasonable, as discussed above, is sufficient in and of itself to affirm the lower court's final judgment and injunction.  See, e.g., Chevron, 467 U.S. at 844.  In addition, however, it is reasonable and necessary to treat case or controversy dismissals as court decision triggers, at least under the circumstances in this case, where the patent holder affirmatively seeks such a dismissal based on its own concession of non-infringement, invalidity, or unenforceability of the patent. As this Court stated in Teva I:

> ". . . the California dismissal appears to meet the requirements of a triggering 'court decision' because that court had to make a predicate finding with respect to whether Syntex would ever sue Teva for infringement in order to conclude that there was no case or controversy. . . the dismissal sufficed to estop Syntex from suing Teva for patent infringement.  This is the result that appears to be the purpose of the triggering 'court decision' provision.  A contrary view. . . means that the patent holder could manipulate the system in order to block or delay generic competition by stating that the patent holder will not enforce its patent against the Paragraph IV challenger.  For these reasons, the California dismissal would appear to meet the requirements of a 'court decision' under § 355(j)(5)(B)(iv)(II)."

Teva I, 182 F.3d at 1009 (emphasis added, citations omitted).

in fact defeat those very goals.

The preclusive effect of the California dismissal mandates triggering Teva's 180-Day Delay Period under 21 U.S.C. § 355(j)(5)(B)(iv) because it is the equivalent of a holding of non-infringement "on the merits," under black letter patent law. Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1483-1484 (Fed. Cir. 1998) ("'Having requested a declaration of non-infringement of the . . . patent claims [and having had the case dismissed on case or controversy grounds, the declaratory judgment plaintiff] for all practical purposes has won the case pleaded in its complaint.'") (quoting Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 636 (Fed. Cir. 1991)). Because the California dismissal was the functional equivalent of Teva having "won its case" on the merits, the only reasonable application of that decision would be to treat it as a triggering court decision of non-infringement under 21 U.S.C. § 355(j)(5)(B)(iv)(II). Otherwise, the purpose of the statute – to resolve patent disputes through private litigation, see FDA Brief at 18, n. 6 – would be defeated.

In addition, both the Federal Circuit and FDA have concluded that the Court Decision Trigger necessarily incorporates a finding of unenforceability to the same extent as a finding of invalidity or non-infringement. See Merck, 694 F. Supp. 1; 21 C.F.R. § 314.94(a)(12)(i)(A)(4); 59 Fed. Reg. 50,338, 50,339 (Final Rule, October

3, 1994). The California dismissal clearly renders the patent unenforceable against Teva under the doctrine of estoppel and controlling federal caselaw. Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995), cert. denied 516 U.S. 1093 (1996) (a party, such as Syntex here, is "forever estopped by its counsel's statement of nonliability... from asserting liability ..."). See also Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 856 (Fed. Cir. 1999). Accordingly, as this Court held in Teva I, the California dismissal constitutes a "holding" of unenforceability of the patent for purposes of triggering the 180-Day Delay Period under the FDCA. See 21 U.S.C. § 355(j)(5)(B)(iv); 21 C.F.R. § 314.94(a)(12)(i)(A)(4).

\*     \*     \*

TorPharm's principal argument in this appeal ultimately turns on the contention that in situations such as Teva's declaratory judgment action, "it is the patent holder's representation that it will never sue to enforce the patent (if such a representation is made), not a court decision dismissing the case for want of subject matter jurisdiction (which may or may not rely on such a representation) that has preclusive effect." Brief of Appellant TorPharm, A Division of Apotex, Inc. ("TorPharm Brief"), at 12-20.

25

TorPharm's argument is contrary to this Court's prior holding (and TorPharm's own prior concession) that the California dismissal has preclusive effect, see Teva I, 182 F.3d at 1008, and is based on an erroneous interpretation of the relevant law and facts.

First, TorPharm's generalized discussion of the potential preclusive effect of case or controversy dismissals without a concession of non-infringement, e.g., where a patent holder does not disavow an intention to enforce the patent, or otherwise has taken no action to give the potential infringer a "reasonable apprehension" of being sued, TorPharm Brief at 16-18, is irrelevant to this Court's review of FDA's case-by-case analysis (or lack thereof) of Teva's declaratory judgment action in which there was an express concession of non-infringement and non-enforcement.

