TEVA PHARMACEUTICALS USA, INC.  v. FDA, Case No. 05-1469 (JDB)

# EXHIBIT 3:

Reply Brief of Plaintiff-Appellant Teva Pharmaceuticals USA, Inc. in *Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, no. 04-1186 (Fed. Cir.)

("Teva Sertraline Reply Br.")

No. 04-1186

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

TEVA PHARMACEUTICALS USA, INC.,

Plaintiff-Appellant,

v.

PFIZER, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the District of Massachusetts
In Case No. 03-CV-10167.  Judge Richard G. Stearns.

REPLY BRIEF OF PLAINTIFF-APPELLANT,
TEVA PHARMACEUTICALS USA, INC.

Henry C. Dinger, P.C.
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Steven J. Lee
Thomas J. Meloro
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

*Counsel for Teva Pharmaceuticals USA,
Inc., Plaintiff-Appellant*

May 17, 2004

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

ARGUMENT ........................................................................................... 5

I.    CONGRESS SPECIFICALLY AUTHORIZED TEVA'S
      DECLARATORY JUDGMENT ACTION AGAINST PFIZER.................... 5

II.   TEVA's DECLARATORY JUDGMENT ACTION PRESENTS
      A CONTROVERSY JUSTICIABLE UNDER ARTICLE III ........................ 7

      A.    The Requirements of Article III are Satisifed In this Case ................. 7

      B.    The "Reasonable Apprehension" Test is Not a Constitutional
            Requirement ..................................................................... 10

III.  TEVA HAS A REASONABLE EXPECTATION THAT PFIZER
      WILL SUE IT FOR INFRINGEMENT OF THE '699 PATENT ................. 18

      A.    The Reasonable Apprehension Test Does Not Require
            Proof that an Infringment Suit Is Imminent ....................... 18

      B.    The Listing of the '699 Patent in the Orange Book Supports
            The Existence of a Reasonable Apprehension of Suit ....................... 20

      C.    Pfizer's Commencement of Litigation Against IVAX on the
            '699 Patent, Its History of Aggressively Enforcing Its Patent
            Rights Against Teva and Other Generic Companies, Pfizer's
            Refusal to Give a Covenant Not to Sue, and the Existence of a
            Rationale for Delaying Suit All Support a Reasonable
            Apprehension of Suit ......................................................... 22

i

IV.     THERE IS NO ADMINISTRATIVE RELIEF AVAILABLE TO
        RESOLVE THE PATENT ISSUES THAT TEVA RAISES ON ITS
        DECLARATORY JUDGMENT ACTION ................................................... 24

V.      THAT TEVA'S LAWSUIT MIGHT TRIGGER IVAX'S
        EXCLUSIVITY BEFORE THE EXPIRATION OF THE
        '518 PATENT IS NO REASON TO DECLINE JURISDICTION ............... 25

CONCLUSION ....................................................................................................... 28

CERTIFICATE OF COMPLIANCE ..................................................................... 29

CERTIFICATE OF SERVICE .............................................................................. 30

TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aetna Life Ins. Co. v. Haworth*,
    300 U.S. 227 (1937)................................................................ 3, 8, 12, 13

*Allergan, Inc. v. Alcon Labs., Inc.*,
    324 F.3d 1322 (Fed. Cir.) *(per curiam)*,
    *cert denied*, 124 S. Ct. 813 (2003)................................................. 8

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
    172 F.3d 852 (Fed. Cir. 1999) ...................................................... 19

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
    846 F.2d 731 & n.4 (Fed. Cir. 1988) ................................ 2, 11, 12, 16, 19, 23

*Asahi Glass Co., Ltd. v. Pentech Pharm., Inc.*,
    289 F. Supp. 2d 986 (N.D. Ill. 2003)............................................. 19

*Association of Data Processing Serv. Orgs., Inc. v. Camp*,
    397 U.S. 150 (1970)................................................................... 10

*Bayou des Familles Dev. Corp. v. U.S.*,
    130 F.3d 1034 (Fed. Cir. 1997). ................................................... 11

*Bennett v. Spear*,
    520 U.S. 154 (1997).................................................................. 10

*Dr. Reddy's Laboratories, Ltd. v. Pfizer, Inc.*,
    2003 WL 21638254 (D.N.J. July 8, 2003) .................................... 26

*Eli Lilly & Co. v. Medtronic, Inc.*,
    496 U.S. 661 (1990).............................................................. 9, 17

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996) ...................................................... 22

*Fina Oil & Chem. Co. v. Ewen*,
    123 F.3d 1466 (Fed. Cir. 1997) .................................................. 11

*First Hartford Corp. Pension Plan & Trust v. U.S.*,
    194 F.3d 1279 (Fed. Cir. 1999) ....................................................... 10

*Gen-Probe, Inc. v. Vysis, Inc.*,
    359 F.3d 1376 (Fed. Cir. 2004) .............................................. 20, 23

*Glaxo, Inc. v. Novopharm, Ltd.*,
    110 F.3d 1562 (Fed. Cir. 1997) ............................................... 9, 17

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
    824 F.2d 953 (Fed. Cir. 1987) ....................................................... 20

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
    153 F.3d 1318 (Fed. Cir. 1998) ............................................. 11, 13

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
    175 F.3d 1356 (Fed. Cir. 1999) (*en banc*) ..................................... 11

*Minnesota Mining & Mfg. Co. v. Barr Labs*,
    289 F.3d 775 (Fed. Cir. 2002) ............................................. 13, 21

*Marbury v. Madison*, 2 Cranch,
    (5 U.S.) 137, 177 (1803)................................................................ 7

*Mova Pharm. Corp., v. Shalala*,
    140 F.3d 1060 (D.C. Cir. 1998)................................................... 27

*Mylan Pharm., Inc. v. Thompson*,
    268 F.3d 1323 (Fed. Cir. 2002) ................................................... 24

*Northeastern Fla. Chapter, Associated Gen. Contractors of Amer. v.*
    *City of Jacksonville*,
    508 U.S. 656 (1993)....................................................................... 8

