TEVA PHARMACEUTICALS USA, INC. v. FDA, Case No. 05-1469 (JDB)

# EXHIBIT 5:

Reply Memorandum of Teva Pharmaceuticals USA, Inc. in Support of Application for TRO in *Teva Pharmaceuticals USA, Inc. v. FDA*, no. 99-00067 (D.D.C.)

("Teva *Teva II* Renewed Mot. Reply")

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC, et al, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES FOOD <br> AND DRUG ADMINISTRATION, et al, <br><br> Defendants. | Civ. No. 99-00067 (CKK) <br><br> *On Remand From The United States Court Of Appeals For The District Of Columbia Circuit* |

### REPLY MEMORANDUM OF TEVA PHARMACEUTICALS USA, INC. IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIONS

As Teva demonstrated in its renewed motion for injunctive relief, the Court of Appeals has rejected the rationale initially put forth by FDA in support of the agency's refusal to treat the "case or controversy" dismissal of Teva's declaratory judgment action as a "court decision trigger" under 21 U.S.C. § 355(j)(5)(B). The Court of Appeals remanded to this Court to allow FDA the opportunity to further explain the bases for its position, Teva v. FDA, ___ F.3d ___ at ___, 1999 WL 506959 * 6 (D.C. Cir. 1999), and FDA has done so, filing a memorandum in opposition to Teva's request for injunctive relief, accompanied by the sworn declaration of Douglas Sporn, Director of the FDA's Office of Generic Drugs ("OGD").

According to FDA's submissions, the agency's refusal to make Teva's ANDA effective was based on two factors: (1) the agency's belief that it is only required to look at the "face" of the court order to determine whether the court decision was a triggering court decision, FDA Opp. at 4,9, and (2) the agency's unsupported concern that a decision in Teva's favor in the specific context of this case "would require FDA to make similar determinations in future cases about private patent litigation that FDA does not have the resources nor the expertise to make." FDA Opp. at 3-4.

The Court of Appeals has already squarely addressed and rejected FDA's "face of the order" interpretation, and the agency's unsupported convenience arguments are irrelevant to the issue of statutory construction upon which this case turns, and do not constitute a reasonable basis for FDA's decision in this case. Accordingly, because FDA has not provided any new statutory justification that would support the agency's decision in this case, the Court must now compel FDA to make Teva's tentatively-approved ticlopidine ANDA immediately effective.

## I.

**BECAUSE FDA HAS OFFERED NO NEW STATUTORY BASIS FOR ITS REFUSAL TO MAKE TEVA'S ANDA EFFECTIVE, TEVA IS ENTITLED TO PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

**A.**     **The Court Of Appeals Has Rejected FDA's "Face of The Document" Test**

The opinion of the D.C. Circuit in this case, and Teva's original and renewed motions for injunctive relief, analyzed in detail the reasons FDA was obligated under the FDCA to treat the California court's dismissal of Teva's Hatch-Waxman Declaratory Judgment Action as a "court decision" that triggered the start of TorPharm's 180-day

2

"exclusivity" period on August 14, 1998.[1] Specifically, the Court of Appeals looked beyond the face of the court order to discern the underlying holding of the case, which the Court concluded was that Syntex is estopped from enforcing its patent against Teva. Because FDA had argued in this litigation that it reached its decision by reference solely to the face of the order, the Circuit court invited FDA, on this remand, to provide any substantive reasons that the California court decision does not satisfy the statutory court decision requirements of 21 U.S.C. § 355(j)(5)(B)(iv)(II).

In response, the agency has merely repeated the same "face of the order" argument that has already been rejected by the Court of Appeals. Compare FDA Renewed Opp. at 4, (declining to make any substantive inquiry beyond what is "readily apparent from the face of the court order") (emphasis added) and 9 (comparing the "face of" the court order in Glaxo v. Boehringer, with the order in Teva v. Syntex), with FDA's Initial Opposition to Teva's request for injunctive relief at 3, 12 (explaining that its decision was based on the conclusion that "the dismissal of Teva's [declaratory judgment] case is not, on its face, a decision of a court holding the patent to be invalid, not infringed, or unenforceable.") (emphasis added). See also Syntex Initial Opp. at 12 ("The order in the declaratory judgment action on its face makes no finding or conclusion regarding infringement of Roche's '592 patent.") (emphasis added).

