TEVA PHARMACEUTICALS USA, INC.  v. FDA, Case No. 05-1469 (JDB)

# EXHIBIT 7:

Reply Brief of Appellant Teva Pharmaceuticals USA, Inc. in *Teva Pharmaceuticals USA, Inc. v. FDA*, nos. 99-5022, -5027 (D.C. Cir.)

("Teva *Teva I* D.C. Circuit Reply Br.")

ORAL ARGUMENT UNSCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

# Nos. 99-5022, 99-5027

TEVA PHARMACEUTICALS USA, INC.,
Plaintiff/Appellant

v.

UNITED STATES FOOD AND DRUG ADMINISTRATION,
et al.,
Defendant/Appellees.

APPEAL FROM DENIAL OF PRELIMINARY INJUNCTIVE
RELIEF BY THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REPLY BRIEF OF APPELLANT
TEVA PHARMACEUTICALS USA, INC.

James N. Czaban
Geoffrey M. Levitt
David M. Malone (Counsel of Record)

VENABLE, BAETJER, HOWARD & CIVILETTI, LLP
1201 New York Avenue, NW
Suite 1000
Washington, D.C. 20005-3917
202/962-4800

ATTORNEYS FOR APPELLANT
TEVA PHARMACEUTICALS USA, INC.

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES ................................................................................iii

GLOSSARY .............................................................................................................v

SUMMARY OF ARGUMENT ........................................................................... 1

ARGUMENT........................................................................................................ 2

I.    THE LOWER COURT ERRONEOUSLY CONCLUDED THAT TEVA
      HAD NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE
      MERITS................................................................................................... 2

      A.    FDA's Refusal To Start The Running Of Teva's 180-Day Delay Clock
            For Ticlopidine Is Arbitrary And Capricious And Cannot Be Upheld
            Because The Agency Has Failed To Demonstrate A Reasonable Basis
            For Its Action ................................................................................. 2

      B.    FDA Erroneously Concluded That The Dismissal Of Teva's Hatch-
            Waxman Declaratory Judgment Action Did Not Satisfy The Court
            Decision Trigger ............................................................................ 4

      C.    FDA's Decision Was Arbitrary and Capricious, And Is Not Entitled To
            Deference, Because It Directly Conflicts With The Agency's Prior
            Decision Under Equivalent Circumstances ............................... 8

      D.    The Pendency Of An Agency Rulemaking On Topics Related
            To This Case Does Not Excuse FDA's Arbitrary And Capricious
            Decision In This Case ................................................................... 12

      E.    The Mova And Purepac Cases Do Not Support FDA's Interpretation... 14

      F.    Roche And TorPharm Misrepresent The Plain Meaning And
            Underlying Purposes Of The 180-Day Delay Period ............................ 16

II.   TEVA SATISFIES THE REMAINING PREREQUISITES FOR
      PRELIMINARY INJUNCTIVE RELIEF ........................................ 17

A.   Teva Is Now Being, And Will Continue To Be,
Irreparably Injured Without the Requested Injunctive Relief................ 17

B.   Teva Has Demonstrated That The Balance Of Harms Weighs
Heavily In Its Favor ........................................................................... 19

C.   A Preliminary Injunction Would Be In The Public Interest.............. 19

CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

Abbott Laboratories v. Young, 920 F.2d 984 (D.C. Cir. 1990),
cert. denied, 502 U.S. 819 (1991) ...................................................................3

Airmark Corp. v. FAA, 758 F.2d 685 (D.C. Cir. 1985) .....................................8

Bristol-Meyers Squibb Co. v. Shalala, 923 F.Supp. 212 (D.D.C. 1996) ...........18

Bracco Diagnostics, Inc. v. Shalala, 963 F.Supp. 20 (D.D.C. 1997) ............8, 18

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467
U.S. 837 (1984).............................................................................................2, 3

Freeman Engineering Associates v. Federal Communications Commission,
103 F.3d 169 (D.C. Cir. 1997) ........................................................................8

Glaxo v. Boehringer Ingelheim Corp., No. 3:95-CV-01342
(D.Conn. Oct. 7, 1996)................................................................................8, 9

Glaxo v. Boehringer, 962 F.Supp. 295 (D.Conn 1997) .............................10, 11

Granutec, Inc. v. Shalala, 139 F.3d 889 (table), 1998 WL 153410
(4th Cir. April 3, 1998) ...............................................................10, 12, 16 19

Independent Petroleum Association of America v. Babbitt, 92
F.3d 1248 (D.C. Cir. 1996) ..............................................................................8

In Re Barr Laboratories, Inc., 930 F.2d 72 (D.C. Cir. 1991), cert. denied, 502
U.S. 906 (1991)..............................................................................................20

Mead Johnson Pharmacuetical Group v. Bowen, 655 F.Supp. 53 (D.D.C. 1986),
aff'd, 838 F.2d 1332 (D.C. Cir. 1988) ...........................................................18

Marco Sales Co. v. FTC, 453 F.2d 1 (2d Cir. 1971)..........................................8

Mova Pharmaceutical Corp. v. Shalala, 955 F.Supp. 128 (D.D.C. 1997) .........18

*Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998) ............... passim

Purepac Pharmaceutical Co. v. Friedman, No. 98-5334 (D.C. Cir. Dec. 29, 1998), 1998
WL 898347 (D.C. Cir.)............................................................................14, 15

SEC v. Chenery Corp., 332 U.S. 194 (1947)...............................................12, 15

*Spectronics Corp. v. H.B. Fuller Co., Inc., 940 F.2d 631 (Fed. Cir. 1991) .........5, 6, 7, 10

*Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054
(Fed. Cir. 1995).................................................................................................6, 10

Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998).................................7

*Teva Pharmaceuticals USA Inc., v. Syntex (U.S.A.) Inc., No. C98-02314 CAL
(N.D.Cal August 14, 1998) ...................................................................... passim

United States v. Diapulse Corporation of America, 748 F.2d 56
(2d Cir. 1984)...............................................................................................8

## Statutes and Regulations

*21 U.S.C. § 355(j)(5)(B)(iv)(II)............................................................... passim

*Authorities on which we chiefly rely are marked with asterisks.

