# EXHIBIT A

FILED

AUG 14  2 22 PH '03

1
2
3
4

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

5
6
7

8     TEVA PHARMACEUTICALS USA, INC.,          Case No. C 98-02314 CAL

9
                                                ORDER DISMISSING COMPLAINT
10                    v.                         FOR DECLARATORY JUDGMENT

11                            *Plaintiff,*       [Federal Rules of Civil Procedure, Rule
                                                12(b)(1)]
12    SYNTEX (USA) INC.,

13                                              Date:    August 7, 1998
                              *Defendant.*       Time:    9:30 a.m.
14                                              Place:   Courtroom 10
                                                Judge:   Charles A. Legge
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER DISMISSING COMPLAINT
FOR DECLARATORY JUDGMENT

On August 7, 1998 the Motion to Dismiss For Lack of Subject Matter Jurisdiction filed by defendant Syntex (U.S.A.) Inc. ("Syntex") came on regularly for hearing. The parties were represented by counsel. Based on all of the evidence and argument, both written and oral, and good cause appearing therefor, the Court hereby finds:

    (1)    Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") lacked and lacks a reasonable apprehension of suit by Syntex for infringement of U.S. Patent No. 4,591,592 ("'592 Patent").

    (2)    There is no justiciable case or controversy between the parties concerning any infringement by Teva of the '592 Patent.

    (3)    This Court lacks subject matter jurisdiction over the action.

Based on the foregoing findings, Syntex's Motion is GRANTED and the Complaint is DISMISSED.

IT IS SO ORDERED.

DATED: __8/14__, 1998

_____
THE HONORABLE CHARLES A. LEGGE
JUDGE, UNITED STATES DISTRICT COURT

ORDER DISMISSING COMPLAINT
FOR DECLARATORY JUDGMENT

PAGES 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES A. LEGGE, JUDGE

TEVA PHARMACEUTICALS USA, INC., ) C 98-02314 CAL
                                 )
    PLAINTIFF,                   ) SAN FRANCISCO, CALIFORNIA
                                 ) FRIDAY, AUGUST 14, 1998
        V.                     )
                                 )
SYNTEX (USA), INC.,              )
                                 )
    DEFENDANT.                   )
_____)

# COPY

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR THE PLAINTIFF:

                  FREDERICK H. REIN, ESQ.
                  KENYON & KENYON
                  ONE BROADWAY
                  NEW YORK, NEW YORK 10004

                  SHAWN W. O'DOWD, ESQ.
                  KENYON & KENYON
                  RIVERPARK TOWERS
                  333 WEST SAN CARLOS, SUITE 600
                  SAN JOSE, CALIFORNIA 95110

(APPEARANCES CONT'D)

REPORTED BY:          ROSITA FLORES, CSR, RPR
                  450 GOLDEN GATE AVENUE, SUITE 6812
                  SAN FRANCISCO, CA 94102

COMPUTERIZED TRANSCRIPTION BY ECLIPSE

1  FOR THE DEFENDANT SYNTEX (USA) INC.:

2                          VANESSA WELLS, ESQ.
                           HELLER EHRMAN WHITE & MCAULIFFE
3                          525 UNIVERSITY AVENUE
                           PALO ALTO, CALIFORNIA 94301-1900

4
                           OF COUNSEL:
5                          JOHN C. VASSIL, ESQ.
                           MORGAN & FINNEGAN, LLP
6                          345 PARK AVENUE
                           NEW YORK, NEW YORK 10154

7

8  FOR THE INTERVENOR-DEFENDANT TORPHARM:

9                          HUGH MOORE, ESQ.
                           LORD, BISSEL & BROOK
10                         115 SOUTH LASALLE STREET
                           CHICAGO, ILLINOIS, 60603

11

12

13 PRESENT:               GEORGE JOHNSON, COUNSEL, HOFFMAN-LAROCHE

14

15

16

17

18

19

20

21

22

23

24

25

ROSITA FLORES, OFFICIAL COURT REPORTER, USDC

```
 1  FRIDAY, AUGUST 14, 1998                    9:30 A.M.

 2        THE CLERK:  CIVIL ACTION 98-2314, TEVA

 3  PHARMACEUTICALS USA, INC., VERSUS SYNTEX, (USA), INC.

 4        THE COURT:  APPEARANCES, PLEASE, COUNSEL.

 5        MISS WELLS:  GOOD MORNING, YOUR HONOR.

 6        VANESSA WELLS, HELLER, EHRMAN, WHITE AND MCAULIFFE,

 7  FOR DEFENDANT, SYNTEX (USA).

 8        MR. VASSIL:  JOHN VASSIL, MORGAN & FINNEGAN, FOR

 9  SYNTEX USA.

10        AND MY COLLEAGUE FROM HOFFMAN-LAROCHE AND THE PARENT

11  OF SYNTEX, GEORGE JOHNSON.

12        MR. REIN:  FREDERICK REIN, OF KENYON & KENYON, ON

13  BEHALF OF TEVA PHARMACEUTICALS, USA, AND MY COLLEAGUE, SHAWN

14  O'DOWD, ALSO FROM KENYON & KENYON.

15        MR. MOORE:  YOUR HONOR, HUGH MOORE, LORD, BRISSEL

16  AND BROOK, FOR PROPOSED INTERVENOR, TORPHARM'S DIVISION OF

17  APOTEX, INC.

18        THE COURT:  ALL RIGHT.  NOW, I THINK YOU ALL AGREE

19  HERE THAT IN VIEW OF THIS RECENT LETTER FROM THE DEFENDANT

20  THAT THE ACTION SHOULD BE DISMISSED BECAUSE THERE IS NO CASE

21  OF CONTROVERSY, AND I GUESS THE PROBLEM IS WHETHER THERE

22  SHOULD BE SOME TERMS AND CONDITIONS ADDED TO THAT.

23        MR. VASSIL:  THAT'S HOW SYNTEX SEES IT, YOUR HONOR.

24        THE COURT:  ALL RIGHT.  WOULD YOU GO AHEAD WITH THE

25  PRESENTATION?
```

