# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC, et al, ) <br> ) <br> Plaintiffs, ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> THE UNITED STATES FOOD ) <br> AND DRUG ADMINISTRATION, et al, ) <br> ) <br> ) <br> Defendants. ) <br> ) | Civ. No. 99-00067 (CKK) |

*ON REMAND FROM THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**TEVA PHARMACEUTICALS USA, INC.'S RENEWED
APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND MOTION FOR PRELIMINARY INJUNCTION**

On July 20, 1999 the U.S. Court of Appeals For The District Of Columbia Circuit reversed this Court's January 20, 1999 denial of Plaintiff Teva Pharmaceuticals, USA, Inc.'s ("Teva") Motion For Preliminary Injunction and remanded the case to this court for reconsideration of Teva's request for injunctive relief. Teva initially brought this action seeking:

> A judicial declaration that as of February 10, 1999 Teva is entitled to an "effective approval" of its Abbreviated New Drug Application for the generic drug ticlopidine hydrochloride ("ticlopidine"), pursuant to the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 355(j)(5)(B);

>A preliminary injunction requiring the Food and Drug Administration ("FDA") to issue effective approval of Teva's ticlopidine ANDA no later than February 10, 1999; and
>
>A temporary restraining order prohibiting FDA from approving any other ticlopidine ANDA in such a manner as to block Teva's entry into the market after February 10, 1999.

This Court denied Teva's requests on January 20, 1999, on the bases that: "Teva has not demonstrated that it is likely to succeed on the merits," Teva Pharmaceuticals USA, Inc. v,. United Stated Food and Drug Administration, Civ. No. 99-67 (CKK), Slip Op. at 13 (D.D.C. January 20, 1999) (hereinafter "Slip Op."); that "[t]he threshold for irreparable harm was lower in [other] cases than it must be here, where the Court has determined that Teva is not likely to succeed on the merits," id. at 15; and that "[b]ecause the Court has concluded that Teva is not likely to succeed on the merits, the public interest will be better served by denying Teva's requests for injunctive relief." Id. at 17.

Teva quickly appealed, and the Court of Appeals granted Teva's request for expedited scheduling of the appeal, which was argued April 26, 1999. The Court of Appeals, reviewing de novo this Court's conclusion of law that "Teva was unlikely to prevail in its challenge to the FDA's refusal to treat the California dismissal as a triggering 'court decision,'" Teva Pharmaceuticals USA, Inc. v. United States Food and Drug Administration, No. 99-5022, Slip Op. at 8-9 (D.C. Cir., July 20, 1999) (hereinafter "Circuit Op."), reversed the denial of injunctive relief on July 20, 1999, and on July 26, 1999 granted Teva's motion for immediate issuance of the mandate. For the reasons described herein, Teva now respectfully renews its request for immediate injunctive relief consistent with the accompanying proposed orders.

## ISSUE PRESENTED

Most of the pertinent factual and legal background is explained in detail in the opinions in this case by the Circuit Court and this Court, as well as in Teva's initial memoranda in support of its requests for a TRO and a preliminary injunction.[1] Briefly, the underlying issue is whether the August 14, 1998 decision of the U.S. District Court for the Northern District of California – dismissing Teva's declaratory judgment action against Syntex on "case or controversy" grounds due to Syntex's express concession that Teva's ticlopidine formulation does not infringe Syntex's patent – triggered the start of the 180-Day Delay Period (or "exclusivity period") that FDA has imposed upon the effective date of Teva's ticlopidine ANDA under 21 U.S.C. § 355(j)(5)(B)(iv). If it did, as Teva asserts, Teva should have received effective approval of its ticlopidine ANDA nearly six months ago, on February 10, 1999. Although the Court of Appeals' opinion remanded the case to this Court "to consider anew the request for injunctive relief," Circuit Op. at 17, for all practical purposes the Court of Appeals' decision leaves no room for doubt that Teva's ticlopidine has been unlawfully kept off the market since February 10, 1999, and that FDA should be ordered to make Teva's ANDA approval effective immediately.

