# EXHIBIT F

ORAL ARGUMENT UNSCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

## No. 99-5022

TEVA PHARMACEUTICALS USA, INC.,
                                   Plaintiff/Appellant

v.

UNITED STATES FOOD AND DRUG ADMINISTRATION,
                                                    __et al.__,
                                   Defendant/Appellees.

APPEAL FROM DENIAL OF PRELIMINARY INJUNCTIVE
RELIEF BY THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

BRIEF OF APPELLANT
TEVA PHARMACEUTICALS USA, INC.

James N. Czaban
Geoffrey M. Levitt
David M. Malone (Counsel of Record)

VENABLE, BAETJER, HOWARD & CIVILETTI, LLP
1201 New York Avenue, NW
Suite 1000
Washington, D.C.  20005-3917
202/962-4800

ATTORNEYS FOR APPELLANT
TEVA PHARMACEUTICALS USA, INC.

## Rule 28(a)(1) Certificate

### Parties

Appellant Teva Pharmaceuticals USA, Inc. appeared as plaintiff in this matter before the United States District Court for the District of Columbia. Appellant-intervenor Purepac Pharmaceutical Co. was granted leave to intervene as a plaintiff in the district court after the Notice of Appeal was filed. Appellees United States Food and Drug Administration and Donna E. Shalala, in her official capacity as Secretary of the Department of Health and Human Services, appeared as defendants. Appellee-intervenors Hoffman-La Roche, Inc./Syntex (USA) Inc. and TorPharm, a Division of Apotex, Inc. appeared as defendant-intervenors.

### Rulings Under Review

This is an appeal of the January 21, 1999 order of Judge Colleen Kollar-Kotelly of the United States District Court for the District of Columbia denying Teva's Application for a Temporary Restraining Order and Motion for a Preliminary Injunction. The order is unreported and is included in the Joint Appendix ("JA") at page 146.

### Related Cases

There are no related cases.

I hereby certify this 1st day of February, 1999 that the foregoing is a complete and accurate statement regarding the parties, rulings, and related cases.

David M. Malone

i

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Counsel of record for Teva hereby certify that, to the best of our knowledge and belief, the attached list (on next page) shows all subsidiaries or affiliates of Teva Pharmaceutical Industries, Ltd., the corporate parent company of Teva, that have any outstanding securities in the hands of the public. We further state that, insofar as relevant to the litigation before this Court, Teva is engaged in the manufacture, marketing, sale and distribution of generic pharmaceutical products.

These representations are made in order that judges of this Court may determine the need for recusal.

David M. Malone
February 1, 1999

# TEVA PHARMACEUTICAL INDUSTRIES, LTD.
## SUBSIDIARY AND ASSOCIATED COMPANIES*
### AT DECEMBER 31, 1998

| Name of Company | Activity |
|---|---|
| **Subsidiaries:** | |
| Teva Pharmaceuticals USA, Inc. | Production, importation to the United States and marketing of pharmaceutical products |
| Abic Ltd. and its wholly-owned subsidiaries (99.3%) | Production and marketing of pharmaceutical and veterinary products |
| Salomon, Levin and Elstein Ltd. | Marketing and distribution of the Company's pharmaceutical products and imported pharmaceuticals |
| Assia Chemical Industries Ltd. | Production of active pharmaceutical ingredients for the pharmaceutical industry |
| Teva Tech Ltd. | Production of active pharmaceutical ingredients for the pharmaceutical industry |
| Plantex Ltd. | Production of raw materials for the pharmaceutical industry |
| Teva Pharmaceuticals Europe BV and its wholly-owned subsidiaries | Marketing of pharmaceutical, chemical and veterinary products |
| Biogal Pharmaceutical Works Ltd., Hungary (97%) | Production and marketing of active pharmaceutical ingredients and pharmaceutical products |
| Pharmachemie BV | Production and marketing of pharmaceutical products |
| APS/Berk Ltd., U.K. | Manufacture and distribution of pharmaceutical products |
| Prosintex Industrie Chimiche Italiane S.r.l., Italy | Production and marketing of active pharmaceutical ingredients for the pharmaceutical industry |
| Teva Medical Ltd. | Manufacture of medical products and equipment for hospital use |
| Teva Medical Trading Ltd. | Importation and marketing in Israel of Travenol-Baxter products |
| Gry-Pharma GmbH, Germany (93.3%) | Marketing of pharmaceutical products |
| Biological Laboratories Teva Ltd. | Production and distribution of veterinary drug products |
| Teva Holdings Ltd. | Financing |

**Associated Companies:**

| | |
|---|---|
| Prographarm Laboratories, France (34%) | Production of pharmaceutical products |
| Portman Pharmaceuticals Inc., U.S. (30%) | Research and Development |

* 100% owned and controlled except as where otherwise noted.

**The above list does not include subsidiaries engaged in the distribution of pharmaceutical, chemical and veterinary products in North and South America, Europe and Africa or inactive subsidiaries.**

# TABLE OF CONTENTS

**Page**

RULE 28(a)(1) CERTIFICATE ........................................................... i

RULE 26.1 CORPORATE DISCLOSURE STATEMENT..................................ii

TABLE OF CONTENTS................................................................ iv

TABLE OF AUTHORITIES ........................................................... vii

GLOSSARY ............................................................................. x

CERTIFICATE OF SERVICE AND COMPLIANCE WITH CIRCUIT RULE 28........ xii

INTRODUCTION ........................................................................2

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION .........................................................................2

ISSUE PRESENTED ON APPEAL.....................................................3

STATUTES AND REGULATIONS .....................................................4

STANDARD OF REVIEW ..............................................................4

STATEMENT OF THE CASE...........................................................4

    Factual Background ...............................................................4

    The Proceedings Below ...........................................................7

SUMMARY OF ARGUMENT ..........................................................9

ARGUMENT ..........................................................................10

I.    THE DISMISSAL OF TEVA'S HATCH-WAXMAN
    DECLARATORY JUDGMENT ACTION MUST BE
    TREATED AS A "COURT DECISION TRIGGER" FOR
    PURPOSES OF STARTING TEVA'S 180-DAY WAITING
    PERIOD FOR EFFECTIVE APPROVAL OF ITS
    TICLOPIDINE ANDA ...........................................................10

    A.    The "Court Decision Trigger" Provision Of The
        Statute Does Not Directly Address Whether The
        Dismissal Of Teva's Declaratory Judgment Action
        Against Roche On Case Or Controversy Grounds

Triggered the 180-Day Delay Period Applicable To The Effective Approval Date Of Teva's Ticlopidine ANDA ........................................................................................10

B.    FDA's Refusal To Treat The Dismissal Of Teva's Hatch-Waxman Declaratory Judgment Action As a Court Decision Trigger Is Based On An Unreasonable and Impermissible Statutory Interpretation ...............................................................................14

    1.    FDA's Interpretation of the Court Decision Trigger is Unreasonable Because It Renders the Hatch-Waxman Declaratory Judgment Action Mechanism Effectively Inoperative ......................15

    2.    FDA's Interpretation Allows Holders of Invalid, Unenforceable, Or Non-Infringed Patents to Thwart The Statutory Mechanisms Congress Created to Expedite Generic Market Entry ..................................................18

C.    It is Reasonable And Necessary to Interpret The Dismissal of Teva's Declaratory Judgment Action As Triggering the Start of the 180-Day Delay Period Applicable to Effective Approval of Teva's Ticlopidine ANDA .........................................................20

    1.    Recognizing the Dismissal of Teva's Declaratory Judgment Action As Triggering the Start of the 180-Day Delay Period Is Consistent with the Structure and Purpose of the 1984 Amendments .......................................20

    2.    The California Court's Case Or Controversy Dismissal Is Equivalent To A Judgment Of Unenforceability ...............................................23

    3.    The FDA Itself Has Recognized An Analogous Court Action As Triggering the Start of the 180-Day Delay Period ....................................25

II.    EQUITABLE CONSIDERATIONS WARRANT THE ISSUANCE OF A PRELIMINARY INJUNCTION ..................................27

A.    Teva Will Be Irreparably Harmed Without the Requested Preliminary Injunction .................................................27

          B.      The Balance of Harms Weighs In Favor Of Teva's
Request For Preliminary Injunctive Relief.....................................29

          C.      The Public Interest Strongly Supports Granting The
Requested Injunction ....................................................................31

III.    NOTICE-AND-COMMENT RULEMAKING IS NOT
REQUIRED TO ESTABLISH THE EFFECTIVE DATE OF
TEVA'S TICLOPIDINE ANDA.............................................................32

CONCLUSION..................................................................................................32

## TABLE OF AUTHORITIES

<u>Cases</u>

Abbott Laboratories v. Young, 920 F.2d 984, 988 (D.C. Cir. 1990),
cert. denied, 502 U.S. 819 (1991). ........................................................24

Asiana Airlines v. FAA, 134 F.3d 393, 398 (D.C. Cir. 1998). .................................... 24-25

