IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FOOD AND DRUG ADMINISTRATION, *et al.*, )<br>)<br>Defendants, )<br>)<br>APOTEX INC. )<br>)<br>Intervenor-Defendant. )<br>)<br>) | Case No. 05-1469 (JDB) |

**OPPOSITION OF INTERVENOR-DEFENDANT APOTEX INC.
TO MOTION OF GENERIC PHARMACEUTICAL ASSOCIATION
FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE***

**INTRODUCTION**

On August 30, 2005, the Generic Pharmaceutical Association ("GPhA") sought leave to file an *amicus curiae* brief on Teva's behalf in this matter – more than a month *after* Teva filed this litigation and nearly one month *after* this Court entered an order requiring that FDA and Apotex file by August 25 opposition briefs to Teva's motion for a preliminary injunction. This Court should deny GPhA's motion. GPhA's brief provides no assistance to this Court in its resolution of the merits of this dispute. Not only is it unclear whether the views expressed in GPhA's August 30 *amicus* brief remain the Association's "official" position, but GPhA's brief demonstrates a lack of understanding – both of the relevant facts and law – which could prove materially unhelpful in trying to resolve the merits of this case. If, however, this Court grants GPhA's motion, Apotex respectfully

requests the opportunity to file a short response in order to address and correct the inaccuracies contained in GPhA's tendered *amicus*.

## DISCUSSION

This Court has considerable discretion in deciding whether to consider an *amicus curiae* brief. *See, e.g.*, *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000) (stating that whether to allow a nonparty to submit an amicus brief is "a matter of judicial grace"). The principal factor this Court should consider when ruling on such a motion is whether the tendered *amicus* brief will be of practical use to the Court. *See Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 544 (7th Cir. 2003). In this case, the Court should decline to accept GPhA's *amicus* brief on Teva's behalf because that brief is of no practical use to this Court.

First, GPhA purportedly filed its August 30, 2005 *amicus* brief supporting Teva in this case in order "to give the Court an industry-wide perspective on the Hatch-Waxman [Act]." (GPhA Aug. *Amicus* at 1). It is, however, not at all clear whether the positions taken in GPhA's August 30 proposed brief remain the "industry-wide perspective" that GPhA presently holds. On September 7, 2005, GPhA filed an *amicus* brief supporting Teva in a different case, one pending before the U.S. Supreme Court. In that case, GPhA supported Teva's efforts to bring a declaratory judgment action that would, among other things, trigger the 180-day generic exclusivity period to which another company is entitled in connection with Pfizer's Zoloft® product. In its Supreme Court *amicus* brief, GPhA makes arguments that appear more in line with, and indeed support, *Apotex's* – not Teva's – position in the case currently before this Court. Apotex, in fact, supports the positions that GPhA takes in its September 7 Supreme Court *amicus* submission, a copy of which Apotex provides to this Court. (Ex. 1). But in any event, the uncertainty surrounding GPhA's actual

position on the issues presented in this case, given its most recent *amicu*s submission on Teva's behalf, means that GPhA's *amicus* brief in this case has little practical value.

On August 30, GPhA filed its *amicus* brief on Teva's behalf in this case arguing at length about the importance of the 180-day exclusivity period and how it must be protected, even though doing so can mean unduly delaying a subsequent ANDA filer's market entry. (*See, e.g.*, GPhA Aug. *Amicus* at 10-11).  GPhA asserted that allowing the dismissal of a declaratory judgment action brought by a subsequent ANDA applicant to trigger the start of the 180-day generic exclusivity period "would fundamentally disrupt the carefully calibrated incentive system embodied in the [Hatch-Waxman] Act." (*Id.* at 2).  Indeed, GPhA's August 30 "industry-wide perspective" urged this Court to overturn FDA's administrative ruling because allowing a dismissal order in an declaratory judgment action to be a triggering court decision would improperly "throw[] open the doors to generic entry." (*Id.* at 7).  But given GPhA's September 7 Supreme Court *amicus* brief on Teva's behalf, these arguments appear to be of little assistance to this Court.

GPhA's September 7 "industry-wide perspective" finds GPhA representing to the Supreme Court that "[a subsequent ANDA applicant] suffers an injury-in-fact from the lost opportunity to bring its product to market during the 180 days" of generic exclusivity. (GPhA Sept. *Amicus* at 14 (quotation and citation omitted).  GPhA also discussed in detail the importance of declaratory judgment actions brought by subsequent applicants to the Hatch-Waxman scheme.  For example, GPhA explained on Teva's behalf that:

> [d]eclaratory judgment actions by ANDA applicants concerning listed patents play a vital role in the Hatch-Waxman regime, helping to further[] competitive pharmaceutical markets and [lower] health care costs.

