IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC. <br><br> Plaintiff, <br><br> v. <br><br> FOOD AND DRUG ADMINISTRATION, *et al.*, <br><br> Defendants, <br><br> APOTEX INC. <br><br> Intervenor-Defendant. | Case No. 05-1469 (JDB) |

**APOTEX INC.'S RESPONSE TO**
**TEVA PHARMACEUTICALS USA, INC.'S SUPPLEMENTAL BRIEF**

Arthur Y. Tsien, D.C. Bar No. 411579
OLSSON, FRANK & WEEDA, P.C.
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036-2220
(202) 789-1212

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik (admitted *pro hac vice*)
Lara E. Monroe-Sampson
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6304

*Counsel for Apotex Inc.*

DATED: October 11, 2005

**INTRODUCTION**

Teva's Supplemental Brief adds nothing of relevance to this case. The only issue before this Court is whether the Apotex dismissal order estops BMS "from later claiming that [Apotex] is liable for patent infringement." *Teva Pharmaceuticals, USA, Inc. v. FDA*, 182 F.3d 1003, 1009 (D.C. Cir. 1999) ("*Teva*"). The answer is "yes." Quite simply, the dismissal of Apotex's declaratory judgment action "meet[s] the requirements of a 'court decision' under [21 U.S.C.] § 355(j)(5)(B)(iv)(II)." *Id*.

Teva attempts to divert the Court's attention from the only relevant issue by focusing instead on immaterial procedural characteristics of a Rule 41 dismissal. Teva argues that such a dismissal is not a "decision" or "holding." But, at Teva's own urging, the *Teva* Court did not concern itself with such procedural labels or distinctions, and nor should this Court. Rather, the D.C. Circuit held that while "[a] 'decision' can take several forms" and the "term 'holding' . . . is also susceptible to interpretation," "the significance of a court's 'decision' or 'holding' . . . lies in its preclusive effect." *Id*. at 1007-08. To determine whether a patentee is precluded from bringing infringement claims, the D.C. Circuit correctly looked to Federal Circuit law, *not* regional circuit law. And under controlling Federal Circuit law, the dismissal order here precludes BMS from suing Apotex for infringement of its pravastatin patents. Whether that dismissal falls under Rule 41, or whether Judge Pauley had to sign the order or not, is irrelevant. The fact is, the district court signed the order and it has preclusive effect. No more is required for a court decision under *Teva*.

**I.    The *BMS* Dismissal Is A Court Decision Trigger Under *Teva*.**

    **A.    The Only Relevant Consideration Is The Estoppel Effect Of The *BMS* Dismissal.**

In *Teva*, the D.C. Circuit explicitly held that where, as here, an ANDA-filer's declaratory judgment suit is dismissed for lack of subject matter jurisdiction, ***the only "relevant***

*consideration is the estoppel of the patent holder* from later claiming that the ANDA applicant is liable for patent infringement." *Teva*, 182 F.3d at 1009 (emphasis added). The particular form of the decision is unimportant: it need not "explicitly hold the patent at issue [to be] 'invalid' or . . . 'not infringed' in order to trigger the 180-day period of market exclusivity." *Id*. Again, **"the significance . . . lies in its preclusive effect**." *Id*. at 1008 (emphasis added).

Teva agreed with, and indeed prevailed on, this rule of law in *Teva*, asserting that its own dismissal for lack of subject matter jurisdiction triggered Apotex's exclusivity for ticlopidine because the dismissal "clearly renders the patent unenforceable against Teva under the doctrine of estoppel and controlling federal caselaw." (Apotex Br. Ex. 2 at 25; *see also id*. Ex. 4 at 5 (stating that the ticlopidine dismissal "was indeed a court 'decision' . . . because that decision has the preclusive effect of preventing Syntex from ever suing Teva for infringement of the relevant patent").) Thus, Teva's current arguments over the particular form of the *BMS* dismissal and the failure of the district court to retain jurisdiction over the case are of no moment. The question solely is whether, under governing Federal Circuit law, BMS is precluded from suing Apotex for infringement. As explained below, the answer is "yes," which ends the matter under *Teva*.

