UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

TEVA PHARMACEUTICALS USA, INC., )
                                )
            Plaintiff,          )
                                )
      v.                        )      Civil Action No. 05-1469 (JDB)
                                )
FOOD AND DRUG ADMINISTRATION,   )
et al.,                         )
                                )
            Defendants.         )
_____)

FEDERAL DEFENDANTS' MEMORANDUM IN
RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF

The D.C. Circuit held that the dismissal of a declaratory judgment action for lack of jurisdiction triggers exclusivity if the patentee is estopped from enforcing its patent against the declaratory plaintiff. *See Teva Pharms. USA, Inc. v. FDA*, 182 F.3d 1003, 1009 (D.C. Cir. 1999) ("*Teva I*"); *see also Teva Pharm., USA, Inc. v. FDA*, No. 99-5287, 2000 U.S. App. LEXIS 38,667 at 6 (D.C. Cir. Nov. 15, 2000) ("*Teva II*"). In both the Teva-Syntex suit at issue in *Teva I* and *II* and the Apotex-Bristol suit at issue here, the court entered an order dismissing for lack of jurisdiction, and in both cases the patentee was estopped from enforcing its patent against the plaintiff. Teva seizes upon the happenstance that the Teva-Syntex dismissal resulted from a motion to dismiss on the uncontested ground that Syntex would not sue Teva, while the Apotex-Bristol dismissal resulted from a stipulation by the parties informing the court that Bristol would not sue Apotex. Far from suggesting that the form of the dismissal is dispositive, however, the *Teva I* court took pains to elevate substance over form, admonishing that the significance of a decision or a holding often lies in its preclusive effect. *See Teva I*, 182 F.3d at 1008.

There is no meaningful distinction between the preclusive dismissals at issue in *Teva* and the present case for purposes of the court-decision trigger.

The premise of Teva's argument that the Apotex-Bristol dismissal should be viewed as something less than a "decision of a court," 21 U.S.C. § 355(j)(5)(B)(iv)(II) (2003), is that it was accomplished pursuant to Fed. R. Civ. P. 41(a)(1)(ii) and, as such, took effect without any need for action by the court. That premise is wrong for three reasons. First, the "Stipulation and Order" submitted to Judge Pauley did not purport to be a dismissal pursuant to Rule 41(a)(1)(ii) or even mention that Rule. *See* Ex. A to Teva Suppl. Br. Second, the parties sought (and received) action from Judge Pauley on the Stipulation and Order, not only by calling it a Stipulation *and Order,* but also by specifically including a signature line for Judge Pauley to note his endorsement. *See id*. at 4. Whether or not the dismissal *could* have been effected without any action by the court, the simple fact is that it was not. Third, and in any event, given the expressly jurisdictional terms of the Stipulation and Order, it could not have been a mere voluntary dismissal. Apotex and Bristol did not merely seek to dismiss the action because they had agreed it should not be pursued; rather, they sought to dismiss it "for lack of subject matter jurisdiction." *Id*. Whether jurisdiction is present or absent is for the court to decide, not for the parties to stipulate. Accordingly, rather than being superfluous or null-and-void act as Teva suggests, Judge Pauley's approval of the Stipulation and Order was a "decision of a court" "holding" that jurisdiction was lacking because of Bristol's representations. Under *Teva*, nothing more was required to trigger exclusivity for pravastatin.

## I.     Second Circuit Case Law Does Not Control the Question of What Constitutes a "Decision of a Court" or a "Holding" under 21 U.S.C. § 355(j)(5)(B)(iv)(II)

As an initial matter, Teva's suggestion that this Court should apply Second Circuit case law concerning the meaning and effect of Rule 41(a) dismissals to decide whether the Stipulation and

Order constitutes a "decision of a court" with a "holding" is baseless.  The issue before this Court is exclusively the interpretation of the court-decision trigger provision.  This case has nothing to do with whether Judge Pauley would retain jurisdiction to enforce the Stipulation and Order or with the significance of the dismissal under Rule 41(a)(1) (assuming, contrary to fact, that the dismissal was effected under Rule 41(a)(1)) or for any other purpose.

Nor is there any basis for Teva's contention that this Court should apply Second Circuit case law on the theory that if the Apotex-Bristol dismissal had been appealed, that appeal would have been to the Federal Circuit, which would have treated the Rule 41(a)(1) issue as a non-patent issue on which regional circuit precedent governed.  There is no need or justification for such contortions on the issue before this Court.  This case is an Administrative Procedure Act suit by Teva against FDA.  This case is not the Apotex-Bristol patent suit and, indeed, is not a patent suit at all.

