## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC. | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-1469 (JDB) |
| FOOD AND DRUG ADMINISTRATION, *et al.*, | ) |
| Defendants, | ) |
| APOTEX INC. | ) |
| Intervenor-Defendant. | ) |

## MEMORANDUM IN SUPPORT OF APOTEX INC.'S
## MOTION FOR INJUNCTIVE RELIEF PENDING APPEAL

### INTRODUCTION

On October 21, 2005, this Court entered a final Order and Memorandum Opinion finding the Food and Drug Administration's June 28, 2005 administrative ruling relating to 180-day exclusivity for pravastatin tablets arbitrary and capricious; overruling FDA's determination that a dismissal order entered in Apotex Inc.'s declaratory judgment action against Bristol-Myers Squibb ("BMS") triggered all eligible ANDA applicants' 180-day exclusivity for pravastatin; and awarding Teva Pharmaceuticals USA, Inc.'s motion for permanent injunctive relief. Apotex appealed the Court's judgment on October 24, 2005, and has moved to expedite consideration and resolution of the appeal in the D.C. Circuit. Apotex now respectfully seeks injunctive relief

under Rule 62, FED. R. CIV. P., staying this Court's October 21, 2005 judgment during the pendency of the appeal.[1]

This case involves an issue of statutory construction that was previously addressed by the D.C. Circuit in a case involving the same parties (*i.e.*, Teva, FDA, and Apotex) but a different drug (ticlopidine). In this case, Teva asked this Court to determine whether the stipulated dismissal of Apotex's declaratory judgment action against BMS for lack of subject matter jurisdiction qualifies as a "decision of a court" for purposes of triggering Teva's "180-day exclusivity" period for pravastatin tablets under 21 U.S.C. § 355(j)(5)(B)(iv)(II). Apotex and FDA argued that, under D.C. Circuit precedent, such a dismissal order triggers exclusivity if the patentee is estopped from enforcing its patent against the declaratory judgment plaintiff. *See Teva Pharms., USA, Inc. v. FDA*, 182 F.3d 1003 (D.C. Cir. 1999) ("*Teva I*"); *Teva Pharms., USA, Inc. v. FDA*, 254 F.3d 316, 2000 WL 1838303 (D.C. Cir. Nov. 15, 2000) ("*Teva III*"). Teva took a contrary position, arguing that, under Second Circuit law, the BMS-Apotex dismissal does not qualify as a "decision of a court" because the parties stipulated to the dismissal and the BMS-Apotex court did not retain jurisdiction to enforce the terms of BMS's representations not to sue. This Court sided with Teva and awarded Teva permanent injunctive relief prohibiting FDA from approving any subsequent pravastatin ANDA-filers until Teva's 180-day exclusivity period expires.

This Court's decision will delay Apotex's approval for at least 180 days after BMS's basic patent protection expires on April 20, 2006. This delay will cause Apotex substantial and irreparable harm unless stayed pending resolution of the appeal. Teva has

---

[1] On November 15, 2005, Apotex moved for a stay pending appeal in the D.C. Circuit on the grounds that seeking a stay from this Court would be impracticable given the Court's decision. On November 16, 2005, however, the Circuit court denied Apotex's motion on the basis that Apotex must first move for such relief in this Court. Apotex respectfully does so now.

publicly announced its intent to launch its pravastatin products in April 2006. If Teva launches during the appeal, Apotex will lose the chance to obtain any meaningful relief, even if successful on appeal. The D.C. Circuit previously has recognized that denying market access to a competitor based upon unwarranted market exclusivity awarded another company constitutes substantial harm. *See Teva I*, 182 F.3d at 1011 n.8; *see also* July 26, 2004 Stay Order, *Apotex Inc. v. FDA*, Appeal No. 04-5211, attached hereto at Rakoczy Decl. Ex. A.[2] Apotex also has raised a substantial, good faith challenge to the decision on appeal. Further, the public will benefit from a stay, while Teva will not be significantly harmed by the requested relief. Because the balance of hardships tips in favor of the requested injunctive relief, this Court should grant an injunction staying the Court's October 21, 2005 decision pending appeal. In view of the obvious time-constraints and the fact that Apotex may have to move in the D.C. Circuit in the event this Court denies Apotex relief, Apotex respectfully requests expedited briefing and consideration of this motion.

## STATUTORY BACKGROUND

This Court is familiar with the patent listing and abbreviated new drug application ("ANDA") provisions of Hatch-Waxman, therefore, this brief repeats only those statutory provisions relevant to the issue in dispute.

