*Teva Pharmaceuticals USA, Inc. v. FDA*, Case No. 05-1469 (D.D.C.) (JDB)

# EXHIBIT C

# Declaration of William A. Rakoczy

*In support of Apotex Inc.'s Motion For
Injunctive Relief Pending Appeal*

No. 04-1186

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

TEVA PHARMACEUTICALS USA, INC.,

Plaintiff-Appellant,

v.

PFIZER, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the District of Massachusetts
In Case No. 03-CV-10167. Judge Richard G. Stearns.

BRIEF OF PLAINTIFF-APPELLANT,
TEVA PHARMACEUTICALS USA, INC.

Henry C. Dinger, P.C.
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Steven J. Lee
Thomas J. Meloro
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 415-7200

*Counsel for Teva Pharmaceuticals
USA, Inc., Plaintiff-Appellant*

March 22, 2004

i

such a generic company from competing at least for a period of six months. To understand why this is the case, it is necessary to review the Hatch-Waxman Act's "exclusivity" provisions.

D.  *The First ANDA Filer's 180-Day "Exclusivity" Period*

The first ANDA applicant to make a Paragraph IV certification with respect to a listed patent (the "first filer") receives a 180-day period of "exclusivity," free from competition from other generic companies. The FDA is statutorily precluded from approving any subsequently filed ANDA for the drug until this exclusivity period runs. 21 U.S.C. §355(j)(5)(B)(iv). The obvious purpose for this exclusivity is to encourage generic companies to undertake the expense of challenging the validity of listed patents and/or demonstrating an effective means for "inventing around" those patents. Without this exclusivity, subsequent ANDA filers could obtain a "free ride" from the first filer's investment in successful patent litigation. *See Engelberg, supra* note 6, at 423-24.

Under the 1984 Act, this exclusivity period was triggered either by the first filer's commercial marketing of its generic drug or by a court decision holding the patent not infringed or invalid. Old §355(j)(5)(B)(iv).[7] Such a

---

[7] Under the Medicare Amendments to the Act, commercial marketing by the first ANDA filer is now the only event that triggers exclusivity. New §355(j)(5)(B)(iv). However, if the first filer fails to commence

*(continued on next page)*

holding triggered the commencement of the first filer's exclusivity whether or not the decision was obtained by the first filer. *Minnesota Mining & Mfg. Co. v. Barr Labs.*, 289 F.3d 775, 780 (Fed. Cir. 2002) ("*3M*"). Indeed, exclusivity is triggered by a patentee's formal acknowledgment of non-infringement. *Teva Pharms., USA, Inc. v. FDA*, 182 F.3d 1003, 1007-12 (D.C. Cir. 1999). In other words, if the patentee sued a subsequent filer for infringing the listed patent, a holding for the subsequent filer establishing invalidity or non-infringement would trigger the first filer's exclusivity even though the first filer is not in a position to take advantage of it by commencing commercial marketing (either because it has not secured FDA approval or for some other reason).

Triggering the first filer's exclusivity in this fashion before the first filer can go to market is entirely consistent with the Hatch-Waxman Act and plainly benefits consumers of prescription drugs. Where the subsequent filer has itself made the investment in litigation necessary to establish invalidity

---

commercial marketing within 75 days of a court determination of invalidity or non-infringement (obtained at the behest of either the first filer or any subsequent ANDA applicant), the first filer actually forfeits its exclusivity. New §355(j)(5)(D)(i)(I), (ii). Accordingly, under the amendments litigation success by a subsequent filer can result in the loss of the first filer's exclusivity altogether and not simply the earlier triggering of exclusivity. The new forfeiture provisions which have a different effective date from the declaratory judgment provisions, do not apply here because Teva's ANDA was filed before the Medicare Amendments were enacted. Medicare Amendments §1102(b).

or non-infringement, there can be no question of the subsequent filer's "free riding" on the first filer's investment. It would be "contrary to the very purpose of the Act to allow the first filer to block market entry of other generic manufacturers because the first filer is involved in protracted litigation." *3M*, 289 F.3d at 780 (citation omitted). Blocking the subsequent filer would be particularly inappropriate here since the first filer, IVAX, has not only failed to establish invalidity or non-infringement — and thereby bestow a benefit on subsequent ANDA filers — but actually abandoned its attempt to do so by settling with Pfizer.

E.   *The Problem of "Parking" Exclusivity*

In the circumstances presented here, it is in the patentee's economic interest to avoid triggering the first ANDA filer's exclusivity period before the first filer is in a position to go to market. If Pfizer can avoid triggering IVAX's exclusivity as the first filer until the expiration of the '518 patent in 2006, then it can expect to enjoy six months selling Zoloft® with only one (royalty-paying) generic competitor, a duopoly instead of full generic competition.[8] But if IVAX's exclusivity is triggered before the expiration of the '518 patent — for example, by a judgment that the '699 patent is invalid

---

[8]   Pfizer acknowledged that "an innovator company like Pfizer makes more money during the 180-day period than it does after a full generic competition with many competitors." (A505)