Moreover, TorPharm is simply wrong in asserting that bare statements relating to non-infringement or unenforceability of a patent are themselves preclusive in the absence of some form of judicial intervention. Indeed, although TorPharm cites BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 978, 980 (Fed. Cir. 1993) for the proposition that "a patent holder's explicit covenant that it will never enforce its patent is always sufficient . . . to defeat jurisdiction," TorPharm Brief at 17 (emphasis added), that case does not stand for that proposition. Rather, BP Chemicals reflects the fact

that, as with any evidentiary statement or document, statements which appear to concede non-infringement or promise non-enforcement of a patent may or may not ultimately support one or more legal conclusions including, e.g.: whether a potential infringer does or does not have a reasonable apprehension of being sued; whether there is or is not a case or controversy; and/or whether the patent holder is or is not estopped from enforcing its patent. BP Chemicals, 4 F.3d at 979 ("The district court discussed the actions and statements of those concerned, determined credibility when testimony diverged, and applied an objective standard. We do not discern reversible error in the court's procedures or the conclusion that Union Carbide did not . . .place [the declaratory judgment action plaintiffs] in reasonable apprehension of suit.").

Thus, contrary to TorPharm's argument that statements of non-infringement or non-enforcement have independent force and effect, the issue of "[w]hether an actual controversy exists upon particular facts is a question of law, and is subject to plenary appellate review." Amana, 172 F.3d at 855 (quoting BP Chemicals, 4 F.3d at 978) (emphasis added)). In other words, although Super Sack discusses the potential preclusive effects of concessions of non-infringement, that preclusive effect is never "perfected" until the courts have had the opportunity to rule on the case.

Assuming that the court ultimately concludes that the statement at issue operates to remove any case or controversy, thus resulting in estoppel, the form of the court's decision will depend upon whether the case is a patent infringement action or a declaratory judgment action.

In an infringement action, a concession of non-infringement, if accepted by the court, would clearly lead to a decision by the court resolving the case, usually in the form of an order of summary judgment. In the declaratory judgment context, the same concession would also lead to a decision by the court resolving the case, but in the form of an order dismissing on case or controversy grounds. In either situation, it is only after the court has evaluated the evidence (i.e. the concession) and has ruled in favor of the potential infringer (by dismissal or summary judgment), that preclusion actually exists as a matter of law. Thus, TorPharm is not only wrong, but its position would subvert the intent of Hatch-Waxman to resolve patent disputes in order to foster generic competition, and would create a gaping de facto exception to the Federal Circuit's holdings in Spectronics, Super Sack and their progeny that give symmetrical effect to concessions of non-infringement regardless of whether they occur in declaratory judgment actions or in patent infringement actions.

Finally, TorPharm's argument that concessions of non-infringement or non-enforcement have preclusive effect without judicial involvement fails for the simple reason that under its theory, the concession of non-infringement by the patent holder in Glaxo Inc. v. Boehringer Ingelheim Corp., No. 3:95-CV-01342 (D. Conn. Oct. 7, 1996), JA 346, would also be the only preclusive element of that case, and FDA would have been wrong to determine that the court's partial summary judgment order (which was based exclusively on that concession) was a court decision under 21 U.S.C. § 355(j)(5)(B)(iv). However, TorPharm has not suggested that the Glaxo v. Boehringer court decision was not a triggering court decision. In the face of this inconsistency, TorPharm's argument falls flat.

*    *    *

TorPharm also argues that FDA's application of the court decision trigger provisions was reasonable, and therefore entitled to deference. TorPharm Brief at 20-23. In support of this argument, TorPharm posits two rationalizations – neither of which FDA itself has ever put forward – which in any event are wholly inapplicable to the specific facts by which FDA's actions must be judged in this case.

First, TorPharm suggests that FDA's action here should be upheld because otherwise ANDA applicants might "game" the system by filing declaratory judgment actions "with full knowledge that there is no live controversy for the sole purpose of obtaining a decision recognizing that fact." TorPharm Brief at 21. In this case, however, Teva clearly did not file a frivolous declaratory judgment action, as evidenced by the California court's specific deletion of the word "lacked" in the draft order submitted by Syntex, reflecting the fact that at the time the suit was filed (which was prior to Syntex's concession letter), Teva did have a reasonable apprehension of being sued under the patent. JA 345.