*Sallen v. Corinthians Licenciamentos LTDA*,
    273 F.3d 14 (1st Cir. 2001)........................................................... 13

*Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*,
    363 F.3d 1361 (Fed. Cir. 2004) ................................................... 11

*Spectronics Corp. v. H.B. Fuller Co.*,
    940 F.2d 631 (Fed. Cir. 1991) ........................................................ 19

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998)........................................................................ 8

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
    57 F.3d 1054 (Fed. Cir.1995) ................................................. 10, 15

*Teva Pharms. USA, Inc. v. FDA*,
    182 F.3d 1003 (D.C. Cir. 1999)........................................ 15, 24, 27

*Valley Forge Christian College v.*
    *Americans United for Separation of Church and State, Inc.*,
    454 U.S. 464 (1982)............................................................ 7, 8, 10

*Vanguard Research, Inc. v. Peat*,
    304 F.3d 1249 (Fed. Cir. 2002) .............................................. 20

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................ 10

## FEDERAL STATUTES AND LEGISLATIVE MATERIALS

149 Cong. Rec. S15885 (November 25, 2003)........................................ 6

21 U.S.C. §355 ...................................................................................... 1

21 U.S.C. §355(j)(2)(B)(i) .................................................................. 15

21 U.S.C. §355(j)(5)(B)(iii) ................................................................ 21

21 U.S.C. §355(j)(5)(B)(iv) ................................................................ 25

21 U.S.C. §355(j)(5)(C)(i)(II) ..................................................... 1, 5, 26

28 U.S.C. §2201 ............................................................................ 6, 26

35 U.S.C. §271(e)(2)............................................................................ 9

35 U.S.C. §271(e)(5).................................................................. *passim*

H.R. Conf. Rep. No. 108-391.............................................................................. 6, 19

P.L. No. 108-173 ............................................................................................. 1, 5

### *Introduction and Summary of Argument*

In the recent amendments to the Hatch-Waxman Act, Congress specifically authorized an ANDA applicant to "bring a civil action . . . for a declaratory judgment that [a] the patent [listed in the Orange Book] is invalid or will not be infringed by the drug for which the [ANDA] applicant seeks approval." New §355(j)(5)(C)(i)(II).[1] Appellee, Pfizer, Inc. ("Pfizer") does not dispute that this amendment applies to this case and that the statutory conditions for bringing such an action were satisfied in this case. Congress further provided that district courts "shall" have subject matter jurisdiction over such actions "to the extent consistent with the Constitution." 35 U.S.C. §271(e)(5). These statutes require that the declaratory judgment action brought by appellant, Teva Pharmaceuticals USA, Inc. ("Teva"), be reinstated and that Teva's action be resolved on the merits.

Pfizer counters that this Court should disregard these unambiguous statutes, claiming that it would be unconstitutional to follow them. Pfizer argues that Article III requires that Teva face a reasonable apprehension of imminent infringement litigation in order to bring a declaratory judgment action against Pfizer. That Congress plainly intended to extend to the constitutional limit the opportunities for ANDA applicants to obtain a prompt judicial resolution whether

---

[1]    Consistent with the usage employed in both principal briefs, appellant will refer to the provisions of 21 U.S.C. §355 as amended by P.L. No. 108-173 as "New §355___."

patents listed in the Orange Book apply to the generic drugs they propose to sell carries no weight in Pfizer's analysis.

Pfizer's argument is wrong. First, Pfizer is wrong in its analysis of Article III. This Court has not ruled — and has had no occasion to decide — whether the "reasonable apprehension" test is constitutionally required. Under settled general principles, however, the justiciability of a declaratory judgment action — *i.e.* whether it constitutes a "case or controversy" under Article III — does not depend on whether the declaratory judgment defendant intends to assert its claim imminently. The point of devising a federal declaratory judgment remedy more than half a century ago was precisely to give the declaratory judgment plaintiff an opportunity to resolve a concrete dispute concerning the merits of the defendant's claim under circumstances where the defendant has not advanced it and may have its own tactical reasons not to advance it. As this Court has observed, one of the principal goals of the Declaratory Judgment Act was to give would-be patent infringers the opportunity to challenge patents that, by virtue of their *not* being asserted and tested in court generate "uncertainty and insecurity," "scarecrow patents" as Judge Learned Hand described them. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735 & n.4 (Fed. Cir. 1988) (quoting *Bresnick v. United States Vitamin Corp.,* 139 F.2d 239, 242 (2d Cir. 1943) (L. Hand, J.)).

Contrary to Pfizer's contention, Article III does not grant to patentees a "right to determine the merits of asserting their patents" (Red. Br. at 26). Article III, a structural limitation on the power of the federal judiciary under the Constitution, creates no such right. The instant case plainly satisfies the requirements of Article III as set forth in *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227 (1937), and its progeny. By the Medicare Amendments, Congress has directed that no more may be required for the exercise of jurisdiction over Teva's declaratory judgment action.

Pfizer is also wrong when it suggests that Teva faced no reasonable apprehension of suit under this Court's traditional test. Teva quite reasonably fears that Pfizer will bring an infringement suit against Teva under the '699 patent as soon as Teva receives FDA approval to market its generic sertraline hydrochloride product. By listing the '699 patent in the Orange Book, Pfizer has announced to Teva (and to all other generic drug companies) that that patent could reasonably be asserted against any unauthorized generic version of Pfizer's enormously lucrative Zoloft product. Pfizer has not remained "quiescent" with respect to its rights under this patent. It has already brought suit against one generic company for infringing the '699 patent with a generic sertraline product and its failure to sue Teva to date is readily explained as a means of delaying full generic competition. Under these circumstances, Teva satisfies the "reasonable apprehension" test.