Rather than actually having considered Teva's 180-day exclusivity situation on an individual "case by case basis" as FDA committed to do in its June 1998 Guidance for Industry, FDA now admits that it declined to consider the underlying merits of Teva's request in favor of a narrowly limited inquiry as to what appears on the face of the order

---

[1] Teva had also provided FDA with a similar analysis immediately after issuance of the California court decision, see Sporn Decl. ¶ 9.

3

or judgment. This approach, however, does not provide any new statutory interpretation upon which the Court could uphold FDA's refusal to make Teva's ANDA effective as of February 10, 1999.

B. **FDA May Not Justify Its Failure To Properly Apply The Statute Based On Alleged Future Inconvenience To The Agency**

As noted above, FDA has argued that making 180-day exclusivity decisions on a "case by case" basis entails significant burdens, and that FDA denied Teva's request to recognize the California court decision as a "court decision trigger" in large measure to avoid having to engage in potential future "case by case" analysis involving other types of court decisions. See FDA's Opp. at 2, 4-6; Declaration Of Douglas Sporn ("Sporn Decl.") at ¶¶ 13-14. However, the Court of Appeals remanded this case, in part, to allow FDA a final chance to "explain why [the California court decision] fails to meet the [statutory] requirements of a [triggering] 'court decision' under [21 U.S.C.] § 355(j)(5)(B)(iv)(II)." Teva at * 6. The Court of Appeals did not express any interest in how difficult FDA thinks it might be to apply the statute in future cases, nor is the difficulty of FDA's statutory duties relevant to whether its decision on Teva's ANDA may stand. Indeed, quite to the contrary, the Court of Appeals specifically foreclosed the possibility that it would have been permissible for FDA to refuse to consider Teva's request on the merits, in light of the agency's commitment in its guidance to evaluate all 180-day exclusivity matters on a "case by case" basis, and the right of litigants to have their claims adjudicated by the agency. Teva at * 8.

4

FDA's explanation of its decision to refuse to make Teva's ANDA effective also demonstrates that FDA did exactly what the Court of Appeals said it was not permitted to do – the agency sought to "avoid the merits of Teva's claim." Teva at *4. Congress, on behalf of the American people, expects a lot from FDA, and it is simply no answer for FDA to tell an ANDA applicant such as Teva, who, at great expense, has followed the statutory procedures to obtain effective approval that the agency does not have the "expertise" or resources to make the decisions required under the statute. FDA's convenience arguments must be rejected.

C.  **The Court Of Appeals Has Already Rejected FDA's Explanation For Its Disparate Treatment Of Functionally Identical Cases**

FDA utterly fails in its effort to explain what the Court of Appeals described as the "mystery" of the agency's disparate treatment of the Teva declaratory judgment dismissal and the court decision in Glaxo v. Boehringer, see Teva v. FDA 1999 WL 506959 at * 8. Specifically, the Court of Appeals found it incumbent upon FDA to explain "why it would recognize a grant of partial summary judgment, based on the patent holder's admission of noninfringement, as a 'court decision' in Granutec, WL 153410, at *5, but decline to give similar effect to a dismissal based on a finding of no reasonable apprehension of suit arising from the patent holder's admission of noninfringement." Teva v. FDA at * 8. FDA's only answer is to repeat the explanation it gave in its appeal brief in this case, which was rejected by the Court of Appeals. As explained below, FDA's reasoning remains a wholly insufficient basis for the agency's decision in this case.