## GLOSSARY

### ANDA

Abbreviated New Drug Application.

### Commercial Marketing Trigger

A statutory provision pursuant to which a Paragraph IV ANDA applicant's 180-Day Delay Period starts on the date that a previous Paragraph IV ANDA applicant first commercially markets its version of the drug at issue. See 21 U.S.C. § 355(j)(5)(B)(iv)(I).

### Court Decision Trigger

A statutory provision pursuant to which a Paragraph IV ANDA applicant's 180-Day Delay Period starts on the date of a qualifying court decision. FDA's interpretation of this provision is the underlying issue in this appeal. See 21 U.S.C. § 355(j)(5)(B)(iv)(II).

### FDA

The United States Food and Drug Administration.

### FFDCA

Federal Food, Drug, and Cosmetic Act.

### Hatch-Waxman Amendments

The Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984). This Act established the current system for review and approval of generic drug applications, including the patent challenge system involved in this case.

### Hatch-Waxman Declaratory Judgment Action

A declaratory judgment action brought by a Paragraph IV ANDA applicant against the holder of a Listed Patent, seeking judicial resolution of the claims of patent non-infringement, invalidity, or unenforceability made in the applicant's Paragraph IV Certification. See 21 U.S.C. § 355(j)(5)(B)(iii).

v

**Listed Patent**

A patent covering an FDA-approved drug substance or an approved method of using a drug, which is listed in FDA's publication <u>Approved Drug Products With Therapeutic Equivalence Evaluations</u>, also known as the "Orange Book." See 21 U.S.C. § 355(b)(1).

**Paragraph IV ANDA**

An ANDA that seeks FDA approval to market a drug prior to the expiration date of a listed patent covering the drug. <u>See</u> 21 U.S.C. §§ 355(j)(2)(A)(vii)(IV) and 355(j)(2)(B)(ii). Paragraph IV ANDAs, by definition, must contain a Paragraph IV Certification. The filing of a Paragraph IV ANDA is an act of patent infringement that establishes subject matter jurisdiction for federal courts to hear and decide a Paragraph IV Infringement Action or a Hatch-Waxman Declaratory Judgment Action. <u>See</u> 35 U.S.C. § 271(e)(2).

**Paragraph IV Certification**

A certification submitted to FDA as part of an ANDA, stating that a listed patent covering the drug is invalid, unenforceable, or will not be infringed by the future commercial marketing of the generic version for which the ANDA was submitted. <u>See</u> 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

**Paragraph IV Infringement Action**

A special type of patent infringement lawsuit which may only be brought by a holder of a Listed Patent within 45 days of its receipt of a Paragraph IV ANDA applicant's Paragraph IV Notification. <u>See</u> 21 U.S.C. § 355(j)(5)(B)(iii).

**Paragraph IV Notification**

A detailed explanation of the factual and legal bases supporting the claims made in a Paragraph IV Certification. A Paragraph IV Notification must be provided to the holder of the listed patent, and the holder of the approved full New Drug Application for the drug for which the ANDA was submitted. <u>See</u> 21 U.S.C. § 355(j)(2)(B).

**180-Day Delay Period, or "Generic Exclusivity Period"**

The delay period to be imposed upon the effective date of all Paragraph IV ANDAs for which there exists a previously filed Paragraph IV ANDA for the same drug. <u>See</u> 21 U.S.C. § 355(j)(5)(B)(iv). (Because this period may be started (or "triggered"), and may even expire, before the previous applicant has begun marketing, the common term "generic exclusivity period" is a misnomer.)

## SUMARY OF ARGUMENT

FDA has failed to demonstrate a reasonable basis for its decision not to activate the Court Decision Trigger based on the case or controversy dismissal of Teva's Hatch-Waxman Declaratory Judgment Action. That decision is in fact unreasonable and impermissible because it: (1) conflicts with established Federal Circuit jurisprudence that treats case or controversy dismissals based upon concessions of non-infringement as the substantive equivalent of decisions on the merits; (2) is inconsistent with FDA's recent 180-Day Delay Period decision in a factually indistinguishable case; and (3) will discourage cooperative resolution of Paragraph IV patent disputes. Moreover, FDA's choice of a "case-by-case" adjudicatory model for deciding 180-Day Delay Period issues pending a later rulemaking does not preclude the agency from adopting Teva's reasonable interpretation of the ambiguous statutory provision at issue here, and the agency's unreasonable decisions under its adjudicatory model are not exempt from review and reversal by the courts merely because the agency plans to conduct future rulemaking. Finally, because Teva has satisfied all four of the preliminary injunction factors, the district court's denial of injunctive relief was an abuse of discretion and should be reversed.

## ARGUMENT

I.  **THE LOWER COURT ERRONEOUSLY CONCLUDED THAT TEVA HAD NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS**

      A.  **FDA's Refusal To Start The Running Of Teva's 180-Day Delay Clock For Ticlopidine Is Arbitrary And Capricious And Cannot Be Upheld Because The Agency Has Failed To Demonstrate A Reasonable Basis For Its Action**

Teva has demonstrated in its Opening Brief that the requirements of 21 U.S.C. § 355(j)(5)(B)(iv)(II) (the "Court Decision Trigger") were satisfied by the August 14, 1998 "case or controversy" dismissal of its Hatch-Waxman Declaratory Judgment Action against Syntex based on Syntex's express concession of noninfringement and its promise not to enforce its ticlopidine patent against Teva. Teva Pharmaceuticals USA, Inc. v. Syntex (U.S.A.) Inc., No. C98-02314 CAL (N.D. Cal. Aug. 14, 1998). In its response brief, FDA does not dispute that the statute supports Teva's conclusion, but instead defends its decision not to start Teva's 180-Day Delay Period on the narrow ground that application of Teva's interpretation in this case was not "required" by the "plain language" of the statute. FDA Brief at 14, 20-21. FDA then makes the requisite call for deference to its decision under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). FDA Brief at 22.