1        AS I SAID, SYNTEX WANTS A DETERMINATION THAT THERE

2  HAD BEEN A REASONABLE BASIS FOR A REASONABLE APPREHENSION SUIT

3  AND TEVA WANTS A DISMISSAL WITH THE -- TO REFLECT THAT SYNTEX

4  HAS ADMITTED THAT THE FORMULATION OF TEVA'S TABLETS DON'T

5  INFRINGE THE '592 PATENT.

6        MR. VASSIL:   THAT'S RIGHT.   THEY WANT AN ORDER THAT

7  CONTAINS THAT, AND THAT, INCLUDED WITHIN IT, OF COURSE, WAS A

8  FINDING THAT THERE WAS A CONTROVERSY BUT THEN PROVIDES THAT

9  YOUR HONOR HAS DECLINED TO TAKE THE CONTROVERSY, AS YOU'RE

10 PERMITTED TO DO UNDER THE DECLARATORY JUDGMENT STATUTE.

11       WE THINK, HOWEVER, THE PROPOSITION THAT TEVA PUTS

12 FORWARD, NAMELY, THAT THERE WAS A CONTROVERSY THAT SOMEHOW

13 BECAME MOOTED WHEN WE SENT THE LETTER, EXHIBIT 6, OF THE

14 MOTION, IS FALSE; AND THERE NEVER WAS A CONTROVERSY, AND THE

15 ORDER WHICH THE COURT ENTERS SHOULD SO REFLECT IT.   IT SHOULD

16 BE A STRAIGHT DISMISSAL.

17       AND WE SAY THIS, YOUR HONOR, BECAUSE THERE NEVER WAS

18 A REASONABLE BASIS FOR AN APPREHENSION THAT TEVA'S COURSE OF

19 CONDUCT WAS IN JEOPARDY, WHICH IS, OF COURSE, THE HALLMARK OF

20 WHETHER THERE IS OR IS NOT A JUSTICIABLE CONTROVERSY UNDER THE

21 STATUTE.

22       THERE NEVER HAS BEEN A SUIT BROUGHT BY SYNTEX, THE

23 OWNER OF THE PATENT, OR BY HOFFMAN-LAROCHE, ITS EXCLUSIVE

24 DISTRIBUTOR OF THE PRODUCT MADE UNDER ONE OR MORE OF THE

25 PATENTS.

```
 1            THERE'S NEVER BEEN A THREAT, AND I WOULD LIKE TO
 2   TAKE IT UP, YOUR HONOR, IN THE CONTEXT OF AT LEAST THREE
 3   OPPORTUNITIES WHERE SYNTEX --
 4            THE COURT:  LET ME ASK YOU:  WHAT DIFFERENCE DOES IT
 5   REALLY MAKE HERE?
 6            MR. VASSIL:  IT MAKES A DIFFERENCE TO US --
 7            THE COURT:  IS THERE SOME HIDDEN AGENDA HERE IF THE
 8   CASE IS DISMISSED BECAUSE THERE WAS NO REASONABLE APPREHENSION
 9   SUIT?
10            MR. VASSIL:  THERE IS A HIDDEN AGENDA, YOUR HONOR,
11   BUT IT'S NOT THE HOFFMAN LAROCHE'S/SYNTEX'S SIDE.  THE HIDDEN
12   AGENDA IS ON TEVA'S SIDE.  WE TOUCHED ON IT TOWARD THE END OF
13   OUR REPLY, AND I KNOW THAT THE INTERVENOR, TORPHARM, HAS SPENT
14   A GREAT DEAL OF TIME EXPLAINING --
15            THE COURT:  NO, NO.  I UNDERSTAND THAT SIDE OF THE
16   ISSUE, BUT I MEAN SYNTEX IS ARGUING THAT THE DISMISSAL SHOULD
17   INCLUDE A PROVISION THAT THERE NEVER WAS REASONABLE
18   APPREHENSION.  WHAT DIFFERENCE DID THAT MAKE?  WHY AREN'T YOU
19   JUST HAPPY TO GET THE WORD, "DISMISSAL" AND WALK OUT OF HERE?
20            MR. VASSIL:  IT MAKES A DIFFERENCE, YOUR HONOR, AS
21   TO WHAT HAPPENS IN THE MARKETPLACE FROM AND AFTER THE ENTRY OF
22   AN ORDER.  IF THE ORDER SAYS THERE WAS, IN EFFECT, A
23   CONTROVERSY AND, THEREFORE, IT'S BEING DISMISSED SUBJECT TO
24   YOUR HONOR'S DECISION NOT TO DECLARE OR TO TAKE THE
25   DECLARATORY JUDGMENT CASE, AND ALSO TO FIND THAT THERE WAS NO
```

1  INFRINGEMENT.  THAT TRIGGERS A LOT OF THINGS.  AND THE WORD,

2  "TRIGGER" ACTUALLY IS A CORRECT ONE UNDER THE HATCH-WAXMAN

3  ACT, AND IT HAS SEVERAL DIFFERENT FACETS; BUT THE MINUTE THERE

4  IS A JUDGMENT OF NON-INFRINGEMENT, A PERIOD OF EXCLUSIVITY

5  BEGINS TO RUN OF 180 DAYS THAT THE STATUTE PROVIDES.

6            AND IF THE FDA HAS NOT GRANTED APPROVAL TO ONE OF

7  APPROXIMATELY NINE APPLICANTS NOW WHO'S SITTING --

8            THE COURT:  SO, IN OTHER WORDS, IT'S THE SAME ISSUE

9  AS RAISED IN THE SECOND ONE, WHERE TEVA WANTS A DISMISSAL THAT

10 YOU'VE ADMITTED THAT THE TEVA TABLET INFRINGES ON THE '592

11 PATENT?

12            MR. VASSIL:  RIGHT.  AS FAR AS WE'RE CONCERNED,

13 SINCE THERE NEVER WAS A THREAT, THERE NEVER WAS A CONTROVERSY,

14 THEY ARE NOT ENTITLED BY THIS DEVICE OF A DECLARATORY JUDGMENT

15 ACTION TO GET A FINDING THAT WE ADMIT THERE IS NO INFRINGEMENT

16 WHEN, FOR ALL INTENTS AND PURPOSES, WHAT THEY SHOULD HAVE DONE

17 WHEN WE SENT THE LETTER CONTEMPORANEOUSLY, AS IT TURNS OUT,

18 WITH THE FILING OF THE SUIT, THEY SHOULD HAVE WITHDRAWN THE

19 SUIT BECAUSE THEY GOT EVERYTHING THEY WANTED, EXCEPT FOR THIS

20 HIDDEN AGENDA.  AND WE DON'T THINK THEY ARE ENTITLED TO THAT

21 HIDDEN AGENDA.

22            THE DISMISSAL OUGHT TO BE IN THE FORM OF THE ORDER

23 THAT WE HAD SUBMITTED, YOUR HONOR.

24            THE COURT:  OKAY.  YES, GO AHEAD.

25            MR. REIN:  YOUR HONOR, I THINK IT'S CLEAR FROM OUR

1 PAPERS THAT THERE'S NO DISPUTE THAT, AS OF TODAY, THERE IS
2 PRESENTLY NO CASE OR CONTROVERSY -- THAT'S ON SYNTEX'S
3 PRESENTATION TO THE COURT -- THAT TEVA USA'S FORMULATION DOES
4 NOT INFRINGE; THAT THEY WOULD NOT SUE TEVA BASED ON THAT
5 FORMULATION.

6          WE WOULD LIKE TO HAVE SOME SORT OF JUDICIAL
7 DOCUMENT, WHETHER IT IS IN THE ORDER OR WHETHER IT IS IN A
8 MEMORANDUM, WHETHER IT'S THE JUDGE RULING, YOUR HONOR RULING
9 FROM THE BENCH, RECOGNIZING THAT SYNTEX HAS CONCEDED RIGHT
10 HERE THAT TEVA USA'S FORMULATION DOES NOT INFRINGE.

11          THAT IS IMPORTANT TO MY CLIENT BECAUSE, ULTIMATELY,
12 TEVA USA WILL BE MARKETING TICLOPIDINE HYDROCHLORIDE PRODUCT,
13 AND THEY WOULD LIKE TO BE ASSURED THAT AT THAT POINT, IF THERE
14 IS A CHANGE OF MANAGEMENT AT SYNTEX OR CHANGE IN THE LEGAL
15 DEPARTMENT AT SYNTEX, THAT IN THE FUTURE SYNTEX WON'T SUE MY
16 CLIENT AND TEVA USA WILL BE FACING LOST PROFITS DAMAGES ON THE
17 PRODUCT THAT TODAY IS ALMOST A QUARTER OF A BILLION DOLLARS A
18 YEAR IN SALES.