## THE COURT OF APPEALS HAS CONCLUDED
## THAT TEVA IS LIKELY TO SUCCEED ON THE MERITS

This Court's denial of Teva's original requests for a TRO and preliminary injunctive relief was based primarily upon the Court's conclusion that Teva was unlikely

---

[1] Teva hereby incorporates those memoranda by reference in further support of this renewed motion. Courtesy copies of those memoranda, and the original supporting declarations of Carole Ben-

3

to succeed on the merits of its claim that the California court decision was a triggering court decision under the Hatch-Waxman Amendments, 21 U.S.C. § 355(j)(5)(B). See Slip Op. at 13-17. The Court also applied a sliding scale to its analysis of the other prongs of the standard preliminary injunction test – irreparable harm, and the public interest – imposing a stricter standard upon Teva's preliminary injunction motion based on the Court's conclusion that Teva was not likely to succeed on the merits. See id. at 15, 17.

The Court of Appeals' opinion likewise focused primarily on the substantive issue of whether Teva's position is correct on the merits, and, after a thorough analysis, concluded that Teva is likely to succeed in this case. See Circuit Op. at 8-17 ("we review de novo the district court's conclusion of law, namely that Teva was unlikely to prevail in its challenge to the FDA's refusal to treat the California dismissal as a triggering 'court decision.' . . .Upon a review of the record, we conclude that the FDA's response was arbitrary and capricious. . . .[at 8-9] Accordingly we reverse, and because our conclusion could well affect the district court's evaluation of [Teva's] other arguments concerning harm, injury, and the public interest, we remand the case to the district court to consider anew the request for injunctive relief." (at 17).

Importantly, the Court of Appeals rejected the fundamental statutory argument underlying FDA's decision to refuse to recognize the California court decision as a trigger to Teva's 180-Day Delay Period. Specifically, the Circuit Court rejected FDA's explanation (echoed by TorPharm and Syntex) that "the dismissal of Teva's [declaratory judgment] case is not, on its face, a decision of a court holding the patent to be invalid,

---

Maimon, MD, and Peter Terreri, are provided with this motion for the convenience of the Court and the parties.

4

not infringed, or unenforceable," Federal Defendants' Memorandum In Opposition To Teva's Application For A Temporary Restraining Order And Motion For Preliminary Injunction ("FDA's Initial Opp.") at 3, 12. See also Statement of Points And Authorities Of Proposed Intervenors Hoffman-La Roche Inc. and Syntex (U.S.A.) Inc. In Opposition To The Application Of Teva Pharmaceuticals USA, Inc. For Temporary Restraining Order And Motion For Preliminary Injunction ("Syntex Initial Opp.") at 12 ("The order in the declaratory judgment action on its face makes no finding or conclusion regarding infringement of Roche's '592 patent. As such, FDA is not authorized under the statute to begin the 180-day exclusivity period."); Memorandum Of Points & Authorities Of Proposed Intervenor-Defendant TorPharm In Opposition To Plaintiff's Application For Temporary Restraining Order ("TorPharm's Initial Opp.") at 2 (noting that the case turns on "a narrow issue under the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act: whether a court order dismissing a declaratory judgment complaint for lack of subject matter jurisdiction because there was no case or controversy constitutes 'a decision of a court in an action described in [21 U.S.C. § 355(j)(5)(B)(iii)] holding the patent which is the subject of a [paragraph IV] certification to be invalid or not infringed.'").

The Circuit Court's rejection of the statutory interpretation that formed the basis for refusing to grant Teva's ANDA effective approval on February 10, 1999 was thorough and clear. The Court ruled that the California dismissal was indeed a court "decision," and that the decision was one "holding" the Syntex patent to be non-infringed by and/or unenforceable against Teva, because that decision has the preclusive effect of preventing Syntex from ever suing Teva for infringement of the relevant patent. Circuit

5

Op. at 9-12, citing Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995), Spectronics v. H.B. Fuller Co., 940 F.2d 631 (Fed. Cir. 1991), and Fina Research, S.A. v. Baroid, Ltd., 141 F.3d 1479 (Fed. Cir. 1998).

The Court of Appeals also rejected the ancillary argument presented by Syntex and TorPharm (but not advanced by FDA) that the California court decision could not trigger the applicable 180-Day Delay Period because it did not hold the patent "invalid or not infringed." As the Circuit Court noted, FDA's own regulations allow a court decision that renders a patent "unenforceable," either in general, or by estoppel as against a single party, to trigger the 180-day period, Circuit Op. at 12-13, citing 21 C.F.R. § 314.94(a)(12)(i)(A)(*4*) and 59 Fed. Reg. 50338, 50339, 50353 (1994). And, of course, as the Circuit also held, "[a]n agency is required to follow its own regulations." Circuit Op. at 14 (citations omitted).