Bracco Diagnostics, Inc. v. Shalala, 963  F. Supp. 20 (D.D.C. 1997). ................... 24, 37-38

C.F. Communications Corp. v. FCC, 128 F.3d 735, 739 (D.C. Cir. 1997). ......................24

* Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467
U.S. 837, 842-43 (1984). ........................................................22, 24, 29

Cold Metal Process Co. v. E.W. Bliss Co., 21 F. Supp. 509 (D. Del.
1937). ........................................................................................31

Eli Lilly v. Medtronic, 496 U.S. 661 (1990).........................................................30

Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1483-1484 (Fed. Cir.
1998). ........................................................................................34

Granutec, Inc. v. Shalala,139 F.3d 889 (table),1998 WL 153410 (4th Cir.
April 3, 1998)..................................................................22-23, 26, 35-37

Merck v. Danbury, 694 F. Supp. 1 (D.Del. 1988), aff'd 873 F.2d 1418
(Fed. Cir. 1989)........................................................................... 33-34

Mova Pharmaceutical Corp. v. Shalala, 955 F. Supp. 128 (D.D.C. 1997),
aff'd 140 F.3d 1060 (D.C. Cir. 1998). ........................................... 20, 37-38, 42

* Mova Pharmaceutical Corp. v. Shalala, 140 F.3d
1060 (D.C. Cir. 1998). ........................................11-13, 22-23, 26-28, 32

Purepac Pharmaceutical Co. v. Friedman, No. 98-5334, -- F.3d --, 1998
WL 898347 (D.C. Cir. Dec. 29, 1998)................................................................12

Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 636 (Fed. Cir. 1991). ......................34

Super Sack Manufacturing Corp. v. Chase Packaging Corp., 57 F.3d
1054, 1059 (Fed. Cir. 1995), cert. denied, 516 U.S. 1093 (1996). ...............................32, 34

*Authorities upon which we chiefly rely are marked with asterisks.

vii

United States v. Thompson, 251 U.S. 407, 412 (1920). ........................................................12

United States v. Ron Pair Enterprises, 489 U.S. 235 (1989). ........................................21, 24

## Statutes and Regulations

5 U.S.C. § 551 et seq.............................................................................................................11

21 U.S.C. § 355(j). ...............................................................................................................13

21 U.S.C. § 355(j)(2)(A)(vii)(IV). .........................................................................................14

*21 U.S.C. § 355(j)(5)(B). .....................................................................................................16

* 21 U.S.C. § 355(j)(5)(B)(iii). ................................................................... 14-15, 27-30

21 U.S.C. § 355(j)(5)(B)(iii)(II)................................................................................27, 29

* 21 U.S.C. § 355(j)(5)(B)(iv). .....................................................................27, 28, 33

21 U.S.C. § 355(j)(5)(B)(iv)(I). ...............................................................11, 12, 16, 17, 20

28 U.S.C. § 1331....................................................................................................................12

28 U.S.C. § 1391(e). .............................................................................................................12

28 U.S.C. § 2201.............................................................................................................12, 15

28 U.S.C. § 2202...................................................................................................................15

35 U.S.C. § 271(e)(1).............................................................................................................15

35 U.S.C. § 271(e)(2)................................................................................................14, 15, 30

35 U.S.C. § 281-285 ..............................................................................................................15

21 C.F.R. § 314.94(a)(12)(i)(A)(4).........................................................................................33

21 C.F.R. § 314.107(a)(12)(i)(4). ..........................................................................................23

21 C.F.R. § 314.107(c)..........................................................................................................20

21 C.F.R. § 314.107(e)(1).......................................................................................................34

21 C.F.R. § 314.107(e)(2)(i)....................................................................................................34

59 Fed. Reg. 50,338, 50,339 (Final Rule, October 3, 1994)...............................................23

## **Other Authorities**

Black's Law Dictionary 407 (6th ed. 1990)........................................................................21

H.R. Rep. No. 857, 98th Cong., 2d Sess., pt. II at 15 (1984) reprinted in
1984 U.S.C. C.A.N. 2686, 2699. .......................................................................................26

Advisory Committee's Notes to Federal Rules of Civil Procedure, Rule
16 (1983)............................................................................................................................25

## GLOSSARY

### ANDA

Abbreviated New Drug Application.

### Commercial Marketing Trigger

A statutory provision pursuant to which a Paragraph IV ANDA applicant's 180-Day Delay Period starts on the date that a previous Paragraph IV ANDA applicant first commercially markets its version of the drug at issue. See 21 U.S.C. § 355(j)(5)(B)(iv)(I).

### Court Decision Trigger

A statutory provision pursuant to which a Paragraph IV ANDA applicant's 180-Day Delay Period starts on the date of a qualifying court decision. FDA's interpretation of this provision is the underlying issue in this appeal. See 21 U.S.C. § 355(j)(5)(B)(iv)(II).

### FDA

The United States Food and Drug Administration.

### FFDCA

Federal Food, Drug, and Cosmetic Act.

### Hatch-Waxman Amendments

The Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984). This Act established the current system for review and approval of generic drug applications, including the patent challenge system involved in this case.

### Hatch-Waxman Declaratory Judgment Action

A declaratory judgment action brought by a Paragraph IV ANDA applicant against the holder of a Listed Patent, seeking judicial resolution of the claims of patent non-infringement, invalidity, or unenforceability made in the applicant's Paragraph IV Certification. See 21 U.S.C. § 355(j)(5)(B)(iii).

x

**Listed Patent**

> A patent covering an FDA-approved drug substance or an approved method of using a drug, which is listed in FDA's publication <u>Approved Drug Products With Therapeutic Equivalence Evaluations</u>, also known as the "Orange Book." See 21 U.S.C. § 355(b)(1).

**Paragraph IV ANDA**

> An ANDA that seeks FDA approval to market a drug prior to the expiration date of a listed patent covering the drug. <u>See</u> 21 U.S.C. §§ 355(j)(2)(A)(vii)(IV) and 355(j)(2)(B)(ii). Paragraph IV ANDAs, by definition, must contain a Paragraph IV Certification. The filing of a Paragraph IV ANDA is an act of patent infringement that establishes subject matter jurisdiction for federal courts to hear and decide a Paragraph IV Infringement Action or a Hatch-Waxman Declaratory Judgment Action. <u>See</u> 35 U.S.C. § 271(e)(2).

**Paragraph IV Certification**

> A certification submitted to FDA as part of an ANDA, stating that a listed patent covering the drug is invalid, unenforceable, or will not be infringed by the future commercial marketing of the generic version for which the ANDA was submitted. <u>See</u> 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

**Paragraph IV Infringement Action**

> A special type of patent infringement lawsuit which may only be brought by a holder of a Listed Patent within 45 days of its receipt of a Paragraph IV ANDA applicant's Paragraph IV Notification. <u>See</u> 21 U.S.C. § 355(j)(5)(B)(iii).

**Paragraph IV Notification**

> A detailed explanation of the factual and legal bases supporting the claims made in a Paragraph IV Certification. A Paragraph IV Notification must be provided to the holder of the listed patent, and the holder of the approved full New Drug Application for the drug for which the ANDA was submitted. <u>See</u> 21 U.S.C. § 355(j)(2)(B).

**180-Day Delay Period, or "Generic Exclusivity Period"**

> The delay period to be imposed upon the effective date of all Paragraph IV ANDAs for which there exists a previously filed Paragraph IV ANDA for the same drug. <u>See</u> 21 U.S.C. § 355(j)(5)(B)(iv). (Because this period may be started (or "triggered"), and may even expire, before the previous applicant has begun marketing, the common term "generic exclusivity period" is a misnomer.)

## **CERTIFICATE OF SERVICE AND COMPLIANCE WITH CIRCUIT RULE 28**

I HEREBY CERTIFY that on this first day of February, 1999, this BRIEF OF
APPELLANT TEVA PHARMACEUTICALS USA, INC. was served by hand-delivery
on the following persons:

> Frank E. Hunger
> Eugene Thirolf
> Andrew E. Clark
> Drake Cutini
> Department of Justice
> Office of Consumer Litigation
> National Place Building
> 1331 Pennsylvania Avenue, N.W.
> Room 950 N
> Washington, D.C. 20004
> Counsel for Federal Defendants

> Margaret Jane Porter
> Anne Miller
> United States Food and Drug Administration
> 5600 Fishers Lane
> Room 671
> Rockville, MD 20857

> Eugene M. Pfeifer
> James D. Miller
> King & Spalding
> 1730 Pennsylvania Avenue, N.W.
> Washington, D.C. 20006
> Counsel for Appellee TorPharm, a Division of Apotex, Inc.

> Donald Beers
> David Korn
> Nancy Lapidus
> Arnold & Porter
> 555 12th Street, N.W.
> Washington, D.C. 20004
> Counsel for Appellee Hoffman-La Roche Inc.