(*Id.* at 16 (quotations and citations omitted)).  GPhA's September 7 *amicus* brief even acknowledged that "the proper construction of . . . Hatch-Waxman" is one designed "to speed the marketing of

-3-

generic drugs." (*Id.* at 1). Indeed, throughout its September 7 *amicus* brief, GPhA argued for a construction of the Hatch-Waxman Act that would lead to the quickest possible resolution of patent infringement lawsuits (*see*, *e.g.*, *id.* at 2, 8, 14, 18-20) that would lift the "cloud of patent uncertainty" (*id*. at 3-4) and would enable ANDA applicants to "avoid or limit [the] additional 180-day delay" (*id*. at 4).  This is, of course, precisely what Apotex has done here.

This Court already has before it fully-briefed arguments relating to the proper interpretation of the court decision provision of 21 U.S.C. § 355(j)(5)(B)(iv)(II), as well as the D.C. Circuit's controlling precedent in the *Teva*/ticlopidine cases.  Given the parties' briefs, the various positions that GPhA has taken on Teva's behalf in its recent *amicus* submissions have little, if any, practical value to this Court.  GPhA's motion should be denied on this basis alone.

Second, irrespective of its recent September 7 *amicus* brief, GPhA's proposed *amicus* brief in this case adds nothing of value.  GPhA has not demonstrated any special knowledge about the facts or legal principles relevant to this particular dispute.  If anything, this Court's consideration of GPhA's *amicus* could serve to distort and confuse the issues in this case inasmuch as GPhA demonstrates a fundamental misunderstanding of the gravamen of this dispute.

By way of example, GPhA mischaracterizes the dismissal order in the Apotex/BMS patent litigation, whose preclusive effect is at the center of this case.  GPhA describes that dismissal order as "a joint stipulation" wherein the parties "disagreed over the validity of the patent," but which contained representations from BMS that "it did not intend to sue." (GPhA Aug. *Amicus* at 8).  This, at best, is an incomplete statement as to the facts of this case.  BMS did not merely make statements "that there was no controversy" between it and Apotex, as GPhA incorrectly suggests. (*Id.*).  Rather, BMS unequivocally represented that "it will not sue Apotex for infringement"; that "[Apotex] has no reason, now or in the future, to be apprehensive that BMS will sue it for

-4-

infringement"; and that "BMS nonetheless has no intention, now or in the future, of suing [Apotex] for infringement." (A.R. Tab 32, Ex. F at 12)). Thus, GPhA's brief fails to consider many of the critical facts in this case.

Similarly, GPhA fails to grasp of the law critical to this case. For example, GPhA asserts that the July 23, 2004 dismissal order in the Apotex/BMS litigation does not contain "any findings or holding as to [] invalidity, noninfringement, or unenforceability" and, therefore, according to GPhA, lacks the preclusive effect necessary to qualify as a triggering court decision under § 355(j)(5)(B)(iv)(II). (GPhA Amicus at 8). GPhA is mistaken. The Federal Circuit has made clear that the patentee need *not* utter the talismanic words "does not infringe," "invalid," and/or "unenforceable" before it will be estopped from bringing a future patent infringement suit. *See, e.g.*, *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1055-57 (Fed. Cir. 1995). Instead, the issue is whether the patentee makes representations that estop it from suing the ANDA-applicant for infringement of the patents at issue. *See id.* In *Super Sack*, for example, the patentee "was at great pains to emphasize that it 'has not and does not concede its claims of infringement against'" the declaratory judgment plaintiff. *Id.* at 1057. Despite the patentee's refusal to concede non-infringement or invalidity, the Federal Circuit held that the patentee was "forever estopped by its counsel's statement of nonliability . . . from asserting liability against [the plaintiff]" based upon its representation to the court that it would "*agree not to sue [the declaratory judgment plaintiff] for infringement*" of its patents. *Id.* at 1056, 1059; *see also Amana Refrigeration, Inc. v. Quad Lux, Inc.*, 172 F.3d 852, 855-56 (Fed. Cir. 1999) (holding that patentee was estopped from suing declaratory judgment plaintiff based solely on its promise not to assert any patent claims against plaintiff).