**B.     Under Governing Federal Circuit Law, The *BMS* Dismissal Has Preclusive Effect and Triggers Teva's Exclusivity.**

**1.     Federal Circuit Law Applies.**

Teva argues that the "legal impact of a stipulation of dismissal" is a procedural question and, therefore, Second Circuit law applies. (Teva Supp. Br. at 3.) Wrong. The "legal impact" or effect of the *BMS* dismissal is ***not*** a procedural question.[1] The issue of whether the *BMS*

---

[1] Teva's reliance on *Cygnus Telecommunications Tech., Inc. v. Totalaxcess.com, Inc.*, 345 F.3d 1372 (Fed. Cir. 2003), is misplaced. (*See* Teva Supp. Br. at 4.) Contrary to Teva's assertion, *Cygnus* does not remotely address the issue here, much less "precisely the question at issue here." *Cygnus* addressed whether the court in which a Rule 41 dismissal was entered maintains jurisdiction to enforce the terms of the underlying settlement agreement. That question is not before this Court.

2

dismissal for lack of subject matter jurisdiction has preclusive effect is a substantive question "particular to patent law" and, thus, must be analyzed under Federal Circuit law. *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001) (stating that, "[s]ince the present claim preclusion issue is particular to patent law, we analyze it under applicable Federal Circuit law").[2]

In *Hallco*, the Federal Circuit addressed the issue of whether a dismissal based upon a settlement in a previous suit precluded a later challenge to the same patent involving the same parties. The Court determined that the question of whether the prior dismissal results in claim preclusion in the later suit is "particular to patent law" and, thus, that Federal Circuit law applied. *Hallco*, 256 F.3d at 1294. Here, BMS's ability to file and maintain a suit over the same patents and same Apotex products that were before Judge Pauley also is a matter of patent law and, thus, Federal Circuit law applies. In *Teva*, the D.C. Circuit likewise analyzed the preclusive effect of the California dismissal under Federal Circuit law: "The conclusion that the California dismissal has estoppel effect is supported by the decisions of the United States Court of Appeals for the Federal Circuit." *Teva*, 182 F.3d at 1008. Once again, Teva itself agreed and argued that its own prior dismissal was a court decision "under the doctrine of estoppel and controlling federal caselaw" from the Federal Circuit. (Apotex Br. Ex. 2 at 25 (citing *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995).)

### 2. BMS Is Precluded From Suing Apotex For Patent Infringement.

Applying Federal Circuit law, the issue of preclusion here is simple. As the *Teva* Court noted, the Federal Circuit "has recognized that a dismissal of a declaratory judgment action for

---

[2] In fact, the Federal Circuit has held that "a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004) (citation omitted). Thus, even if this were a purely procedural issue (which it is not), it is still governed by Federal Circuit law.

lack of a case or controversy due to the patent holder's disavowal of any intent to sue for infringement has preclusive effect." *Teva*, 182 F.3d at 1008; *see also Super Sack*, 57 F.3d at 1059 (finding patentee "forever estopped by its counsel's statement of nonliability"); *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) (finding patentee "forever estopped from asserting liability against [declaratory judgment plaintiff]" based on covenant not to sue).

   Here, BMS repeatedly has represented to the district court and Apotex that it "has no intention, now or in the future, of suing [Apotex] for infringement" and that it "will not sue Apotex for infringement of the '447, '589, and '985 patents." (A.R. Tab 32, Ex. F at 12.) The *BMS* dismissal order itself specifically references BMS's disavowal of any intent to sue Apotex for infringement of its pravastatin patents. (*Id.*, Ex. A at 3.) Thus, as a "matter of black-letter patent law," BMS is forever estopped from suing Apotex for infringement of BMS's pravastatin patents. *Teva Pharms. USA, Inc. v. FDA*, No. Civ.A. 99-67, 1999 WL 1042743 at *5 (D.D.C. Aug. 19, 1999) ("As a matter of black-letter patent law, [the court order and Syntex's concessionary letter] suffice to forever estop Roche from suing Teva for patent infringement.").