The only question before the Court here is whether the Apotex-Bristol dismissal – whatever its procedural and substantive impact in the Second Circuit or elsewhere – constitutes a "decision of a court . . . holding the patent which is the subject of the certification to be invalid or not infringed."  21 U.S.C. § 355(j)(5)(B)(iv)(II).  The only circuit to have interpreted the court-decision trigger provision is the D.C. Circuit in *Teva I* and *II*.  *Teva* binds this Court and FDA alike,[1] and Teva's contention that this Court should apply Second Circuit case law for purposes of the court-decision trigger provision is inconsistent with them.  The Teva-Syntex dismissal at issue in *Teva* occurred in the Northern District of California, but the D.C. Circuit did not look to, let alone suggest it was bound to apply, Ninth

_____

[1] *Cf. In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987) (Ginsburg, J.) ("[I]t is logically inconsistent to require one judge to apply simultaneously different and conflicting interpretations of what is supposed to be a unitary federal law. . . .  Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit.").

Circuit case law to determine whether Judge Legge's dismissal constituted a "decision of a court" with a "holding" that satisfied the court-decision trigger provision.

Moreover, the D.C. Circuit made clear that the court-decision trigger provision should be interpreted functionally in light of the purposes of Hatch-Waxman. *See Teva I*, 182 F.3d at 1008-10. It would fly in the face of that principle for the triggering determination to turn on subtle and technical differences between regional circuits' case law or practice concerning stipulated or so-ordered dismissals. Congress could not have intended that the triggering of nationwide exclusivity vary depending on the location of the court issuing the assertedly triggering decision. Nor could Congress have intended that FDA be required to apply differing versions of the court-decision trigger to decisions issued in different jurisdictions, especially since FDA cannot know at the time it makes its administrative determination whether it will be sued in the court that issued the underlying decision, in this Court, in another court, or in multiple courts.

## II. The Stipulation and Order Entered by Judge Pauley Is a "Decision of a Court"

Teva argues that there was no "decision" by the Apotex-Bristol court because a Rule 41(a)(1)(ii) dismissal is automatically executed, without any involvement of the court, regardless of whether (as here) the court signed the order. Teva Suppl. Br. at 4-6. Teva's argument is wrong even on its own terms, because there is no indication in the Stipulation and Order (or in the Apotex-Bristol court docket) that the dismissal was pursuant to Rule 41(a)(1)(ii). The Stipulation and Order does not mention Rule 41(a)(1)(ii) or suggest in any way that that rule provided the procedural avenue for the dismissal. In fact, the Stipulation and Order demonstrates that the parties believed that the dismissal was not being effected under Rule 41(a)(1)(ii). As Teva observes, a dismissal under Rule 41(a)(1)(ii) does not require approval of the court. Yet Apotex and Bristol expressly sought Judge Pauley's

approval by including a signature line for him to endorse the Stipulation and Order. Likewise, Rule 41(a)(1)(ii) permits the parties to stipulate to a dismissal, but it does not permit the parties to *order* a dismissal without court action. Yet Apotex and Bristol submitted not a stipulation as contemplated by Rule 41(a)(1)(ii), but a Stipulation and Order that, as such, sought and required the court's approval. And finally, Judge Pauley did sign the Stipulation and Order, transforming it from a stipulation or a proposed order into an actual order of the court.

Teva's argument that the Apotex-Bristol dismissal nonetheless did not constitute a "decision of a court" contradicts reality and ignores the special nature of a determination concerning subject-matter jurisdiction. Arguing that Apotex and Bristol (or Apotex alone, *see* Teva Suppl. Br. 5 n.3) *could* have dismissed the suit without any action by the court cannot obscure the fact that Apotex and Bristol did not do so. Judge Pauley signed and endorsed the Stipulation and Order, and that historical fact cannot be erased.[2]

Nor can Teva rewrite history by treating Judge Pauley's decision as a nullity. According to Teva, once the stipulation was filed, the court automatically was divested of jurisdiction and the court's subsequent attempt to take action on the stipulation to decide for itself that it lacked jurisdiction was null and void. First, again, what Teva refers to as the "stipulation" was not merely a stipulation, but rather a Stipulation and Order. Teva's argument amounts to saying that the parties could issue an order

---

[2] Because the parties sought and received the court's imprimatur on their agreement, the Stipulation and Order would constitute a "decision of a court" even if the dismissal had been pursuant to Rule 41(a)(1)(ii). *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381-82 (1994) ("Even when, as occurred here, the dismissal is pursuant to Rule 41(a)(1)(ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order . . . if the parties agree.").

without the court's participation and that the instant the parties filed their "order," the court lost all authority to take any action.