At issue here is the so-called "180-day exclusivity" period awarded to the first ANDA-filer to submit an ANDA containing a "paragraph IV certification" to any listed patent, indicating that the applicant seeks immediate approval of its ANDA because the listed patent is invalid and/or not infringed by the proposed ANDA product. The 180-day exclusivity provision

---

[2] All references to "Rakoczy Decl." are to the Declaration of William A. Rakoczy, submitted concurrently herewith.

prevents FDA from approving competing generic products until 180 days after the earlier of two so-called "triggering" events:

>   (I)    the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or
>
>   (II)   *the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed.*

21 U.S.C. § 355(j)(5)(B)(iv) (2002) (emphasis added).[3]  In other words, 180-day exclusivity is triggered by the earlier of:  (1) the first-filer's commercial marketing ("the commercial marketing trigger"); or (2) relevant to this case, a final, unappealable court decision that the patent is invalid or not infringed ("the court decision trigger").  *Id.*[4]

Because Congress never intended first-filers to delay all subsequent generic entrants indefinitely, courts have interpreted the court decision trigger broadly.  *See Minnesota Mining & Mfg. Co. v. Barr Labs., Inc.*, 289 F.3d 775, 786 (Fed. Cir. 2002) ("*3M*").  The court decision trigger includes *any* court decision on the patent that is the subject of the paragraph IV certification, regardless of whether the first-filer is involved in that particular litigation.  *See id.* at 780; *Teva I*, 182 F.3d at 1005 n.3.  And relevant here, it also can include the dismissal of a declaratory judgment action, brought by an ANDA applicant against the patentee, for lack of subject matter jurisdiction if the dismissal estops the patentee from subsequently asserting that the ANDA product infringes the patent-in-suit.  *See Teva I*, 182 F.3d at 1008.

---

[3]  The first paragraph IV ANDA for pravastatin was filed prior to the December 8, 2003 enactment of the 2003 Medicare Prescription Drug, Improvement, and Modernization Act ("MMA").  Accordingly, the cited statutory language governs in this case.

[4]  Under Title XI of the MMA, which in relevant part amended the FFDCA for all pending ANDAs, a triggering "court decision" is a final decision from which no appeal has been or can be taken.  *See* Pub. L. No. 108-173, § 1102(b)(3), 117 Stat. 2066, 2460 (2003).

## FACTUAL BACKGROUND

**A.    The Pravastatin ANDAs.**

As this Court is aware, this suit involves the prescription heart medication pravastatin sodium (brand-name Pravachol®), for which BMS listed several patents in FDA's Orange Book, including U.S. Patent No. 4,346,227 ("the '227 patent"), expiring April 20, 2006. At least eight companies, including Apotex and Teva, have filed generic pravastatin ANDAs agreeing not to market prior to expiration of the '227 patent, thus delaying their approval until at least April 20, 2006.  Teva filed the first pravastatin ANDA with a paragraph IV certification to one of BMS's other listed patents.  As the first paragraph IV ANDA-filer, Teva was eligible for 180-day exclusivity beginning the earlier of first commercial marketing or a triggering court decision.  Apotex, and at least six other companies, filed competing paragraph IV ANDAs that also would be eligible for approval in April 2006 but for this Court's October 21, 2005 decision.

BMS did not sue Apotex within the 45-day notice period of § 355(j)(5)(B)(iii).  In these circumstances, Hatch-Waxman, as amended by the MMA, expressly authorizes an ANDA applicant to file a declaratory judgment action against the patentee in order to obtain patent certainty that its generic drug does not infringe *and* to prevent approval delays by obtaining a triggering court decision.  *See* 21 U.S.C. § 355(j)(5)(C)(i) (2003); *see also* 35 U.S.C. § 271(e)(5) (2003).  As even Teva concedes, this is an "entirely legitimate [goal] that would serve the public interest."  (Rakoczy Decl. Ex. B at 4.)  According to Teva, "[t]riggering the first filer's exclusivity in this fashion before the first filer can go to market is entirely consistent with the Hatch-Waxman Act and plainly benefits consumers of prescription drugs."  (Rakoczy Decl. Ex. C at 21); *see also 3M*, 289 F.3d at 780; *Teva I*, 182 F.3d at 1011.