Second, TorPharm suggests that FDA's initial decision is supportable because it would avoid "strategic anticompetitive behavior by the patent holder." TorPharm Brief at 21. This suggestion falls short. In reality, failing to treat decisions such as the California dismissal as triggering court decisions would offer first applicants in TorPharm's position much greater incentive and opportunity to "game" the system in collusion with the patent holder for anticompetitive purposes than would be possible under this Court's reasoning in Teva I. See supra Part I.B.2. For example, an applicant such as TorPharm could simply agree with the patent holder not to bring its generic drug to market, thus preventing the Commercial Marketing Trigger

from being activated; the patent holder could then refrain from suing any subsequent ANDA applicants, and, in response to a Hatch-Waxman Declaratory Judgment Action, simply disclaim any intention to sue the declaratory judgment plaintiff (as Syntex did here).  Thus, under TorPharm's interpretation the Court Decision Trigger would not be activated, completely blocking generic versions of the drug in question from entering the market.[6] In comparison, the harms TorPharm imagines from upholding this Court's reasoning in Teva I and the district court's decision below are remote and speculative.  In any event, TorPharm's hypothetical situation was never put forward by FDA, and accordingly cannot be relied upon by the courts in support of the agency's action.  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 50 (1983).

---

[6]   This scenario is far from hypothetical.  Indeed, the Federal Trade Commission recently challenged, on antitrust grounds, two commercial deals of precisely this kind between innovator and generic drug companies See In Re Abbott Laboratories and Geneva Pharmaceuticals, Inc., File No. 981-0395; In Re Hoechst Marion Roussel, Inc., Docket No. 9293 (F.T.C. complaint filed March 16, 2000).  Copies of these pleadings are available at http://www.ftc.gov.

## III. FDA'S DECISION WAS ALSO ARBITRARY AND CAPRICIOUS BECAUSE IT TREATED TEVA'S CASE DIFFERENTLY THAN A FUNCTIONALLY EQUIVALENT PREVIOUS COURT DECISION

FDA's refusal to start Teva's 180-Day Delay Period on the basis of the California dismissal was also arbitrary and capricious because it was contrary to the agency's prior decision to activate the Court Decision Trigger in response to the claim-dispositive "court decision" in Glaxo v. Boehringer even though, just as in Teva v. Syntex, that court decision was directly based upon the patent holder's express concession of non-infringement. See Teva I, 182 F.3d at 1010. It is well established that "an agency may not 'treat like cases differently.'" Freeman Engineering Associates v. FCC, 103 F.3d 169, 178 (D.C. Cir. 1997) (quoting Airmark Corp. v. FAA, 758 F.2d 685, 691 (D.C. Cir. 1985)). See also United States v. Diapulse Corp. of America, 748 F.2d 56, 62 (2d Cir. 1984) (FDA may "not 'grant to one person the right to do that which it denies to another similarly situated.'") (quoting Marco Sales Co. v. FTC, 453 F.2d 1, 7 (2d Cir. 1971)); Bracco Diagnostics, Inc. v. Shalala, 963 F. Supp. 20, 27 (D.D.C. 1997) ("Our court of appeals has repeatedly held that 'an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.'") (quoting Independent Petroleum Association of America v. Babbitt, 92 F.3d 1248 (D.C. Cir. 1996)).

FDA has virtually abandoned its effort to justify its differential treatment of the Teva v. Syntex and Glaxo v. Boehringer cases, devoting only a single paragraph to restating that its decision was based on the "face of the document" test discussed in detail above. FDA Brief at 24. In its brief in Teva I, however, FDA tried to explain away its disparate treatment of these two substantively equivalent court decisions by arguing that "the court 'decision' in [Glaxo v. Boehringer] was a partial summary judgment, followed by the eventual entry of a final judgment of non-infringement. Thus, the 'decision of a court' in [Glaxo v. Boehringer] was a final decision on the merits of the case." FDA Teva I Appeal Brief at 21-23 (citation omitted). TorPharm has tried to expand upon this line of argument by suggesting that FDA relied upon the later written opinions in Glaxo v. Boehringer, in which the court characterized the October 7, 1996 order as a finding of non-infringement. TorPharm Brief at 24-26. However, this Court cannot attribute TorPharm's post-hoc rationalizations to the agency as a basis for upholding the agency's decision. In any event, TorPharm's arguments on this score are incorrect and unpersuasive.