Pfizer and its amicus IVAX Pharmaceuticals, Inc. ("IVAX") erroneously contend that Teva's only goal is to trigger IVAX's 180 days of exclusivity before IVAX can launch a generic sertraline product. While that may be one of Teva's objectives — and an entirely legitimate one that would serve the public interest and that independently gives Teva standing to pursue its declaratory judgment action — it is by no means the only one. While IVAX's settlement with Pfizer apparently will permit IVAX to go to market in 2006, notwithstanding the '699 patent, that settlement does not resolve the validity or applicability of that patent for Teva or any other generic company. Even after the expiration of the earlier patent, Teva still faces an Orange Book patent that does not expire until 2010. Even if Teva were unaffected by the exclusivity rights of another company, it would seek to resolve the application of the '699 patent to its own product and would do so sufficiently in advance of the expiration of the '518 patent to permit it to go to market upon that expiration.

This is precisely what Congress sought to encourage in the Medicare Amendments when it directed courts to entertain certain declaratory judgment actions launched by ANDA applicants. Accordingly, even if IVAX were correct that those amendments leave some measure of discretion in district courts to decline to exercise their admitted subject matter jurisdiction — and it is not correct — there is no basis in this case to justify such an exercise.

4

*Argument*

I.    CONGRESS SPECIFICALLY AUTHORIZED TEVA'S DECLARATORY JUDGMENT
ACTION AGAINST PFIZER.

The Medicare Amendments[2] unambiguously extend subject matter

jurisdiction over declaratory judgment actions brought by ANDA applicants such

as Teva to establish the invalidity or non-infringement of patents listed in the

Orange Book.  New 21 U.S.C. §355(j)(5)(C)(i)(II) provides in relevant part:

> If the conditions described in items (aa), (bb), and as
> applicable (cc) of subclause (I) have been met, [an
> ANDA] applicant … may, in accordance with section
> 2201 of Title 28, United States Code, bring a civil action
> under such section against the owner or holder referred to
> in such subclause … for a declaratory judgment that the
> patent is invalid or will not be infringed by the drug for
> which the applicant seeks approval … .

Teva is such an applicant and Pfizer is an "owner" of the patent-in-suit.  There is

no dispute that all of the conditions set forth in the statute have been met.

Pfizer pretends this language does not exist.  Pfizer's desire to ignore this

language is understandable.  Pfizer urges in effect that this Court should act as if

Congress did not make specific provision for declaratory judgments by ANDA

applicants, and that ANDA applicants can bring declaratory judgment actions after

the enactment of New §355(j)(5)(C)(i)(II) only if they could have brought such

actions before the enactment under principles developed by this Court outside the

---

[2]    P.L. No. 108-173.

5

context of the Hatch-Waxman Act. In other words, under Pfizer's view, this amendment to the Hatch-Waxman Act had no effect at all.

This doubtless would come as a surprise to Congress which clearly viewed the amendment as an important reform to the laws governing new drugs. The Conference Committee recognized that some "pioneer drug companies" had made "improper effort[s] to delay infringement litigation." H.R. Conf. Rep. No. 108-391, at 386. Examples of such improper efforts were identified by proponents of the amendment on the Senate floor, including the situation presented in this case:

> [W]hen generic applicants are blocked by a first generic applicant's 180-day exclusivity, the brand drug company could choose not to sue those other generic applicants so as to delay a final court decision that could trigger the "failure to market" provision and force the first generic to market.

149 Cong. Rec. S15885 (November 25, 2003).

Congress specified that ANDA applicants could bring declaratory judgment actions to prevent such efforts to delay infringement litigation. Congress also provided that only reasons of constitutional magnitude could stand in the way of such declaratory judgment actions by adding a new 35 U.S.C. §271(e)(5) that made it unmistakably clear that district courts "*shall, to the extent consistent with the Constitution,* have subject matter jurisdiction in any action brought by [an ANDA applicant] under [28 U.S.C. §2201] for a declaratory judgment" of invalidity or non-infringement.

6

Application of these straightforward and unambiguous amendments in light of their purpose leaves no room for doubt that Congress intended to provide, and did provide, for subject matter jurisdiction over Teva's claim in this case. Pfizer's argument on appeal is that Congress' efforts in this regard were futile because the attempt to create subject matter jurisdiction in cases such as this runs afoul of the Constitution.

II.    TEVA'S DECLARATORY JUDGMENT ACTION PRESENTS A CONTROVERSY JUSTICIABLE UNDER ARTICLE III.

A.    *The requirements of Article III are satisfied in this case.*

Article III courts can exercise subject matter jurisdiction only over "cases or controversies." This restriction is a structural limitation on the judicial branch that cabins what would otherwise be "an unconditioned authority to determine the constitutionality of legislative or executive acts." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471 (1982). The power of unelected federal judges to review the acts of the two elected branches of government can be squared with our democratic form of government only when it is so confined. *Id. See also Marbury v. Madison,* 2 Cranch (5 U.S.) 137, 177 (1803) (power of judicial review results from the authority to decide cases). "Justiciability," for purposes of Article III turns, therefore, on whether the dispute is "of the sort traditionally amenable to, and

resolved by, the judicial process." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 102 (1998).

The Supreme Court in *Steel Co., Valley Forge* and other cases has recognized an "irreducible minimum" necessary for the existence of an Article III case or controversy. An Article III case must be presented by a party who has been injured in fact by the challenged conduct and for whom a favorable decision is likely to redress that injury. *Steel Co.,* 523 U.S. at 103; *accord, Allergan, Inc. v. Alcon Labs., Inc.* 324 F.3d 1322, 1331 (Fed. Cir.) (*per curiam*), *cert denied,* 124 S. Ct. 813 (2003). Teva demonstrated in its principal brief that it satisfied this "irreducible minimum." Blue Br. at 48-52; *see also* Brief of Amicus Curiae Federal Trade Commission Supporting Appellant and Urging Reversal ("FTC Br.) at 14-20. Neither Pfizer nor IVAX has taken issue with this analysis.[3]

Moreover, this case fits comfortably within the description of a justiciable declaratory judgment action set forth in *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937). Teva's claim is not hypothetical or abstract; rather, it is focused on the application of a particular patent to a particular pharmaceutical