5

Case 1:05-cv-01469-JDB    Document 18-6    Filed 08/25/2005    Page 7 of 18

FDA's refusal to start Teva's 180-Day Delay Period is unreasonable because it is contrary to the agency's prior decision to activate the Court Decision Trigger in response to the claim-dispositive "court decision" in Glaxo, Inc. v. Boehringer Ingelheim Corp., No. 3:95-CV-01342 (D. Conn. Oct. 7, 1996) (copy attached) even though, just as in Teva v. Syntex, that court decision was directly based upon the patent holder's express concession of non-infringement. See Teva at *8. It is well established that "an agency may not 'treat like cases differently.'" Freeman Engineering Associates v. Federal Communications Commission, 103 F.3d 169, 178 (D.C. Cir. 1997) (quoting Airmark Corp. v. FAA, 758 F.2d 685, 691 (D.C. Cir. 1985). See also United States v. Diapulse Corporation of America, 748 F.2d 56, 62 (2d Cir. 1984) (FDA may "not 'grant to one person the right to do that which it denies to another similarly situated.'") (quoting Marco Sales Co. v. FTC, 453 F.2d 1, 7 (2d Cir. 1971)); Bracco Diagnostics, Inc. v. Shalala, 963 F.Supp. 20, 27 (D.D.C. 1997) ("Our court of appeals has repeatedly held that 'an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.'") (quoting Independent Petroleum Association of America v. Babbitt, 92 F.3d 1248 (D.C.Cir. 1996)).

FDA tried to explain away its disparate treatment of these two substantively equivalent court decisions by arguing that "the court 'decision' in [Glaxo v. Boehringer] was a partial summary judgment, followed by the eventual entry of a final judgment of non-infringement. Thus, the 'decision of a court' in [Boehringer] was a final decision on the merits of the case." FDA Appeal Brief at 21-23 (citation omitted). However, the facts of the Boehringer case show that FDA's distinction is fallacious, and that the

6

similarities between the two cases are even stronger than the respective one-page orders suggest.

First, FDA claims that its disparate decision making is justified because "in reviewing the Boehringer decision, FDA could readily determine that there was a court decision, on the merits, holding the Glaxo patent not infringed by Boehringer [but] [t]he California court's order was not such a holding." FDA Opp. at 9-10. This is the same thing FDA argued, unsuccessfully, to the Court of Appeals, see FDA Appeal Brief at 22 (the order dismissing Teva's complaint "says nothing about the validity, infringement, or enforceability of the patent."). As the Court of Appeals recognized, this explanation is flawed because the order in the Boehringer case has no findings on the factual merits regarding the validity, infringement, or enforceability of the patent. The Boehringer court order merely noted that a motion for summary judgment had been filed, and, rather than concluding "on the merits" that there was no infringement, the court granted the motion solely "based on [Glaxo's] express concession" of non-infringement. (Copy attached). Likewise, the dismissal in Teva was "based on all of the evidence," Teva v. Syntex Order at 2, which consisted of Syntex's express concession of non-infringement, as well as its express promise not to enforce the patent against Teva. See Teva at *5 - *6.

Moreover, FDA's suggestion that the relevant order in Glaxo v. Boehringer differs from the order in Teva v. Syntex by reason of being a "decision on the merits" is simply not supported by the facts. In both cases the dispositive concessions of non-infringement upon which the courts relied were the consequence of a scientific examination of the generic version of the drug that revealed that there was no infringement. In Boehringer, Glaxo made its concession of non-infringement after court-

7

appointed experts determined that Boehringer's product did not contain the allegedly infringing form of the drug at issue. The court, however, never specifically adopted the findings of the scientific experts, but based its decision solely on Glaxo's concession of non-infringement.² See Glaxo v. Boehringer, 962 F.Supp. 295, 296 n. 1 (D. Conn. 1997), aff'd, 119 F.3d 14 (Fed. Cir. 1997).

In Teva v. Syntex, the court specifically considered the evidence (presented by Syntex itself) that Syntex's concession of non-infringement and promise of non-enforcement came after Syntex's own examination of Teva's ticlopidine formulation and product samples revealed that there would be no infringement by Teva's product. See JA 205-206, 216, 220-221, 226-233, 238 (copies attached at tab 3). The only difference between the two cases is that in Glaxo v. Boehringer, the scientific examination that led to the concession of non-infringement occurred well into the active litigation phase of the case, whereas in Teva v. Syntex, the scientific examination that led to the concession of non-infringement took place before any litigation, allowing Syntex to seek final disposition under the guise of a case or controversy dismissal.³ Thus, as the Court of Appeals has ruled, for purposes of the Hatch-Waxman provision at issue here, the Teva v. Syntex decision was as much a decision "on the merits" as the decision in Glaxo v. Boehringer, and should have been treated as such by FDA. See Teva 1999 WL 506959 at *8.

---

² When the October 7, 1996 summary judgment order and another partial summary disposition in Glaxo v. Boehringer were later made "final" for purposes of allowing an interlocutory appeal, the court did not make any factual findings respecting the October order, 962 F.Supp. 295, and Glaxo did not appeal that order. See Granutec v. Shalala,1998 WL 153410 at **5.