FDA misstates the standard of review by arguing that Teva must show that Teva's interpretation was "required" by the plain language of the statute. As in any administrative review case, if the statute clearly dictates a required result, that is the end of the matter because the agency has no discretion to vary from that result. However, where, as here, the statute does not unambiguously mandate a specific result, the

agency's decision must be based upon a "reasonable" interpretation as evaluated by examining the "fit" between the agency's interpretation and the statutory purposes and language. Chevron, 467 U.S. at 845; Abbott Laboratories v. Young, 920 F.2d 984, 988 (D.C. Cir. 1990), cert. denied, 502 U.S. 819 (1991). Here, because FDA concedes that the statutory provisions do not unambiguously dictate the result the agency reached, FDA Brief at 20 ("FDA acknowledges that its current interpretation . . . is narrower than the statute may be able to support"), the issue is not whether Teva's interpretation is unambiguously required by the "plain language" of the statute, but rather simply whether FDA's contrary decision was reasonable. [1] Under the circumstances of this case, FDA's refusal to start Teva's 180-Day Delay Period was unreasonable and impermissible, and under the language, structure, and purpose of the statutory provision, it is reasonable, permissible, and indeed necessary to have started Teva's 180-day clock on August 14, 1998. Therefore, the FDA's decision, and the lower court's order denying injunctive relief, should be reversed.

Neither FDA nor the private Appellees have disputed Teva's fundamental showing that FDA's action was unreasonable because it (1) renders the statutory Hatch-Waxman Declaratory Judgment Action Trigger effectively inoperative, and (2) allows patent holders to maintain monopoly market position using invalid, unenforceable, and non-infringed patents (the types of patents the statutory Paragraph IV provisions were specifically designed to defeat) by expressly admitting that those same patents are invalid, unenforceable, or not infringed. See Teva Opening Brief at 14-20. Nor did any of the Appellees dispute the district court's conclusion that FDA's flawed interpretation

---

[1]    Indeed, FDA's logic is circular, because the agency first concedes that the statute is ambiguous, thus allowing Teva's interpretation, but then argues that to prevail Teva must demonstrate that the statute is

allows patent holders to "artificially" extend patent terms by "manipulating" the statutory

mechanisms.  See Teva Opening Brief at 20; JA 159.  Instead they dwell on tangential

issues, and ineffectually seek to distinguish the pertinent caselaw and agency precedents.

Appellees fail to demonstrate that FDA's decision in this case was reasonable.

Accordingly, the Court should reject FDA's approach in favor of Teva's interpretation,

and reverse the district court's decision below.

B.    **FDA Erroneously Concluded That The Dismissal
Of Teva's Hatch-Waxman Declaratory Judgment
Action Did Not Satisfy The Court Decision Trigger**

Any discussion of whether the Court Decision Trigger applies to a particular

"decision of a court" must start with a clear understanding of that decision itself.  Here,

the court decision in question was the August 14, 1998 dismissal by the U.S. District

Court for the Northern District of California of Teva's Hatch-Waxman Declaratory

Judgment Action "based on all of the evidence," JA 243, which evidence, the record

shows, consisted of Syntex's express concession of non-infringement, as well as its

express promise not to enforce the ticlopidine patent against Teva.  These factual

predicates to the dismissal first arose after Teva filed its action, in Syntex's June 8, 1998

letter to Teva, and were repeated and elaborated upon in the sworn declaration of Roche's

Corporate Counsel John Parise "expressly confirming that based on the information Teva

provided to [Syntex/Roche] on October 8, 1997 disclosing Teva's ticlopidine

hydrochloride formulation, Syntex and Roche would make no claim of infringement of

the '592 patent against Teva." JA 217.

---

unambiguous with respect to the same issue.

Based on its review of these evidentiary facts, the court ruled that (1) Teva "lacks[2] a reasonable apprehension of suit by Syntex" for infringement of the ticlopidine patent; (2) "[t]here is no justiciable case or controversy between the parties concerning any infringement by Teva" of the ticlopidine patent; and (3) the court therefore "lacks subject matter jurisdiction over the action." JA 243.

All parties and the court below agree that the legal effect of this court decision is to render the patent unenforceable against Teva. JA 159. Accordingly, based on this court decision, Teva may market its ticlopidine product without any legal exposure to Roche/Syntex for infringement of the relevant patent. The legal effect of the dismissal, as between Teva and Roche/Syntex, is therefore precisely the same as that of a fully litigated declaratory judgment "on the merits" that the Roche/Syntex patent is not infringed by, and is unenforceable against, Teva's ticlopidine product. It was inherently unreasonable for FDA to base its refusal to start Teva's 180-day clock on the form of the California court's decision, rather than on its substantive legal effect.