19          SO IT IS IMPORTANT FOR US TO HAVE SOMETHING.  IT
20 DOESN'T NECESSARILY HAVE TO BE IN AN ORDER.  IT COULD BE IN A
21 MEMORANDUM OR THE JUDGE RULING FROM THE BENCH RECOGNIZING THAT
22 SYNTEX HAS CONCEDED INFRINGEMENT.

23          NOW, AS FOR THE ISSUE OF WHETHER OR NOT THERE WAS
24 REASONABLE APPREHENSION AS OF WHEN TEVA USA FILED ITS
25 COMPLAINT, IT IS IMPORTANT TO NOTE THAT BESIDES ALL THE

```
 1  FACTUAL ISSUES THAT WE HAD EXPLAINED, THAT IS, WE PROVIDED A
 2  PARAGRAPH IV CERTIFICATION TO SYNTEX, THEY NEVER SAID THAT WE
 3  DIDN'T INFRINGE.  MONTHS LATER THEY SUED US IN NEW JERSEY,
 4  WITHOUT EVER HAVING KNOWLEDGE OF OUR PROCESS.  THEY SUED US
 5  FOR PROCESS PATENT INFRINGEMENT, AND THEN BEFORE THE FDA IN
 6  MAY, THEY SOUGHT TO HAVE THE FDA STOP APPROVAL OF TEVA USA'S
 7  ANDA.
 8          IF YOU LOOK AT SYNTEX'S ACTIONS IN THE PROCESS
 9  PATENT LITIGATION IN NEW JERSEY, SYNTEX'S ACTIONS IN THE FDA,
10  TRYING TO PREVENT US FROM GETTING FDA APPROVAL FOR OUR
11  ABBREVIATED NEW DRUG APPLICATION, WE WERE UNDER THE
12  UNREASONABLE APPREHENSION THAT WHEN IT SUITED SYNTEX, THEY
13  WENT THROUGH YET ANOTHER WAY.  THEY WOULD TRY SOMETHING ELSE
14  IN ORDER TO PREVENT US FROM GETTING OUT IN THE MARKET.  THE
15  ONLY THING LEFT WOULD BE FOR THEM TO SUE ON THE '592 PATENT IN
16  ORDER TO PREVENT US FROM MARKETING MORE PRODUCT OR THREATENING
17  US WITH LOST PROFITS DAMAGES.
18          BESIDES THAT, THERE IS A LEGAL ISSUE THAT MAKES THIS
19  CASE DIFFERENT FROM ALMOST ALL OTHER DECLARATORY JUDGMENT
20  ACTIONS THAT WOULD BE BEFORE THIS COURT AND THAT IS STATUTORY,
21  UNDER 35 U.S.C. SECTION 271E2.
22          IT IS A TECHNICAL ACT OF INFRINGEMENT TO FILE AN
23  ABBREVIATED NEW DRUG APPLICATION, WITH WHAT YOUR HONOR IS
24  AWARE OF, IS KNOWN AS A PARAGRAPH IV CERTIFICATION OF
25  NON-INFRINGEMENT OR INVALIDITY.
```

```
 1            THAT IS RECOGNIZED BY THE U. S. COURT OF APPEALS FOR

 2 THE FEDERAL CIRCUIT IN MERCK VERSUS BIOCRAFT, AT 874 F.2D 804,

 3 JUMP CITE TO 806, WHERE IT SAYS JUST THAT; THAT THE FILING OF

 4 THE PARAGRAPH IV CERTIFICATION IS A TECHNICAL ACT OF

 5 INFRINGEMENT.

 6            AND MOREOVER, RECENTLY, IN ANOTHER CASE, MERCK V.

 7 KESSLER, IN THE CAPACITY OF ONE OF THE OTHER PLAINTIFFS AS

 8 HOFFMAN-LAROCHE AND SYNTEX, THE U.S. COURTS OF APPEALS FOR THE

 9 FEDERAL CIRCUIT STATED THAT IT IS AN ACT OF INFRINGEMENT FOR

10 PURPOSES OF A DECLARATORY JUDGMENT ACTION FOR A GENERIC

11 MANUFACTURER TO FILE AN ANDA FOR USE PRIOR TO THE INFRINGEMENT

12 EXPIRATION DATE ON THE BASIS OF ALLEGED INVALIDITY OR

13 NON-INFRINGEMENT OF THE PATENT, SO THERE -- AND THAT CITE IS

14 80 F3RD 1543, JUMP CITE TO 1547.

15            THERE IT'S CLEAR THAT IT IS FOR PURPOSES OF THE

16 DECLARATORY JUDGMENT ACTION AND INFRINGEMENT TO FILE AN ANDA

17 WITH A PARAGRAPH IV CERTIFICATION.

18            SO WE BELIEVE THAT BASED ON THE FACTUAL ISSUES THAT

19 ARE PREVIOUSLY DISCUSSED, ALONG WITH THE LEGAL ISSUES THAT I

20 MORE JUST RECENTLY DISCUSSED, THAT TEVA, CERTAINLY, HAD BOTH

21 AS A MATTER OF FACT AND AS A MATTER OF LAW A REASONABLE

22 APPREHENSION AND PROPERLY BROUGHT ITS DECLARATORY JUDGMENT

23 COMPLAINT.

24            THE COURT:  THANK YOU.

25            DOES TORPHARM WISH TO BE HEARD?
```