In addition, the Court of Appeals rejected FDA's novel procedural argument that because the agency may, at some unspecified future date, initiate new rulemaking proceedings related to 180-day exclusivity issues, it may enforce its exceedingly narrow statutory interpretation even though the agency had promised to consider all 180-day exclusivity situations on a "case by case basis." See FDA's Initial Opp. at 8-9, 14. As the Court of Appeals noted, "[FDA's] narrow interpretation cannot be reasonable simply because it is narrower than it *could* be; to the contrary that interpretation may in fact be narrower than it *should* be given the purposes of the statutory scheme and congressional intent." Circuit Op. at 15 (italics in original), citing Process Gas Consumers Group v. United States Dep't of Agriculture, 694 F.2d 778, 792 (D.C. Cir. 1982) (in banc).

6

The Court of Appeals also declared it "a mystery" how FDA could justify its refusal to accede to Teva's request to recognize the California court decision as a trigger, in light of the fact that the agency had acted in a facially inconsistent manner with respect to another court decision based on a patent holder's express concession of non-infringement. Specifically, FDA had previously triggered the start of another applicant's 180-Day Delay Period for a different drug based upon a court decision dismissing a patent infringement action, by way of a grant of partial summary judgment, based solely on the patent holder's express concession of non-infringement by a Paragraph IV ANDA applicant. See Circuit Op. at 14-15, citing Glaxo, Inc. v. Boehringer Ingelheim Corp., 954 F. Supp. 469 (D. Conn. 1996), final judgment entered, 962 F. Supp. 295 (D. Conn. 1997), aff'd, 119 F.3d 14 (Fed. Cir. 1997) (unpublished opinion). The Court of Appeals here noted that both the Glaxo and Teva v. Syntex court decisions equally rendered the relevant patents unenforceable against the respective Paragraph IV ANDA applicants by "prevent[ing] the patent holder from suing the ANDA applicant for patent infringement." The Court concluded that "[g]iven that the California dismissal supports estoppel to the same extent as the grant of partial summary judgment in [Glaxo v. Boehringer], it is unclear why the California dismissal would not satisfy the 'court decision' requirement of [21 U.S.C.] § 355(j)(5)(B)(iv)(II)."

Finally, the Court of Appeals addressed the underlying legislative purposes of the Hatch-Waxman Amendments, and concluded that FDA's interpretation impermissibly would allow patent holders to "manipulate the [ANDA] system in order to block or delay generic competition by stating that the patent holder will not enforce its patent against the Paragraph IV challenger." Circuit Op. at 12. This was consistent with this Court's

7

finding in its decision, noting that FDA's interpretation "gives the patent holder the ability to artificially extend its period of market exclusivity by manipulating the court-decision trigger, by choosing not to sue the [first] ANDA applicant and then stipulating that it will not sue any ANDA applicant that brings a declaratory judgment action." Slip Op. at 12. The Court of Appeals also noted that significant public injury was caused by FDA's arbitrary and capricious refusal to grant Teva effective approval as of February 10, 1999:

> As a result of the FDA's current construction of the 'court decision' requirement and its treatment of Teva's application, generic ticlopidine tablets were not available for a number of months despite the fact that appellants stood ready to market them. Syntex remained the exclusive manufacturer of 'Ticlid,' and the first ANDA applicant's market exclusivity period had not yet begun because the FDA had yet to approve that applicant's filing. On July 1, 1999, the FDA finally approved TorPharm's ANDA, and TorPharm commenced marketing on July 6, so now at least one generic version of ticlopidine tablets is available. Yet, <u>this series of events may well not have been what Congress contemplated in enacting the Hatch-Waxman amendments to expedite generic drug approvals</u>. See H.R. Rep. No. 98-857, pt. 1, at 14-15, <u>reprinted in</u> U.S.C.C.A.N. 2647, 2647-48.

Circuit Op. at 16 (emphasis added).

Based on the Court of Appeals' comprehensive analysis of the merits of this case, and its rejection of every substantive argument presented by FDA and the intervenor-defendants, there can now be now doubt that Teva has a very strong "likelihood of success on the merits" in this case. Although the Court of Appeals stated that FDA would have the opportunity to further explain its decision in this matter on remand to this Court, see Circuit Op. at 12, on balance the merits of this case now weigh so heavily in favor of Teva's position that preliminary injunctive relief is warranted immediately.