> Robert A. Dormer
> James R. Phelps
> Hyman, Phelps & McNamara, P.C.
> 700 Thirteenth Street, N.W.
> Washington, D.C. 20005
> Counsel for Appellant Purepac Pharmaceutical Co.

I FURTHER CERTIFY that this Brief does not exceed 12,500 words, as provided by Circuit Rule 28(d).

David M. Malone

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC.,    ) <br><br> Plaintiff/Appellant, and    ) <br><br> PUREPAC PHARMACEUTICAL CO.,    ) <br><br> Intervenor/Plaintiff/Appellant    ) <br><br> v.    ) <br><br> THE UNITED STATES FOOD <br> AND DRUG ADMINISTRATION, and    ) <br><br> DONNA E. SHALALA, <br> Secretary of Health and Human Services,    ) <br><br> Defendants/Appellees,    ) <br><br><br> TORPHARM, A DIVISION OF <br> APOTEX, INC., and    ) <br><br> HOFFMAN-LA ROCHE, INC./ SYNTEX <br> (U.S.A.) INC.,    ) <br><br> Intervenors/Defendants/Appellees    ) | No. 99-5022 |

## BRIEF OF APPELLANT
## TEVA PHARMACEUTICALS USA, INC.

## **INTRODUCTION**

This appeal presents a narrowly focused question of statutory construction arising from the misinterpretation by the Food and Drug Administration ("FDA") of a provision of the Federal Food, Drug, and Cosmetic Act. The provision at issue, 21 U.S.C. § 355(j)(5)(B)(iv)(II) (the "Court Decision Trigger") establishes the start of the statutory 180-Day Delay Period applicable to effective approval of certain Abbreviated New Drug Applications ("ANDAs"). In this action, Teva seeks a preliminary injunction ordering FDA to apply the Court Decision Trigger so as to allow Teva to receive final approval of its already tentatively approved ANDA for the drug ticlopidine hydrochloride ("ticlopidine") on February 10, 1999. The statutory interpretation advanced by Teva as the basis for this request was discussed favorably by this court in Mova Pharmaceuticals Inc. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998), and was acknowledged by both FDA and the district court in this case to be a reasonable interpretation. In contrast, as shown infra, FDA's interpretation, under which the agency refuses to apply the Court Decision Trigger to permit effective final approval of Teva's ticlopidine ANDA on February 10, is unreasonable because it deprives the courts of their proper role in the statutory scheme at issue, produces demonstrably absurd results that could not have been intended by Congress, and renders the broader statutory scheme effectively null and void. Accordingly, the lower court erred in denying Teva's requested preliminary injunction.

## **STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

This action arises under the Administrative Procedure Act, 5 U.S.C. § 551 et seq., and the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 201 et seq. ("FFDCA").

2

Jurisdiction was proper in the district court pursuant to 28 U.S.C. §§ 1331 and 2201, and venue was proper under 28 U.S.C. § 1391(e). The order of the district court denying Teva's motion for a preliminary injunction was entered January 21, 1999, and notice of this appeal was timely filed on January 25, 1999.

## ISSUE PRESENTED ON APPEAL

Under the FFDCA, FDA must impose a 180-Day Delay Period on the effective approval date of an ANDA which challenges the validity or enforceability of a "listed" drug patent, or which claims that the patent will not be infringed by the generic version of the drug for which ANDA approval is sought (i.e., a "Paragraph IV ANDA"), if there is a previously filed ANDA for the same drug that also includes such a patent challenge. (The 180-Day Delay Period has been the subject of two recent cases before this court, Mova, 140 F.3d 1060 and Purepac Pharmaceutical Co. v. Friedman, No. 98-5334, -- F.3d --, 1998 WL 898347 (D.C. Cir. Dec. 29, 1998), although the specific legal questions presented by the instant case were not at issue in those cases.) Under limited circumstances, a Paragraph IV ANDA applicant who has not been sued by the patent holder may seek to trigger the start of its 180-Day Delay Period by bringing a declaratory judgment action seeking judicial resolution of its claim of invalidity, unenforceability, or non-infringement. It is not disputed that a fully litigated judgment in favor of the ANDA applicant in such an action would satisfy the "Court Decision Trigger" of 21 U.S.C. § 355(j)(5)(B)(iv)(II). Teva brought such an action against the ticlopidine patent holder, Syntex (U.S.A.) Inc. In response, Syntex expressly represented to the court that Teva's ticlopidine product does not infringe Syntex's patent, and that Syntex would not sue Teva for patent infringement. On that basis, the court found that Teva did not have a

3

reasonable apprehension of being sued for patent infringement, and dismissed the

declaratory judgment action on "case or controversy" grounds. FDA, however, refused

to trigger Teva's 180-Day Delay Period as of the date of that dismissal.

This issue presented by this appeal is:

> Whether the district court erred in denying a preliminary injunction ordering the
> FDA to treat the dismissal of Teva's Hatch-Waxman Declaratory Judgment
> Action as sufficient to activate the Court Decision Trigger, where that denial
> allows the patent holder unilaterally to frustrate the intended operation of the
> statute and artificially extend its monopoly by announcing its intention not to
> enforce its patent.

## STATUTES AND REGULATIONS

The statutes and regulations upon which Teva chiefly relies are included in the

addendum attached hereto.

## STANDARD OF REVIEW

This appeal presents a question of statutory interpretation under the FFDCA and

is reviewed de novo by the Court of Appeals. Mova, 140 F.3d at 1066.

## STATEMENT OF THE CASE

### Factual Background

Teva manufactures and distributes generic prescription drugs subject to the

regulatory oversight of FDA pursuant to the FFDCA. See Joint Appendix ("JA") 169.

On June 20, 1997, Teva filed an ANDA pursuant to 21 U.S.C. § 355(j) seeking FDA

approval to market a generic version of ticlopidine, a widely used drug that is prescribed

4

to minimize the risk of thrombotic strokes. Teva's ANDA was a special type known as a "Paragraph IV ANDA" which allows applicants to seek approval to market the drug prior to the expiration date of any patents that may be "listed" for the original approved version of the drug. 21 U.S.C. § 355(j)(2)(A)(vii)(IV). The only listed patent for ticlopidine is U.S. Patent No. 4,591,592 (the " '592 patent"), a formulation patent held by Syntex (U.S.A.) Inc. ("Syntex"). Syntex's version of ticlopidine is marketed by Hoffman-La Roche ("Roche") under the brand name Ticlid®.[1]

Teva's ANDA included a Paragraph IV Certification stating that its formulation of ticlopidine would not infringe the '592 patent. As required, Teva provided Syntex with a Paragraph IV Notification disclosing the filing of its ANDA and the bases upon which Teva had concluded that its version of ticlopidine would not infringe the Syntex patent. Teva's Paragraph IV Notification began a 45-day window during which Syntex could object to Teva's proposed pre-patent-expiration marketing of ticlopidine by filing a special type of patent infringement action pursuant to 21 U.S.C. § 355(j)(5)(B)(iii) and 35 U.S.C. § 271(e)(2). Filing such an action would have automatically delayed the effective approval date of Teva's ANDA for up to 30 months, i.e. until the end of 1999. However, after evaluating Teva's Paragraph IV Notification of non-infringement and analyzing samples of Teva's ticlopidine product (provided voluntarily by Teva at Syntex's request), Syntex did not file such an action. See JA 172; 21 U.S.C. § 355(j)(5)(B)(iii).

On June 8, 1998, Teva brought a declaratory judgment action against Syntex in the U.S. District Court for the Northern District of California pursuant to 21 U.S.C.

---

[1]      Although Roche was not a party to Teva's declaratory judgment action, Roche and Syntex are under common ownership and control, and have jointly intervened in the instant action as defendants. Accordingly, the two will be referred to interchangeably herein, consistent with context.

5

§ 355(j)(5)(B)(iii), 35 U.S.C. §§ 271, 281-285, and 28 U.S.C. §§ 2201 and 2202, seeking to resolve any dispute concerning the claims of non-infringement made in Teva's Paragraph IV Notification. See JA 182. After Teva filed its declaratory judgment action, Syntex conceded in writing that Teva's ticlopidine product does not infringe Syntex's ticlopidine patent, and represented that Syntex would not bring any action to enforce the patent against Teva's marketing of the drug. See JA 193. Syntex's acknowledgement of non-infringement and non-enforcement stated: "Based on the information that [Teva] provided us, we are of the opinion that the formulation used in [Teva's] ticlopidine hydrochloride tablets does not infringe U.S. Patent 4,591,592. We will make no claim of patent infringement based on the sale of ticlopidine hydrochloride tablets having the formulation that [Teva] disclosed to us." See JA 193.