The D.C. Circuit also agrees that a court decision need *not* explicitly hold that the patent is "invalid" or "not infringed" to have preclusive effect and, thus, to satisfy the court decision

trigger. *Teva Pharms., USA, Inc. v. FDA*, 182 F.3d. 1003, 1008-09 (D.C. Cir. 1999). The *Teva* court, in fact, rejected any argument that a triggering decision under § 355(j)(5)(B)(iv)(II) is limited to a decision of invalidity or non-infringement, stating that "it is unclear that a triggering 'court decision' need explicitly hold the patent at issue is 'invalid' or is 'not infringed' in order to trigger the 180-day period of market exclusivity." *Teva*, 182 F.3d at 1009. Instead, the court repeatedly made clear that "*the relevant consideration is the estoppel of the patent holder from later claiming that the ANDA applicant is liable for patent infringement.*" *Id.* (emphasis added).

Here, BMS explicitly represented, among other things, that Apotex "has no reason, now or in the future, to be apprehensive that BMS will sue it for infringement." (A.R. Tab 32, Ex. F at 12). GPhA's *amicus* brief lends nothing to this Court's task of interpreting the preclusive effect of BMS's explicit representations, particularly given that GPhA seems neither well versed in the relevant facts or controlling case law. GPhA's motion should be denied on this independent basis as well.

Finally, in submitting its *amicus* brief, GPhA failed to comply with both this Court's orders and the Local Civil Rules of this Court, which independently justifies this Court summarily denying GPhA's *amicus* brief. One, as GPhA itself notes, time often is of the essence in Hatch-Waxman cases. (*See, e.g.*, GPhA Mem. at 2). Ironically, however, GPhA did not weigh into this dispute in a timely manner. Teva filed this lawsuit on July 26, 2005. On August 9, 2005, this Court entered an order, requiring FDA and Apotex to file their opposition briefs no later than August 25, 2005. GPhA had ample time to file its proposed *amicus* brief in support of Teva before FDA and Apotex filed their briefs, which would, of course, have allowed them to respond to GPhA's arguments. GPhA did not do so, however. And two, Local Civil Rule 7(m) imposes a duty on GPhA counsel, before the filing of any non-dispositive motion, to confer with opposing counsel "in a

good faith effort to determine whether there is any opposition to the relief sought, and if there is opposition, to narrow the areas of disagreement." L. CIV. R. 7(m). The rule requires that "[a] party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." *Id*. Counsel for movant GPhA did not seek Apotex's consent, in violation of this local rule. The procedural defects in GPhA's brief, by themselves, provide a basis for denying GPhA's motion.

## **CONCLUSION**

For these reasons, GPhA's motion for leave to file an *amicus* brief should be denied. In the alternative, if this Court grants GPhA's motion, Apotex respectfully requests a revised briefing schedule from this Court that provides Apotex and FDA at least seven (7) days to respond to the arguments raised in GPhA's proposed *amicus* brief.

Dated: September 9, 2005.                          Respectfully submitted,

                                                   APOTEX INC.

                                                   By:  _____/s/_____
                                                        Arthur Y. Tsien, D.C. Bar No. 411579
                                                        OLSSON, FRANK AND WEEDA, P.C.
                                                        1400 16th Street, N.W., Suite 400
                                                        Washington, D.C. 20036-2220
                                                        (202) 789-1212
                                                        (202) 234-3550 (facsimile)

Of Counsel:
William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik (admitted *pro hac vice*)
Lara E. Monroe-Sampson
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Intervenor-Defendant Apotex Inc.*

# CERTIFICATE OF SERVICE

I, Arthur Y. Tsien, hereby certify that I caused the foregoing Opposition of Intervenor-Defendant Apotex Inc. to Motion of Generic Pharmaceutical Association for Leave to File Brief As *Amicus Curiae* to be served via e-mail and the District Court's Electronic Filing System (ECF) upon:

>Jay P. Lefkowitz
>KIRKLAND & ELLIS LLP
>655 15th Street NW, Suite 1200
>Washington, D.C. 20005
>
>*Counsel for Plaintiff Teva Pharmaceuticals USA, Inc.*
>
>Andrew E. Clark
>Office of Consumer Litigation
>U.S. DEPARTMENT OF JUSTICE
>P.O. Box 386
>Washington, D.C. 20044
>
>*Counsel for Defendants Food and Drug Administration,*
>*Michael O. Leavitt, and Lester M. Crawford*

and also served via e-mail upon:

>Theodore Case Whitehouse
>WILLKIE FARR & GALLAGHER LLP
>1875 K Street, NW
>Washington, D.C. 20006-1238
>
>*Counsel for Proposed Amicus Curiae*
>*The Generic Pharmaceutical Association*

This 9th day of September, 2005.         _____/s/_____
                                          Arthur Y. Tsien, D.C. Bar No. 411579

                                          OLSSON, FRANK & WEEDA, P.C.
                                          1400 16th Street, N.W., Suite 400
                                          Washington, D.C. 20036-2220
                                          (202) 789-1212
                                          (202) 234-3550 (facsimile)