   The *Teva* dismissal order, in contrast, contains no similar binding statements. (*See* attached, Ex. A.) In fact, "[b]ecause the reason for Teva's California dismissal 'was not evident from the face of the court order,'" the D.C. Circuit in the ticlopidine matter was forced to look beyond the dismissal order to Syntex's concessionary letter before it could determine the preclusive nature of the dismissal. *Teva*, 1999 WL 1042743 at *5. Here, the preclusive nature of the *BMS* dismissal is apparent from the face of the order itself, although looking behind that order further confirms its preclusive effect. The *BMS* dismissal order at issue here, therefore, satisfies the court decision trigger under any interpretation of *Teva*.

4

**II.    Teva's "Second Circuit Precedent" Is Irrelevant.**

Ignoring the only real issue (*i.e.*, the preclusive nature of the *BMS* dismissal), Teva improperly relies on Second Circuit case law to argue that the form of the *BMS* dismissal order is not a "decision" or "holding." But, as already discussed, the D.C. Circuit in *Teva* found such procedural labels or distinctions unhelpful, acknowledging that "a 'decision' can take several forms" and the "term 'holding' . . . is also susceptible to interpretation." 182 F.3d at 1007-08. The *Teva* Court thus focused on what truly matters; namely, whether the order has preclusive effect under the patent laws. Notably, Teva fails to cite even a single case actually defining "decision" or "holding." And none of the cases that Teva does cite conclude that a "so ordered" stipulation is not a court order or decision. Teva's arguments are not only distracting and irrelevant, but call for a result that strays far from the bright-line rule that *Teva* teaches and requires. But even if relevant, such arguments fail.

Teva, for example, repeatedly argues that the *BMS* dismissal signed by Judge Pauley cannot be a triggering court decision because it did not require the signature or approval of the Court to take effect. (Teva Supp. Br. at 4-6, 8.) Nonsense. First, whether a Rule 41 dismissal requires the Court's approval or not, the fact is, Judge Pauley ***did*** sign the *BMS* dismissal order and, therefore, the dismissal is an Order or "decision" of the Court. Teva's allegedly supporting case, *Hester Industries, Inc. v. Tyson Foods, Inc.*, stands for the unremarkable proposition that a court lacks authority to condition a Rule 41(a)(1) dismissal on compliance with the underlying settlement agreement. *See Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998). Contrary to what Teva would have this Court believe, *Hester* does *not* state that a Rule 41 dismissal signed by the Court is not a "court order" or decision.

Second, the *BMS* dismissal order was not a mere Rule 41 voluntary dismissal, but rather a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction. As FDA correctly observed, "the parties can't stipulate to a lack of subject matter jurisdiction any more than they can stipulate to

5

the existence of subject matter jurisdiction, and so you have a document that's signed by the judge that says there's no subject matter jurisdiction. That's not the same thing as a purely private agreement that the court may or may not need to sign." (9/26/05 Tr. at 78 (Ex. B hereto); *see also* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 at 204 (2d ed. 1990 ("Since an objection to subject matter jurisdiction goes to the power of the court to hear and decide the case, parties may not create or destroy jurisdiction by agreement or by consent.").) Given its jurisdictional nature, this order required the Court's deliberate and thoughtful approval.

Teva also argues that the *BMS* dismissal order is not a "holding" because Judge Pauley's "endorsement of the stipulation did not constitute an adoption of its contents". (Teva Supp. Br. at 7.) This argument is incorrect and, indeed, absurd. By signing and "so ordering" the stipulation, Judge Pauley deliberately endorsed and adopted its contents dismissing the action for lack of subject matter jurisdiction. Teva has no basis beyond pure speculation to argue otherwise. Indeed, the only evidence in the record shows that Judge Pauley did sign, adopt, and order the stipulation. And, of course, BMS submitted a motion to dismiss with a supporting declaration and exhibits containing the same binding representations that BMS will not, now or in the future, sue Apotex for infringement of the '447, '985, and '589 patents. Judge Pauley had more than enough information about this case to make an informed decision when he signed the dismissal order. Teva offers no reason to believe that he did not fully consider this information before entering the order.