Second, and in any event, "it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (citing *United States v. Mine Workers*, 330 U.S. 258, 291 (1947)). A court's determination that it lacks jurisdiction is not null and void because it occurs after the parties have agreed between themselves that the court lacks jurisdiction or after the parties have attempted to divest the court of jurisdiction. *Cf. Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1055 (D.C. Cir. 1988) ("a court is responsible to determine its own jurisdiction regardless of the parties' views"). In short, Apotex and Bristol no more could stipulate that the court lacked jurisdiction or deprive the court of the authority to make that determination for itself than they could stipulate that the court had jurisdiction, and Judge Pauley's decision that jurisdiction was absent was not somehow itself void for lack of jurisdiction.

In these circumstances, it was logical and appropriate for the parties to submit their stipulation and proposed order to the court for approval. And it was equally appropriate for the court to decide to sign off on the proposed order. To be sure, Apotex could have dismissed its action without a stipulation or order of any kind under Rule 41(a)(1)(i). But the Stipulation and Order that Apotex and Bristol in fact filed was not simply a notice dismissing the case because Apotex no longer wished to pursue it or a stipulation dismissing it because the parties had resolved their differences. Rather, it was a Stipulation and Order that based the dismissal of the case upon an express finding of lack of subject-matter jurisdiction – a finding that, by its nature, could only be made by the court. *Cf. Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2002) ("In many cases, a stipulated settlement will contemplate actions that are not within the power of the litigants to perform, but rather lie within the

6

power of the district court ordering the settlement.").  It is telling, but not surprising given the special

nature of a determination as to jurisdiction, that none of the cases that Teva cites involved a stipulated

dismissal that purported to be based upon a finding that jurisdiction was lacking.  Even if Teva were

correct that the filing of a stipulated dismissal under Rule 41(a)(1)(ii) normally divests a court of

jurisdiction, the Apotex-Bristol court necessarily retained jurisdiction to determine whether it lacked

jurisdiction as the Stipulation and Order stated, and the court decided that jurisdictional question when

it approved and entered the Stipulation and Order.

 Because none of Teva's cited cases involved a dismissal for lack of jurisdiction (or in any way

related to the court-decision trigger provision or Hatch-Waxman), those cases provide no support for

Teva's position here.  Indeed, some of them undermine Teva's contention that the court's involvement

automatically ceases when a Rule 41(a)(1)(ii) stipulated dismissal is filed.[3]  The issue in other cases

was whether the parties had intended that the court retain jurisdiction following a stipulated dismissal

by incorporating the terms of the settlement into the dismissal order.[4]  Here, the Stipulation and Order

stated the terms of the parties' agreement – that there was no jurisdiction because Bristol had no

---

 [3] *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139-40 (2d Cir. 2004) (holding that district court retained its supervisory power over its own records and files, even though dismissal was pursuant to Rule 41(a)(1)(ii))*; Randall v. Merrill Lynch*, 820 F.2d 1317 (D.C. Cir. 1987) (affirming exercise of jurisdiction under Rule 60(b) to vacate a voluntary dismissal).

 [4] *Compare Roberson v. Giuliani*, 346 F.3d 75, 82-83 & n.9 (2d Cir. 2003) (yes), *with Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916-17 & n.2 (2d Cir. 1998) (no).  *See also Gambale,* 377 F.3d at 142 n.6 ("We note as a preliminary matter that the district court was not asked to, and did not, 'approve' or otherwise act with respect to the Settlement Agreement.")*.*

intention to sue Apotex – on its face, and the parties sought and obtained the court's approval of that finding.  Other cases cited by Teva are even farther afield.[5]

In short, Teva has marshaled no support for its belated attempt to distinguish *Teva* based on the technical form of the dismissal at issue here.  The D.C. Circuit spoke clearly in *Teva* on the question before this Court:  whether a dismissal of a declaratory-judgment action constitutes a triggering court decision when the patentee is estopped from enforcing its patent against the declaratory plaintiff.  Particularly given the clear teaching of *Teva* that the statutory purposes require a functional interpretation of section 355(j)(5)(B)(iv)(II), it would senselessly exalt form over substance to hold that the Apotex-Bristol dismissal was not a "decision of a court" because the court endorsed a Stipulation and Order finding that jurisdiction was lacking rather than, as in the Syntex-Teva suit, granted a motion to dismiss arguing that jurisdiction was lacking.