On April 15, 2004, Apotex sued BMS in New York seeking a judicial declaration of non-infringement and invalidity of BMS's pravastatin patents. In response, BMS moved to dismiss for lack of subject matter jurisdiction on the ground that Apotex lacked a reasonable apprehension of suit in light of BMS's binding representations, contained in filed court papers and a sworn declaration, that it would not sue Apotex for infringement. (*See* Rakoczy Decl. Ex. D, Tab F at 12.) While the district court did not rule on BMS's motion, the court signed and entered a stipulated order dismissing Apotex's declaratory judgment action for lack of subject matter jurisdiction based upon BMS's disavowal of any intent to sue. (*See id.* Ex. D, Tab A.) The BMS-Apotex dismissal order became final and unappealable on August 22, 2004.

**B.    FDA's Administrative Ruling.**

On June 28, 2005, FDA issued an administrative ruling confirming that the BMS-Apotex dismissal order triggered exclusivity for pravastatin; that such exclusivity expired no later than February 18, 2005; and that Apotex's ANDA would be eligible for approval on April 20, 2006. (Rakoczy Decl. Ex. E at 2.) FDA observed that the court dismissed Apotex's suit only after BMS represented that it did not intend to sue Apotex for infringement, and that the order, coupled with BMS's representations, "precludes a subsequent suit by BMS against Apotex for infringement of these patents." (*Id.* at 4-5.) FDA concluded that, "under the rule of *Teva*, this dismissal qualifies as a court decision under [§ 355(j)(5)(B)(iv)(II)], triggering the running of 180-day exclusivity . . . ." (*Id.* at 4.)

**C.    This Court's Decision Reversing FDA.**

On July 26, 2005, Teva sued FDA challenging the Agency's administrative ruling. Teva argued, among other things, that the BMS-Apotex dismissal order was distinguishable from *Teva I* because the BMS-Apotex order involved a stipulation between the

parties and, thus, did not constitute a "court decision." On October 21, 2005, this Court issued its decision adopting Teva's argument and granting Teva permanent injunctive relief, despite finding that the BMS-Apotex court had, in fact, signed the dismissal order and that "BMS [is precluded] from suing Apotex for infringement." (Mem. Op. at 26 n.6. (appended hereto).) Apotex's timely appeal followed.

## ARGUMENT

In deciding to award injunctive relief, courts in this Circuit consider the: (1) likelihood that the moving party will prevail on the merits; (2) prospect of irreparable injury to the moving party if relief is withheld; (3) possibility of harm to other parties if relief is granted; and (4) public interest. *United States v. Philip Morris Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003) (awarding stay and expediting appeal). "The court is not required to find that ultimate success by the movant is a mathematical probability . . . ." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). "[I]f the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Id.* at 844.

Apotex has satisfied the requirements for an injunction pending appeal in this case. Indeed, the D.C. Circuit previously has found that these factors were satisfied in an appeal involving a challenge to exclusivity awarded on another generic product (gabapentin). (*See Apotex Inc. v. FDA*, No. 04-5211). *Apotex* also involved the question of whether a competing ANDA-filer's 180-day exclusivity had been triggered and expired and, thus, created no barrier to Apotex's final approval. In that case, Apotex sought a stay pending resolution of the appeal,

which the D.C. Circuit granted. (*See* Rakoczy Decl. Ex. A.)  As before, Apotex has a strong

likelihood of prevailing on appeal; Apotex will be irreparably harmed if Teva is allowed a six-

month head start in the generic pravastatin market; Teva will suffer little to no harm if a stay is

granted; and the public will benefit from increased generic competition and a faithful application

of the laws.  Thus, the requirements for a stay pending appeal are met here.

### A.    Apotex Has A Strong Likelihood Of Success On Appeal.

This Court consolidated Teva's motion for preliminary injunction with a final

hearing on the merits under Rule 65(a)(2), FED. R. CIV. P., treating the motion as one for

summary judgment.   The D.C. Circuit reviews such rulings in APA cases *de novo*, without

deference to the district court, "as though the district court had not weighed in" and, "in effect,

review[s] directly the decision of the [agency]."  *Lozowski v. Mineta*, 292 F.3d 840, 845 (D.C.

Cir. 2002).  Under this standard, Apotex has a strong likelihood of success on appeal.

#### 1.    Under *Teva I*, the BMS-Apotex dismissal order—which admittedly estops BMS from suing—constitutes a triggering court decision.