First, FDA claimed in the district court on remand that its disparate decision making was justified because "in reviewing the Glaxo v. Boehringer decision, FDA could readily determine that there was a court

decision, on the merits, holding the Glaxo patent not infringed by Boehringer [but] [t]he California court's order was not such a holding." FDA Opp. To Renewed PI Motion at 9-10, JA 98-99. As this Court recognized, that explanation was flawed because the October 7th partial summary judgment order in Glaxo v. Boehringer has no findings on the factual merits regarding the validity, infringement, or enforceability of the patent, but rather merely noted that a motion for summary judgment had been filed, and granted the motion solely 'based on [Glaxo's] express concession" of non-infringement. JA 346. Likewise, the dismissal in Teva was "based on all of the evidence," Teva Pharmaceuticals USA, Inc. v. Syntex (U.S.A.) Inc., No. C98-02314 CAL, slip op. at 2 (N.D. Cal Aug. 14, 1998), JA 345, which consisted of Syntex's express concession of non-infringement, as well as its express promise not to enforce the patent against Teva. See Teva I, 182 F.3d at 1008-1009.

Moreover, the underlying factual predicates of both cases were nearly identical, because in both cases the dispositive concessions of non-infringement were the consequence of the patent holder's scientific and technical examination of the generic version of the drug, which in each case revealed that there was no infringement. Although in Glaxo v. Boehringer, Glaxo's concession came after court-appointed experts reported that

34

Boehringer's product did not contain the allegedly infringing form of the drug at issue, the court never specifically adopted the findings of the scientific experts, but based its decision solely on Glaxo's concession of non-infringement. In Teva v. Syntex, the court specifically considered the evidence (presented by Syntex itself) that Syntex's concession of non-infringement and promise of non-enforcement came after Syntex's own examination of Teva's ticlopidine formulation and product samples revealed that there would be no infringement by Teva's product. See JA 303-343.

Thus the only difference between the two cases is that in Glaxo v. Boehringer, the scientific examination that led to the concession of non-infringement occurred well into the active litigation phase of the case, whereas in Teva v. Syntex, the scientific examination that led to the concession of non-infringement took place before any litigation, allowing Syntex to seek final disposition under the guise of a case or controversy dismissal.[7] Thus, as this Court previously ruled, for purposes of the Hatch-Waxman provision at issue here, the Teva v. Syntex decision was as much a

---

[7]     The fact that the court in Glaxo v. Boehringer could have disposed of the relevant patent claim by way of a case or controversy dismissal under Super Sack and Spectronics further highlights that FDA's decision on Teva's ANDA was based on an unreasonably narrow statutory interpretation. See Spectronics Corp. v. H.B. Fuller Co., Inc., 940 F.2d 631 (Fed. Cir. 1991), cert. denied, 502 U.S. 1013 (1991); Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995), cert. denied, 516 U.S. 1093 (1996.)

decision "on the merits" as the decision in Glaxo v. Boehringer, and should have been treated as such by FDA. See Teva I, 182 F.3d at 1010-1011.

TorPharm also tries to improve FDA's limited explanation of its decision by arguing that "the October 7th Order was not the only order available to FDA when it concluded that the Glaxo litigation satisfied the 'court decision' trigger," TorPharm Brief at 25-26, because the Glaxo court issued a separate opinion on January 30, 1997 in which it mentioned in passing the background leading to Glaxo's concession of non-infringement and stating that its prior order had "found" that Boehringer did not infringe the patent. However, in that opinion, the court was ruling on a motion to certify the October 7 partial summary judgment (and another partial summary judgment) as final to allow an interlocutory appeal. The district court did not make any factual findings respecting the October 7 order, see Glaxo Inc. v. Boehringer, 962 F. Supp. 295, 296 n. 1 (D. Conn. 1997), aff'd 119 F.3d 14 (Table) (Fed. Cir. 1997), and Glaxo did not appeal the October 7 order. See Granutec, 1998 WL 153410, at *5.

Even if TorPharm's latest theory were credible (which it is not) FDA itself does not suggest that it relied upon anything other than the October 7, 1996 order in Glaxo to trigger the ranitidine exclusivity period. This Court's remand placed the burden upon FDA to explain "why it would recognize a

grant of partial summary judgment, based on the patent holder's admission
of noninfringement, as a 'court decision' in Granutec, 1998 WL 153410, at
*5, but decline to give similar effect to a dismissal based on a finding of no
reasonable apprehension of suit arising from the patent holder's admission
of noninfringement." Teva I, 182 F.3d at 1010-1011.  On remand, FDA
failed to explain the "mystery" of its disparate treatment of the Teva
declaratory judgment dismissal and the court decision in Glaxo.  FDA's only
response was to repeat the explanation it gave in its appeal brief in Teva I,
and indeed, Mr. Sporn's declaration did not even mention this issue.  See JA
106-112.  However, as FDA's own brief in Granutec v. Shalala
demonstrates, FDA did in fact trigger the 180-Day Delay Period for
ranitidine based on the October 7, 1996 one-page order:

> On October 7, 1996, the district court for the District of
> Connecticut granted summary judgment for Boehringer [the
> generic ANDA filer] on the basis of Glaxo's [the patent
> holder's] "express concession that Defendants' product does
> not infringe these patents."  Glaxo did not appeal that order, and
> its appeal time expired on March 3, 1997. . . . Thus, under [the]
> Mova [district court decision] and under FDA's current
> interpretation of 21 U.S.C. 355 (j)([5])(B)(iv) and 21 C.F.R.
> 314.107(e)(2)(i) in light of Mova, the 180-day period of
> exclusivity for Genpharm [the first ANDA filer] began to run
> on March 3, 1997 . . . , and expired on August 29, 1997.

FDA's Brief at 12, Granutec, 1998 WL 153410.

*      *      *

Because FDA has failed to offer any permissible reason for its refusal to treat Teva's declaratory judgment action dismissal as a Court Decision Trigger under 21 U.S.C. § 355(j)(5)(B)(iv)(II), and has also failed to provide any permissible basis for its disparate treatment of the court decision in Glaxo v. Boehringer, the district court's final decision and injunction should be affirmed.

## IV.    TEVA TAKES NO POSITION ON MOOTNESS, BUT URGES THE COURT NOT TO VACATE THE DISTRICT COURT DECISION IF THE APPEAL IS DISMISSED

Teva does not take a position with respect to FDA's motion to dismiss on mootness grounds, but if the Court does dismiss the appeal, it should not vacate the district court order. Under modern Supreme Court jurisprudence, vacatur should not be granted as a matter of course, and indeed should not be granted here unless the petitioner has affirmatively met its burden to demonstrate that the public interest would be served by vacatur of the decision and judgment at issue. See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 26 (1994). As the Supreme Court explained:

> It is petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur. . . . As

always when federal courts contemplate equitable relief, our holding must also take account of the public interest. 'Judicial precedents are presumptively correct and valuable to the legal community as a whole. <u>They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.</u>'"

<u>Id.</u> at 26 (quoting <u>Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.</u>, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)) (other internal citations and quotations omitted) (emphasis added).

In its motion, FDA offered no substantive reason why the district court's decision should be vacated, but rather simply contends that the alleged mootness, in and of itself, requires the requested vacatur. FDA Brief at 15. <u>U.S. Bancorp</u> makes clear, however, that vacatur is discretionary and should be evaluated under an equitable standard that takes account of the public interest. In this case, equity and the public interest dictate that FDA's request should be denied. <u>U.S. Bancorp</u>, 513 U.S. 18.

Although lower court decisions in mooted cases are sometimes vacated where the losing party and the appellate court did not have a full and fair opportunity to address the underlying legal issue prior to its becoming moot, <u>see</u> <u>United States v. Munsingwear, Inc.</u>, 340 U.S. 36, 40 (1950), that is clearly not the situation here. The district court carefully and narrowly applied the holdings of this Court in <u>Teva</u> I in light of the fact that on remand, FDA offered no justifications for its action that were not previously

presented to this Court. See Teva, 1999 WL 1042743, JA 259 ("to the extent that the FDA has taken the position that nothing short of a holding on the merits can satisfy the court-decision trigger, ... this position was rejected by the Court of Appeals."). Thus, FDA cannot and does not argue that it was denied a full and fair opportunity to present its case, nor that this Court has not had the opportunity to fully consider the legal issues raised by the decision below.

In addition, the agency's past history in similar circumstances, as well as recent FDA policy pronouncements, reflect FDA's intent to disregard the interpretation of the statutory "court decision trigger" provisions enunciated in this case, Teva I, 182 F.3d at 1009, and in Mova Pharmaceuticals Corp. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998), and as applied in the district court's decision. FDA recently announced that '[t]he agency has rejected this interpretation of the statute." See 64 Fed. Reg. 42,873, 42,881 (Aug. 6, 1999) (emphasis added). In this light, Teva is concerned that FDA would use a vacatur of the district court decision as an excuse to continue its mis-application of the statute to refuse to even consider whether future Hatch-Waxman Declaratory Judgment Action dismissals qualify as Court Decision Triggers. Such abdication of the agency's statutory duties would lead to protracted uncertainty and added expense for generic drug companies, and

further delays in the onset of generic competition for many important drug products, thus frustrating the clear Congressional intent of the Hatch-Waxman amendments to facilitate prompt generic competition. See Serono Laboratories, Inc. v. Shalala, 158 F.3d 1313, 1320 (D.C. Cir. 1998); Mead Johnson Pharm. Group v. Bowen, 838 F.2d 1332, 1333 (D.C. Cir. Nov. 13, 1988)).