---

[3]  Pfizer does suggest that the delay in launching its generic sertraline product that Teva will experience if IVAX's exclusivity does not commence until after the expiration of the '518 patent is not an injury-in-fact sufficient to sustain jurisdiction. (Red Br. at 45-46). However, as Teva and the FTC demonstrated in their briefs, it is quite clear that the denial of an remunerative opportunity does constitute injury-in-fact sufficient to satisfy the requirements of Article III. *See, e.g., Northeastern Fla. Chapter, Associated Gen. Contractors of*
(continued next page)

formulation. It is neither "academic [n]or moot." On the outcome of Teva's invalidity/non-infringement claims turns Teva's ability to market its generic product either upon the expiration of the '518 patent or only much later, a matter of considerable practical significance for Teva, Pfizer, IVAX, and the many patients needing medical treatment for depression. The specific relief requested by Teva — a binding declaration of invalidity and/or non-infringement — is the kind of relief that Article III judges have long been accustomed to giving. Neither Pfizer nor IVAX has taken issue with this analysis either.

Congress, the Supreme Court, and this Court have all recognized that the resolution of these issues is justiciable upon the filing of an ANDA with a Paragraph IV notice at the behest of patentees. *See* 35 U.S.C. §271(e)(2); *Eli Lilly & Co. v. Medtronic, Inc.,* 496 U.S. 661, 678 (1990); *Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1569 (Fed. Cir. 1997). It makes absolutely no difference to the concreteness of these issues or to the consequences that flow from their resolution if they are presented in the context of a declaratory judgment action or an infringement suit. If an action brought by the patentee is justiciable, then so is the declaratory judgment action brought by the ANDA applicant. The plain purpose of the Medicare Amendments is to make it clear that both the patentee and

---

*Amer. v. City of Jacksonville,* 508 U.S. 656, 664-68 (1993); Blue Br. at 49; FTC Br. at 20-22.

the ANDA applicant may obtain a prompt judicial resolution of these issues. There is no Article III obstacle to subject matter jurisdiction in this case.[4]

B.    *The "reasonable apprehension" test is not a constitutional requirement.*

The Supreme Court in *Valley Forge* drew a distinction drawn in many cases between limitations on subject matter jurisdiction "required by Art. III *ex proprio vigore*," and "requirements that the Court itself has erected and which [are] not compelled by the language of the Constitution." 454 U.S. at 471. There are many examples of the latter.[5] It is clear that such "prudential" limitations on subject matter jurisdiction, created as a matter of federal common law, can be overturned by Congress in the exercise of its constitutional authority to define the jurisdiction of the federal judiciary within the limits of Article III. *Bennett v. Spear,* 520 U.S. 154, 162 (1997). Neither Pfizer nor IVAX dispute these basic legal principles.

The question presented in this appeal is whether this Court's traditional two-part test for applying the "actual controversy" requirement of the Declaratory Judgment Action — specifically the requirement that the declaratory judgment

---

[4]   Of course, if Pfizer were to acknowledge invalidity or non-infringement — unlikely in light of Pfizer's prior litigation against IVAX on the same patent — then there would *no longer* be a justiciable case or controversy and a motion to dismiss on mootness grounds would be allowed. *Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058-59 (Fed. Cir.1995).

[5]   *See, e.g., Warth v. Seldin,* 422 U.S. 490, 499 (1975); *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153-54 (1970); *First Hartford Corp. Pension Plan & Trust v. U.S.,* 194 F.3d 1279, 1290 (Fed. Cir.
*(continued next page)*

plaintiff face a "reasonable apprehension" of an infringement suit[6] — is imposed by Article III *ex proprio vigore*, or whether, as Teva contends, it is a prudential rule imposed by this Court in the exercise of its common law authority to formulate legal principles to guide district courts.

Contrary to Pfizer's argument, this Court has never addressed this issue directly. It has had no occasion to consider it because in no case has the issue genuinely mattered. Since no one doubts the power of the Court to impose the "reasonable apprehension" test as an exercise of its common law authority, the question whether that test is constitutionally required could only arise where Congress had directed courts to exercise subject matter jurisdiction to the constitutional limit, as Congress has now done in 35 U.S.C. §271(e)(5).[7]

This Court's decision in *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds*, *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) (*en banc*), makes this clear.

---

1999); *Bayou des Familles Dev. Corp. v. U.S.*, 130 F.3d 1034, 1037 (Fed. Cir. 1997).

[6]  Pfizer has not disputed that the other requirement of the traditional test — whether Teva has infringed, or taken concrete steps to that end — is satisfied. Teva's submission of an ANDA with a Paragraph IV certification constitutes an act of infringement, 35 U.S.C. §271(e)(2), as the District Court recognized.

[7]  When this Court has characterized the traditional test, it has done so in pragmatic terms. *See, e.g., Sierra Applied Sciences, Inc. v. Advanced Energy Indust., Inc.*, 363 F.3d 1361 (Fed. Cir. 2004)(traditional test is "guide" to jurisdictional analysis); *Arrowhead*, 846 F.2d at 736 (traditional test is "useful"); *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1470 (Fed. Cir. 1997) (traditional test "not ... a prerequisite to jurisdiction in every possible patent declaratory judgment action"; just a means to assure a real controversy).

11

There, the plaintiff seeking declaratory relief did not face a reasonable

apprehension of suit. Nevertheless, the plaintiff urged the Court not to dismiss its

case, arguing that the reasonable apprehension test goes beyond the requirements

of Article III and that satisfaction of the constitutional requirements for a case or

controversy should be all that was required. The Court declined the plaintiff's

request. "Even were we to have the authority, we would refuse, as Hunter Douglas

demands, to rewrite *this court's law* for declaratory judgment actions in this

context." 153 F.3d at 1326 (emphasis added).

     This Court maintained its commitment to the "reasonable apprehension" test

for policy reasons, not out of constitutional necessity. "We have maintained this

requirement, for it 'protects quiescent patent owners against unwarranted

litigation' under Title 35." *Id.* at 1326-27 (quoting *Arrowhead*, 846 F.2d at 736).