³ The fact that the court in Glaxo v. Boehringer could have disposed of the relevant patent claim by way of a case or controversy dismissal under Super Sack and Spectronics further highlights that FDA's decision on Teva's ANDA was based on an unreasonably narrow statutory interpretation.

8

FDA has failed to offer any legally sufficient justification for its refusal to make Teva's ticlopidine ANDA effective as of February 10, 1999, and accordingly the Court should order FDA to immediately make Teva's ANDA effective.

## II.

## SYNTEX'S OPPOSITION PROVIDES NO BASIS TO DENY THE RELIEF TEVA REQUESTS

Syntex acknowledges that the Court of Appeals supported Teva's position in this case, necessarily rejecting the reasoning provided in FDA's briefs in this case, see Syntex Opp. at 3, and thus based its opposition to Teva's renewed motion for injunctive relief primarily on the belief that FDA would provide a new and different basis for the agency's refusal to grant effective approval of Teva's ANDA. Id. at 4 (suggesting that "there is absolutely no basis to conclude that it is likely that FDA will be unable to provide an explanation that would be upheld, in light of the highly deferential Chevron standard of review."). Syntex even suggested several arguments it hoped FDA would make in support of the agency's decision in this case, id. at 4-6.

However, as Syntex also acknowledges, those arguments may only be considered if they are in fact the agency's reasons for its decision. FDA did not originally base its decision on any of Syntex's proposed rationales, nor has the agency adopted any such reasoning at this stage of the case. Rather, FDA's explanation merely reiterated old arguments that have been thoroughly parsed and resolved by the Court of Appeals, all in Teva's favor.

9

Finally, Syntex also acknowledges that once FDA provided its explanation of its decision on Teva's ANDA, (which FDA provided with the agency's response to Teva renewed motion), then a final decision on the merits would be appropriate. Syntex Opp. at 7. Because FDA has proffered no new reasons that have not been fully evaluated by the Court of Appeals, Teva has adopted Syntex's suggestion and will move to consolidate the hearing on the present motions with the determination of the merits pursuant to Fed. R. Civ. P. 65(a)(2). Syntex has been contacted with respect to that motion but does not take a position at this time. FDA, Purepac, and Invamed also have not yet taken a position. TorPharm opposes a Rule 65(a)(2) consolidation.

## III.

## TORPHARM'S OPPOSITION PROVIDES NO BASIS TO DENY THE INJUNCTIVE RELIEF TEVA REQUESTS

TorPharm makes two principal arguments in its effort to further delay Teva's entry into the generic ticlopidine market: (1) that the California court decision did not have preclusive effect on Syntex's ability to sue Teva for patent infringement, TorPharm Opp. at 8-16; and (2) that the balance of harms and the public interest do not support Teva's requested injunction, id. at 17-23. These arguments are unavailing to TorPharm. Specifically, TorPharm cannot prevail on its claim that the California court decision does not have preclusive effect because (1) the Court of Appeals decision has squarely held that "the California dismissal supports estoppel to the same effect as the grant of partial summary judgment [in Glaxo v. Boehringer]," and (2) the FDA does not assert that the California court decision is not preclusive, but rather simply that the agency was

10

unwilling to evaluate the preclusive effect of that decision at the time it ruled on Teva's request for a February 10, 1999 effective date for its ticlopidine ANDA.

TorPharm's arguments regarding the balance of harms and the public interest are irrelevant to the ultimate merits of the case, which should be decided concurrently with the present motion for preliminary relief, pursuant to Fed. R. Civ. P. 65(a)(2). In any event, TorPharm's harms analysis is based in large part on misrepresentations of fact, and is otherwise insufficient to overcome Teva's showings on all four prongs of the preliminary injunction test.

A. **This Court May Not Accept TorPharm's Request To Disregard The Court Of Appeals' Holding That The California Court Decision Has Preclusive Effect With Respect To The Patent**

TorPharm argues at length that the California court decision in Teva v. Syntex cannot be a court decision trigger because the decision does not have preclusive effect with respect to Syntex's ability to enforce the patent against Teva. TorPharm Opp. at 8-16. TorPharm's argument, however, is directly counter to the Court of Appeals' holding that the California dismissal has preclusive effect, see Teva at *5 - *6, a holding that cannot be changed by this Court on remand.