Established Federal Circuit jurisprudence also squarely supports the conclusion that the dismissal of Teva's Hatch-Waxman Declaratory Judgment Action should be treated as a decision holding the patent to be not infringed by Teva's ticlopidine product, and unenforceable against Teva, for purposes of the FFDCA's Court Decision Trigger. In Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631 (Fed. Cir. 1991), cert. denied, 502 U.S. 1013 (1991), the Federal Circuit affirmed the dismissal of a declaratory judgment action alleging patent noninfringement and invalidity based on the patent holder's filing

---

[2]      Here, the court specifically struck out the words "lacked and" from the final order (which was drafted entirely by counsel for Syntex, JA 212-213), thus reflecting the fact that the evidentiary bases for

of a "Statement of Non Liability" representing to the trial court that the declaratory

judgment plaintiff, Spectronics Corporation, "has no liability to Defendants . . . for

infringement of [the patent at issue], and Defendants . . . will not sue Spectronics for

infringement of [the patent]," 940 F.2d at 633, and the acknowledgement by defendant's

counsel that "in view of the statement of nonliability, the [patent claims in question]

could never be enforced against Spectronics." Id. at 636 (emphasis added).

  The legal principle established by such a dismissal, according to the Federal

Circuit, is that "having requested a declaration of non-infringement. . . Spectronics for all

practical purposes has won the case pleaded in its complaint." Id. (emphasis added).

Inasmuch as what Spectronics sought in its complaint was a finding of noninfringement

or invalidity, this statement by the Federal Circuit necessarily means that the dismissal of

that complaint based on defendant's statement of nonliability was, by definition,

equivalent to a decision holding the patent invalid or not infringed.

  This conclusion is confirmed by the Federal Circuit's subsequent decision in

Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995), cert.

denied by Chase Packaging Corp. v. Super Sack Mfg. Corp., 516 U.S. 1093 (1996).

There, the patentee, Super Sack, brought suit against Chase for patent infringement, and

Chase counterclaimed for a declaratory judgment of noninfringement and invalidity.

Thereafter, Super Sack relinquished its infringement claim against Chase and

unconditionally promised not to sue Chase with respect to the products at issue. Based

on these actions, the trial court granted, on case or controversy grounds, Super Sack's

motion to dismiss. Chase appealed, but the Federal Circuit affirmed, holding that there

---

the dismissal arose after Teva filed its complaint, and essentially nullifying Roche's argument that Teva's
declaratory judgment action was frivolous.

was no longer any case or controversy between the parties because "Super Sack is forever estopped by its counsel's statement of nonliability . . . from asserting liability against Chase in connection with" the products at issue. Id. at 1059. In other words, the Federal Circuit gave binding effect to the dismissal so as to render the Super Sack patents unenforceable against Chase.[3]

These cases clearly establish that it was unreasonable for FDA to conclude that the dismissal of Teva's declaratory judgment action did not qualify as a "decision of a court. . . holding the [ticlopidine] patent to be invalid. . . not infringed" or unenforceable as against Teva for purposes of the Court Decision Trigger. FDA's conclusion is directly at odds with established patent jurisprudence to the effect that, under the circumstances present here, there is no meaningful difference in legal effect between (1) a court decision dismissing a declaratory judgment action on case or controversy grounds based on the patent holder's concession of noninfringement and promise not to enforce the patent, and (2) a court decision "on the merits" that a patent is not infringed, and/or is unenforceable, at a later stage of the litigation. FDA's reliance on general law treatises and non-patent cases such as Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998) does not overcome the fact that under the dual regulatory/patent purposes of Hatch-Waxman's Paragraph IV scheme, Teva has "for all practical purposes" established that the ticlopidine patent will not be infringed by its ticlopidine product, and that the patent is unenforceable against it. See Spectronics, 940 F.2d at 636.

---

[3]    Roche and TorPharm assert that the proper patent law term of art for the legal effect of the dismissal of Teva's Hatch-Waxman Declaratory Judgment is "estoppel" rather than "unenforceability." This assertion, whether intrinsically accurate or not, is an empty exercise in semantics. The real point is that as a result of the dismissal of Teva's declaratory judgment action based on Roche/Syntex's explicit acknowledgement of noninfringement, Roche/Syntex cannot now enforce the ticlopidine patent against Teva – i.e., in plain English, the patent is unenforceable against Teva. See JA 159 (Order below).

C.    **FDA's Decision Was Arbitrary and Capricious, And Is Not Entitled To Deference, Because It Directly Conflicts With The Agency's Prior Decision Under Equivalent Circumstances**

As Teva showed in its Opening Brief, FDA's refusal to start Teva's 180-Day Delay Period is also unreasonable because it is contrary to the agency's prior decision to activate the Court Decision Trigger in response to the claim-dispositive "court decision" in Glaxo, Inc. v. Boehringer Ingelheim Corp., No. 3:95-CV-01342 (D. Conn. Oct. 7, 1996) even though, just as in Teva v. Syntex, that court decision was directly based upon the patent holder's express concession of non-infringement. See Teva Opening Brief at 25-27. It is well established that "an agency may not 'treat like cases differently.'" Freeman Engineering Associates v. Federal Communications Commission, 103 F.3d 169, 178 (D.C. Cir. 1997) (quoting Airmark Corp. v. FAA, 758 F.2d 685, 691 (D.C. Cir. 1985). See also United States v. Diapulse Corporation of America, 748 F.2d 56, 62 (2d Cir. 1984) (FDA may "not 'grant to one person the right to do that which it denies to another similarly situated.'") (quoting Marco Sales Co. v. FTC, 453 F.2d 1, 7 (2d Cir. 1971)); Bracco Diagnostics, Inc. v. Shalala, 963 F.Supp. 20, 27 (D.D.C. 1997) ("Our court of appeals has repeatedly held that 'an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.'") (quoting Independent Petroleum Association of America v. Babbitt, 92 F.3d 1248 (D.C.Cir. 1996)).

FDA tries to explain away its disparate treatment of these two substantively equivalent court decisions by arguing that "the court 'decision' in [Glaxo v. Boehringer]

was a partial summary judgment, followed by the eventual entry of a final judgment of non-infringement. Thus, the 'decision of a court' in [Boehringer] was a final decision on the merits of the case." FDA Brief at 21-23 (citation omitted). However, the facts of the Boehringer case show that FDA's distinction is fallacious, and that the similarities between the two cases are even stronger than the respective one-page orders suggest.