1          MR. MOORE:  YES, YOUR HONOR, IF I MAY.

2          WE HAVE, OF COURSE, STILL PENDING THE MOTION TO

3  INTERVENE, WHICH WAS OPPOSED BY TEVA; BUT IF I MAY BE HEARD

4  FOR A FEW MINUTES ON THE IDENTICAL ISSUE HERE.

5          AS SYNTEX HAS SAID, WHEN JURISDICTION IS CHALLENGED,

6  IT IS THE OBLIGATION OF PLAINTIFF TO COME FORWARD TO ESTABLISH

7  THAT JURISDICTION, AND IN OUR VIEW, TEVA HAS FAILED TO DO SO

8  FROM THE VERY OUTSET.

9          AND WE HAD FILED WITH OUR MOTION TO DISMISS A COPY

10 OF A REPLY THAT TEVA FILED TO A CITIZEN'S PETITION WITH FDA

11 TWO DAYS AFTER IT STARTED THIS LAWSUIT, IN WHICH IT SAID --

12 AND I CAN QUOTE THEM -- "THE ABSURDITY OF ROCHE'S FIRST FILED

13 INTERPRETATION IS CLEARLY ILLUSTRATED BY THE CURRENT SITUATION

14 WITH RESPECT TO TICLOPIDINE," WHICH IS THE DRUG ITSELF.  HERE,

15 ROCHES HAS LISTED IN THE ORANGE BOOK A FORMULATION PATENT, AND

16 I MIGHT ADD THAT A FORMULATION PATENT RELATES TO A FINISHED

17 PHARMACEUTICAL PRODUCT AND NOT A BRAND-NEW CHEMICAL ENTITY.

18         THERE WAS READILY -- "BUT IT WAS READILY OPENED TO

19 CIRCUMVENTION WITH RELATIVELY LITTLE EFFORT, AS SHOWN BY THE

20 FACT THAT ROCHE HAS REFRAINED FROM BRINGING SUIT AGAINST ANY

21 OF THE NINE GENERIC APPLICANTS FOR THIS DRUG, WITH ONE

22 EXCEPTION, WHICH WAS SUBSEQUENTLY WITHDRAWN.  SEE ROCHE

23 PETITION 1."

24         AND THIS, IN TEVA'S CASE, WAS AFTER ROCHE HAD

25 RECEIVED A SAMPLE OF TEVA'S FINISHED DRUG PRODUCT, TEVA'S

1  RESPONSE TO THE PETITION SAYS.

2          SO TEVA FAILS AT THE OUTSIDE.

3          NOW, WITH RESPECT TO THE REMARK BY PLAINTIFF'S

4  COUNSEL THAT IT WANTS SOMETHING RECORDED BY THE COURT

5  RESPECTING THE JUNE 8TH LETTER THAT WAS SENT BY ROCHE, I DO

6  NOT BELIEVE THAT THERE IS ANYTHING IN THE FEDERAL CIRCUIT

7  PRECEDENT TO SUGGEST THAT IT IS EITHER NECESSARY OR

8  APPROPRIATE.  THE LETTER STANDS ON ITS OWN TWO FEET, AND I

9  BELIEVE THE FEDERAL CIRCUIT'S DECISION IN THE SUPERSACK CASE

10 WOULD SUPPORT THAT.

11         NOW, YOUR HONOR ASKED ABOUT HIDDEN AGENDA, AND

12 THAT'S WHY WE MOVED TO INTERVENE AND WHY WE'RE HERE TODAY.  AN

13 AFFIDAVIT FROM THE PRESIDENT OF APOTEX IS ATTACHED TO OUR

14 MOTION TO DISMISS, AND I MIGHT ADD THAT IT IS CRITICAL FOR US

15 TO OBSERVE THAT THE FACTS OF THAT AFFIDAVIT ARE UNCONTESTED BY

16 TEVA.

17         TORPHARM WAS THE FIRST COMPANY TO FILE AN

18 ABBREVIATED NEW DRUG APPLICATION WITH THE PARAGRAPH IV

19 CERTIFICATION ON THE PATENT IN QUESTION, FORMULATION OF THE

20 PATENT, AND WE LEARNED, OUR PEOPLE LEARNED WHEN ROCHE FILED

21 ITS CITIZEN PETITION WITH THE FDA RESPECTING THE EXCLUSIVITY

22 ISSUE, THAT WE WERE INDEED THE VERY FIRST GENERIC COMPANY TO

23 FILE AN ANDA ON THIS DRUG.

24         UNDER THE ACT AND UNDER FDA'S CURRENT INTERPRETATION

25 OF THE ACT, WE'RE ENTITLED TO EXCLUSIVITY.  OF COURSE, WE WERE

1  NOT SUED, JUST AS TEVA WAS NOT SUED.

2        NOW, IN LATE JUNE, AS SET FORTH IN THE AFFIDAVIT OF

3  JACOB KAY, THE PRESIDENT OF APOTEX, HE WAS APPROACHED BY THE

4  PRESIDENT OF THE PARENT CORPORATION OF TEVA USA DURING A

5  MEETING IN ITALY, AND THE PRESIDENT OF THE PARENT TOLD MR. KAY

6  THAT TEVA WAS WILLING TO CONTRACT WITH APOTEX FOR A SELECTIVE

7  WAIVER IN TEVA'S FAVOR OF TORPHARM'S EXCLUSIVITY, A PROCEDURE

8  THAT FDA RECOGNIZES, AND PRESUMABLY TEVA WOULD PAY APOTEX FOR

9  THE VALUE OF THIS SELECTIVE WAIVER.

10        MR. HURVITZ, THE C. E. O. OF TEVA USA'S PRESIDENT --

11 CORPORATE PARENT, PARDON ME -- TOLD MR. KAY THAT IF APOTEX WAS

12 UNWILLING TO ENTER IN SUCH AN AGREEMENT, THEN WHAT TEVA

13 INTENDED TO DO WAS TO FILE A DECLARATORY JUDGMENT ACTION

14 AGAINST ROCHE FOR A JUDGMENT OF NON-INFRINGEMENT.

15        NOW, THERE, WE SUBMIT IN THE FACE OF THIS UNREBUTTED

16 AFFIDAVIT, UNREBUTTED, IT IS THE SUBJECT MATTER OF A SINGLE

17 PARAGRAPH IN TEVA'S MOST RECENT FILING, IN WHICH TEVA

18 PERFECTLY WELL ADMITS THAT A JUDGMENT ENTERED BY THIS COURT

19 WOULD INDEED IN ITS VIEW HAVE THE EFFECT THAT TEVA'S PRESIDENT

20 TOLD APOTEX'S PRESIDENT, WHICH IS TO START OUR PERIOD OF

21 EXCLUSIVITY RUNNING EVEN THOUGH OUR APPLICATION IS NOT YET

22 APPROVED BY FDA AND TO CAUSE APOTEX MILLIONS AND MILLIONS OF

23 DOLLARS.

24        I BELIEVE THE PAPERS ON FILE WITH THE COURT INDICATE

25 THAT THE TOTAL MARKET LAST YEAR FOR TICLOPIDINE WAS

1   $225 MILLION.  IF WE -- IF APOTEX IS THE FIRST COMPANY ON THE

2   MARKET, THE FIRST GENERIC COMPANY ON THE MARKET, IT WOULD

3   SEIZE A VERY SUBSTANTIAL PORTION OF THAT MARKET THROUGH THE

4   VERY ACTION CONTEMPLATED BY CONGRESS WHEN IT ESTABLISHED THE

5   ANDA PROCEDURE, WHICH IS TO HAVE GENERIC COMPETITION, AND THAT

6   MEANS PRICE COMPETITION; AND SO IT IS A VERY, VERY REAL ISSUE

7   FOR APOTEX, A DOLLARS AND CENTS ISSUE FOR APOTEX.