8

## THE MOUNTING IRREPARABLE INJURY TO TEVA
## WARRANTS IMMEDIATE INJUNCTIVE RELIEF

Having determined that Teva has demonstrated a strong likelihood of success on the merits, see supra, the primary purpose of the Court of Appeals' remand was so that this Court could re-evaluate the non-merits preliminary injunction elements in the context of a renewed motion by Teva for injunctive relief. See Circuit Op. at 17 ("we reverse [the denial of a preliminary injunction], and because our conclusion could well affect the district court's evaluation of [Teva's] other arguments concerning harm, injury, and the public interest, we remand the case to the district court to consider anew the request for injunctive relief."). Significantly, the Court of Appeals has already noted that "Teva and Purepac face continued harm because of their denied access to the market, see Byrd v. EPA, 174 F.3d 239, 244 (D.C. Cir. 1999), harm potentially heightened because of TorPharm's period of market exclusivity." Circuit Op. at 16 n. 8 (emphasis added).

Just as this Court initially held Teva's harm, injury, and public interest arguments to a stricter standard based on its conclusion that Teva had a low likelihood of success, see Slip Op. at 13-17, the Court must now re-evaluate those preliminary injunction factors in a light much more favorable to Teva. See Bracco Diagnostics, Inc. v. Shalala, 963 F. Supp 20, 27 (D.D.C. 1997); Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843-45 (D.C. Cir. 1977). As demonstrated by the original declarations of Carole Ben-Maimon, M.D., and Peter Terreri, in support of Teva's initial requests for a TRO and preliminary injunction, Teva is suffering severe and irreparable harm each and every day it is kept off the generic ticlopidine market. Intervening events, and the passage of time, have only magnified the harm to Teva of any

9

further delay in effective approval of its ANDA, and the balance of harms is thus even more compellingly tipped in favor of injunctive relief than it was prior to February 10, 1999.

As a result of the Court's initial denial of injunctive relief, Teva has been blocked, and remains blocked, from marketing its lower cost generic version of ticlopidine. Moreover, on July 1, 1999, TorPharm finally obtained effective approval of its ticlopidine ANDA, along with an FDA-ordered 180-day "exclusivity" period, meaning that FDA did not intend to approve any other ticlopidine ANDA, including Teva's, until January, 2000 at the earliest. Consequently, as a result of the Court's denial of Teva's requested TRO and preliminary injunction, in addition to having been denied the right to market its own ticlopidine since February 10, 1999, as the sole, or one of few, competitors to Syntex's expensive brand-name version of ticlopidine, Teva's commercial position has now been relegated to a delayed launch into an instantly saturated market with as many as eight additional generic competitors. This constitutes egregious irreparable harm to Teva. See Terreri Decl. ¶¶ 3-11.

Because the Court of Appeals has concluded that Teva is likely to succeed on the merits of its claim that TorPharm is not legally entitled to any exclusivity extending beyond February 10, 1999, TorPharm cannot be heard to complain of any cognizable injury for purposes of evaluating Teva's renewed motion for preliminary injunction. In fact, TorPharm has already gained a tremendous undeserved windfall by virtue of its current de facto exclusivity period. And as Teva noted in its initial memoranda in this Court, Syntex has never enforced its patent and has only benefited from an extended monopoly period due to the serendipity of TorPharm being unable to obtain final

10

approval prior to July 1, 1999. Thus Syntex clearly will suffer no cognizable harm by the issuance of injunctive relief.

Finally, although the public, after an extended delay, now has one generic version of ticlopidine to choose from, the public interest is best served by maximizing competition in the market for prescription drugs, and the issuance of Teva's requested injunction will strongly serve that public interest. See Circuit Op. at 16.

## CONCLUSION

For the reasons set forth herein, and in Teva's initial submissions to this Court in support of its application for a temporary restraining order and a preliminary injunction, the Court should enter an order directing FDA to make Teva's tentatively-approved ticlopidine ANDA effective immediately.

Dated: July 28, 1999

Respectfully submitted,

James N. Czaban (D.C. Bar #459211)
Geoffrey M. Levitt (D.C. Bar #358633)
David M. Malone (D.C. Bar #125047) (Counsel of Record)

Venable, Baetjer, Howard & Civiletti LLP
1201 New York Avenue, NW
Suite 1000
Washington, D.C. 20005-3917
202/962-4800 (phone)
202/962-8300 (fax)

Attorneys for Teva Pharmaceuticals USA, Inc.