In light of this development, Teva promptly sought to resolve the declaratory judgment action by proposing entry of a one-page consent judgment that would simply incorporate Syntex's admission that "the manufacture, use or sale of the ticlopidine hydrochloride tablets for which Teva USA submitted an Abbreviated New Drug Application to the U.S. Food and Drug Administration in 1997 will not infringe U.S. Patent 4,591,592." See JA 194. Syntex rejected this reasonable proposal, see JA 200, and instead insisted on filing a motion to dismiss the action on the same grounds upon which Teva's proposed consent judgment was based - namely, that all parties were in agreement that Teva's product does not infringe Syntex's ticlopidine patent and that the patent is unenforceable against Teva. See JA 201.

After considering all the evidence presented by Teva and Syntex regarding Teva's claim of non-infringement, the court heard oral argument on August 14, 1998, and

6

dismissed the action the same day. The basis for the dismissal was that in view of

Syntex's concession of non-infringement, Teva lacked a reasonable apprehension that

Syntex could bring an infringement action to enforce the '592 patent, and the court was

thus deprived of "case or controversy" jurisdiction. See JA 242.

On October 29, 1998, FDA approved Teva's ticlopidine ANDA, having

determined that Teva's ticlopidine product is safe and effective and meets all applicable

substantive standards for marketing. However, FDA made this approval "tentative" -

meaning that it has postponed the date on which Teva may begin to market its product -

on the ground that Teva cannot market its product until 180 days after the previous

Paragraph IV ticlopidine ANDA applicant, Intervenor/Defendant/Appellee TorPharm, a

Division of Apotex, Inc. ("TorPharm"), first markets its product, or 180 days after "the

date of a court decision described under section 505(j)(5)(B)(iv), whichever is earlier."

See JA 244. (The Paragraph IV ANDA of Intervenor/Appellant Purepac Pharmaceutical

Co. was also issued a tentative approval by FDA on July 15, 1998, subject to the same

conditions as Teva's tentative approval.)

Following the dismissal of its declaratory judgment action, and again upon receipt

of the tentative approval of its ANDA, Teva notified FDA of the Order of dismissal and

of Teva's position that such Order constitutes a "court decision" for purposes of 21

U.S.C. § 355(j)(5)(b)(iv)(II), thus starting Teva's 180-Day Delay Period. FDA, however,

never responded to Teva's repeated requests to recognize the start of that period.

**The Proceedings Below**

Teva filed this action on January 11, 1999 seeking a temporary restraining order

and a preliminary injunction directing the FDA to convert its existing tentative approval

7

of Teva's ticlopidine ANDA into an effective final approval so that Teva may market its ticlopidine product as of February 10. The district court set an expedited briefing schedule, and, on January 21, entered its Memorandum Opinion and Order denying the requested relief. The district court (1) recognized that Teva's interpretation of the statute is reasonable, JA 158, and (2) acknowledged that FDA's interpretation of 21 U.S.C. § 355(j)(5)(B)(iv)(II) would allow patent holders to "artificially extend" their non-patent based monopoly by "manipulating the Court Decision Trigger" as Roche has done here. JA 159. Nevertheless, the court concluded that FDA's interpretation was permissible and was entitled to judicial deference, and suggested that notice-and-comment rulemaking would be required for FDA to change that interpretation. JA 158, 160.

8

## SUMMARY OF ARGUMENT

Contrary to the lower court's conclusion, FDA's refusal to treat the dismissal of Teva's declaratory judgment action as a triggering event is not a reasonable construction of the law, and is thus impermissible under Chevron. In contrast, this Court in Mova, as well as both the district court and FDA in this case, have acknowledged that treating the dismissal of Teva's Hatch-Waxman Declaratory Judgment Action as a Court Decision Trigger would be reasonable and permissible, and consistent with Congressional intent. In this case, the dismissal of Teva's Hatch-Waxman Declaratory Judgment Action serves the same statutory purpose as, and is functionally equivalent to, a final decision of non-infringement and unenforceability on the merits because it was based upon the patent holder's express representation to Teva and to the court (1) that Teva's ticlopidine formulation does not infringe the patent, and (2) that Syntex would not sue Teva for patent infringement. Because Teva's reasonable statutory construction is the only possible alternative to the FDA's impermissible construction under the circumstances of this case, further FDA rulemaking is not required in order to recognize the dismissal of Teva's Hatch-Waxman Declaratory Judgment Action as a "court decision" trigger. In addition, Teva satisfies the equitable requirements for issuance of a preliminary injunction. This court should therefore reverse the district court's denial of the requested preliminary injunction and order FDA to make Teva's ticlopidine ANDA effective as of February 10, 1999.

9

## ARGUMENT

I.  **THE DISMISSAL OF TEVA'S HATCH-WAXMAN DECLARATORY JUDGMENT ACTION IS A "COURT DECISION TRIGGER" FOR PURPOSES OF STARTING THE 180-DAY DELAY PERIOD ON EFFECTIVE APPROVAL OF TEVA'S TICLOPIDINE ANDA**

A.  **The Statute Does Not Directly Address Whether The Dismissal Of Teva's Declaratory Judgment Action Against Roche On Case Or Controversy Grounds Triggered The 180-Day Delay Period Applicable To The Effective Approval Date Of Teva's Ticlopidine ANDA**

In determining the validity of FDA's position that the August 14, 1998 case or controversy dismissal of Teva's declaratory judgment action did not constitute a "court decision" triggering the 180-Day Delay Period applicable to effective approval of Teva's ticlopidine ANDA, the threshold question is whether "Congress has directly spoken to the precise question at issue," Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). If it has, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. If, however, the Congressional intent is not unambiguously expressed in the statute, the analysis must move on to the second part of the Chevron test, i.e., whether the agency's interpretation is permissible.

The lower court based its denial of the requested injunction at least partially on its view that the statutory provision at issue - the Court Decision Trigger - is "unambiguous" in excluding Teva's interpretation. JA 157. This view is, however, wrong. The Court Decision Trigger is, along with the Commercial Marketing Trigger, one of two alternative statutory triggers that determine the beginning of the 180-Day Delay Period applicable to the effective approval date of a paragraph IV ANDA which,

10

like Teva's ticlopidine ANDA, is not the first paragraph IV ANDA for the same drug.[2]

Together, these two trigger provisions operate to begin the 180-Day Delay Period on the

earlier of:

> (I) the date [FDA] receives notice from the applicant under the previous
> application of the first commercial marketing of the drug under the previous
> application, or
>
> **(II) the date of a decision of a court in an action described in clause (iii)**
> **holding the patent which is the subject of the certification to be invalid or not**
> **infringed . . . .**

21 U.S.C. § 355(j)(5)(B)(iv) (emphasis added).

Applying the <u>Chevron</u> part 1 analysis in the context of this case, the question is

whether Congress has directly and unambiguously excluded a "case or controversy"

dismissal of a declaratory judgment action concerning infringement of the patent at issue

- a type of action that FDA, the court below, and this Court have all agreed is "an action

described in clause (iii)," <u>see</u> JA 93, 156; <u>Mova</u>, 140 F.3d at 1073 - from qualifying as a

"decision of a court . . . holding the patent which is the subject of the certification to be

invalid or not infringed." The answer is that it has not.

As an initial matter, the terms "decision" and "holding" as used in the Court

Decision Trigger provision - terms that appear to have been central to the rejection of

Teva's position by the court below, <u>see</u> JA 157 - are neither defined in the statute nor

inherently so precise in their legal meaning as to exclude the outcome obtained in Teva's

---

[2]    The statute does not actually refer to a "first" ANDA or to "subsequent" ANDAs, but rather
applies the 180-Day Delay Period to a Paragraph IV ANDA that is "for a drug for which a previous
[paragraph IV] application has been submitted . . . ." 21 U.S.C. § 355(j)(5)(B)(iv). FDA, however, has
consistently interpreted this provision so as to award the potential benefits of the 180-Day Delay Period
only to the first Paragraph IV Applicant, <u>see</u> 21 C.F.R. § 314.107(c). Inasmuch as this particular issue is
not in dispute in this case either factually or legally, this brief will adopt FDA's usage on the matter for the
sake of convenience.

declaratory judgment action. For instance, Black's Law Dictionary refers to the term "decision" as a "popular rather than technical or legal word; a comprehensive term having no fixed, legal meaning," and notes that "though sometimes limited to the sense of judgment, the term . . . may also include various rulings, as well as orders . . . ." Black's Law Dictionary 407 (6th ed. 1990).[3] Black's also defines "decision" as a "determination arrived at after consideration of facts, and, in legal context, law," id. This definition directly applies to the court's Order dismissing Teva's declaratory judgment action, which was based on consideration of the fact that Syntex had conclusively stated that Teva's ticlopidine does not infringe the patent and that it would not sue Teva for infringement.

"Holding" is a similarly imprecise term that Black's defines as the "legal principle to be drawn from the opinion (decision) of the court." Id. at 731. Again, this term clearly covers the Teva v. Syntex declaratory judgment outcome. As the court below acknowledged, the "legal principle" established by that outcome is that Roche/Syntex cannot sue Teva for infringement of the ticlopidine patent - in other words, that the Roche/Syntex ticlopidine patent is now unenforceable against Teva as a matter of law. See JA 158-159.