Teva further argues that the *BMS* dismissal order is not a "decision" or "holding" because the stipulation makes "no reference to the court's retention of jurisdiction over the case." (Teva Supp. Br. at 7; *see also id.* at 5.) Teva's argument is a red herring. No one claims that BMS has violated any agreement requiring court intervention to enforce the terms of the stipulation or any

6

underlying settlement agreement, nor has any party made any claims necessitating Judge Pauley's continued jurisdiction over the case. In fact, Judge Pauley could not—any more than the prior *Teva* district court—"retain jurisdiction" over a case for which there is no subject matter jurisdiction. None of the cases that Teva cites hold otherwise, much less involve a dismissal for lack of subject matter jurisdiction.[3] As such, this line of argument and Teva's supporting cases simply are not relevant. The fact is that Teva could not possibly mean what it now argues before this Court. The *Teva*/ticlopidine dismissal would not have passed muster under Teva's current standard since it, too, was based on lack of subject matter jurisdiction and there was no settlement agreement to enforce and no retention of jurisdiction by the district court.

Finally, Teva's "analysis" for determining whether a court decision satisfies the court decision trigger of § 355(j)(5)(B)(iv) hardly provides the so-called bright-line rule that FDA is seeking here and that *Teva* established. Far from it. As FDA explained, Teva's test is "an exercise in trying to read Judge Pauley's mind in trying to ask what was the basis for his so ordering the stipulation, other than what it says on its face." (Ex. B, 9/26/05 Tr. at 34.) Short of deposing the district judge, FDA could never reasonably determine whether the dismissal was the result of a thoughtful and deliberative act. This Court therefore should reject Teva's disingenuous attempt to question Judge Pauley's order and should instead follow the D.C. Circuit's analysis in *Teva*: look to the face of the order itself, or if necessary the documents underlying it, and determine whether it has preclusive effect under controlling Federal Circuit law. If so, as in this case, the order constitutes a triggering court decision. *Teva* establishes a workable, bright-line rule that merely requires FDA to

---

[3] *See Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) (holding that district court maintained jurisdiction to issue order unsealing documents filed in matter dismissed pursuant to Rule 41(a)(1) dismissal); *Geller v. Branic Int'l Realty Corp.*, 212 F3d 734 (2d Cir. 2000) (holding that, where "so ordered" stipulated settlement agreement contains terms regarding sealing the case file, the district court should implement those terms); *Torres v. Walker*, 356 F.3d 238 (2d Cir. 2004) (finding the "so ordered" stipulation of dismissal did not contain provision expressly retaining court's jurisdiction to monitor compliance with the terms of the settlement).

look to the preclusive effect of the dismissal order. Such a rule rewards ANDA applicants who challenge brand patents and bring declaratory judgment suits to obtain patent certainty with the ability to enter the market as soon as they are otherwise approvable. This is the only rule that follows the purpose of Hatch-Waxman of "get[ting] generic drugs into the hands of patients at reasonable prices--fast." *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991).

### III. Teva's Position Permits Manipulation Of Hatch-Waxman, Contrary To Congressional Intent And The D.C. Circuit's Precedent That Teva Itself Established.

In *Teva*, the D.C. Circuit recognized that a dismissal that suffices to estop the patentee from suing an ANDA applicant for patent infringement serves "the purpose of the triggering 'court decision' provision." *Teva*, 182 F.3d at 1009. Otherwise, the court observed, using Teva's own words, "the patent holder could manipulate the system in order to block or delay generic competition by stating that the patent holder will not enforce its patent against the Paragraph IV challenger." *Id*.