## III.    The Stipulation and Order Contains a "Holding" that Satisfies *Teva I* and *II*

Teva's argument that there was no "holding" because Judge Pauley's "endorsement of the stipulation did not constitute an adoption of its contents," Teva Suppl. Br. 7, should be rejected for the same reasons as Teva's "decision of a court" argument.  First, this argument is contrary to the facts.  The parties presented Judge Pauley with a document that stated that jurisdiction was lacking and asked him to endorse it, and he signed it under a "so ordered" directive.  To say that the court's endorsement did not constitute an adoption of the contents is to say either that Judge Pauley so-ordered the Stipulation and Order without reading it or that he so-ordered it despite disagreeing with its contents.

---

[5] *See Torres v. Walker*, 356 F.3d 238, 243-44 (2d Cir. 2004) (holding that a "so-ordered" stipulation of dismissal did not qualify as a "monetary judgment" for purposes of Prison Litigation Reform Act attorney's fees cap); *Oil, Chem. and Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 458-59 (D.C. Cir. 2002) (denying attorney's fees because dismissal order did not constitute a decision on the merits).

It is far more plausible, as well as respectful, to take the court's endorsement at face value as reflecting the court's approval of what it was endorsing.

Second, Teva's hypertechnical arguments about what constitutes a "holding" are contrary to *Teva I*, which made clear that the term "holding," no less than the term "decision," is "susceptible to interpretation" and that a "holding" need not adhere to any particular form.  182 F.3d at 1007-08.  Far from matters of form being the key to a "holding," the D.C. Circuit explained that "the significance" of a holding "often lies in its preclusive effect," *id*. at 1008, so that what matters for purposes of the court-decision trigger is not what form the "decision" or "holding" takes, but whether the patentee is estopped from enforcing its patent.  If the dismissal has such preclusive effect, as the dismissal of Apotex's action in this case does, no more is required.  Indeed, the Teva-Syntex dismissal order at issue in *Teva I* was no different in substance from the Stipulation and Order here.  In both cases, the court accepted the uncontested fact that the plaintiff then lacked a reasonable apprehension of suit and dismissed for lack of jurisdiction on that basis.[6]  There is no legally significant difference under *Teva* between Judge Legge's dismissal for lack of jurisdiction based on an uncontested fact and the Stipulation and Order here in which Judge Pauley ordered that the case be "dismissed, for lack of subject matter jurisdiction" based upon Bristol's representations.

Teva would have the triggering of exclusivity turn on such factors as whether a case is dismissed by stipulation or adjudication, whether the court or the parties drafted the language of the dismissal order, whether the court needed to sign the order, and under which sub-part of Rule 41 the

_____

[6] Contrary to Teva's contention, the Teva-Syntex court expressly declined to make a determination about the contested issue of whether Teva ever had had a reasonable apprehension of suit and limited its analysis to the undisputed conclusion that Teva at that time had no such apprehension.  *See Teva Pharm. USA, Inc. v. Syntex (USA) Inc.*, No. 98-02314, at 23-24 (dismissal order Aug. 14, 1998) (attached as Ex. A to Fed. Def. Mem. Opp. PI).

dismissal could have been effected.  Not only are such technical distinctions meaningless under *Teva*, but requiring FDA to draw such distinctions would exacerbate its already-burdensome task of determining when a dismissal triggers exclusivity under *Teva*'s estoppel-focused rule.  It is enough that *Teva* requires the agency to look behind and ascertain the basis for the dismissal order to determine whether the patentee is estopped.  The agency should not be required also to parse civil procedure doctrine in order to determine whether what appears on its face to be a court decision holding that jurisdiction is lacking because of representations by the patentee meets the additional technical criteria that Teva would have the Court impose.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction should be denied.

Of Counsel:                                        Respectfully submitted,

PAULA M. STANNARD                      PETER D. KEISLER
Acting General Counsel                      Assistant Attorney General

SHELDON T. BRADSHAW                JEFFREY S. BUCHOLTZ
Chief Counsel                                      Deputy Assistant Attorney General
Food and Drug Division

                                                              EUGENE M. THIROLF
ERIC M. BLUMBERG                          Director
Deputy Chief Counsel, Litigation        Office of Consumer Litigation

WENDY S. VICENTE                          _____/s/_____
Associate Chief Counsel                      ANDREW E. CLARK
U.S. Dept. of Health & Human Services    DRAKE CUTINI
Office of the General Counsel              Attorney
5600 Fishers Lane                              Office of Consumer Litigation
Rockville, MD 20857                          U.S. Department of Justice
(301) 827-7138                                  P.O. Box 386
                                                              Washington, D.C.  20044
                                                              Tel:  (202) 307-0067
October 11, 2005                              Fax:  (202) 514-8742