Apotex respectfully submits that the holding in the D.C. Circuit's *Teva I* decision

controls the outcome of this case.   In *Teva I*, the court expressly held that dismissal of a

declaratory judgment action with preclusive effect constitutes a court decision for purposes of

triggering 180-day generic exclusivity.  *See Teva I*, 182 F.3d at 1008; *see also Teva Pharms.*

*USA, Inc. v. FDA*, No. Civ. A. 99-67 (CCK), 1999 WL 1042743, at *5-*6 (D.D.C. Aug. 19,

1999) ("*Teva II*"); *Teva III*, 2000 WL 1838303, at *1-*2.  In so holding, the court expressly

emphasized that the particular form of the decision is unimportant:  the decision need not

"explicitly hold the patent at issue [to be] 'invalid' or . . . 'not infringed' in order to trigger the

180-day period of market exclusivity."  *Teva I*, 182 F.3d at 1009.  Rather, "the significance . . .

lies in its preclusive effect," and the only "relevant consideration is the estoppel of the patent

holder from later claiming that the ANDA applicant is liable for patent infringement." *Id.* at 1008-09. In addition, as the court recognized, under controlling Federal Circuit law, such estoppel arises from the patentee's express disavowal of any intent to sue the ANDA applicant for infringement. *Id.*; *see also Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995) (holding that legal effect of a patentee's promise not to sue for infringement, stated in pleadings and recorded in court's order, forever estops patentee from asserting patent against other party).

Moreover, Teva itself previously agreed with this interpretation and statement of the law from *Teva I*. Specifically, according to Teva, the *Teva I* Court affirmatively "ruled that the . . . dismissal was indeed a court 'decision,' and that the decision was one 'holding' the Syntex patent to be non-infringed by and/or unenforceable against Teva, because that decision has the preclusive effect of preventing Syntex from ever suing Teva for infringement of the relevant patent." (Rakoczy Decl. Ex. F at 5.) As explained in more detail below, Teva is lawfully estopped from arguing otherwise now.

The BMS-Apotex dismissal order unquestionably satisfies the *Teva I* standard. A district court signed the order dismissing Apotex's declaratory judgment action for lack of subject matter jurisdiction based upon BMS's unequivocal representation that it would not sue Apotex for infringement. Indeed, this Court concluded that BMS's representation, *which was embodied in the actual order*, "preclude[s] BMS from suing Apotex for infringement." (Mem. Op. at 26 n.6.) The record amply supports this conclusion—BMS repeatedly and unambiguously represented that it "has no intention, *now or in the future*, of suing [Apotex] for infringement" and that it "*will not sue* Apotex for infringement of the '447, '589, and '985 patents." (Rakoczy Decl. Ex. D, Tab F at 12.) The dismissal order expressly was predicated upon BMS's explicit

disavowal of any intent to sue. (*Id.* Ex. D, Tab A at 3.) Thus, this Court correctly concluded that BMS is forever estopped from suing Apotex. No more is required for a court decision trigger under *Teva I*.

In Teva's own words, under controlling circuit precedent in *Teva I*, "FDA was obligated . . . to treat the . . . dismissal . . . as a 'court decision' that triggered the start of [the] 180-day 'exclusivity' period." (Rakoczy Decl. Ex. G at 2-3.) Yet, despite the preclusive nature of the BMS-Apotex dismissal order, Apotex respectfully submits that this Court impermissibly departed from *Teva I* by erroneously focusing on the procedural form and effect of a Rule 41(a)(1) dismissal. This was reversible error under *Teva I*, in which the D.C. Circuit expressly held that substance, and not form, controls. For these reasons alone, Apotex has raised a substantial challenge to the decision on appeal.

### 2. The October 21, 2005 decision elevates form over substance.

In granting Teva's motion, this Court fashioned its own test applying Second Circuit law, a test that not even the Syntex-Teva dismissal order would satisfy, rather than follow the test in *Teva I*. This Court's conclusion that "the BMS-Apotex dismissal is not a 'decision of a court' under the Hatch-Waxman Act" because "[a]lthough the dismissal order recites that it is based on BMS's pre-suit representations, it neither explicitly retains jurisdiction over the enforcement of those representations nor physically incorporates them" (Mem. Op. at 23, 22), elevates form over substance. This is precisely what the D.C. Circuit refused to do in *Teva I*.

Whether an order dismissing a case for lack of subject matter jurisdiction retains jurisdiction for the court to enforce its terms is a meaningless distinction that has nothing to do with the court decision trigger. No party below claimed that BMS violated any agreement with Apotex requiring court intervention to enforce the terms of the stipulation or any underlying

settlement agreement, nor did any party make claims necessitating the BMS-Apotex court's continued jurisdiction over the case. In fact, the BMS-Apotex court could not—any more than the prior Syntex-Teva court—"retain jurisdiction" over a case for which there is no subject matter jurisdiction. None of the cases cited in this Court's memorandum opinion (*e.g.*, *Hester*, *Torres*, *Kokkonen*, and *Buckhannon*) hold otherwise, much less involve a dismissal for lack of subject matter jurisdiction. As such, those cases simply are not relevant here. If they were, the Syntex-Teva dismissal order in *Teva I* would not have passed muster either since it, too, was based on a lack of subject matter jurisdiction. (*See* Rakoczy Decl. Ex. H.) Nor was there any settlement agreement to enforce, or any retention of jurisdiction by the Syntex-Teva court.