Teva's concern is not speculative. Indeed, the agency employed this very strategy ten years ago. In Inwood Laboratories, Inc. v. Young, 723 F. Supp. 1523 (D.D.C. 1989), vacated as moot, 43 F.3d 712 (Table) (D.C. Cir. 1989), the district court squarely rejected FDA's statutory interpretation that a first Paragraph IV ANDA applicant must have been sued for patent infringement and have successfully defended such a suit in order to qualify for the 180-Day Delay Period. The district court thus enjoined FDA from approving any subsequent Paragraph IV ANDA for 180 days after the first applicant in that case (which had not been sued) began commercial marketing of its drug. Id. at 1526. The FDA appealed, but the 180-Day Delay Period expired before the appeal was decided. The appeal was then dismissed, and the district court decision vacated. Id. However, rather than accepting the court's well-reasoned interpretation, FDA – relying upon the vacatur of the Inwood decision – adhered to its flawed interpretation for

nearly ten more years until this Court decided the Mova case in April 1998.

As FDA explained in the preamble to its 1994 final rule on generic

exclusivity issues:

> Thus, consistent with the agency's longstanding interpretation of the act, § 314.107(c) applies only when the first applicant has been sued.  Although, as the comments state, one Federal district court reached a contrary conclusion, the agency appealed that decision and, on appeal, the decision was vacated as moot (Inwood Laboratories, Inc. v. Young, 723 F. Supp. 1523 (D.D.C. 1989), vacated as moot, no. 89-5209 (D.C. Cir., November 13, 1989). The agency has not altered its interpretation of the act.

59 Fed. Reg. 50,338, 50,353 (comment response 72) (Oct. 3, 1994)

(emphasis added).

Here, if FDA's request to vacate the district court decision is granted, the agency may once again refuse to acknowledge the legal reality that one of its statutory interpretations does not square with the controlling statutory provisions, notwithstanding judicial decisions to the contrary.  The Third Circuit recently addressed a similar situation involving a Drug Enforcement Administration ("DEA") request for vacatur of an adverse judicial ruling in a case mooted by the death of the individual who had challenged a DEA administrative action.  In Humphreys v. DEA, 105 F. 3d 112, 116 (3d Cir. 1996), the Court denied the DEA's request to vacate the circuit's prior decision primarily in order to prevent future DEA misapplication of the

42

statutory provisions ruled upon by the Court in that case. As the Court

explained:

> Our previous opinion carefully analyzed the DEA's interpretation of [the statute] and concluded that the DEA had wrongly interpreted and applied the statute . . . . As DEA is the sole agency authorized to revoke registrations under this statute, and as DEA will likely continue to apply its erroneous interpretation absent a binding contrary interpretation, a decision declaring and clarifying the law that DEA must apply in every revocation case is of utmost importance. In light of the complete absence of case law interpreting the relevant statute, we believe it would not be prudent to withdraw our opinion. This is especially so given the fact that we can see no unfairness to the DEA in allowing the decision to stand. The DEA had a full and fair opportunity to present its case and convince this court that the DEA had correctly interpreted and applied the law.

Humphreys v. DEA, 105 F. 3d at 116 (emphasis added).

Similarly, vacatur of this important case might well require future generic drug applicants to needlessly bring FDA back to court to re-litigate these very same issues, thus wasting scarce judicial resources, as well as the resources of the companies involved, and the agency itself. Because FDA's preferred interpretation has already been fully litigated in this case, carefully considered in Mova, and rejected in both cases, the public interest would be

43

adversely affected by granting FDA's motion to vacate the district court's decision, and that element of FDA's motion should be denied.

## CONCLUSION

For the reasons stated herein, Teva respectfully urges the Court to affirm the district court's final judgment and injunction.

Respectfully submitted,

James N. Czaban (D.C. Bar #459211)
Geoffrey M. Levitt (D.C. Bar #358633)

Venable, Baetjer, Howard & Civiletti LLP
1201 New York Avenue, NW
Suite 1000
Washington, D.C. 20005-3917
202/962-4800 (phone)
202/962-8300 (fax)

Attorneys for Appellee, Teva Pharmaceuticals USA, Inc.