The goal of protecting "quiescent" patentees, whatever its merits, has little to do

with Article III or justiciability. There is nothing in the Supreme Court's

description of justiciable declaratory judgment actions in *Aetna Life,* 300 U.S. at

240-41, to suggest that the protection of unwilling declaratory judgment defendants

plays any part whatever in the Article III analysis. Such protection of unwilling

defendants is a reflection of patent law policies, and not constitutional limits on

justiciability. Even in the analogous area of trademark law, courts have not

required a reasonable apprehension of suit to sustain declaratory judgments. *See*

*Sallen v. Corinthians Licenciamentos LTDA,* 273 F.3d 14, 25 (1st Cir. 2001).[8]

The other rationale invoked in *Hunter Douglas* in support of the "reasonable

apprehension" test is that it guards against courts' resolving "'a difference or

dispute of a hypothetical or abstract character." 153 F.3d at 1327 (quoting *Aetna*

*Life,* 300 U.S. at 240). Conceptually, it is the second prong of the test — that the

declaratory judgment plaintiff has infringed or taken concrete steps to that end —

that guards against hypothetical or abstract disputes. If the would-be infringer has

not made commitments to specific acts of infringement, then the request for a

declaration takes on a hypothetical quality that may be inconsistent with the *Aetna*

*Life* requirements for a "concrete" dispute. ANDA cases do not present

hypothetical disputes in this sense. The ANDA applicant must submit to the FDA

a lengthy submission describing in great detail the specific generic formulation for

which it seeks approval. Whatever else one might say about this case, it is not

hypothetical.

---

[8]    The First Circuit in *Sallen* makes the useful observation that the "reasonable
apprehension" test may be pertinent "where the only controversy surrounds a
potential, future lawsuit." 273 F.3d at 25. In that case, however, the plaintiff
faced other adverse consequences absent a judicial declaration of his rights
beyond a future infringement suit that the defendant had disclaimed any intent
to bring. Similarly, here Teva faces not only a future infringement suit by
Pfizer, but also a delay in FDA approval of its ANDA until IVAX's exclusivity
period has ended. As this Court recognized in *Minnesota Mining & Mfg. Co. v.
Barr Labs,* 289 F.3d 775, 780 (Fed. Cir. 2002) ("*3M*"), such disputes
independently give rise to justiciable controversies.

Additionally, the cases applying the reasonable apprehension test may reflect a reluctance of courts to resolve infringement and validity disputes that the patentee may never bring to a head. Such reluctance on the part of busy courts is understandable, but triaging declaratory judgment actions where there may be some uncertainty whether or when the defendant will eventually bring an infringement action against the plaintiff is not required by Article III where the dispute itself is sufficiently real and concrete to be justiciable.

Pfizer also points to the legislative history of the Medicare Amendments and argues that Congress understood the reasonable apprehension test to be constitutionally required. However, the legislative history shows exactly the opposite. The conference committee report quoted by Pfizer (Red Br. at 24) repeatedly emphasizes that the committee contemplated the use of the reasonable apprehension test only "to the extent required by Article III" or "to the extent required by the Constitution." Since that is exactly what the Medicare Amendments themselves expressly provide in 35 U.S.C. §271(e)(5), the report does not address the question whether the reasonable apprehension test *is* constitutionally required. Congress clearly recognized that *that* question was for the courts to decide.

Pfizer suggests that the failure of the patentee to bring suit within 45 days of the ANDA submission, as permitted by statute, is evidence that the patentee does

14

not believe it has a valid infringement claim, and in the absence of a patentee

willing to defend its patent and its application to the ANDA applicants' product,

there is no dispute at all and therefore no justiciable dispute. Pfizer seeks to

buttress this argument by inviting this Court to review the non-infringement

arguments set forth in Teva's detailed statement delivered to Pfizer pursuant to 21

U.S.C. §355(j)(2)(B)(i), and to infer — in a non-binding manner, of course — that

Pfizer agrees with Teva's argument that its form of sertaline hydrochloride does

not infringe the '699 patent and that Pfizer is therefore "unlikely" to sue Teva for

infringement of that patent. *See* Red Br. at 35-36.

Pfizer's argument in this regard is very carefully worded. If it had actually

acknowledged that Teva's product would not infringe the '699 patent, then

dismissal of Teva's declaratory judgment action would, indeed, be warranted on

mootness grounds. Such an acknowledgment would estop Pfizer from asserting a

later infringement claim against Teva, *see Super Sack*, 57 F.3d at 1058-60, and

would also trigger IVAX's exclusivity, *see Teva Pharms. USA, Inc. v. FDA*, 182

F.3d 1003, 1007-12 (D.C. Cir. 1999). These are consequences Pfizer plainly seeks

to avoid.

We submit that it is improper for Pfizer to argue the merits of Teva's claims

to justify a ruling declining to rule on those merits. Pfizer's argument does

illustrate, however, that the litigation burdens of a declaratory judgment action on a

patentee that *genuinely* does not claim that the declaratory judgment plaintiff's product infringes its patent are trivial. Pfizer need only formally acknowledge that "Teva will not infringe" or "Pfizer will not sue," and the litigation goes away. Pfizer's reluctance to do so, notwithstanding the supposed strength of Teva's non-infringement position, and Pfizer's receipt of samples (returned by Pfizer without testing), makes it clear that Pfizer is seeking the advantages of what Judge Learned Hand called a "scarecrow" patent, *i.e.* a patent whose value lies in the "uncertainty and insecurity" that it creates by virtue of *not* being asserted. *See Arrowhead,* 846 F.3d at 735 & n.4 (citing *Bresnick v. United States Vitamin Corp.,* 139 F.2d 239, 242 (2d Cir. 1943) (L. Hand, J.)). As this Court acknowledged in *Arrowhead,* a principal purpose of the Declaratory Judgment Act was to permit competitors to resolve whether such scarecrow patents legally preclude the sale of their products. *Id.*