Moreover, TorPharm's argument is based on a strained parsing of the underlying facts and the legal bases upon which the Court of Appeals concluded that the California court decision has preclusive effect. Specifically, TorPharm argues that it is only Syntex's concession of Teva's non-infringement that has preclusive effect, even though, as the Court of Appeals discussed at length, and as TorPharm itself admits, the concession formed the necessary evidentiary basis for the court's decision dismissing

11

Teva's declaratory judgment action. Teva, 1999 WL 506959 at *5 - *6. Although TorPharm spends several pages of its opposition seeking to support its contention that "it is Roche's letter, not the court decision dismissing the case that has preclusive effect," TorPharm Opp. at 12, TorPharm's argument fails for the simple reason that under its proposed analysis, the concession of non-infringement by Glaxo in Glaxo v. Boehringer, would also be the only preclusive element of that case, and FDA would have been wrong to determine that the court's subsequent partial summary judgment order (which was based exclusively on that concession) was a court decision under 21 U.S.C. § 355(j)(5)(B)(iv). However, TorPharm has not suggested that the Boehringer court decision was not a triggering court decision, and in the face of this inconsistency, TorPharm's argument falls flat.

B. **There Should Be No Remand To FDA**

Torpharm urges this Court to remand this case to FDA so that "FDA could then outline its tentative views [about whether Torpharm is entitled to 180 day exclusivity] and receive comments from all interested parties--not just those who have been granted intervenor status in this litigation--before formulating a final view that could be tested in this Court". Torpharm Mem. at 7-8. TorPharm's request is self-serving and would achieve no useful purpose in light of FDA's complete explanation for its decision in this case. Indeed, neither of TorPharm's co-defendants, FDA and Syntex have sought remand to FDA, or suggest that there is need for any further explanation from the agency on this issue. Moreover, in light of FDA's explanation, there is nothing more that FDA could

possibly add to its explanation that would not be mere post-hoc rationalization, which of course would be entitled to little credence.[4]

C.  **TorPharm's Balance Of The Harms/Public Interest Arguments Are Irrelevant To The Court's Final Determination On The Merits, And They Are Also Insufficient To Defeat Preliminary Injunctive Relief**

Teva is today filing a motion under Fed. R. Civ. P. 65(a)(2) to consolidate the merits determination with the hearing on Teva's renewed motion for preliminary injunction. The basis for that motion is that all legal and factual issues necessary to a final determination of this case are now fully developed and are before the court in the parties' submissions on Teva's renewed motion. Thus there would be nothing new for the Court to consider in a future hearing on the merits, and this case can be finally resolved without further briefing. Of course, because this is an Administrative Procedure Act case that must be decided on the merits of the competing statutory interpretations, the factual issues necessary in deciding a preliminary injunction motion – i.e. of the balance of harms between and among the parties and the public – are irrelevant to the ultimate determination. Accordingly, TorPharm's extended arguments regarding its alleged investments and expectations, the relative size of the companies, Teva's alleged lack of irreparable harm, and the preposterous claim that the public is not injured by the lack of greater generic competition for ticlopidine, are of no consequence to the ultimate decision

---

[4]  If this Court were to remand this case to FDA for yet another round of explanation, the Court should also vacate the FDA decision that TorPharm's 180-day exclusivity has not yet expired, because the agency has not adopted an intelligible decisional standard. See generally, Airmark Corp. v. F.A.A., 758 F.2d 685, 695 (D.C. Cir. 1985); General Elec. Co. v. United States Dep't of Commerce, 128 F.3d 767, 775 (D.C. Cir. 1997); and Kidney Center of Hollywood v. Shalala, 133 F.3d 78, 87-88 (D.C. Cir. 1998).

13

here. Nevertheless, Teva feels compelled to clarify for the record, several misleading impressions imparted by TorPharm's arguments on the preliminary injunction factors.