First, FDA's claim that its disparate decision making is justified because the order dismissing Teva's complaint "says nothing about the validity, infringement, or enforceability of the patent," FDA Brief at 22, is flawed because the order in the Boehringer case also says nothing about the validity, infringement, or enforceability of the patent. The Boehringer court order merely noted that a motion for summary judgment had been filed, and, rather than concluding "on the merits" that there was no infringement, granted the motion "based on [Glaxo's] express concession" of non-infringement. Teva Brief, Addendum # 3. Likewise, the dismissal in Teva was "based on all of the evidence," JA 243, which consisted of Syntex's express concession of non-infringement, as well as its express promise not to enforce the patent against Teva. See, e.g., JA 217 (Parise declaration).

Second, and more importantly, FDA's suggestion that the relevant order in Glaxo v. Boehringer differs from the order in Teva v. Syntex by reason of being a "decision on the merits" is simply not supported by the facts. In both cases the dispositive concessions of non-infringement upon which the courts relied were the consequence of a scientific examination of the generic version of the drug that revealed that there was no infringement. In Boehringer, Glaxo made its concession of non-infringement after court-appointed experts determined that Boehringer's product did not contain the allegedly

infringing form of the drug at issue. The court, however, never specifically adopted the findings of the scientific experts, but based its decision solely on Glaxo's concession of non-infringement.[4]  See Glaxo v. Boehringer, 962 F.Supp. 295, 296 n. 1 (D. Conn. 1997), aff'd, 119 F.3d 14 (Fed. Cir. 1997); Teva Brief Addendum #3.

In Teva v. Syntex, the court specifically considered the evidence (presented by Syntex itself) that Syntex's concession of non-infringement and promise of non-enforcement came after Syntex's own examination of Teva's ticlopidine formulation and product samples revealed that there would be no infringement by Teva's product.  See JA 205-206, 216, 220-221, 226-233, 238.  The only difference between the two cases is that in Glaxo v. Boehringer, the scientific examination that led to the concession of non-infringement occurred well into the active litigation phase of the case, whereas in Teva v. Syntex, the scientific examination that led to the concession of non-infringement took place before any litigation, allowing Syntex to seek final disposition under the guise of a case or controversy dismissal.[5]  Thus, the Teva v. Syntex decision was as much a decision "on the merits" as was Glaxo v. Boehringer, and should have been treated as such by FDA. [6]

---

[4]      When the October 7, 1996 summary judgment order and another partial summary disposition in Glaxo v. Boehringer were later made "final" for purposes of allowing an interlocutory appeal, the court did not make any factual findings respecting the October order, 962 F.Supp. 295, and Glaxo did not appeal that order. See Granutec v. Shalala,1998 WL 153410 at **5.

[5]      The fact that the court in Glaxo v. Boehringer could have disposed of the relevant patent claim by way of a case or controversy dismissal under Super Sack and Spectronics further highlights that FDA's decision on Teva's ANDA was based on an unreasonably narrow statutory interpretation.

[6]      FDA's alternative argument that its position in the ranitidine situation is "irrelevant" in this case because after Mova and Granutec the agency "changed its approach to these issues, as stated in its [June 1998] Guidance" on 180-Day Delay Issues, FDA Brief at 22, makes no sense in light of the fact that the Guidance actually reaffirmed the approach FDA had taken in the ranitidine situation, which was affirmed by Granutec. See JA at 252 ("[a] court decision that can trigger the beginning of exclusivity is a decision of any court . . . in which the court finds that the patent is invalid or not infringed") (emphasis added).

In this respect, FDA's failure to treat the <u>Boehringer</u> and <u>Teva</u> decisions alike will have significant adverse effects on the orderly administration of justice in Paragraph IV ANDA cases because it will serve as a powerful incentive for Paragraph IV ANDA applicants not to cooperate with patent holder requests that may otherwise serve to prevent unnecessary litigation. The only reason the California court was able to resolve the <u>Teva v. Syntex</u> case at the pleading stage of the case by way of a case or controversy dismissal was that Teva – at Roche's request – had voluntarily provided Roche with its master ticlopidine formulation as well as actual product samples, even though nothing in the FFDCA requires a Paragraph IV ANDA applicant to cooperate with a patent holder's requests for such information. <u>See</u> JA 216 (Parise Decl. ¶¶ 8-9); 220 (Declaration of Roche patent counsel John Vassil ¶¶3-5); 227 (letter from Teva to Roche disclosing Teva's ticlopidine formulation (redacted)).

Under FDA's approach, Teva would have been well-served by refusing to cooperate in this manner. Teva could then have dragged out its declaratory judgment action well into the discovery phase before it finally produced precisely the information that prompted Syntex's concession of non-infringement. Teva could then have obtained a court order using the same language as the order in <u>Glaxo v. Boehringer</u>, and FDA would have treated the decision as a court decision trigger, even though the underlying substantive merits would be identical to those of the actual decision at issue here. Clearly an FDA policy that encourages such behavior for no productive purpose cannot be deemed reasonable, especially in light of the underlying goal of the statutory Paragraph IV mechanism to speed the approval of ANDAs.

**D.    The Pendency Of An Agency Rulemaking
On Topics Related To This Case Does Not Excuse
FDA's Arbitrary And Capricious Decision In This Case**

FDA's final defense of its decision not to treat the Teva v. Syntex dismissal as a

court decision trigger is that because the agency is preparing to engage in new

rulemaking to address Hatch-Waxman issues that were called into question as a result of

the Mova and Granutec cases, it is entitled to make 180-Day Delay Period decisions on a

"case by case basis, based on the explicit language of the statute," and that if Teva does

not like the result of that process, its only remedy is to make its case again in the

rulemaking comment period.  FDA Brief at 19-21.  The fatal flaw in that position is that

FDA, this Court in Mova, and even the district court below, all recognize that the

statutory provision at issue here does not explicitly dictate FDA's position in this case.