8          AND THE LAST THING I WILL ADD IS THAT TEVA'S OWN

9   AGENDA IS ALSO EXEMPLIFIED BY WHAT IT IS CONCURRENTLY DOING

10  THIS SUMMER IN THE U.S. DISTRICT COURT IN THE DISTRICT OF

11  COLUMBIA.  ABOUT SIX WEEKS AGO ANOTHER GENERIC COMPANY WHICH

12  FILED AN ANDA ON TICLOPIDINE, A COMPANY KNOWN AS PUREPAC

13  PHARMACEUTICALS SUED FDA ALLEGING THAT ITS CURRENT

14  INTERPRETATION OF THE EXCLUSIVITY PROVISIONS OF THE ACT IS

15  INCONSISTENT WITH THE ACT ITSELF, AND IT'S A VERY COMPLICATED

16  HISTORY; AND I DOUBT IF THE COURT WANTS TO HEAR ABOUT IT.

17         THE BOTTOM LINE, HOWEVER, IS THAT TEVA HAS

18  INTERVENED IN THAT CASE IN SUPPORT OF PUREPAC'S POSITION THAT

19  APOTEX IS ENTITLED TO NO EXCLUSIVITY.

20         I SUGGEST TO YOUR HONOR THAT IF THIS COURT WERE TO

21  ENTER THE ORDER THAT TEVA HAS REQUESTED, THERE IS A VERY

22  STRONG LIKELIHOOD THAT TEVA WILL GO BACK TO THE U.S. DISTRICT

23  COURT IN THE DISTRICT OF COLUMBIA, START ANOTHER LAWSUIT BASED

24  UPON THE ORDER THAT THIS COURT ENTERS TO FORCE FDA TO COMMENCE

25  THE RUNNING OF APOTEX'S EXCLUSIVITY PERIOD, AND THAT'S WHAT

1  THIS CASE IS ALL ABOUT.

2       AND WE GO BACK AGAIN, IF I MAY, AND I'LL CLOSE HERE,

3  TO TEVA'S STATEMENT AND REPRESENTATION TO THE FDA THAT

4  SYNTEX'S FORMULATION PATENT WAS SO EASY TO DESIGN AROUND THAT

5  SYNTEX HAS REFRAINED FROM SUING NO LESS THAN NINE COMPANIES

6  WHO FILED ANDAS.   THAT'S TEVA'S REAL VIEW.

7       AND I SUGGEST THAT ON THE RECORD BEFORE THIS COURT

8  AND IN THE LIGHT OF TEVA'S OBLIGATION WHEN CHALLENGED TO COME

9  FORWARD WITH A SHOWING OF REASONABLE APPREHENSION, THAT

10 THERE'S ONLY ONE INFERENCE AND ANSWER TO BE DRAWN, AND WE

11 STRONGLY URGE THE COURT TO ENTER THE DISMISSAL ORDER PROPOSED

12 BY ROCHE.

13       THANK YOU.

14       MR. VASSIL:   YOUR HONOR, MAY I RESPOND?

15       THE COURT:   YES.

16       MR. VASSIL:   YOUR HONOR, I WOULD LIKE TO COMMENT AT

17 SOME POINT ON THE ORIGINAL SUBMISSION THAT TEVA'S COUNSEL

18 MADE.

19       THE COURT:   WELL; TEVA, YOU GO AHEAD FIRST.

20       MR. REIN:   THE FIRST THING THAT YOUR HONOR SHOULD

21 PROBABLY CONSIDER IS:   WHY ARE TORPHARM AND SYNTEX WORKING

22 TOGETHER HERE?   WELL, I DON'T KNOW WHAT'S GOING THROUGH THEIR

23 HEADS.   IT CERTAINLY WOULD APPEAR THAT THERE IS SOME SORT OF

24 COLLUSION IN ORDER TO KEEP OUT GENERIC COMPETITION.

25       MR. MOORE SEEMS TO INDICATE THAT THERE'S SOMETHING

1  WRONG ABOUT TEVA USA FILING ITS DECLARATORY JUDGMENT.  IT

2  HAPPENS TO BE THAT IN NEW JERSEY, AS PART OF THAT PROCESS

3  PENDING LITIGATION THAT THEY TALKED ABOUT, ONE OF THE OTHER

4  DEFENDANTS THERE, GENPHARM, FILED AN AMENDED ANSWER AND A

5  COUNTERCLAIM, AND THE COUNTERCLAIM IS SORT OF A DECLARATION OF

6  NON-INFRINGEMENT ON THE SAME PATENT THAT WE'RE SEEKING A

7  DECLARATION OF NON-INFRINGEMENT HERE.

8        TEVA IS NOT THE ONLY COMPANY SEEKING A DECLARATION

9  OF NON-INFRINGEMENT; GENPHARM IS, ALSO.  THAT'S THE FIRST

10  THING.

11        THE SECOND THING IS SUBSEQUENT TO THE PAPERS BEING

12  FILED HERE, WE OBTAINED FROM THE FDA A PETITION FILED ON

13  BEHALF OF TWO OTHER GENERIC COMPANIES, SCHEIN PHARMACEUTICAL

14  AND EON LAB, AND IN THERE THEY SAY THAT THIS EXCLUSIVITY THAT

15  TORPHARM MIGHT BE ENTITLED TO HAS ALREADY STARTED TO RUN FROM

16  THE DATE THAT SYNTEX DISMISSED A LITIGATION THAT IT BROUGHT ON

17  THE SAME PATENT, '592 PATENT, AGAINST EON.  AND SO EON LABS

18  AND SCHEIN HAVE PETITIONED THE FDA FOR A RULING THAT THE

19  EXCLUSIVITY PERIOD HAS ALREADY STATED.

20        SO NOW WE HAVE EON, SCHEIN AND GENPHARM, IN ADDITION

21  TO TEVA USA, TRYING TO SAY THAT THE EXCLUSIVITY PERIOD THAT

22  TORPHARM MIGHT BE ENTITLED TO HAS ALREADY STARTED.

23        LET'S TALK ABOUT SOME OTHER GENERIC COMPANIES.

24  MR. MOORE MENTIONED PUREPAC.  PUREPAC HAD SUED FDA IN D. C.

25  AT THE MOMENT THAT CASE IS NOW ON THE EXPEDITED APPEAL BEFORE

1 THE U.S. COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA.

2 BRIEFING WILL BE CONCLUDED ON THE MERITS LATER IN AUGUST, WITH

3 THE HEARING BEFORE THE D. C. CIRCUIT IN EARLY NOVEMBER.

4         IN THAT CASE PUREPAC SAYS TORPHARM ISN'T EVEN

5 ENTITLED TO EXCLUSIVITY, AND TEVA USA HAS INTERVENED, AND IT

6 WAS GRANTED AND THEY ARE NOW A PARTY.

7         AND ANOTHER GENERIC COMPANY, INVAMED, HAS ALSO

8 INTERVENED.  SO NOW, WE HAVE INVAMED, PUREPAC, SCHEIN, EON AND

9 GENPHARM ALL SAYING WE WANT TO GET ON THE MARKET WITH THE

10 TICLOPIDINE HYDROCHLORIDE PRODUCT.  EVERYONE WANTS A GENERIC

11 VERSION OF THIS PRODUCT, EXCEPT FOR SYNTEX AND TORPHARM,

12 WHATEVER THEIR REASONS ARE.

13         MR. MOORE SEEMS TO THINK THAT THERE'S SOMETHING

14 WRONG IN US GETTING SOME SORT OF DECISION THAT THIS CASE WOULD

15 BE DISMISSED WITH THE RECOGNITION THAT SYNTEX SAYS THAT WE