Not only are the relevant statutory terms themselves lacking in the kind of precision contemplated by the Chevron part 1 test, but FDA, the court below, the Court of Appeals for the Fourth Circuit, and this Court have all acknowledged that the Court

---

[3]     Indeed, the Supreme Court, in an analogous setting concerning whether the granting of a motion to quash an indictment fulfilled the applicable statutory requirement of a "decision or judgment sustaining a special plea in bar" in order to permit the government to take a direct writ of error to the Supreme Court, stated: "As it is settled that this question is to be determined, not by form but by substance, it follows that the fact that the ruling took the form of granting a motion to quash is negligible." United States v. Thompson, 251 U.S. 407, 412 (1920) (citations omitted).

12

Decision Trigger is sufficiently ambiguous to allow the interpretation advanced here by Teva. FDA, in its brief below, conceded that Teva's interpretation "may be a permissible construction of the statute." JA 98. Similarly, the district court, though at one point erroneously calling the statute "unambiguous," recognized that Teva's interpretation could be adopted by FDA in rulemaking under the FFDCA or by the Federal Circuit (as a matter of patent law) in a case, see JA 158. By definition, if an interpretation of a statute could be adopted by an agency in a rulemaking or by a court in a holding, that interpretation cannot be unambiguously precluded by the terms of the statute itself. See Chevron, 467 U.S. at 842-843.

Likewise, the Fourth Circuit, in Granutec, Inc. v. Shalala, 139 F.3d 899 (Table), 1998 WL 153410 (4th Cir. 1998) (unpublished opinion),[4] faced a similar question of interpretation of the statutory Court Decision Trigger: namely, whether a court decision in a patent infringement case involving an ANDA applicant other than the first Paragraph IV applicant could effectuate the trigger. The court stated: "FDA's reading of 'the date of a decision of a court' simply interprets ambiguous statutory terminology. Despite the corporate litigants' arguments and protests to the contrary, this statutory language possesses no clear, definite meaning." Granutec, 1998 WL 153410 at * * 8 (emphasis added). Although the specific issue in dispute here was not before the Granutec court, that court's characterization of the same statutory provision at issue in this case fully applies here.

Finally, this Court's Mova opinion implicitly, but indisputably, refuted the proposition that the Court Decision Trigger is sufficiently clear on its face to preclude the

---

[4]    As noted by this Court in Mova, the rules of the Fourth Circuit disfavor, but do not prohibit, citation to unpublished opinions. Mova, 140 F.3d at 1069 n.9.

13

interpretation advanced by Teva here. In Mova, the Court stated that FDA could

"provide by regulation that a court decision ruling that an ANDA applicant cannot

reasonably anticipate suit by a patent-holder is equivalent, for purposes of section

355(j)(5)(B)(iv), to a ruling that the patent is invalid or not infringed." Mova, 140 F.3d at

1073 n.18.  The court went on: "If the patent-holder declines even to create enough

adversity to support a declaratory judgment action, it might well be fair to deem the

patent-holder to have conceded non-infringement, at least for purposes of the statutory

scheme," id.  These statements clearly contemplate the possibility of alternative

interpretations that could allow the Court Decision Trigger to be activated by a "case or

controversy" dismissal of a declaratory judgment action based on a patent holder's

concession of non-infringement - again, a view that is fundamentally incompatible with

the conclusion that Congress has "directly spoken to the precise question at issue."

In sum, contrary to the district court's conclusion, the Court Decision Trigger

provision of the statute does not unambiguously exclude Teva's interpretation under

Chevron part 1.  As will be shown infra, however, FDA's current interpretation of that

provision does not survive Chevron part 2, for that interpretation is unreasonable and

impermissible as applied to the facts of this case.

## B.  FDA's Refusal To Treat The Dismissal Of Teva's Hatch-Waxman Declaratory Judgment Action As A Court Decision Trigger Is Based On An Unreasonable And Impermissible Statutory Interpretation

As demonstrated above, Congress did not conclusively address whether the Court

Decision Trigger excludes a case or controversy dismissal of a Hatch-Waxman

Declaratory Judgment Action on the basis of the patent holder's concession of non-

14

infringement. Accordingly, FDA's refusal to trigger the start of Teva's 180-Day Delay

Period on the date of the dismissal of its Hatch-Waxman Declaratory Judgment Action

can only survive review if it is a reasonable application of the statute and does not

produce results that are absurd, or that Congress would not have sanctioned.[5]  See

Chevron, 467 U.S. at 845; see also Abbott Laboratories v. Young, 920 F.2d 984, 988

(D.C. Cir. 1990), cert. denied, 502 U.S. 819 (1991) ("The 'reasonableness' of an

agency's construction depends on the construction's 'fit' with the statutory language as

well as its conformity to statutory purposes."). As demonstrated below, FDA's

interpretation is unreasonable.

### 1.    FDA's Interpretation Is Unreasonable Because It Renders The Hatch-Waxman Declaratory Judgment Action Mechanism Effectively Inoperative

"A cardinal principle of interpretation requires [the courts] to construe a statute so

that no provision is rendered inoperative, or superfluous, void or insignificant." Asiana

Airlines v. FAA, 134 F.3d 393, 398 (D.C. Cir. 1998), quoting C.F. Communications

Corp. v. FCC, 128 F.3d 735, 739 (D.C. Cir. 1997) (internal quotation marks omitted).

The FDA's restrictive interpretation of the Court Decision Trigger violates that cardinal

rule of construction, and is thus impermissible, because it would produce the absurd

result of making it virtually impossible for any subsequent Paragraph IV ANDA

applicant to use the statutory declaratory judgment mechanism for the purposes

contemplated by the statute.

---

[5]     Even if one were to accept the argument that the literal words of the Court Decision Trigger
exclude such a dismissal from the types of court decisions that may act as triggers of 180-Day Delay
Periods, that would not end the inquiry here, because as this Court recognized in Mova, the literal
interpretation may not stand if it "will produce a result demonstrably at odds with the intentions" of
Congress. Mova, 140 F.3d at 1068 (quoting United States v. Ron Pair Enterprises, 489 U.S. 235 (1989)).

15

As illustrated by this case, under FDA's interpretation, subsequent ANDA applicants' ability to utilize this crucial statutory mechanism could be routinely defeated by a patent holder simply stating that it does not intend to enforce its patent against the subsequent applicant, thus preventing the courts from exercising subject matter jurisdiction to issue the very "holding" of non-infringement that FDA's position seeks to require. FDA's interpretation would thus deprive the courts of their proper role with respect to the Court Decision Trigger, and would render the broader statutory provisions and legislative purposes of 21 U.S.C. § 355(j)(5)(B) "inoperative, superfluous, void, [and] insignificant." Asiana Airlines, 134 F.3d at 398.[6]  Indeed, if FDA's current interpretation prevails, it is hard to imagine that any future Hatch-Waxman Declaratory Judgment Actions will ever be brought, since patent holders will have gained the absolute power to prevent such cases from satisfying the Court Decision Trigger.

Thus, FDA's interpretation would defeat the underlying purposes of the Hatch-Waxman Declaratory Judgment Action. Those purposes are not difficult to discern. This mechanism is an integral part of the Act's "flexible schedule of ANDA approval effectiveness dates" for Paragraph IV ANDAs. See H.R. Rep. No. 857, 98th Cong., 2d Sess., pt. II at 15 (1984) reprinted in 1984 U.S.C.C.A.N. 2686, 2699. It is available only to those Paragraph IV ANDA applicants who are not sued for patent infringement within

---

[6]     Moreover, FDA's position contravenes the important policy goal of facilitating early settlement of lawsuits. See Advisory Committee's Notes to F.R.C.P. 16 (1983) ("Since [settlement] obviously eases crowded dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a stage of the litigation as possible.").

16

45 days of submitting their Paragraph IV Notification. 21 U.S.C. § 355(j)(5)(B)(iii).[7]

Although first Paragraph IV ANDA applicants may theoretically use the Hatch-Waxman Declaratory Judgment Action if they are not sued, there is little reason for them to do so because the statute specifically makes such applicants' ANDAs eligible for immediately effective approval upon the closing of the 45-day lawsuit window (subject to the normal substantive review by the agency). Id. Thus, this statutory mechanism is of practical import only to subsequent Paragraph IV ANDA applicants - whose ANDA effective dates are subject to the 180-Day Delay Period - particularly (but not exclusively) in those situations where the 180-Day Delay Period cannot be started by the Commercial Marketing Trigger or where the 180-Day Delay Period may eventually begin, but only after an excessive amount of time has passed. More generally, the Hatch-Waxman Declaratory Judgment Action plays a critical statutory role as a safeguard against the otherwise intransigent types of anti-competitive outcomes discussed in both Mova, 140 F.3d at 1067, 1072-74, and Granutec, 1998 WL 153140 at * * 9 (Addendum Item 5).