Teva previously agreed that dismissals for lack of subject matter jurisdiction must be recognized as triggering court decisions or else the patentee could prevent triggering generic market exclusivity by "simply stating that it does not intend to enforce its patent against the subsequent applicant, thus preventing the courts from exercising subject matter jurisdiction to issue the very 'holding' of non-infringement that FDA's position seeks to require." (Apotex Br., Ex. 6 at 16.) FDA has similarly warned that, "[i]f an innovator could obtain dismissal of an ANDA applicant's declaratory judgment action merely by stating that the proposed product would not infringe its patents, it could prevent the issuance of a triggering court decision, even if one or more generic companies were ready, willing, and able to manufacture." (A.R. Tab 38 at 9.) Indeed, Congress voiced the same concerns during the deliberations over the Medicare Prescription Drug, Improvement and Modernization Act of 2003. *See* 149 Cong. Rec. S15881, S15885 (Nov. 25, 2003) (stating that "when generic applicants are blocked by a first generic applicant's 180-day exclusivity,

8

the brand drug company could choose not to sue those other generic applicants so as to delay a final court decision that could trigger the failure to market provision and force the first generic to market").

Teva's current arguments ignore these principles and subject the court decision trigger to precisely the manipulation that Teva fought so hard to avoid in the prior litigation. FDA and Apotex lost that litigation and now are attempting to abide by, and indeed have relied upon, the bright-line rule of law established in *Teva* by the D.C. Circuit. Teva, on the other hand, seeks to run away from that decision by making baseless arguments and distinctions that have no bearing on the relevant legal analysis. The Court should reject Teva's attempt to do so, both on the merits and because Teva should not be permitted to abandon the binding precedent and arguments on which it previously prevailed. Regardless of whether that is a matter of judicial estoppel (as Apotex believes it to be) or not, Teva should not be allowed to engage in such gamesmenship.

## CONCLUSION

Teva's Supplemental Brief provides nothing but a distraction from the real issue at hand—whether, under the terms of the stipulated dismissal order, BMS is precluded from suing Apotex for infringement of the '447, '985 and '589 patents. Under Federal Circuit law, BMS is so precluded and, under *Teva*, the dismissal meets the requirements of a court decision trigger. For these reasons, and those addressed in Apotex's opposition brief, Teva's motion for injunctive relief should be denied and judgment should be entered for FDA and Apotex.

Dated: October 11, 2005.                    Respectfully submitted,

                                                        APOTEX INC.

                                            By: _____/s/_____
                                                William A. Rakoczy, D.C. Bar No. 489082
                                                RAKOCZY MOLINO MAZZOCHI SIWIK LLP
                                                6 West Hubbard Street, Suite 500

                                        Chicago, Illinois 60610
                                        (312) 222-6301
                                        (312) 222-6321 (facsimile)

Arthur Y. Tsien, D.C. Bar No. 411579
OLSSON, FRANK AND WEEDA, P.C.
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036-2220
(202) 789-1212
(202) 234-3550 (facsimile)

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik (admitted *pro hac vice*)
Lara E. Monroe-Sampson
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Apotex Inc.*

**CERTIFICATE OF SERVICE**

      I, William A. Rakoczy, hereby certify that I caused the foregoing Apotex Inc.'s Response to Teva Pharmaceuticals USA, Inc.'s Supplemental Brief to be served via e-mail and the District Court's Electronic Filing System (ECF) upon:

>Jay P. Lefkowitz
>KIRKLAND & ELLIS LLP
>655 15th Street NW, Suite 1200
>Washington, D.C. 20005
>
>*Counsel for Plaintiff Teva Pharmaceuticals USA, Inc.*
>
>Andrew E. Clark
>Office of Consumer Litigation
>U.S. DEPARTMENT OF JUSTICE
>P.O. Box 386
>Washington, D.C. 20044
>
>*Counsel for Defendants Food and Drug Administration,*
>*Michael O. Leavitt, and Lester M. Crawford*
>
>Theodore Case Whitehouse
>WILLKIE FARR & GALLAGHER LLP
>1875 K Street, NW
>Washington, D.C. 20006-1238
>
>*Counsel for Amicus Curiae*
>*The Generic Pharmaceutical Association*

This 11th day of October, 2005.  _____/s/_____
                                                         William A. Rakoczy, D.C. Bar No. 489082
                                                       RAKOCZY MOLINO MAZZOCHI SIWIK LLP
                                                       6 West Hubbard Street, Suite 500
                                                       Chicago, Illinois 60610
                                                       (312) 222-6301
                                                       (312) 222-6321 (facsimile)

                                                       *Counsel for Intervenor-Defendant Apotex Inc.*