In *Teva I*, the D.C. Circuit found procedural labels and distinctions unhelpful, acknowledging that "a 'decision' can take several forms" and the "term 'holding' . . . is also susceptible to interpretation," and instead focused "exclusively and necessarily on Syntex's declaration that Teva's product would not infringe the patent and its express disavowal of an intent to sue." 182 F.3d at 1007-08. The court found that the Syntex-Teva dismissal for lack of subject matter jurisdiction triggered Apotex's exclusivity for ticlopidine because the dismissal precluded Syntex from later suing Teva over its ticlopidine patents. *See id.* at 1008-09. The court did *not* condition the dismissal's preclusive effect, and whether it was a "decision" or "holding" of a court, on whether the court retained jurisdiction to enforce the terms of Syntex's declaration, or whether such terms were physically incorporated into the order. Indeed, such issues played no role in the court's analysis. "From the perspective of the California court, then, Syntex's declaration and conduct eliminated the need for a declaratory judgment because Syntex would be estopped from challenging Teva's marketing of its generic drug on the ground of patent infringement." *Id.* at 1008. So, too, here. It is the preclusive effect of BMS's conduct,

embodied in the order and other court documents (which even this Court agreed have preclusive effect), that matters, and not the form or phrasing of the dismissal order or the BMS-Apotex court's retention of jurisdiction.

    **3.**  **The purported distinctions between the BMS-Apotex dismissal and Syntex-Teva dismissal are also irrelevant under *Teva I*.**

    The fact that the BMS-Apotex dismissal order was a "consensual stipulation" has no bearing on its preclusive nature, or its ability to act as a court decision trigger. No material distinction exists between the BMS-Apotex and Syntex-Teva dismissals.

    First, regardless of whether a Rule 41(a)(1)(ii) dismissal requires the court's approval or not, the fact is, the court *did* sign and enter the BMS-Apotex dismissal order. The order thus qualifies as a "finding" or "decision" of a court for purposes of the court-decision trigger. (*See* Rakoczy Decl. Ex. D, Tab A.) *Hester Industries, Inc. v. Tyson Foods, Inc.*, 160 F.3d 911 (2d Cir. 1998), does not hold differently. *Hester*, as this Court acknowledged, stands for the unremarkable proposition that a court lacks authority to condition a Rule 41(a)(1) dismissal on compliance with the underlying settlement agreement. *See* 160 F.3d at 916; *see also* Mem. Op. at 19-20. *Hester* does not address whether a Rule 41 dismissal signed by the district court is or is not a court "decision" for purposes of § 355(j)(5)(B)(iv)(II).

    Second, the BMS-Apotex dismissal order was not a Rule 41(a)(1) voluntary dismissal, but rather a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction. The BMS-Apotex dismissal order does not mention Rule 41(a)(1) or otherwise imply that the dismissal was being effected under that Rule. The parties clearly sought to have the case dismissed by the court for lack of subject matter jurisdiction based on BMS's representation that it would not sue Apotex, a representation incorporated and embodied within the four corners of the order signed by the court. (*See* Rakoczy Decl. Ex. D, Tab A.)

Third, the BMS-Apotex dismissal order, unlike a Rule 41(a)(1) voluntary dismissal, required the approval of the district court because it was for lack of subject matter jurisdiction, which only the court can ultimately determine. As FDA correctly observed, "parties can't stipulate to a lack of subject matter jurisdiction any more than they can stipulate to the existence of subject matter jurisdiction." (Rakoczy Decl. Ex. I at 78.)[5]  Given its jurisdictional nature, then, the BMS-Apotex dismissal order required that court's deliberate and thoughtful approval.