Just as this Court has never had occasion to rule whether the reasonable apprehension test is a constitutional requirement, this Court has also never had occasion to apply the reasonable apprehension test in the context of a declaratory judgment action brought by an ANDA applicant with respect to an Orange Book patent. To the extent that that test derives, in the end, from policy considerations rather than constitutional imperatives, the Court must consider whether the test is

appropriate in that context in light of the unique policies of the Hatch-Waxman Act.[9]

As explained by Teva and by the FTC, a principal goal of the Hatch-Waxman Act is to accelerate the introduction of generic drugs to reduce the skyrocketing cost of prescription drugs in this country. *See* Blue Br. at 13-17; FTC Br. at 7-10. A critical means for achieving this goal, as the Supreme Court recognized in *Eli Lilly,* was to create a mechanism for resolving promptly any disputes concerning the application of Orange Book patents to proposed generic drugs. 496 U.S. at 678. That mechanism involved amending the patent laws to make the filing of an ANDA with a paragraph IV certification an act of infringement. This served to create "a defined act of infringement sufficient to create case or controversy jurisdiction to enable a court to promptly resolve any dispute concerning infringement and validity." *Glaxo,* 110 F.3d at 1569.

By upholding the District Court's extension of the reasonable apprehension test to Hatch-Waxman Act cases, this Court will permit patentees to game a complex system in a way that will, as a practical matter, extend the lives of expired patents and enhance the *in terrorem* effect of "scarecrow" patents. *See* Blue Br. at 17-25. This is contrary to the goals of the Hatch-Waxman Act and flatly

---

[9]    In the conference committee report with respect to the Medicare Amendments the conferees expressed the "expect[ation that] courts [would] examine as part

(*continued next page*)

inconsistent with the purpose of the Medicare Amendments. Pfizer's rhetorical

invocation of the "rights" of patentees comes down to a plea to keep their ability to

game the system.

III.    TEVA HAS A REASONABLE EXPECTATION THAT PFIZER WILL SUE IT FOR
        INFRINGEMENT OF THE '699 PATENT.

Teva demonstrated in its brief that it faces a reasonable apprehension that

Pfizer will sue it for infringing the '699 patent. Pfizer advances three arguments in

opposition. First, it contends that there is no likelihood of *imminent* lawsuit

because it has no reason to sue Teva until the '518 patent expires in 2006. Second,

Pfizer insists that its listing the '699 patent in the Orange Book does not give rise

to a "threat" of suit. Third, Pfizer insists that there are no "objective" facts that

suggest a reasonable likelihood of suit.

A.    *The reasonable apprehension test does not require proof that an*
      *infringement suit is imminent.*

It is true that Pfizer is unlikely to sue Teva before the expiration of the '518

patent. To do so would risk triggering IVAX's exclusivity. Delaying such

exclusivity until the expiration of that patent serves Pfizer's economic interest for

the reasons explained in Teva's opening brief. *See* Blue Br. at 22-25.

However, the reasonable apprehension test as applied by this Court does not

require a reasonable apprehension of *imminent* litigation. Pfizer tacitly recognizes

---

of their analysis [of the jurisdictional question] the particular policies served by
*(continued next page)*

this by citing as its principal authority to the contrary not any decision by this

Court, but rather a district court decision, *Asahi Glass Co., Ltd. v. Pentech Pharm.,*

*Inc.,* 289 F. Supp. 2d 986 (N.D. Ill. 2003). In that case, the district court

formulated the reasonable apprehension test as requiring the existence of "a

serious, palpable, foreseeable, *imminent* threat of being sued." *Id.* at 990 (citing

*Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 634 (Fed. Cir. 1991))

(emphasis added). But *Spectronics* does not support this proposition. In

*Spectronics,* the patentee affirmatively and unequivocally disclaimed any claim of

infringement against the declaratory judgment plaintiff. 940 F.2d at 633, 636. The

plaintiff acknowledged that that disclaimer would ordinarily render his declaratory

judgment action moot, but argued that the possibility of a reissue patent that the

defendant might assert preserved the existence of a justiciable controversy. *Id.* at

636. This Court rejected this argument because there was no guarantee that the

reissue patent would be approved and certainly no steps taken by the plaintiff to

infringe a patent that had not yet even issued. *Id. Spectronics* hardly establishes a

general requirement for a threat of *imminent* infringement as an element of the

reasonable apprehension test.[10] The *Asahi* decision erroneously overstated the

---

the Hatch-Waxman Act." H.R. Conf. Rep. No. 108-391, at 836.

[10]   Nor do the other cases to which the *Asahi* court referred support an imminence
of suit requirement. In *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d
852, 855 (Fed. Cir. 1999), as in *Spectronics,* the defendant gave a covenant not
to sue and thereby mooted the declaratory judgment action. In *Arrowhead,* this
*(continued next page)*

parameters of the test. *See Vanguard Research, Inc. v. Peat,* 304 F.3d 1249, 1254-55 (Fed. Cir. 2002).

To be sure, the *controversy* must be real and immediate, *see, e.g., Gen-Probe, Inc. v. Vysis, Inc.,* 359 F.3d 1376, 1379 (Fed. Cir. 2004), but it is in this case. Teva has committed a statutory act of infringing a patent, Pfizer has already sued another generic company for its sertraline product, and Pfizer has every economic incentive to sue Teva when the '518 patent expires. The issues to be litigated are as concrete and as developed now as they will be in 2006. In the meantime, the uncertainty created by the '699 patent serves Pfizer's economic interest but not the interests of the public or the goals of the Hatch-Waxman Act.