First, TorPharm argues that it will be harmed by the effective approval of Teva's ticlopidine ANDA because "TorPharm and Apotex have worked for eight years with the expectation that TorPharm would receive the reward Congress intended for innovator [sic] of generic drug products – namely 180 days of exclusivity." TorPharm Opp. at 22. This argument is based on a serious misrepresentation of fact, because until the Mova decision in April 1998, FDA regulations only provided the 180-day exclusivity period to first Paragraph IV ANDA applicants who had been sued by the patent holder within 45 days of their Paragraph IV Certification, and had successfully defended that patent infringement lawsuit. See Mova v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998). TorPharm was never sued by Syntex in response to TorPharm's Paragraph IV Certification, so TorPharm could never have had any good faith basis to believe that it would receive any exclusivity period for ticlopidine until less than a year before Teva brought this action.

Moreover, the corollary to this fact is that until Mova, Teva, Purepac, and all other ticlopidine applicants operated under the certainty that they would receive effective approval as soon as their respective ANDAs had completed final review at the agency because neither TorPharm nor any other applicant had been sued by Syntex as a result of their Paragraph IV Certifications. Thus, but for Mova, Teva and Purepac would have been on the market at least a year before TorPharm and TorPharm would have had no basis to object about its allegedly dashed exclusivity expectations.

In addition, TorPharm's assertion that the FDA's request that generic ticlopidine applicants develop and implement a post-approval education program means that Teva

14

could not have received effective approval prior to July 27, 1999, TorPharm Opp. at 19, is simply false, because it was not until June 15, 1999 that FDA even made this request of Teva and other applicants. As of February 10, 1999 there was no FDA request for such post-approval programs, and Teva would have been fully eligible to receive effective approval on that date, but for the Court's denial of Teva's initial motions for a TRO and preliminary injunction.

Finally, neither TorPharm, FDA or Syntex has refuted that fact that under this Court's January ruling, the balance of harms considerations, if even necessary, must be judged in a light much more favorable to Teva in light of Teva's substantial likelihood of success on the merits. Thus, even if Teva's initial showing of irreparable harm was insufficient in light of the Court's view that Teva was unlikely to succeed, that showing is now more than sufficient in light of the Court of Appeals' ruling, and the Court should grant Teva's requested injunctive relief.

## CONCLUSION

For all of the foregoing reasons, and the reasons previously made known to this Court, Teva is entitled to issuance of an Order that requires FDA to make Teva's tentatively approved ANDA for ticlopidine effective immediately.

Dated: August 4, 1999

Respectfully submitted,

*[signature]*

James N. Czaban (D.C. Bar #459211)
Geoffrey M. Levitt (D.C. Bar #358633)
David M. Malone (D.C. Bar #125047)

Venable, Baetjer, Howard & Civiletti LLP
1201 New York Avenue, NW
Suite 1000
Washington, D.C. 20005-3917
202/962-4800 (phone)
202/962-8300 (fax)

Attorneys for Teva Pharmaceuticals USA, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August, 1999, copies of the foregoing Reply Memorandum of Teva Pharmaceuticals USA, Inc. In Support of Application For Temporary Restraining Order, And Motion for Preliminary And Permanent Injunctions were served by hand delivery and facsimile on the following persons:

Eugene Thirolf
Drake Cutini
Department of Justice
Office of Consumer Litigation
National Place Building
1331 Pennsylvania Avenue, N.W.
Room 950 N
Washington, D.C. 20004
**Counsel for Federal Defendants**

Margaret Jane Porter
Anne Miller
United Sates Food and Drug
Administration
5600 Fishers Lane
Room 671
Rockville, MD 20857
**Counsel for Federal Defendants**

James D. Miller
Eugene M. Pfeifer
Peter M. Todaro
King & Spalding
1730 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
**Counsel for Torpharm, a Division of Apotex, Inc.**

Donald O. Beers
David E. Korn
Nancy S. Lapidus
Arnold & Porter
555 12th Street, N.W.
Washington, D.C. 20006
**Counsel for Hoffman-La Roche Inc. and Syntex (U.S.A.) Inc.**

Robert A. Dormer
James R. Phelps
Douglas B. Farquhar
Frances K. Wu
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W.
Washington, D.C. 20005
**Counsel for Purepac Pharmaceutical Co.**

John R. Fleder
Olsson, Frank and Weeda, P.C.
1400 Sixteenth St., NW
Suite 400
Washington, DC 20036
**Counsel for Invamed, Inc.**

_____
James N. Czaban