See Teva Opening Brief at 10-14.  Thus, although FDA may certainly make 180-Day

Delay Period decisions using a case-by-case adjudicatory model, the agency's choice of

procedure does not alter its legal obligation to avoid unreasonable results under the

circumstances of those cases it handles on an individual basis.[7]

Here, FDA used its case-by-case adjudicative procedure to deny Teva's request

that its 180-Day Delay Period be started on the date of the dismissal of the Teva v.

Syntex declaratory judgment action.  Although FDA acknowledges that Teva's

interpretation is not precluded by the statutory language, and suggests that it plans to

---

[7]    See Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 201-202 (1947) ("The
absence of a general rule or regulation governing [a specific factual problem] did not affect the
Commission's duties in relation to the particular proposal before it. . . . But [the Court] did not mean to
imply [that] the failure of the Commission to anticipate this problem and to promulgate a general rule
withdrew all power from that agency to perform its statutory duty in this case.  To hold that the
Commission had no alternative in this proceeding but to approve the proposed transaction, while

-12-

adopt that interpretation in its rulemaking, FDA Brief at 20-21, the agency takes the position that it is powerless to make interpretative judgments regarding ambiguous parts of the relevant statutory provisions because this court in <u>Mova</u> found that <u>other</u> parts of the statute precluded a completely different interpretation (the "successful defense regulation") that the agency had adopted by rulemaking. <u>See</u> FDA Brief at 19-21. Thus, without disputing any of Teva's arguments as to the absurdity of FDA's interpretation, the agency simply declares that <u>because</u> it lost the <u>Mova</u> case, and <u>because</u> it has decided to operate in an adjudicatory fashion, <u>therefore</u> the statute must be clear on its face. Such Alice In Wonderland logic cannot be upheld by a reviewing court.

Moreover, given FDA's choice of an adjudicatory model for making 180-Day Delay Period decisions, including its decision here, the proper remedy for the FDA's arbitrary and capricious action is not to remand to the agency to correct its decision in this specific case as part of its general rulemaking, but rather to declare the agency's action unlawful, and to remand to the district court with instructions to enter an injunction in accordance with the relief originally requested by Teva.

In this light, Roche's and TorPharm's assertion (Intervenors' Brief at 15 n.8) that "[t]here are no bounds to what Teva suggests," and that Teva's interpretation would open the door to allowing such court actions as dismissals for lack of personal jurisdiction or for failure to join a party to act as Court Decision Triggers, demonstrates their failure to comprehend the basic nature of this lawsuit. Teva's approach to this case has always been appropriately narrow, in that it only asserts that FDA's "case-by-case" decision on Teva's 180-Day Delay Period was arbitrary and capricious under the specific facts of this

---

formulating any general rules it might desire for use in future cases of this nature, would be to stultify the administrative process. That we refuse to do.").

case – i.e., where Teva's Hatch-Waxman Declaratory Judgment Action was dismissed on case or controversy grounds based on the Roche/Syntex concession of non-infringement and promise of non-enforcement. See JA 38-39 (Teva's narrowly focused proposed preliminary injunction); Teva Opening Brief at 4 (Issue Presented relates specifically to FDA's decision regarding the dismissal of Teva's Hatch-Waxman Declaratory Judgment Action).

To the extent other hypothetical situations may require a different approach, those situations are of no relevance to the determination of this case, but are, of course exactly the types of situations that FDA may evaluate once it begins its rulemaking.[8]  In the context of the specific facts of this case, however, Teva has shown that FDA simply got it wrong, and this court should remedy that error in the manner requested by Teva.  Thus, although the court's decision may well guide FDA and the regulated industry on possible ways to proceed in this area, this is not a case like Mova where an entire regulatory provision will be invalidated by the court's decision, and the court's decision will not hinder FDA's ability to adopt any other regulatory approach that is appropriate for specific factual situations.

**E.    The Mova And Purepac Cases
Do Not Support FDA's Interpretation**

FDA argues, relying on Purepac Pharmaceutical Co. v. Friedman, 1998 WL 898347 (D.C. Cir. Dec. 29, 1998), and Mova, that "this court has supported FDA's post-Mova interpretation of the court decision trigger."  That assertion is strange, to say the

---

[8]    Indeed, Roche has already submitted comments (filed the day after Teva's opening brief was filed in this appeal) to the FDA's public docket in which it makes many of the same arguments it presses here.

least, given that (1) neither case directly involved the Hatch-Waxman Declaratory Judgment Action issue presented here, and (2) in <u>Mova</u> the court not only supported Teva's position that the Hatch-Waxman Declaratory Judgment Action is an available pathway for subsequent Paragraph IV ANDA applicants to trigger the 180-Day Delay Period, but also, <u>sua sponte</u>, suggested that a case or controversy dismissal is also a permissible predicate for the Court Decision Trigger.[9] <u>See Mova</u> 140 F.3d at 1073 n.18.

FDA's reliance on <u>Purepac</u> to support its interpretation of the Court Decision Trigger is also misplaced. The agency asserts that the <u>Purepac</u> court "approved its decision to address 180-day issues through rulemaking," FDA Brief at 20, as if this somehow constituted an endorsement of the agency's substantive position in this case. In fact, however, the issues here were not present in <u>Purepac</u>, and the agency's ability generally to address 180-day issues through rulemaking is not in dispute. What is in dispute is whether FDA's "case-by-case" decision to refuse to trigger Teva's 180-Day Delay Period was reasonable under the facts of this case. Defendants cannot argue that the <u>Purepac</u> decision granted FDA the authority to make adjudicatory decisions that are fundamentally in conflict with the overall statutory language, structure, and purposes merely because the agency plans to correct that result through a future rulemaking. <u>See</u> <u>Chenery</u>, 332 U.S. at 201-202.