16 DON'T INFRINGE.  WE HAVE VERY LEGITIMATE REASONS FOR DOING

17 THAT.

18         SYNTEX HAS ALREADY SHOWN THAT IT IS LITIGIOUS, BOTH

19 IN NEW JERSEY AND IN THE FDA.  WE DON'T WANT THEM COMING BACK

20 LATER ON IN ORDER TO TRY TO PREVENT GENERIC COMPETITION FROM

21 SUING US IN THE FUTURE.

22         BUT IF IT TURNS OUT THAT TORPHARM IS ENTITLED TO

23 EXCLUSIVITY, AND AS I SAID THAT'S ON APPEAL BEFORE THE U.S.

24 CIRCUIT OF THE DISTRICT OF COLUMBIA, IT MIGHT BE VERY WELL BE

25 THAT TEVA WILL DO AS EON LABS HAS ALREADY DONE AND SAY THAT

1  THE EXCLUSIVITY PERIOD HAS ALREADY BEEN TRIGGERED.

2         THE STATUTE SPECIFICALLY TALKS ABOUT TWO TRIGGER

3  DATES.  IT TALKS ABOUT THE TRIGGER DATE OF EXCLUSIVITY BEING

4  THE DATE OF COMMERCIAL MARKETING BY THE FIRST APPLICANT IF IT

5  TURNS OUT THAT THAT APPLICANT IS ENTITLED TO EXCLUSIVITY, AND

6  IT ALSO PROVIDES ANOTHER TRIGGER DATE, WHICH IS A DECISION OF

7  A COURT HOLDING THAT THE PATENT DOES NOT INFRINGE OR IS NOT

8  INVALID.

9         NOW, TO GIVE YOU JUST A LITTLE BIT MORE BACKGROUND,

10 AND I APOLOGIZE -- BUT THIS IS SOMETHING MR. MOORE HAS OPENED

11 UP -- THERE IS A DECISION.  IT'S REFERRED TO IN OUR PAPERS.

12 IT'S REFERRED TO IN TORPHARM'S PAPER, KNOWN AS MOVA VERSUS

13 SHALALA, 140 F3RD 1060.  THAT WAS A CASE THAT THE D. C.

14 CIRCUIT DECIDED IN APRIL, AND IN THAT DECISION TEVA FILED AN

15 AMICUS BRIEF.  THE D. C. CIRCUIT SAID IN FOOTNOTE 18 OF THAT

16 DECISION, "THAT IT MIGHT VERY WELL BE THAT A DISMISSAL OF A

17 DECLARATORY JUDGMENT ACTION BROUGHT," SUCH AS WHAT TEVA

18 BROUGHT TODAY, "ON THE GROUNDS THAT THERE'S NO CASE OR

19 CONTROVERSY."  IT DECIDES THERE IS NO CONTROVERSY, AND SO

20 THERE WON'T BE ANY ACTUAL DECISION ON THE MERITS.  BUT THAT

21 DISMISSAL, BASED ON THE STRATEGIC BEHAVIOR OF A PATENTEE SUCH

22 AS SYNTEX WILL BE CONSIDERED UNDER 21 U.S.C. 355(J).  THAT CAN

23 BE CONSIDERED A TRIGGER DATE FOR THE 180 DAYS OF EXCLUSIVITY.

24         AT THE MOMENT WE DON'T KNOW WHERE THE THINGS ARE

25 GOING ON THE OTHER CASE AT THE D. C. CIRCUIT AS TO WHETHER OR

1 NOT TORPHARM IS EVEN ENTITLED TO EXCLUSIVITY, BUT IT MAY BE

2 THAT REGARDLESS OF WHAT HAPPENS HERE WE WOULD, AS EON

3 ARGUES -- I WOULD GIVE A COPY TO THE COURT AND ALSO TO

4 COUNSEL -- THAT THE FACT THAT SYNTEX SAYS, "YOU DON'T

5 INFRINGE", THAT THAT SHOULD BE CONSIDERED THE SAME AS A

6 DECISION OF A COURT HOLDING NON-INFRINGEMENT OR INVALIDITY;

7 BECAUSE, AS THE D. C. CIRCUIT, RECOGNIZED, THIS IS A CASE THAT

8 THE IDEA IS TO TRY TO ENCOURAGE GENERIC COMPETITION.  THAT'S

9 WHAT WE WANT TO DO.  WE'RE NOT SAYING WE ARE ENTITLED TO

10 EXCLUSIVITY.  WE WANT SOME SORT OF RULING, WHETHER IT IS A

11 MEMORANDUM BEFORE THE BENCH, SAYING, "OH, MR. VASSIL, COUNSEL

12 FOR SYNTEX, ADMITS HERE IN OPEN COURT THAT OUR FORMULATION

13 DOESN'T INFRINGE."  WE WOULD HAVE THAT.  THAT WOULD BE OUR

14 INSURANCE POLICY THAT THEY CAN'T EVER SAY, "OH, WE REALLY

15 DIDN'T MEAN IT."  THAT WILL BE OUR INSURANCE POLICY.

16          AND IT MIGHT VERY WELL BE, BASED ON FOOTNOTE 18 OF

17 MOVA VERSUS SHALALA, THAT THAT WILL BE USED AS A BASIS FOR

18 SAYING THERE IS A EXCLUSIVITY.  REGARDLESS OF THAT, EON LABS

19 HAS ALREADY MADE THAT POSITION TO THE FDA.

20          AND AS FOR OUR DECLARATORY JUDGMENT COMPLAINT,

21 GENPHARM HAS DONE JUST THE SAME THING, AND SO WE BELIEVE THAT

22 WE WERE PERFECTLY PROPER IN BRINGING OUR CASE BASED ON

23 SYNTEX'S BEHAVIOR.

24          IF THERE'S ANYTHING THAT SEEMS SOMEWHAT INEQUITABLE,

25 I WOULD SUBMIT IT IS SOMETHING GOING ON BETWEEN TORPHARM AND

1  SYNTEX THAT THEY DON'T WANT TO HAVE ALL THESE OTHER GENERIC

2  COMPETITORS:  INVAMED, PUREPAC, EON, SCHEIN, GENPHARM AND TEVA

3  USA FROM GOING OUT INTO THE MARKET WITH A GENERIC TICLOPIDINE

4  HYDROCHLORIDE PRODUCT.

5          THE COURT:  COUNSEL, DO YOU WISH TO RESPOND?

6          MR. VASSIL:  I HAVE A FEW POINTS TO MAKE, YOUR

7  HONOR, NOT NECESSARILY IN THE ORDER IN WHICH THEY WERE MADE BY

8  TEVA'S COUNSEL.

9          I THINK THE FIRST THING THOUGH THAT IS OBVIOUS IS

10  THAT THINGS ARE NEVER QUITE WHAT THEY SEEM.

11          I CAME HERE TO ARGUE A MOTION TO DISMISS WITH

12  RESPECT TO SYNTEX, BECAUSE THERE WAS NO JUSTICIABLE

13  CONTROVERSY, AND YOU HAVE HEARD QUITE A LOT OF REASONS WHY

14  THERE IS A LOT OF DANCING GOING ON SOMEWHERE ELSE AND WHY TEVA

15  WANTS THIS ADVISORY OPINION.  IT'S NOT TO TAKE CARE OF THIS

16  CASE, IT'S TO HELP THEM SOMEWHERE ELSE.

17          AND LET ME SAY, FIRST OF ALL, THERE IS NO COLLUSION,

18  BUT THAT, OF COURSE, IS A NON-SUBSTANTIATED STATEMENT, AND I

19  KNOW YOUR HONOR WILL TAKE IT FOR WHAT IT IS.

20          GENPHARM, I KNOW EXACTLY WHAT IS GOING ON IN THAT

21  CASE.  I AM COUNSEL IN THAT CASE, AND I HAVE TOLD GENPHARM'S