There are several situations in which the full applicability of the Hatch-Waxman Declaratory Judgment Action as a Court Decision Trigger, as requested by Teva herein, is crucial. For example, if the first Paragraph IV ANDA applicant has lost a Paragraph IV Infringement Action, it is prohibited from beginning commercial marketing before the patent expires, 21 U.S.C. § 355(j)(5)(B)(iii)(II). Or, as is increasingly occurring, a first Paragraph IV ANDA applicant may settle with the patent holder by agreeing never to

---

[7]    Although the statute on its face does not preclude an ANDA applicant who has been sued in a Paragraph IV Infringement Action from also bringing a Hatch-Waxman Declaratory Judgment Action, the two types of cases necessarily involve the same legal and factual issues under the patent, so that a declaratory judgment action filed while a Paragraph IV Infringement Action is pending presumably would either be dismissed or consolidated with the infringement action. Thus, the district court's supposition that "every ANDA applicant would wait 45 days and then sue the patent holder, nullifying the Commercial Marketing Trigger," JA 158, misses the point entirely.

17

market its version of the drug. See Mova, 140 F.3d at 1072 n.14. Each of these scenarios prevents both the Commercial Marketing Trigger and the Court Decision Trigger (in a Paragraph IV Infringement Action against the first applicant) from operating. In addition, there are several scenarios in which a subsequent applicant, such as Teva here, may not want to wait for the previous applicant to trigger the start of the 180-Day Delay Period. For example, as in this case, the first applicant's ANDA may encounter prolonged difficulties in obtaining FDA approval. Or, a subsequent applicant may have done a much better job at producing a non-infringing product than the first applicant, so that the subsequent applicant is not sued, while the first applicant is subject to the 30-month approval stay, 21 U.S.C. § 355(j)(5)(B)(iii), and thus cannot market for the foreseeable future. As this court noted in Mova, the Hatch-Waxman Declaratory Judgment Action "provides a particularly appropriate solution in cases in which the second applicant has done a better job of designing around the pioneer drug manufacturer's patent than the first did." 140 F.3d at 1073. FDA's interpretation would nullify that solution.

### 2. FDA's Interpretation Allows Holders Of Invalid, Unenforceable, Or Non-Infringed Patents To Thwart The Statutory Mechanisms Congress Created To Expedite Generic Market Entry

The statute clearly contemplates that the Hatch-Waxman Declaratory Judgment Action will operate for the benefit of subsequent Paragraph IV ANDA applicants. Congress intended such applicants to be able to trigger the start of the 180-Day Delay Period if they can show that the patent holder is unable to enforce its patent rights against the applicant. 21 U.S.C. § 355(j)(5)(B)(iii)-(iv); Mova 140 F.3d at 1073 (noting that a

18

subsequent ANDA applicant "can bring its own declaratory judgment action against the patent holder, and, if the [subsequent] applicant prevails, the Court Decision Trigger will be satisfied and it will be allowed to market its product"). By allowing patent holders unilaterally to defeat ANDA applicants' ability to use this statutory procedure, FDA's interpretation turns the Court Decision Trigger into a tool benefiting patent holders against ANDA applicants, precisely contrary to the statutory intent.

It is even more obvious that Congress could not have endorsed FDA's current approach when one considers that this approach not only transfers the benefits of the Court Decision Trigger in declaratory judgment actions from ANDA applicants (the intended beneficiary class) to patent holders, but allows that benefit to go nearly exclusively to holders of invalid, unenforceable, or non-infringed patents - the very types of patents the entire Paragraph IV ANDA scheme is designed to defeat. Those patent holders who have a legitimate basis to refute the ANDA applicant's claim of invalidity, unenforceability, or non-infringement will invariably file a Paragraph IV Infringement Action within 45 days - precluding a separate Hatch-Waxman Declaratory Judgment Action - because the mere filing of such an infringement action imposes an automatic 30-month statutory injunction against FDA approval of the ANDA, see 21 U.S.C. § 355(j)(5)(B)(iii), and because a victory ensures that the patent holder will not face competition from the generic applicant for the life of the patent. 21 U.S.C. § 355(j)(5)(B)(iii)(II). Thus, for Paragraph IV ANDAs where there is at least a colorable basis to bring a Paragraph IV Infringement Action, the Declaratory Judgment Action Trigger typically will not come into play. It will be a key factor, however, when ANDA applicants identify and challenge highly vulnerable patents, such as happened with

19

ticlopidine. But, if FDA's interpretation stands, it will enable holders of such patents to effectively postpone generic competition, perhaps even for the life of the patent. And, most absurdly of all, such a patent holder could effectively extend its patent by expressly acknowledging that the patent would not be infringed and will not be enforced!

The district court itself acknowledged the absurdity of FDA's interpretation, but failed to properly apply that conclusion under Chevron. As the court noted, FDA's interpretation "gives the patent holder the ability to artificially extend its period of market exclusivity by manipulating the Court Decision Trigger, by choosing not to sue the ANDA applicant and then stipulating that it will not sue any ANDA applicant that brings a declaratory judgment action." Mem. Op. at 12 (emphasis added), JA 159. Whatever the district court may have believed to be the Congressional intent, its (quite accurate) description of the effects of FDA's interpretation are inconsistent with the conclusion that FDA's interpretation is reasonable. See Chevron, 467 U.S. at 845.

## C. It Is Reasonable And Necessary To Interpret The Dismissal of Teva's Declaratory Judgment Action As Triggering The Start Of The 180-Day Delay Period Applicable To Effective Approval Of Teva's ANDA

### 1. Recognizing The Dismissal Of Teva's Declaratory Judgment Action As Triggering The Start Of The 180-Day Delay Period Is Consistent With The Structure And Purpose Of The 1984 Amendments

A key component of the Hatch-Waxman Amendments is the deliberate Congressional decision to ensure that the federal courts would exercise jurisdiction to decide the substantive patent issues involved in Paragraph IV challenges. Congress's intent was to ensure that the courts would not refuse to decide cases arising out of Paragraph IV challenges on "case or controversy" grounds because the issue for decision

20

in such cases is whether the proposed future sale of the drug would infringe the patent.[8]
Thus, Congress acted to allow the courts to decide such cases on the merits where such
decisions are necessary to allow FDA to determine when a Paragraph IV ANDA approval
may be made effective. See Eli Lilly v. Medtronic, 496 U.S. at 678 (the legislative intent
"is to enable the judicial adjudication upon which the ANDA and paper NDA schemes
depend"). Congress accomplished this by designating the filing of a Paragraph IV
ANDA as an act of infringement, 35 U.S.C. § 271(e)(2), and by establishing the
Paragraph IV Infringement Action and the Hatch-Waxman Declaratory Judgment Action
as court actions by which a Paragraph IV challenger's claims of patent invalidity,
unenforceability, and/or non-infringement can be adjudicated before any actual
commercial manufacture or sales of the generic product occur. 21 U.S.C
§ 355(j)(5)(B)(iii).

Fulfillment of this legislative purpose requires FDA to recognize the dismissal of
a Hatch-Waxman Declaratory Judgment Action on case or controversy grounds as
triggering the start of the 180-Day Delay Period when there has been a definitive
statement by the patent holder of non-infringement and/or unenforceability. The facts of
this case illustrate perfectly why this is so. Syntex's express concession that it would not
sue Teva for infringement and that Teva's generic product does not infringe Syntex's
patent was essential to the California federal court's judgment that it lacked jurisdiction
over Teva's declaratory judgment action. Specifically, based upon Roche's express
concessions, the court found that Teva had no reasonable apprehension of suit by Roche.

---

[8]     The Hatch-Waxman Amendments specifically exempted the manufacture and use of a patented
drug from the traditional definition of infringement, 35 U.S.C. § 271(a), so long as such activities were
conducted in connection with the submission of a marketing application to FDA. See 35 U.S.C. §
271(e)(1); Eli Lilly v. Medtronic, 496 U.S. 661 (1990).

This factual finding, based on the evidence presented, was a necessary prerequisite to the court's decision that it had no jurisdiction. Roche cannot return to court and attempt to sue Teva for infringement; nor could Teva bring another declaratory judgment action against Roche, again seeking a decision of non-infringement on this same patent. See Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995); Cold Metal Process Co. v. E.W. Bliss Co., 21 F.Supp. 509 (D. Del. 1937) (dismissal of a declaratory judgment brought by alleged patent infringer against patentee for lack of case or controversy was res judicata in infringer's subsequent suit seeking to enjoin prosecution of patent infringement). Because the parties are estopped from re-litigating the issue of whether Teva has committed any infringement, the California federal court's judgment is a final, valid, and enforceable court decision, and should be accorded full legal force and effect for purposes of the Court Decision Trigger.