Lastly, whether or not the "district court was divested of jurisdiction at the very moment that the stipulation, containing the signatures of both BMS and Apotex, was filed," (Mem. Op. at 25), has no bearing on whether the BMS-Apotex court made a "predicate finding of fact" prior to its entry of the dismissal order. Indeed, the same could be said of the Syntex-Teva dismissal order—the court there was divested of all jurisdiction when Syntex disavowed any intent to sue Teva for infringement. The Syntex-Teva court acknowledged as much during oral argument. (*See* Rakoczy Decl. Ex. J at 22-25.) But that does not mean the court lacked jurisdiction to enter an order determining its own jurisdiction. "[A] court is responsible to determine its own jurisdiction regardless of the parties' views." *Mondy*, 845 F.2d at 1055. Just as the Syntex-Teva court had jurisdiction to enter an order dismissing the case for lack of subject matter jurisdiction, so, too, did the BMS-Apotex court. That is precisely what it did by signing and endorsing the dismissal order based on BMS's representation that it would not sue Apotex.

In the end, no meaningful difference exists between the Syntex-Teva and BMS-Apotex dismissal orders. Both were signed decisions of a court dismissing the actions for lack of subject

---

[5] *See also Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1055 (D.C. Cir. 1988) ("[A] court is responsible to determine its own jurisdiction regardless of the parties' views."); 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 at 204 (2d ed. 1990) ("Since an objection to subject matter jurisdiction goes to the power of the court to hear and decide the case, parties may not create or destroy jurisdiction by agreement or by consent.").

matter jurisdiction. If anything, the BMS-Apotex order is even more explicit because, unlike the Syntex-Teva order, it expressly states and recites BMS's disavowal of any intent to sue that gives rise to its preclusive effect.

> ### 4. The injunctive relief Apotex seeks will thwart patentees' attempts to manipulate the system, and further the purpose of the triggering court decision provision.

The injunctive relief Apotex seeks will thwart patentees' manipulation of the system to delay generic competition. As the D.C. Circuit observed in *Teva I*, treating a dismissal with preclusive effect as a triggering event serves "the purpose of the triggering 'court decision' provision" because it prevents "the patent holder [from] manipulat[ing] the system in order to block or delay generic competition by stating that the patent holder will not enforce its patent against the Paragraph IV challenger." *Teva I*, 182 F.3d at 1009. FDA similarly has warned that, "[i]f an innovator could obtain dismissal of an ANDA applicant's declaratory judgment action merely by stating that the proposed product would not infringe its patents, it could prevent the issuance of a triggering court decision, even if one or more generic companies were ready, willing, and able to manufacture." (Rakoczy Decl. Ex. K at 9.) Congress voiced the same concerns during the deliberations over the MMA. *See* 149 Cong. Rec. S15881, S15885 (Nov. 25, 2003) ("when generic applicants are blocked by a first generic applicant's 180-day exclusivity, the brand drug company could choose not to sue those other generic applicants so as to delay a final court decision that could trigger the failure to market provision and force the first generic to market").

If a stay pending appeal is not granted, Apotex, which is willing to market pravastatin once the basic patent expires free and clear of BMS's other patents, will be held off

the market for at least an additional 180 days. (McIntire Decl. ¶ 12.)[6]  This result cannot be

squared with *Teva I* or Hatch-Waxman's purpose.

    **5.**    **The principles of judicial estoppel prevent Teva from taking positions contrary to those on which it prevailed in *Teva I*.**

        In its memorandum opinion, this Court reasoned that "all the parties in this case

have, at various times, taken legal positions in earlier cases that are inconsistent with the ones

they advance here," "[b]ut no party has been inconsistent in *this* case." (Mem. Op. at 11 n.4.)

But, Apotex submits that this is not the standard:

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in
> maintaining that position, he may not thereafter, simply because his interests have
> changed, assume a contrary position, especially if it be to the prejudice of the
> party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The facts here fall into this pattern. Teva,

unlike Apotex, prevailed in *Teva I*—a case involving the same issue and parties—and therefore

cannot lawfully change positions now.[7]

        In *Teva I*, Teva asked for precisely the same interpretation of the court decision

trigger in § 355(j)(5)(B)(iv)(II) that it sought to avoid here.  Teva urged the D.C. Circuit to

require FDA to treat the dismissal of a declaratory judgment action for lack of subject matter

jurisdiction with preclusive effect as a triggering court decision under § 355(j)(5)(B)(iv)(II).

Teva argued that "[b]ecause the parties are estopped from re-litigating the issue of whether Teva

has committed any infringement, the [dismissal] . . . should be accorded full legal force and

effect for purposes of the Court Decision Trigger." (Rakoczy Decl. Ex. M at 22.)  The court

agreed. *See Teva I*, 182 F.3d at 1008-12.  On remand, Teva argued that the D.C. Circuit "ruled

---

[6] All references to "McIntire Decl." are to the Declaration of Tammy L. McIntire, submitted in support of Apotex's Emergency Motion for a Stay Pending Appeal filed with the D.C. Circuit, and attached to the Declaration of William A. Rakoczy at Exhibit L.