B.    *The listing of the '699 patent in the Orange Book supports the existence of a reasonable apprehension of suit.*

In its opening brief, Teva demonstrated that listing a patent in the Orange Book — an action that constitutes a formal, public representation that a claim of

---

Court found that the plaintiff reasonably believed that the defendant was going after infringers sequentially and that the plaintiff was "next." The Court had no occasion to consider whether there would be a reasonable apprehension of suit if the plaintff were further down on the defendant's "hit list." In *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953 (Fed. Cir. 1987), this Court stated that a reasonable apprehension exists when the plaintiff reasonably fears that the defendant "will initiate suit if the plaintiff continues the allegedly infringing activity," *id.* at 955, and found such a reasonable apprehension based on a finding that the plaintiff "could easily infer that [the defendant] would, *at some time,* bring a patent infringement suit," *id.* at 956 (emphasis added). Indeed, in *Goodyear,* the Court found a reasonable apprehension of suit even though the defendant's president swore that he had never expressly authorized an infringement suit against the plaintiff. *Id.* Again, the case provides no support for a requirement that the anticipated litigation be *imminent.*

infringing the listed patent could reasonably be asserted against the maker of a generic version of the drug with regard to which the patent is listed — gives rise to a reasonable apprehension of suit on the part of any such maker. *See 3M*, 289 F.3d at 789-91 (Gajarsa, J., concurring). Pfizer has three responses, none of which is correct.

First, Pfizer suggests that Teva's substantive position is so patent that despite the Orange Book listing, Teva really has nothing to fear. We addressed this disingenuous position earlier. Even a quite modest risk of incurring infringement damages for a product earning more than $2,000,000,000 for the patentee every year is a powerful deterrent to going to market at risk of an infringement suit.

Second, Pfizer argues that deeming an Orange Book listing a sufficient basis for finding a reasonable apprehension of suit effectively eliminates that requirement. As authority, Pfizer cites only the District Court's opinion and ignores Judge Gajarsa's concurring opinion in *3M* which concluded (with no disagreement expressed on this point by the other members of the panel) from the structure of the Hatch-Waxman Act and, in particular, the use of language quite similar to the reasonable apprehension test in 21 U.S.C. §355(j)(5)(B)(iii), that an Orange Book listing does supply a reasonable apprehension of suit. The simple fact is that, in the absence of a disclaimer by the patentee or a covenant not to sue,

21

ANDA applicants typically do have a reasonable apprehension of litigation on listed patents.

Pfizer further argues that an Orange Book listing is not a "threat" of litigation. But nothing in the formulation of the reasonable apprehension test requires an explicit "threat." *See EMC Corp. v. Norand Corp.,* 89 F.3d 807, 811 (Fed. Cir. 1996). The issue is whether the patentee's *conduct* would lead to a reasonable apprehension of suit. The patentee's representation that an infringement suit against a person in the ANDA applicant's position could "reasonably be asserted" makes it reasonable to apprehend that such a suit will in fact be asserted.

We do not dispute that, at least as applied outside the Hatch-Waxman context, the reasonable apprehension test is not satisfied simply because there exists an adversely held patent. But listing a patent in the Orange Book goes beyond the mere ownership of such a patent.

C.   *Pfizer's commencement of litigation against IVAX on the '699 patent, its history of aggressively enforcing its patent rights against Teva and other generic companies, Pfizer's refusal to give a covenant not to sue, and the existence of a rationale for delaying suit all support a reasonable apprehension of suit.*

The record reveals undisputed facts in addition to the Orange Book listing of the '699 patent that buttress the conclusion that Teva reasonably apprehended that Pfizer would sue: Pfizer's commencement of litigation against IVAX on the same

22

patent with respect to a generic sertraline product, Pfizer's aggressive history of

enforcing its pharmaceutical patents, its refusal to give Teva a covenant not to sue

(despite what it invites this Court to accept as a persuasive non-infringement

defense by Teva) or even to test Teva's product, and the existence of a

straightforward rationale for delaying the commencement of litigation against

Teva.[11] Teva demonstrated that all of these facts were germane to the reasonable

apprehension inquiry and that in light of them, it reasonably feared an infringement

suit.  Blue Br. at 41-45.

Pfizer responds by citing cases in which one or another of these factors did

not suffice to establish a reasonable apprehension of suit.  Red Br. at 36-41.

However, in none of the cases by this Court cited by Pfizer did all of these factors

combine, and the pertinent test is, as this Court has repeatedly stated, a "totality of

the circumstances" test.  *See, e.g., Gen-Probe,* 359 F.3d at 1379; *Arrowhead,* 846

F.2d at 736.[12]

---

[11]   None of these facts were disputed below.  On the last point, Pfizer conceded
that delaying the commencement of IVAX's exclusivity until the expiration of
the '518 patent was in Pfizer's economic interest because it makes more money
with only one generic competitor than with several.  (A505)  Accordingly, the
"clearly erroneous" standard of review stressed by Pfizer (Red Br. at 36) is
beside the point.  The legal conclusion as to subject matter jurisdiction to be
drawn from these undisputed facts is reviewed by this Court "without
deference."  *Gen-Probe,* 359 F.3d at 1379.

[12]   Pfizer asserts that the FTC concedes that if this were a "classic" patent
declaratory judgment action and not a Hatch-Waxman case, there would be no
reasonable apprehension of suit.  There is less of a concession here than meets
the eye.  The obvious point being made by the FTC is that the regulatory
scheme imposed by the Hatch-Waxman Act creates circumstances — the

*(continued next page)*

IV.   THERE IS NO ADMINISTRATIVE RELIEF AVAILABLE TO RESOLVE THE PATENT
      ISSUES THAT TEVA RAISES IN ITS DECLARATORY JUDGMENT ACTION.

Pfizer makes the bizarre argument that Teva should seek relief from the

FDA rather than a federal district court.  Since the FDA has no power to decide

questions of invalidity or non-infringement (and apparently no obligation or

inclination to do so, *see generally Mylan Pharm., Inc. v. Thompson,* 268 F.3d 1323

(Fed. Cir. 2002)), and since Teva's complaint only seeks such a decision, it is

difficult to see what purpose could be served by commencing an administrative

proceeding before the FDA.

Pfizer's argument appears to be that what Teva "really" seeks is to

accelerate IVAX's exclusivity and that such relief cannot be obtained from Pfizer,

but might be obtained from the FDA.  First, Pfizer is wrong that it is incapable of

giving Teva what it "really" seeks.  Its acknowledging that Teva's product does not

infringe the '699 patent will result in a dismissal of Teva's claim, preclusion of

future infringement litigation, and triggering of IVAX's exclusivity.  *See Teva*

*Pharms.,* 182 F.3d at 1012.