---

[9]        The lower court suggested that the <u>Mova</u> court's comment that FDA could implement the case or controversy dismissal interpretation by regulation means that the court meant to preclude such a result by any other means. JA 158. That reading of the <u>Mova</u> decision is not required, however, and it is equally, if not more, reasonable to read the court's comments as reflecting the belief that FDA would not be presented with a concrete example of such a dismissal so soon after the court's decision that the agency would not have had the opportunity to have even begun rulemaking. In any event, <u>Mova</u> cannot be read to preclude FDA from adopting the case or controversy dismissal trigger by way of its "case-by-case" approach to 180-Day Delay Period decisions, because prior to the <u>Mova</u> decision FDA had not announced that it would take such an approach.

F.    **Roche And TorPharm Misrepresent The Plain Meaning
And Underlying Purposes Of The 180-Day Delay Period**

Roche and TorPharm repeatedly suggest that Teva's interpretation is impermissible because it would violate an unconditional right to a 180-day period of exclusive marketing "granted" to the first ANDA applicant. See, e.g., Intervenors' Brief at 1, 3, 9, 21. In fact, the 180-Day Delay Period provisions do not establish an unconditional right to any period of "exclusivity." See Teva Opening Brief at 16-18. All these provisions do is delay the effective date of approval of an ANDA for a drug for which a previous ANDA was submitted for 180 days following the occurrence of the earlier of the two events described in the statutory Court Decision Trigger and Commercial Marketing Trigger, respectively. See id. at 10-11. FDA has adopted, and the Granutec court has endorsed, the conclusion that the 180-Day Delay Period can be triggered by a court decision in a case other than one involving the first ANDA applicant. It is this conclusion, not Teva's interpretation, that creates the possibility that all or part of the 180-Day Delay Period may expire prior to the first applicant's marketing of its drug – as, indeed, happened in the Granutec case. Roche and TorPharm try to ignore the fact that the 180-Day Delay Period is not a guarantee of exclusivity because that fact gives rise to the availability of a Hatch-Waxman Declaratory Judgment Action as a triggering mechanism, which in turn requires FDA to treat case or controversy dismissals such as Teva's as court decision triggers in order to avoid rendering the general

-16-

Declaratory Judgment Action Trigger mechanism null and void.[10]  See Teva Opening
Brief at 14-18.

The private intervenors also argue at length that Teva's interpretation conflicts
with Congressional intent because Hatch-Waxman was a "grand compromise" that also
included incentives for innovator companies that in some circumstances delay the
availability of affordable generic alternatives.  Roche/TorPharm Brief at 24-28.  But,
contrary to that argument, there is no such compromise embodied in the 180-Day Delay
Period provision itself.  Rather, that provision – as distinct from Hatch-Waxman as a
whole – does have as its unitary purpose to speed the introduction of generic drugs to
market by establishing an incentive for generic companies to aggressively, quickly, and
effectively challenge patents that might otherwise block introduction of their products.
Teva's interpretation furthers that goal; FDA's interpretation thwarts that goal.

## II.     TEVA SATISFIES THE REMAINING PREREQUISITES
##          FOR PRELIMINARY INJUNCTIVE RELIEF

### A.     Teva Is Now Being, And Will Continue To Be,
###        Irreparably Injured Without the Requested Injunctive Relief

Teva has been wrongfully prevented from marketing its approved ticlopidine
product since February 10, causing substantial and irreparable injury in the form of
substantial lost revenue that is unrecoverable from any source.  Every day that goes by

---

[10]      Roche and TorPharm create a straw man argument that the statutory reference to a declaratory
judgment action trigger is intended to restrict, rather than create, a declaratory judgment action for use by
ANDA applicants.  Roche/TorPharm Brief at 18-19.  Of course Hatch-Waxman did not "create" the
declaratory judgment action, because the Declaratory Judgment Act already existed.  However, the fact that
the statute precludes a Hatch-Waxman Declaratory Judgment Action from being brought until 45 days after
receipt of a Paragraph IV Notification but also explicitly provides that the outcome of such actions can
trigger the 180-Day Delay Period in fact demonstrates that Congress intended this mechanism to form part
of the overall statutory scheme for resolving patent issues prior to marketing a generic drug product,
precisely as Teva argues.

without the requested injunction adds to that injury. Now that TorPharm's potential "exclusivity" period has expired (on February 10), if TorPharm gains FDA approval and commences marketing ticlopidine prior to Teva, Teva's injury is even greater than it would have been prior to February 10, due to the competitive damage and loss of market share that will result from such an undeserved head start. On the facts of this case, therefore, Teva unquestionably qualifies for preliminary injunctive relief based on irreparable injury.

Moreover, both the court below and FDA acknowledge that a strong likelihood of success on the merits would support a finding of irreparable injury under Mova Pharmaceutical Corp. v. Shalala, 955 F. Supp. 128 (D.D.C. 1997), aff'd, 140 F.3d 1060 (D.C. Cir. 1998) and Bracco Diagnostics, Inc. v. Shalala, 963 F. Supp. 20 (D.D.C. 1997). See JA 162; FDA Brief at 24-25. As demonstrated in Part I supra, Teva is likely to succeed on the merits, and so for that reason also meets the irreparable harm test.