22  COUNSEL, "YOU ARE GOING TO GET A MOTION TO DISMISS, JUST LIKE

23  THIS ONE; NO CONTROVERSY."  THEY ARE ALSO MANEUVERING.  IF YOU

24  WERE TO TAKE TEVA'S ARGUMENT AND SUBSTITUTE GENPHARM, THEY

25  HAVE THE SAME DANCE.

1          WHAT WE HAVE HERE IS A SITUATION OF NEVER A THREAT

2  AND NEVER A LAWSUIT, AND THIS TRIGGERING EVENT, THIS TECHNICAL

3  INFRINGEMENT THAT YOU HEARD OF, IT'S CLEAR WHY THERE IS NO

4  CONTROVERSY.  WHEN THEY PRESENTED US WITH THAT PARAGRAPH IV

5  CERTIFICATION AND EVENTUALLY TOLD US WHAT THEIR FORMULATION

6  WAS, WE DID NOTHING.  WHAT WE DID DO THOUGH IS BRING A SUIT

7  LATER ON WHEN THEY REFUSED TO TELL US HOW THE ACTIVE

8  INGREDIENT IS MADE.  OUR CORRESPONDENCE, I THINK IT'S EXHIBIT

9  3, REFERS TO A REQUEST FOR THE SYNTHETIC PATHWAY, WHICH IS THE

10 PROCESS BY WHICH IT IS MADE.

11         IF WE WANTED TO BRING SUIT, IF WE WANTED TO MAKE A

12 THREAT, IT WAS DURING THAT TECHNICAL INFRINGEMENT ERA, A

13 45-DAY PERIOD, WHICH THE STATUTE SAYS THAT IF A GENERIC HOUSE

14 MAKES THIS DISCLOSURE AND IF YOU THINK THAT WHAT THEY ARE

15 DOING IS ACTIONABLE, YOU HAVE 45 DAYS IN WHICH TO BRING THE

16 SUIT.  AND IF YOU DO, THE FDA SAYS WE WILL GIVE YOU 30 MONTHS

17 TO RESOLVE THAT LITIGATION; AND IF AT THE END OF THE 30

18 MONTHS, EITHER THE PATENT IS HELD INVALID, OR NOT INFRINGED,

19 OR YOU HAVEN'T FINISHED IT, THEN WE WILL CONSIDER ALLOWING A

20 GENERIC APPLICATION FOR AN ANDA.  DURING THAT PERIOD NOTHING

21 IS DONE.  SO IF WE WANTED TO MAXIMIZE OUR POSITION, WE WOULD

22 HAVE BROUGHT SUIT THEN, AND THE LAW WOULD HAVE COME INTO PLAY

23 30 MONTHS, NO APPROVALS; BUT WE DIDN'T DO IT.  WE DIDN'T EVEN

24 ISSUE A THREAT.

25         THEN, SECONDLY, WHEN WE DID BRING THE SUIT IN NEW

1  JERSEY AGAINST EIGHT DEFENDANTS, ONE OF WHICH WAS TEVA, IT WAS

2  ONLY ON THE PROCESS.  THAT WAS ANOTHER TIME WE COULD HAVE

3  THREATENED THEM.  WE COULD HAVE INCLUDED A CLAIM FOR THAT

4  INFRINGEMENT, OR THEY COULD HAVE ANSWERED AND FILED A

5  COUNTERCLAIM, JUST LIKE THEY ARE DOING TODAY; BUT THAT DIDN'T

6  HAPPEN EITHER.  THERE NEVER WAS A THREAT.

7          ALONG COMES JUNE.  BETWEEN THE TIME WE FILED THE

8  VOLUNTARY DISMISSAL ON THE PROCESS IN APRIL AND THE TIME THEY

9  BROUGHT THIS SUIT, THIS FICTITIOUS SUIT IN JUNE, WE COULD HAVE

10  SUIT.  WE DIDN'T DO ANYTHING.  AS IT HAPPENS, VIRTUALLY

11  CONTEMPORANEOUSLY, WE SENT A NO-SUIT LETTER, THEY FILED THIS

12  ACTION.

13          IN POINT OF TIME, I THINK THE COMPLAINT WAS FILED

14  HERE AT 11:45 AND 16 SECONDS, ON JUNE 8, CALIFORNIA TIME.  1

15  O'CLOCK CALIFORNIA TIME, UNBEKNOWNST TO US THAT THEY HAD SUED

16  US, WE SENT THE LETTER.  SO, ACTUALLY, THOUGH YOU CAN TREAT

17  THE LETTER AS A POST-FILING EVENT, AND ACTUALLY, WE GAVE THEM

18  THAT LETTER WITHOUT EVEN KNOWING WE WERE SUED.  WE WEREN'T

19  SERVED UNTIL THE NEXT DAY.

20          SO THERE NEVER WAS A THREAT, AND WHAT IT COMES DOWN

21  TO IS WE'RE BEING ASKED -- OR YOU'RE BEING ASKED, ACTUALLY, TO

22  GIVE AN ADVISORY OPINION THAT THERE WAS -- THAT THEY DON'T

23  INFRINGE, THAT THAT SHOULD BE PART OF THE ORDER.

24          THE ONLY ORDER THEY ARE ENTITLED TO IS A DISMISSAL.

25  WHETHER YOU DO IT BY ONE WORD OR YOU FOLLOW THE FORMAT THAT WE

1  HAD PROPOSED, YOUR HONOR, THE SAME RESULT.

2       WE HAVE ASKED YOU TO TAKE JUDICIAL NOTICE OF THE

3  FORM OF ORDER THAT WAS ENTERED IN THE SPECTRONICS CASE, AND

4  THAT WAS VERY INSTRUCTIVE BECAUSE THERE WAS AN ACTUAL

5  CONTROVERSY AND IT WAS MOOTED BY A LETTER CALLED "A STATEMENT

6  OF NO LIABILITY."

7       THE DISTRICT COURT ENTERED A JUDGMENT DISMISSING THE

8  COMPLAINT.  IT DIDN'T SAY ANYTHING ABOUT THE LETTER.  IT

9  DIDN'T SAY ANYTHING ABOUT ANY ADMISSION THAT WAS A DISMISSAL,

10 AND THAT JUDGMENT WAS AFFIRMED BY THE SPECTRONICS CASE THAT

11 BOTH SIDES CITE.

12       SO I THINK, YOUR HONOR, IT'S CLEAR THAT HOW THIS

13 CASE IS DISMISSED HAS A LOT TO DO WITH WHATEVER OTHER DANCE,

14 WHATEVER OTHER MOTIVE THEY HAD.  SO FAR AS WE'RE CONCERNED,

15 SINCE THERE NEVER WAS ANY JURISDICTION, YOU SHOULD ENTER AN

16 ORDER THAT SAYS THAT, AND THAT SHOULD BE THE END OF THIS CASE.

17       MR. REIN:  YOUR HONOR, JUST ONE POINT ON --

18       THE COURT:  NO.  THAT'S ENOUGH.  YOU'RE ALL LEADING

19 ME DOWN PATHS HERE THAT I NEED NOT GO DOWN, AND YOU ALL ARE

20 LEADING ME BEYOND THE POINT OF THIS MOTION, WHICH IS THE FACT

21 THAT I HAVE NO JURISDICTION.

22       NOW, IT'S PERFECTLY OBVIOUS TO ME THAT THIS LAWSUIT

23 IS ONE SMALL SKIRMISH IN WHAT APPEARS TO BE A MAJOR WORLD WAR

24 GOING ON AMONG YOU, FOLKS, AND PERHAPS, AMONG OTHER DRUG

25 MANUFACTURERS, TOO, OF THIS TYPE OF PRODUCT, BUT THAT'S NOT

1 BEFORE ME. YOU'RE GOING TO HAVE TO FIGHT THOSE COMPETITION
2 PROBLEMS, AND MAYBE THOSE LAWSUIT PROBLEMS, IN OTHER
3 JURISDICTIONS.