Failure to follow this approach will leave the system subject to manipulation, and outright nullification, at the whim of patent holders. The absurdity of this situation is underscored by the fact that case or controversy dismissals of Hatch-Waxman Declaratory Judgment Actions are much more likely to come into play in precisely those circumstances where the patent owner has the weakest grounds for enforcing its patent. As this Court noted in Mova, the patent owner is the party that controls whether a Paragraph IV challenger has a sufficient apprehension of being sued -- and hence whether the court will find a case or controversy to exist. Indeed, as Syntex argued in its motion to dismiss Teva's Hatch-Waxman Declaratory Judgment Action, a patent owner can render any declaratory judgment action moot simply by having its attorney state that the company will not enforce its patent against the Paragraph IV challenger. See JA 203

22

("counsel's statements of non-liability [even after the Complaint is filed] 'removes [sic] from the field any controversy sufficiently actual to confer jurisdiction over [a] case.'") (quoting Super Sack Manufacturing Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995), cert. denied, 516 U.S. 1093 (1996)) (brackets added by Syntex).

Thus, unless the statute is interpreted so that 180-Day Delay Periods are triggered by a case or controversy dismissal of a Hatch-Waxman Declaratory Judgment Action based on a patent holder's concession of non-infringement, an owner of an invalid, unenforceable, or non-infringed patent would be free to block generic competition by simply declaring, in response to a Hatch-Waxman Declaratory Judgment Action, its intention not to enforce its patent. Such an outcome would clearly be inconsistent with the legislative intent.

## 2. The California Court's Case Or Controversy Dismissal Is Equivalent To A Judgment Of Unenforceability

Treating the dismissal of Teva's Hatch-Waxman Declaratory Judgment Action as triggering the 180-Day Delay Period under 21 U.S.C.§ 355(j)(5)(B)(iv) is further supported by the fact that such a dismissal, in the circumstances of this case, has the legal effect of rendering the patent unenforceable against Teva. Both the Federal Circuit and FDA have concluded that the Court Decision Trigger necessarily incorporates a finding of unenforceability to the same extent as a finding of invalidity or non-infringement. See Merck v. Danbury, 694 F.Supp. 1 (D.Del. 1988), aff'd 873 F.2d 1418 (Fed. Cir. 1989); 21 C.F.R. § 314.107(a)(12)(i)(4); 59 Fed. Reg. 50,338, 50,339 (Final Rule, October 3, 1994) (finding that to preclude applicants challenging patents as unenforceable from filing certifications under paragraph IV would be contrary to Congress' obvious intent in

23

allowing patent challenges under section 505 of the act and would lead to absurd results).[9]

The California district court's decision dismissing Teva's Hatch-Waxman Declaratory Judgment Action based on Syntex's post-complaint admission of non-infringement means that there is no longer any "case or controversy" as to the infringement or enforceability issues.[10] That dismissal must therefore constitute a "holding" of unenforceability of the patent under the FFDCA for purposes of triggering the 180-Day Delay Period applicable to the effective date of Teva's ANDA. See 21 U.S.C. § 355(j)(5)(B (iv); 21 C.F.R. § 314.94(a)(12)(i)(A)(4). Moreover, under analogous circumstances involving a "case or controversy" dismissal, the Federal Circuit observed as a matter of patent law that: "'Having requested a declaration of non-infringement of the . . . patent claims, [the declaratory judgment plaintiff] for all practical purposes has won the case pleaded in its complaint.'" Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1483-1484 (Fed. Cir. 1998) (quoting Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 636 (Fed. Cir. 1991)).

The dismissal of Teva's declaratory judgment action based on Syntex's admission of non-infringement also renders the patent unenforceable against Teva under the doctrine of estoppel and controlling federal caselaw. Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995) (a party, such as Syntex here, is

---

[9]     It is significant, and appropriate, that FDA implemented the unenforceability provisions on its own initiative, without providing an opportunity for public comment, based on the Federal Circuit decision in Merck v. Danbury.

[10]    Of course, it would also be possible for a patent holder to try to avoid a declaratory judgment action altogether by a pre-emptive concession of non-infringement prior to initiation of any litigation. Although such a scenario might raise additional issues under the Court Decision Trigger, it is not presented by this case, and so will not be discussed further herein.

24

"forever estopped by its counsel's statement of nonliability. . . from asserting liability . . ."). This fact also requires FDA to deem Teva's 180-Day Delay Period to have started on August 14, 1998, because, as noted supra, both the Federal Circuit and FDA have concluded that unenforceability of a listed patent is an appropriate basis for approval of Paragraph IV ANDAs under the Hatch-Waxman patent challenge system. See Merck v. Danbury, 694 F. Supp. 1.[11]

### 3. The FDA Itself Has Recognized An Analogous Court Decision As Triggering The Start Of The 180-Day Delay Period

Although the FDA in this litigation states that it "has not adopted" Teva's interpretation of the Court Decision Trigger, JA 98, the agency has already in fact accepted, and acted upon, the underlying principle behind Teva's interpretation. Specifically, with respect to the effective approval dates of ANDAs for the drug ranitidine hydrochloride ("ranitidine"), FDA triggered the start of the applicable 180-Day Delay Period as of the date of a court's termination of a patent infringement action based on the patent holder's concession of non-infringement. Granutec, 1998 WL 153410. FDA's action is best described in the agency's own brief in that case:

> On October 7, 1996, the district court for the District of Connecticut granted summary judgment for Boehringer [the generic ANDA filer] on the basis of Glaxo's [the patent holder's] "express concession that Defendants' product does not infringe these patents." Glaxo did not appeal that order, and its appeal time expired on March 3, 1997. . . . Thus, under [the] Mova [district court decision] and under FDA's current interpretation of 21 U.S.C. 355 (j)([5])(B)(iv) and 21 C.F.R. 314.107(e)(2)(i) in light of Mova, the 180-Day Period of exclusivity for

---

[11]    There is no need nor basis to apply 21 C.F.R. § 314.107(e)(2)(i) to deem the delay clock to have started on the date Teva's time to appeal the dismissal lapsed, because, pursuant to 21 C.F.R. § 314.107(e)(1) this final decision is one from which no appeal can be taken by the patent holder, Syntex. Moreover, because Teva did not oppose the dismissal, Teva could not have appealed.

Genpharm [the first ANDA filer] began to run on March 3, 1997 . . . , and expired on August 29, 1997.

FDA's Brief at 12, Granutec v. Shalala, 139 F.3d 889 (Table), 1998 WL 153410 (Nos. 97-1873 and 97-1874) (Addendum Item 4); see also Glaxo v. Boehringer Ingelheim, No. 3: 95-CV-01342 (D. Conn. Oct. 7, 1996) (Order granting defendant's summary judgment motion based on Glaxo's express concession of non-infringement) (Addendum Item 3).

These facts closely parallel the current circumstances. Like the patent holder in the ranitidine situation (Glaxo), here Roche, once litigation over infringement of the patent had begun, decided not to litigate the matter to a final judgment of unenforceability, invalidity, or non-infringement after full trial. Instead, like Glaxo, Roche expressly conceded that the generic product at issue did not infringe the patent. And, as in the ranitidine situation, the court in Teva v. Syntex terminated the case expressly because of the patent holder's concession of non-infringement. Moreover, the substantive legal result in these two cases is precisely the same: the patent holder cannot enforce the patent against the generic applicant, and the generic applicant is free to market the product -- subject, of course, to the FDA approval process.

The motions argument before the court in Teva v. Syntex makes clear that Roche wanted to avoid any ruling that could be cited as a triggering "court decision." But such procedural machinations do not govern whether the provisions of the Hatch-Waxman Amendments are satisfied. In the ranitidine situation as described in Granutec, the patent holder sued the ANDA filer, and then admitted non-infringement, leading to summary judgment. In the current case, the ANDA filer sued the patent holder, and the patent

26

holder then admitted non-infringement, leading to dismissal. In the ranitidine situation, FDA recognized the court action as activating the Court Decision Trigger. Here, unaccountably, it does not. But the fact that the current matter involves dismissal of a declaratory judgment proceeding on case or controversy grounds, while the ranitidine matter involved a decision on a motion for summary judgment, is a distinction without a difference. There is no material difference, in the context of the FFDCA, between a judgment dismissing a declaratory action because the patent holder has expressly conceded non-infringement and a judgment dismissing a non-declaratory action because the patent holder has expressly conceded non-infringement.

The lower court acknowledged that Teva is now protected from suit by Roche, but suggested that such protection is all Teva is entitled to from its declaratory judgment action. JA 159. That analysis is incomplete. In the context of the Hatch-Waxman Amendments, the legal consequence of dismissing Teva's declaratory judgment action is precisely the consequence envisioned by the Court Decision Trigger: it demonstrates that the patent holder has had its opportunity to protect and enforce its patent, and provides a date certain on which the 180-Day Delay Period begins to run. This principle was the foundation for FDA's eminently correct stance in the ranitidine situation - a stance upheld by the Fourth Circuit in the Granutec case. It should likewise underlie this Court's interpretation here.