[7] TorPharm, an intervenor-defendant in *Teva I*, is now known as Apotex Inc.

that the . . . dismissal was indeed a court 'decision,' and that the decision was one 'holding' the Syntex patent to be non-infringed by and/or unenforceable against Teva, because that decision has the preclusive effect of preventing Syntex from ever suing Teva for infringement of the patent." (Rakoczy Decl. Ex. F at 5.) The district court agreed. *See Teva II*, 1999 WL 1042743, at *5 ("The significance of a triggering court decision lies in its estoppel effect."). And when back before the Circuit court, Teva argued that "the only permissible interpretation" of the court decision trigger is one that includes dismissal of a declaratory judgment action for lack of subject matter jurisdiction because, otherwise, patentees would be able to manipulate exclusivity to block generic competition. (Rakoczy Decl. Ex. N at 7.) According to Teva:

> [t]he . . . dismissal clearly renders the patent unenforceable against Teva under the doctrine of estoppel and controlling federal case law. Accordingly, as this Court held in *Teva I*, the . . . dismissal constitutes a 'holding' of unenforceability of the patent for purposes of triggering [exclusivity].

(*Id.* at 25 (internal citations omitted)). Again, Teva won. *Teva III*, 2000 WL 1838303, at *1.

But in this case, Teva repeatedly took precisely the opposite position. If ever a case for judicial estoppel existed, this case is it. The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749 (quotations and citation omitted); *see also In re Smith*, 285 F.3d 6, 9 (D.C. Cir. 2002) (concluding that, under the doctrine of judicial estoppel, the government would be bound in a later proceeding by the legal positions taken in the instant case). Having succeeded in *Teva I*, Teva should have been judicially estopped from arguing that a dismissal of a declaratory judgment action with preclusive effect is not a court decision trigger.

**B.    Apotex Will Suffer Substantial Irreparable Harm If Injunctive Relief Is Withheld.**

If this Court does not grant a stay, Teva will be free to launch its pravastatin products with an unlawful period of 180-day exclusivity and, as a result, gain a strangle-hold over the market. Indeed, Teva has publicly announced its intent to launch immediately upon expiration of the '227 patent in April 2006. (Rakoczy Decl. Ex. O.) Once Teva launches, it has the ability to tie up distribution channels and access to customers; enter into long-term sales agreements; increase sales across all product lines; and retain greater market share in the long-term. (McIntire Decl. ¶¶ 4, 15, 19.) Apotex, on the other hand, will lose the opportunity to effectively compete in the pravastatin market. (*Id.* ¶¶ 17-19.)

Apotex conservatively estimates that an unwarranted 180-day head start for Teva would result in over $12.5 million in lost sales for Apotex in the first year alone. (McIntire Decl. ¶¶ 17, 20-21.) Even if Apotex were to prevail on appeal, the harm will have been done—Apotex will never recover those lost revenues, profits, and market share. (*Id.* ¶¶ 14, 18.) In addition, Apotex would suffer unquantifiable, intangible losses for pravastatin and other product lines. Apotex, for example, would lose critical access to major customers and the opportunity for long-term contracts. (*Id.* ¶¶ 5, 19.) These losses, in turn, would adversely affect Apotex's sales opportunities across all of its product lines. (*Id.* ¶¶ 5, 20.) Such lost opportunities will continue to harm Apotex long after Teva's exclusivity expires. (*Id.* ¶¶ 6, 19-20.) Such losses are irreparable in every sense of the term. *See Teva*, 182 F.3d at 1011 n.8 (D.C. Cir. 1999). Indeed, the D.C. Circuit so found when granting a stay in the *Apotex* appeal. (*See* Rakoczy Decl. Ex. A.)

In *Apotex*, appellant Apotex sought a stay, arguing that it would suffer irreparable harm absent such relief. (*See* Rakoczy Decl. Ex. P at 18-19.) That appeal, too, involved the question of whether a competing ANDA-filer's 180-day exclusivity had been triggered and

expired and, thus, provided no barrier to Apotex's final approval. Consequently, Apotex made the same irreparable harm arguments in its stay motion in that appeal as it does here, now. (*Id.*) The D.C. Circuit found that Apotex had established the requisite irreparable harm and, thus, granted the requested stay. (*See* Rakoczy Decl. Ex. A.)[8] This Court should do the same here.