Second, even if Teva does seek to trigger IVAX's exclusivity — an entirely

proper objective — the means by which Teva seeks to achieve such a triggering is

---

Orange Book listing, the jockeying over exclusivity, the unique timing
elements — that make the dispute between an ANDA applicant and the
patentee on an Orange Book listed patent far more "real and immediate" than it
might be without those circumstances.

24

the statutory means of a "court decision," as provided by Old §355(j)(5)(B)(iv).
Petitioning the FDA is obviously not going to give Teva a court decision, but with
a court decision it is reasonable to anticipate that the FDA will obey the law and
deem IVAX's exclusivity to be triggered.

Third, and most important, while it is true that the earlier that IVAX's
exclusivity period begins, the sooner Teva can go to market, triggering that
exclusivity is not the only result or even the most important result that Teva seeks
to achieve in this litigation. Even if there were nothing Teva could do to prevent
IVAX from having 180 days of exclusivity when the '518 patent expires in 2006,
the '699 patent does not expire until 2010. Teva seeks declaratory relief to
establish that its product does not infringe the '699 patent without having to launch
its product (after IVAX's exclusivity period runs) and risking catastrophic liability.
There is nothing the FDA can or will do to resolve *this* issue.

V.    THAT TEVA'S LAWSUIT MIGHT TRIGGER IVAX'S EXCLUSIVITY BEFORE THE
      EXPIRATION OF THE '518 PATENT IS NO REASON TO DECLINE JURISDICTION.

Pfizer and IVAX suggest that by seeking a declaration of invalidity and/or
non-infringement Teva is seeking to deprive IVAX of its "right" to a period of
exclusivity at a time when it is in a position to market its product, and that such a
goal is somehow suspect. While this is mostly a rhetorical point for Pfizer, IVAX
goes further to suggest that this Court affirm the dismissal, not because there was
no subject matter jurisdiction, but as a discretionary matter.

IVAX recognizes, of course, that it is the *District Court's* exercise of discretion that matters for purposes of any discretionary declination of jurisdiction, not this Court's, and that the District Court in this case did not purport to exercise its discretion. Accordingly, even if IVAX's argument for the exercise of discretion were available, the case would have to be remanded to the District Court to consider the argument in the first instance.[13]

However, here there is no basis for a remand since, as a matter of law, the District Court has no discretion to decline jurisdiction if the case is justiciable under Article III. As noted above, in the Medicare Amendments Congress explicitly created subject matter jurisdiction in the district courts to consider declaratory judgment actions by ANDA applicants under the circumstances presented in this case, New §355(j)(5)(C)(i)(II), and required the exercise of that jurisdiction so long as it was constitutional to do so, 35 U.S.C. §271(e)(5).

IVAX does not quarrel with Teva's reading of these amended statutes, but argues that the reference to 28 U.S.C. §2201 in those statutes restores the discretion to decline jurisdiction over justiciable controversies that Congress sought to eliminate. IVAX does not explain why Congress would give with one

---

[13]  The fact that the District Court cited favorably a decision that did decline to exercise jurisdiction on discretionary grounds — *Dr. Reddy's Laboratories, Ltd. v. Pfizer, Inc.,* 2003 WL 21638254 (D.N.J. July 8, 2003) — obviously does not mean that the District Court did the same thing *sub silentio* as IVAX gamely argues.

hand and take away with the other, and such an interpretation of the statute makes little sense.

Beyond that, the Hatch-Waxman Act has always made first ANDA filers subject to having their exclusivity triggered (and, under the Medicare Amendments, forfeited) by litigation in which they play no part, *Teva Pharms.*, 182 F.3d at 1007-12. To shield first filers from such exposure would be a "strange" result, and one contrary to both the language and the goals of the Hatch-Waxman Act. *Mova Pharm. Corp., v. Shalala,* 140 F.3d 1060, 1072 (D.C. Cir. 1998). If the FDA cannot shield first filers from such consequences by regulation, *id.*, then certainly it would be an abuse of the District Court's discretion to do so by fiat.

*Conclusion*

The dismissal of Teva's declaratory judgment complaint should be vacated and the case remanded to the District Court for resolution of Teva's claims for declaratory relief on their merits.

Respectfully submitted,

Henry C. Dinger, P.C.
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Steven J. Lee
Thomas J. Meloro
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

Counsel for Teva Pharmaceuticals USA, Inc.

May 17, 2004

28

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitations of F.R.A.P. 32(a)(7)(C).  This brief contains 6897 words, as calculated by the "Word Count" feature of Microsoft Word XP, the word processing program used to create it.

Henry C. Dinger

May 17, 2004

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17 nd day of May, 2004, two copies of Reply Brief of Plaintiff-Appellant, Teva Pharmaceuticals USA, Inc. was served by hand upon:

Timothy C. Blank
DECHERT, LLP
200 Clarendon Street
27th Floor
Boston, MA 02116
(617) 728-7100

Robert J. Muldoon, Jr.
SHERIN AND LODGEN LLP
100 Summer Street, Suite 2800
Boston, MA 02110-2109
(617) 646-2000

and by Federal Express upon:

Adam R. Gahton
WHITE & CASE, LLP
1155 Avenue of the Americas
New York, NY 10036-2787
(212) 819-8396

Thomas J. Meloro
Steven J. Lee
KENYON & KENYON
One Broadway
New York, NY 10004
(212) 425-7200

Sarah Lenz Lock
AARP Foundation
601 E Street, NW,
Washington, DC 20049
(202) 434-2060
*Counsel for Amicus AARP*

Lawrence Demille-Wagman
FTC
600 Pennsylvania Avenue, N.W., Room
H-582
Washington, D.C. 20580
(202) 326-2448
*Counsel for Amicus FTC*

William A. Rakoczy
Rakoczy Molino
6 West Hubbard Street, Suite 500
Chicago, IL 60610
(312) 222-6301
*Counsel for Amicus
Generic Pharmaceutical Assn.*

Henry C. Dinger, P.C.