Finally, FDA's argument that "claims of expected monetary harm from competition in the marketplace . . . are insufficient to warrant preliminary injunctive relief," citing Bristol-Myers Squibb Co. v. Shalala, 923 F. Supp. 212 (D.D.C. 1996) and Mead Johnson Pharmaceutical Group v. Bowen, 655 F. Supp. 53 (D.D.C. 1986), aff'd, 838 F. Supp. 1332 (D.C. Cir. 1988), is inapposite because both of those cases found that generic competition would not constitute irreparable harm to a brand name marketer. Here, in contrast, Teva's harm is in being shut out of the market entirely for an indefinite period, a harm that these cases did address.

### B.  Teva Has Demonstrated That The Balance Of Harms Weighs Heavily In Its Favor

FDA argues that the balance of harms as between Teva and TorPharm is equal, so that Teva cannot demonstrate that this balance weighs in its favor.  However, FDA has misconstrued the situation. The harm to TorPharm if the requested relief is granted is simply that Teva, Purepac, and any other generic companies who are approved in the interim will be allowed on the market alongside TorPharm.[11]  Under those circumstances, TorPharm may not have as advantageous a marketing position as it would if the requested relief were not granted, but it would still be on the market (if it ever obtains FDA approval).  In contrast, the harm to Teva without an injunction is an indefinite – but at least six-month – period of being completely blocked from marketing ticlopidine.  It defies common sense to assert that sharing the market with other companies weighs more heavily in the balance of harms as being denied access to the market altogether.  Thus, the balance of harms as between Teva and TorPharm conclusively tips in Teva's direction.

### C.  A Preliminary Injunction Would Be In The Public Interest

FDA agrees with Teva that the public interest is served by not allowing one generic manufacturer to block other generic competition.  FDA Brief at 27.  The agency then argues, however, that the relief Teva seeks in this case is not in the public interest because the Mova and Granutec courts have rejected FDA's "successful defense" requirement and stated that "the statute, on its face, does not prevent the competition-blocking scenario feared by Teva."  Id.  FDA's reasoning is curious.  This case is not

-19-

about the "successful defense" requirement, but about a distinct statutory mechanism to prevent the market blockage FDA acknowledges harms the public interest – a mechanism that has been endorsed by both the <u>Mova</u> court and FDA itself. Starting Teva's 180-Day Delay Period here will serve the public interest, whereas FDA's preference for delay will not.

Finally, Roche argues that there is no compelling public interest in expediting the approval of Teva's ANDA on the ground that "the medical community has access to ticlopidine hydrochloride because Roche currently markets the drug." Roche/TorPharm Brief at 34. This kind of argument was eloquently, and conclusively, refuted by this Court in <u>In Re Barr Laboratories, Inc.</u>, 930 F.2d 72, 75 (D.C. Cir.), <u>cert. denied</u>, 502 U.S. 906 (1991):

> Of course, the "bioequivalents" of the drugs covered by these applications are, by definition, already available – but at a higher price, which makes the stake appear pecuniary. But for poorer people – the users for whom access to generic drugs is most important – a pecuniary savings on drugs may have important health benefits. The difference between sinking, say, 3% and 20% of one's income into pharmaceuticals spells a large difference in the range of economically accessible food and shelter.

### CONCLUSION

As demonstrated herein, Appellees have failed to refute Teva's position that the August 14, 1998 dismissal of its Hatch-Waxman Declaratory Judgment Action against Syntex activated the Court Decision Trigger, so that the 180-Day Delay Period applicable to Teva's ticlopidine ANDA expired on February 10, 1999. Appellees have also failed to refute Teva's showing that it qualifies for preliminary injunctive relief under the irreparable injury, balance of harms, and public interest tests. Accordingly, Teva

---

[11]    On January 28, 1999 a third generic company, Genpharm, received tentative approval of a ticlopidine ANDA.

respectfully requests that this Court reverse the district court's denial of a preliminary

injunction, and to remand to the district court with instructions to order FDA to make

Teva's tentatively approved ANDA effective immediately.

Respectfully submitted,

*David M. Malone /GML*

James N. Czaban (D.C. Bar #459211)
Geoffrey M. Levitt (D.C. Bar #358633)
David M. Malone (D.C. Bar #125047) (Counsel of Record)

Venable, Baetjer, Howard & Civiletti LLP
1201 New York Avenue, N.W.
Suite 1000
Washington, D.C. 20005-3917
202/962-4800 (phone)
202/962-8300 (fax)

Attorneys for Teva Pharmaceuticals USA, Inc.

-21-

## CERTIFICATE OF SERVICE AND COMPLIANCE WITH CIRCUIT RULE 28

I HEREBY CERTIFY that on this first day of March, 1999, this REPLY BRIEF OF APPELLANT TEVA PHARMACEUTICALS USA, INC. was sent by certified mail and by facsimile to the following persons:

Frank E. Hunger
Eugene Thirolf
Andrew E. Clark
Drake Cutini
Department of Justice
Office of Consumer Litigation
National Place Building
1331 Pennsylvania Avenue, N.W.
Room 950 N
Washington, D.C. 20004
Counsel for Federal Defendants

Mary Jane Porter
Anne Miller
United States Food and Drug Administration
5600 Fishers Lane
Room 671
Rockville, MD 20857

Eugene M. Pfeifer
James D. Miller
King & Spalding
1730 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Counsel for Appellee TorPharm, a Division of Apotex, Inc.

Donald Beers
David Korn
Nancy Lapidus
Arnold & Porter
555 12th Street, N.W.
Washington, D.C. 20004
Counsel for Appellee Hoffman- La Roche, Inc.

Robert A. Dormer
James R. Phelps
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W.
Washington, D.C. 20005
Counsel for Appellant Purepac Pharmaceutical Co.

I FURTHER CERTIFY that this Brief does not exceed 6,250 words, as provided by Circuit Rule 28.

David M. Malone