4        NOW, THE POINT HERE IS THAT ON THE SAME DAY IN WHICH
5 THE COMPLAINT WAS FILED, AND THAT'S JUST TO USE THE VERNACULAR
6 "CROSSED IN THE MAILS" IS THIS LETTER FROM ROCHE, ON BEHALF OF
7 ITSELF AND SYNTEX, TO TEVA, SAYING WHAT IT SAYS. ALL RIGHT,
8 AND I'M NOT EVEN GOING TO QUOTE IT BECAUSE I DON'T WANT TO GET
9 INVOLVED IN THE CONTROVERSY OF HAVING DEFINED IT, BUT IT'S A
10 LETTER; AND YOU ALL AGREE THAT THAT LETTER ELIMINATES ANY
11 CONTROVERSY IN THIS CASE. AS OF NOW THERE IS, AND AS OF THE
12 MOMENT OF FILING, I GUESS, BECAUSE OF THE CROSSING IN THE
13 MAILS, THERE WAS NO CASE OF CONTROVERSY. WELL, THERE IS NO
14 CASE OF CONTROVERSY UNDER ARTICLE III.

15        NOW, THAT'S AS FAR AS I INTEND TO GO. NOW, SYNTEX
16 WANTS TO ME TO GO FURTHER AND FIND THAT THERE NEVER WAS A
17 REASONABLE APPREHENSION SUIT, AND TEVA WANTS ME TO GO FURTHER
18 AND MAKE A FINDING THAT THE -- IF THE PRODUCT DOESN'T INFRINGE
19 THE '592 PRODUCT, THAT SYNTEX HAS WAIVED ITS RIGHT TO ENFORCE
20 AGAINST TEVA.

21        I'M NOT GOING TO DO EITHER ONE. I DON'T THINK I
22 HAVE THE POWER TO DO EITHER ONE. ONCE THERE IS A DECISION
23 HERE THAT THERE IS NO CASE OF CONTROVERSY, YOU'RE OUT THE
24 DOOR. MY FILE IS TAKEN AWAY FROM ME. EVEN IF I COULD, EVEN
25 IF I HAVE THE POWER, I'M NOT GOING TO GET EMBROILED INTO THIS

1   KIND OF THING WITHOUT KNOWING THE FACTS.

2           I MEAN, HOW CAN I SAY THAT THERE NEVER WAS

3   REASONABLE APPREHENSION TO SUE, UNLESS I WALK THROUGH A VERY

4   LENGTHY HEARING ON ALL THE TRACK RECORDS BETWEEN YOU?  I CAN'T

5   DO THAT, AND PARTICULARLY CAN'T DO IT WHERE YOU AGREE THAT I

6   HAVE NO ARTICLE III JURISDICTION; AND THE SAME WAY WITH WHAT

7   TEVA WANTS THAT THIS LETTER CONSTITUTES AN ADMISSION AND A

8   WAIVER, AND THAT'S GOING TO HAVE THE IMPACT OF WHETHER

9   TORPHARM DOES OR DOES NOT HAVE THIS PRIORITY UNDER THE ACT.

10  I'M NOT GOING TO DO THAT WITHOUT A VERY EXTENSIVE HEARING, AND

11  I'M NOT GOING TO HAVE ANY.

12          YOU TELL ME I DON'T HAVE ARTICLE III JURISDICTION,

13  AND YOU'RE RIGHT, I DON'T HAVE ARTICLE III JURISDICTION.  EVEN

14  IF I HAD IT, THIS IS A DECLARATORY RELIEF ACTION, AND I WOULD

15  DECLINE TO EXERCISE THAT JURISDICTION, BECAUSE I JUST DON'T

16  KNOW ENOUGH ABOUT IT, AND THE CASE IS NO LONGER IN FRONT OF

17  ME.

18          SO I'M JUST GOING TO DO WHAT I THINK THE MOTION

19  REQUIRES ME TO DO, WHICH IS TO DISMISS THE ACTION.  I'M GOING

20  TO USE THE FORM THAT WAS SUBMITTED TO ME, EXCEPT THE OPERATIVE

21  WORDS WILL SIMPLY BE -- WELL, I'M STRIKING OUT OF THE ORDER ON

22  PAGE TWO, LINE FIVE, THE WORDS "LACK AND."  SO IT WILL SIMPLY

23  READ, "PLAINTIFF LACKS A REASONABLE APPREHENSION SUIT."

24          "NUMBER 2.  NO JUSTICIABLE CONTROVERSY.

25          "3.  COURT LACKS SUBJECT MATTER JURISDICTION."

ROSITA FLORES, OFFICIAL COURT REPORTER, USDC

1          THAT'S GOING TO BE THE END OF IT.

2          NOW, IS THAT LESS THAN SATISFACTORY FOR YOU?  WELL,

3 IT MAY BE, BUT YOU CAN'T COME IN HERE AND TELL ME I HAVE NO

4 JURISDICTION UNDER ARTICLE III, AT THE SAME TIME TELL ME I

5 OUGHT TO MAKE ALL THESE FINDINGS THAT'S GOING TO HAVE A

6 TERRIBLE IMPACT ON THE DRUG INDUSTRY.  OKAY.  I'M NOT GOING TO

7 DO IT.

8          ALSO, SINCE THE CASE IS BEING DISMISSED FOR LACK OF

9 JURISDICTION, TORPHARM'S MOTION TO INTERVENE WILL BE DENIED AS

10 MOOT.

11          OKAY.  I'M SORRY THAT YOU GOT EMBROILED IN ALL THAT

12 HERE.  IT'S TOO BAD IT DIDN'T GO FASTER, BUT YOU ARE OUT OF

13 HERE.

14          SO GOOD-BYE AND SEE YOU AT SOME OTHER TIME IN A CASE

15 OF CONTROVERSY.  THANK YOU.

16          (THE MATTER WAS CONCLUDED).

17

18

19

20

21

22

23

24

25

ROSITA FLORES, OFFICIAL COURT REPORTER, USDC

<u>CERTIFICATE OF REPORTER</u>

I, ROSITA FLORES, OFFICIAL UNDERSIGNED COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 450 GOLDEN GATE AVENUE, SAN FRANCISCO, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPTION OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED, AND REDUCED TO TYPEWRITING TO THE BEST OF MY ABILITY.

ROSITA FLORES

ROSITA FLORES, OFFICIAL COURT REPORTER, USDC