27

## II.    EQUITABLE CONSIDERATIONS WARRANT THE ISSUANCE OF A PRELIMINARY INJUNCTION

### A.    Teva Will Be Irreparably Harmed Without The Requested Preliminary Injunction

The district court below rejected Teva's assertion that the company will be

irreparably harmed unless FDA is ordered to set February 10, 1999 as the effective date

of Teva's already approved ticlopidine ANDA, despite that court's acknowledgement

that "similar factual allegations" to those made by Teva had been found to constitute

irreparable injury in other cases. JA 162. Those other cases included Mova

Pharmaceutical Corp. v. Shalala, which found irreparable injury where "one

pharmaceutical company gets an 'officially sanctioned head start in the market' and

another pharmaceutical company is 'left behind'," 955 F.Supp. 130, (D.D.C. 1997), aff'd

140 F.3d 1060 (D.C. Cir.1998), and Bracco Diagnostics, Inc. v. Shalala, 963 F.Supp. 20

(D.D.C. 1997), which found a "significant economic advantage to receiving first approval

and being the first company to enter the market, an advantage that can never be fully

recouped through money damages or by playing 'catch-up'."

The lower court, however, refused to apply the irreparable harm standard used in

those two cases to Teva's situation here, notwithstanding its clear factual applicability, on

the ground that a stricter standard was required because Teva had not shown a likelihood

of success on the merits. Instead, the court applied what it characterized as the "general

rule" that "economic loss does not constitute irreparable harm unless it is so substantial

that it threatens the movant's very existence," JA 162, and accordingly rejected Teva's

claim of irreparable harm on the ground that Teva had not shown "that its overall

28

operations will be irreparably harmed if its entry into the ticlopidine market is delayed."
JA 163.

As shown above, contrary to the district court's view, Teva has a very high likelihood of success on the merits. Therefore, the relevant standard of irreparable injury is precisely that applied in the Mova and Bracco cases, under which Teva's situation clearly supports a finding of irreparable injury if the company's approved ticlopidine product is kept off the market after February 10. Every day that Teva is denied its legal right to market its approved ticlopidine product on and after February 10 works substantial hardship upon Teva in terms of direct financial loss, disruption of ability to properly plan and prepare for market entry, and competitive disadvantage, see JA 169-181. If TorPharm receives approval in the interim - as may well occur - and is permitted any period of de facto market exclusivity after February 10, the hardship to Teva in terms of competitive disadvantage will be compounded. Moreover, the damage that would be suffered by Teva in that situation cannot be recompensed. Should Teva's legal position later be vindicated in court, there would be no way Teva could recover any of the damages the company would have already suffered either from the FDA, from any of the other private parties to this action, or from any other source. Accordingly, the irreparable injury requirement for preliminary injunctive relief is unquestionably met here.

## B.  The Balance Of Harms Weighs In Favor Of Teva's Request For Preliminary Injunctive Relief

It is self-evident that granting Teva's requested preliminary injunction will not harm the FDA. Moreover, FDA has not identified any potential harm to its interests that would result from entry of the requested preliminary injunction.

Nor would Roche or Syntex suffer any legally cognizable injury from Teva's requested relief. Having definitively conceded that Teva's ticlopidine product does not infringe its patent, and having irrevocably waived its legal ability to sue Teva for infringement, Roche and Syntex have no protectable interest in when Teva's ticlopidine product enters the market. Rather, by its involvement in this case, Roche simply seeks once again to fish in the troubled waters of the post-Mova application of the 180-day generic delay provision in order to artificially prolong its market monopoly through the sheer good luck (from Roche's perspective) of the delay in FDA approval of TorPharm's ANDA. As Teva noted in its brief below, however, Roche cannot be heard to claim a protected interest in serendipity.

The balance-of-harms situation with respect to TorPharm, though slightly more complicated, still clearly weighs in favor of the requested injunction. Most importantly, issuance of the requested injunction will not delay the approval or the market entry of TorPharm's ticlopidine product, which will remain a matter entirely within the control of FDA and TorPharm. On the other hand, if the requested injunction does not issue, Teva's approved ticlopidine product will be blocked from the market altogether for six months after the (as yet undetermined) date when TorPharm begins to market its ticlopidine product. It is true that issuance of the injunction would mean that TorPharm would have

30

to share the ticlopidine market with Teva, and possibly Purepac, after February 10. But this is far less onerous than the harm to Teva if the injunction is denied.

From TorPharm's perspective, issuance of the requested injunction would result only in having to share the ticlopidine market with other generic companies. From Teva's perspective, however, failure to issue the injunction would result in being barred from the ticlopidine market altogether for at least six months, despite Teva's ticlopidine product having been determined by FDA to be safe and effective in October 1998. For this reason, the district court's statement that issuance of the requested injunctive relief would cause TorPharm to "lose precisely the market advantages that Teva describes in its affidavits," JA 163, is wrong. [12]

## C.    The Public Interest Strongly Supports Granting The Requested Injunction

The district court's statement that the public's interest in this litigation is "difficult to discern," JA 163, is baffling. The district court based this statement on its view that although the public has a clear interest in the "ready availability of safe, effective, and affordable prescription drugs," the public also benefits from the research and development efforts of pioneer drug companies, "efforts which are rewarded and encouraged by patent law and the FFDCA's corresponding protection for patent holders." Id. Unfortunately, the district court overlooked the fact that in this case, Teva's generic product is being kept off the market not by Roche's patent - which Roche has admitted Teva's product does not infringe - nor by any "protection for patent holders" under the

---

[12]    By the same token, the District Court's statement that this case "arises out of a race between competing pharmaceutical companies to be the first to market a generic version" of ticlopidine, JA 148, is incorrect. Teva is not seeking to be first on the market, but only to be allowed to enter the market as of the date it is legally entitled to do so, February 10. If that outcome results in Teva (and/or Purepac) being de

FFDCA - for which Roche does not qualify - but by the misapplication of a statutory provision intended to sort out the sequencing of market entry as between generic companies. In other words, any public interest that may have once existed in protecting Roche's patent rights here vanished forever on August 14, 1998, the day Teva effectively won its declaratory judgment action by obtaining an order of dismissal on the basis of Roche's express concession of non-infringement. The only public interest that remains is the interest in timely market entry of safe, effective lower cost generic alternatives to Roche's branded ticlopidine - an interest that weighs decisively in Teva's favor.[13]

## III.    NOTICE-AND-COMMENT RULEMAKING IS NOT REQUIRED TO ESTABLISH THE EFFECTIVE DATE OF TEVA'S TICLOPIDINE ANDA

In the wake of Mova, FDA has stated that it will "regulate directly from the statute," JA 251, and will decide 180-Day Delay Period issues on a "case by case basis" "by reference directly to the statute" until such time as it promulgates revised final regulations using notice and comment rulemaking. JA 95. As demonstrated above, however, the result of FDA's post-Mova literalism in this case cannot stand because it produces absurd, unintended results. Teva has conclusively demonstrated that it is reasonable to treat the dismissal of Teva's declaratory judgment action as activating the Court Decision Trigger, and that it is unreasonable not to do so. Although this Court acknowledged in Mova that FDA could reasonably promulgate regulations to treat such a

___

facto first on the market, it will be solely because of the delay in FDA approval of TorPharm's ANDA, not because of anything Teva is asking this Court to do.

[13]    In this light, Roche's argument that there is "no compelling public interest in expediting the approval of Teva's ANDA" because Roche "can supply the market for the drug," JA 125, is nothing short of offensive. If the public's only interest were in having a drug available, regardless of price, Congress need not have bothered enacting the Hatch-Waxman Amendments at all.

32

dismissal as a Court Decision Trigger, see Mova, 140 F.3d at 1073 n.18, at that time there was no concrete dispute as to that issue because none of the parties had engaged in a declaratory judgment action. In this case, all pertinent facts necessary for the proper application of the statute to Teva's ANDA have already been established and are uncontested. There would be no further purpose to be served by FDA re-addressing this specific dispute through rulemaking. The matter is now squarely before this court, and should be finally and expeditiously decided by entry of an order that FDA make Teva's ticlopidine ANDA effective as of February 10, 1999.

## CONCLUSION

For the reasons stated herein, Teva respectfully urges the court to reverse the district court's denial of a preliminary injunction, and to remand to the district court with instructions to promptly order FDA to make Teva's tentatively-approved ticlopidine ANDA effective as of February 10, 1999.

Respectfully submitted,

James N. Czaban (D.C. Bar #459211)
Geoffrey M. Levitt (D.C. Bar #358633)
David M. Malone (D.C. Bar #125047) (Counsel of Record)

Venable, Baetjer, Howard & Civiletti LLP
1201 New York Avenue, NW
Suite 1000
Washington, D.C. 20005-3917
202/962-4800 (phone)
202/962-8300 (fax)

Attorneys for Teva Pharmaceuticals USA, Inc.

33