### C.    Teva Will Not Be Harmed By A Stay.

If a stay is granted, Teva will suffer no appreciable harm. To begin, Teva's 180-day exclusivity for pravastatin has expired, so it will lose nothing to which it is lawfully entitled. Moreover, Teva will still be able to market its pravastatin products once its ANDA is finally approved. A stay will not affect Teva's eligibility for final FDA approval, or the timing of such approval, in any way. Thus, absent injunctive relief, Apotex stands to lose millions of dollars, goodwill with its customers, and other significant tangible and intangible benefits, while Teva stands to lose little to nothing if a stay is granted. Accordingly, the balance of harms tips decidedly in favor of granting Apotex's request for injunctive relief. *See Mova*, 140 F.3d at 1066.

### D.    The Public Interest Favors Injunctive Relief.

Finally, the public interest is best served by a stay pending appeal. First, the public's interest lies in the "faithful application of the laws", *see Mova*, 140 F.3d at 1066, which, here, is served by applying the holding of *Teva I* to the facts of this case, and upholding FDA's June 28, 2005 administrative ruling finding that Teva's exclusivity for pravastatin has expired. Second, a stay comports with the purpose of Hatch-Waxman, which is to "get generic drugs into

---

[8]  On September 16, 2004, the July 26, 2004 stay order was vacated based upon changed circumstances not present in this case. (*See* September 16, 2004 Order, *Apotex Inc. v. FDA*, No. 04-5211.) Those circumstances related mainly to the harm that the appellee might suffer in the face of a continued injunction and were unique to gabapentin. They included the launch of a non-AB rated generic gabapentin tablet product and the brand-name company's upcoming approval of a new competing brand product, neither of which are concerns here. Thus, the subsequent vacatur of the earlier stay order has no bearing on the propriety of the stay that Apotex now seeks.

the hands of patients at reasonable prices--fast." *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991). Granting a stay undoubtedly furthers that goal because it will increase the public's access to lower-priced generic pravastatin products. Indeed, even Teva concedes that triggering the first-filer's exclusivity in order to allow for increased generic competition is an "entirely legitimate [goal] that would serve the public interest" (Rakoczy Decl. Ex. B at 4) and "plainly benefits consumers of prescription drugs" (*id.* Ex. C at 21). A stay in this case will allow Apotex and other pravastatin ANDA applicants to proceed to market with Teva on April 20, 2006, thereby providing increased generic competition for pravastatin and benefiting the consuming public. Teva cannot seriously argue otherwise.

## CONCLUSION

For these reasons, Apotex respectfully prays for injunctive relief staying this Court's October 21, 2005 final Order pending resolution of the appeal. In view of the exigent circumstances, Apotex also respectfully requests expedited briefing and consideration of this motion.

Dated: November 18, 2005

Respectfully submitted,

APOTEX INC.

William A. Rakoczy, D.C. Bar. No. 489082
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
Tel: (312) 222-6301
Fax: (312) 222-6321

Arthur Y. Tsien, D.C. Bar. No. 411579
OLSSON, FRANK AND WEEDA, P.C.
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036-2220
Tel: (202) 789-1212
Fax: (202) 234-3550

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik (admitted *pro hac vice*)
Lara E. Monroe-Sampson
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
Tel:  (312) 222-6301
Fax:  (312) 222-6321

*Counsel for Apotex Inc.*

## CERTIFICATE OF SERVICE

I, William A. Rakoczy, hereby certify that I caused the foregoing MEMORANDUM IN SUPPORT OF APOTEX INC.'S MOTION FOR INJUNCTIVE RELIEF PENDING APPEAL to be served via hand-delivery upon:

> Jay P. Lefkowitz
> John C. O'Quinn
> Steven A. Engel
> KIRKLAND & ELLIS LLP
> 655 15th Street NW, Suite 1200
> Washington, D.C. 20005
>
> *Counsel for Teva Pharmaceuticals USA, Inc.*
>
> Andrew E. Clark
> Office of Consumer Litigation
> U.S. DEPARTMENT OF JUSTICE
> P.O. Box 386
> Washington, D.C. 20044
>
> *Counsel for Food and Drug Administration,*
> *Michael O. Leavitt, and Lester M. Crawford*
>
> Theodore C. Whitehouse
> WILLKIE FARR & GALLAGHER LLP
> 1875 K Street, NW
> Washington, D.C.  20006
>
> *Counsel for the Generic Pharmaceutical Association*

This 18th day of November, 2005.

William A. Rakoczy, D.C. Bar No. 489082
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Apotex Inc.*