*Teva Pharmaceuticals USA, Inc. v. FDA*, Case No. 05-1469 (D.D.C.) (JDB)

# EXHIBIT K

# Declaration of William A. Rakoczy

*In support of Apotex Inc.'s Motion For
Injunctive Relief Pending Appeal*



DEPARTMENT OF HEALTH & HUMAN SERVICES                Public Health Service

---

Food and Drug Administration
Rockville MD 20857

MAY 21 2003

Terry G. Mahn, Esq.
Fish & Richardson, P.C.
1425 K Street, N.W.
Washington, DC 20005

Tom Scarlett, Esq.
Hyman, Phleps & McNamara, P.C.
700 Thirteenth St., N.W.
Washington, D.C. 20005

Peter Safir, Esq.
Covington & Burling
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Dear Messrs. Mahn, Scarlett, and Safir:

Dan Troy has asked me to respond to the multiple letters you sent to him and his staff between June 6, 2002, and April 17, 2003, regarding the effect of decisions in court cases related to U.S. Patents 6,194,415 ('415 patent), 6,248,741 ('741 patent), and 6,465,464 ('464 patent) listed in *Approved Drug Products with Therapeutic Equivalence Evaluations* (the Orange Book) for Allergan's Alphagan (brimonidine tartrate) Ophthalmic Solution 0.2%. Bausch & Lomb and Alcon have abbreviated new drug applications pending which reference Alphagan.

Allergan requests that the agency not treat the May 8, 2002, June 4, 2002, and March 20, 2003, rulings of the United States District Court for the Central District of California in Allergan's patent litigation as "court decisions" that would end the 30-month stays of approval for generic versions of Allergan's brimonidine tartrate ("brimonidine") under section 505(j)(5)(B)(iii)(I) of the Federal Food, Drug and Cosmetic Act (the Act). Moreover, Allergan requests that FDA not recognize the March 28, 2003, affirmance by the Federal Circuit of the 2002 district court decisions unless and until the mandate in that case issues.[1]

Bausch & Lomb and Alcon request that FDA recognize the May 8, 2002, June 4, 2002, and March 20, 2003, decisions as court decisions that will permit approval of their ANDAs and trigger the running of applicable 180-day exclusivity.

---

[1] In light of the uncertain status of the appellate decision, and because our inquiry in this matter is focused on the nature of the district court decisions, FDA has conducted its analysis of the district court decisions without reference to any characterization of those decisions in the March 28, 2003, Federal Circuit opinion.

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

I.  Background

FDA approved Allergan's new drug application ("NDA") to manufacture and sell brimonidine under the trade name Alphagan in 1996. Alphagan is approved to treat glaucoma through reduction in intraocular pressure. Allergan did not have a patent for the chemical brimonidine. See *Allergan, Inc. v. Alcon Laboratories, Inc.*, 200 F. Supp. 2d 1219, 1228 (C.D. Cal. 2002). According to the district court opinion, Allergan applied for two method of use patents for treating ocular neural injury. *Id.* at 1223. Allergan initially claimed the use of brimonidine to reduce intraocular pressure, but the patent examiner rejected those claims as being obvious. *Id.* Allergan then limited the claims to a method of using brimonidine as a neuroprotective agent to treat glaucoma, and the patents were granted (the "'415 and '741 patents"). *Id.* Allergan submitted these two patents for listing in the FDA Orange Book. *Id.*[2]

When Alcon filed an abbreviated new drug application ("ANDA") seeking approval to sell generic brimonidine to reduce intraocular pressure, it certified under section 505(j)(2)(A)(vii)(IV)("paragraph IV certification") of the Act that Allergan's listed patents (the '415 and '741 patents) were invalid or would not be infringed by Alcon's ANDA. Alcon provided notice of the paragraph IV certification to Allergan under section 505(j)(2)(B)(i). Allergan then sued Alcon for patent infringement in the U.S. District Court for the Central District of California.

Bausch & Lomb also filed an ANDA for brimonidine with paragraph IV certifications to the '415 and '741 patents. Allergan also sued Bausch & Lomb in the Central District of California. Because Allergan sued both Alcon and Bausch & Lomb within the required 45 day period, the 30-month stay of FDA's approval of the ANDAs under section 505(j)(5)(B)(iii) went into effect.

In its patent litigation, Allergan alleged that Alcon and Bausch & Lomb infringed Allergan's '415 and '741 patents under 35 U.S.C. § 271(e)(2)(A) when they each filed an ANDA for brimonidine. It also alleged that Alcon and Bausch & Lomb, in filing their respective ANDAs, induced infringement of Allergan's patents by doctors who might prescribe generic brimonidine off-label for the patented use.

On May 8, 2002, the court granted summary judgment to Alcon. *Allergan, Inc. v. Alcon Laboratories, Inc.*, 200 F. Supp. 2d 1219 (C.D. Cal. 2002)("*Allergan I*"). Shortly thereafter, in a June 4, 2002, Order, the court granted summary judgment to Bausch & Lomb, referencing its May 8, 2002, Order granting summary judgment to Alcon.

---

[2] FDA does not independently scrutinize patents and therefore expresses no opinion on whether the patents at issue were properly listed in the Orange Book. FDA notes, however, that 21 C.F.R. § 314.53(b) states that "for patents that claim a method of use, the applicant shall submit information only on those patents that claim indications or other conditions of use of a pending or approved application."

2

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

In the May 8, 2002, decision, the court explained that Allergan did not own a patent for the chemical brimonidine and thus the drug itself was in the public domain. Instead, Allergan owned two patents claiming a method of using brimonidine as a *neuroprotective agent*. Alcon was seeking approval to market brimonidine for one indication, *reducing intraocular pressure*. The court held that, as a matter of law, a holder of a patent for a method of using a drug in the public domain cannot sue an ANDA applicant based solely on the filing of the ANDA. *Id.* at 1225-27. Further, because the ANDA sought approval for a use not covered by the patents, there was no direct infringement. *Id.* at 1230. Allergan had argued that Alcon would induce infringement because doctors would prescribe Alcon's product for neuroprotective use even though Alcon's product would not be labeled or approved for that use. The district court rejected this argument at too speculative because there was yet to be any third-party infringement. *Id.* at 1230-31.

On June 12, 2002, the district court entered final judgment and certified its decisions for appeal to the Federal Circuit under Fed. R. Civ. P. 54(b). On March 28, 2003, the Federal Circuit affirmed the decision of the district court.[3] The mandate in that case has not issued, as the court is considering an April 7, 2003, petition by Allergan for rehearing *en banc*.

After the district court decision on the '415 and '741 patents was issued and while the appeal was pending, Allergan listed another patent covering the use of brimonidine for neuroprotection (the "'464 patent"). This patent was also the subject of paragraph IV certifications by both Alcon and Bausch & Lomb. Allergan filed patent infringement litigation in the U.S. District Court for the District of Delaware. Alcon and Bausch & Lomb filed a declaratory judgment action in the U.S. District Court for the Central District of California. The Delaware court granted the ANDA applicants' motion to transfer the patent infringement case to California. On March 20, 2003, the California court entered an Order and decision finding that the '464 patent was not infringed under either 35 U.S.C. 271(e)(2) or 271(b) for the same reasons as in *Allergan I. Alcon Labs., Inc. v. Allergan, Inc.*, 02-1192 (C.D. Cal. March 20, 2003) ("*Allergan II*").

Allergan contends that neither of the California district court decisions on the listed Alphagan patents ("*Allergan I*" or "*Allergan II*") is a court decision finding the patents invalid, unenforceable, or not infringed. Alcon and Bausch & Lomb both argue that each of these district court decisions was a decision finding non-infringement and thus they permit ANDA approval and mark the beginning of 180-day exclusivity under section 505(j)(2)(B)(iv)(II) of the Act.

II.  Whether District Court Decisions Can Be "Court Decisions": The March 2000 Guidance.

The first issue is as follows: Assuming for the moment that the district court decisions found the patents invalid, or not infringed, would the district court decisions (as

---

[3] *Allergan, Inc. v. Alcon Labs., Inc.*, 324 F.3d 1322 (Fed. Cir. 2003).

3

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

opposed to appellate court decisions) constitute "court decisions" for the purposes of permitting ANDA approval and triggering 180-day exclusivity under sections 505(j)(5)(B)(iii)(I) and (j)(5)(B)(iv)(II) of the Act? Section 505(j)(5)(B)(iii)(I) provides that approval may be granted before the expiration of the 30 month stay "if before the expiration of such period the court decides that such patent is invalid or not infringed, the approval shall be made effective *on the date of the court decision*" (emphasis added).

FDA's regulations used to provide that "court decision" meant essentially an appellate decision or district court decision that is not appealed. Specifically, FDA's original implementing regulations governing ANDA approvals and 180-day exclusivity stated that the relevant court decision finding the patent invalid, unenforceable or not infringed was a decision of a court "that enters final judgment from which no appeal can be or has been taken." 21 CFR 314.107(e)(1999).

In a series of cases, this interpretation was successfully challenged. Three district courts found that a district court decision finding a patent invalid, unenforceable or not infringed is a "court decision" permitting ANDA approval and beginning 180-day exclusivity.[4]

FDA announced its intention to change its construction of the statute to no longer require that a court decision be "final" to trigger exclusivity in a March 2000 *Guidance for Industry: Court Decisions, ANDA Approvals and the Hatch/Waxman Amendments to the Federal Food Drug and Cosmetic Act* ("March 2000 Guidance"). That guidance sets forth the agency's interpretation of the statutory "court decision" trigger for determining which type of court decision (district court or appellate) will lift the 30 month stay and begin any applicable 180-day exclusivity. Under the new interpretation, the Guidance explains that the term "court" means "the first court that renders a decision finding the patent at issue invalid, unenforceable, or not infringed."[5] FDA also explained it would apply that new interpretation only to ANDAs referencing listed drugs for which the first ANDA was filed after March 2000. In establishing that policy, FDA intended to create a bright line that would provide certainty and fair notice to regulated industry.

Because the first brimonidine ANDA was filed *after* March 2000, this new definition applies. Thus, a district court decision may be a "court decision" provided the other statutory requirements are met.

---

[4] *See TorPharm v. Shalala*, No. 97-1925, 1997 U.S. Dist. LEXIS 21983 (D.D.C. Sep. 15, 1997), *appeal withdrawn and remanded*, 1998 U.S. App. LEXIS 4681 (D.C. Cir. Feb. 5, 1998), *vacated*, No. 97-1925 (D.D.C. Apr. 9, 1998); *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30 (D.D.C. 2000); *Mylan Pharm., Inc. v. Henney*, 94 F. Supp. 2d 36, 40 (D.D.C. 2000), *vacated as moot*, 276 F.3d 627 (D.C. Cir. 2002).

[5] The March 2000 Guidance addresses the meaning of the terms "court decision" in section 505(j)(5)(B)(iii)(I) and "decision of a court" in section 505(j)(5)(B)(iv)(II). In the former instance, the statute provides that an ANDA will be made effective on the date of a "court decision" finding the patent invalid or not infringed. Under the latter provision, a subsequent ANDA will not be made effective until 180 days after the previous applicant begins commercial marketing of the drug or the decision "of a court" holds the patent invalid or not infringed, whichever is first. Due to the similarity of the language between the two provisions, their close proximity in the statute, and their substantive relationship, the March 2000 Guidance expressly provided a common interpretation for both terms, as had FDA's regulations.

4

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

### III. Did the District Court Find the Patents Invalid or Not Infringed?

The next issue, then, is whether the May 8, 2002, June 4, 2002, and March 20, 2003, district court decisions found the patents "invalid or not infringed" within the meaning of sections 505(j)(5)(B)(iii)(I) and (j)(5)(B)(iv)(II). If the district court decisions found the patents invalid or not infringed, they would be "court decisions" that would permit the lifting of the 30 month stay on approval of the ANDAs, and would trigger the beginning of exclusivity.

#### A. Allergan Maintains that These Decisions are Not Court Decisions Finding the Patents Not Infringed.

Allergan argues that these decisions were jurisdictional, non-preclusive, and involve novel issues, and were not decisions finding the patents invalid or not infringed. Thus, FDA must wait until the appeal is complete before acting on the ANDAs.

Allergan argues that the May 8, 2002, opinion must not be read as a decision of non-infringement because the district court decided that it was "without jurisdiction to hear the case at the present time." October 28, 2002, letter from Terry G. Mahn to Daniel Troy at 1. Allergan asserts that the decision is "non-preclusive" under the standard set by the court in *Teva Pharm. v. FDA*, 182 F.3d 1003 (D.C. Cir. 1999). *Id.* Allergan asserts that it could sue the ANDA applicants under the patents at a later time.

Allergan states that its claims in the district court litigation were that the ANDA applicants are liable for infringement "indirectly" because doctors will prescribe or use brimonidine in an infringing manner. October 28, 2002, letter from Terry G. Mahn to Daniel Troy at 3. Allergan explains that it alleged an inducement theory under 271(b) and an indirect infringement theory under 271(e)(2). Allergan asserts that, because the court stated that it was deciding whether a claim could be asserted as a matter of law, and not on the factual record, the court's decision was not "on the merits." *Id.* at 4. Thus, the issue on appeal is whether the district court correctly decided that it did not have jurisdiction to hear Allergan's claims. Allergan concludes that, because the district court decision is not on the merits, the 30-month stay remains in place. *Id.*

In addition, Allergan argues that, where alternate theories of infringement are argued, the 30-month stay on ANDA approval could be lifted only if the court were to conclude that there were insufficient evidence to proceed on each and every theory of infringement. *Id.* at 3; April 4, 2003 letter from Terry G. Mahn to Daniel Troy.

#### B. Alcon and Bausch & Lomb Argue that These Decisions are Court Decisions Finding the Patents Not Infringed

Alcon and Bausch & Lomb assert that these district court decisions are precisely what they appear to be: decisions that the proposed generic drug products do not infringe the three patents listed for Alphagan under any of the multiple theories propounded by Allergan.

5

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

Alcon and Bausch & Lomb both point first to the district court's own language and characterizations in its decisions and orders, in which it specifically granted Alcon and Bausch & Lomb's motions for summary judgment on Allergan's claims of patent infringement. On May 8, 2002, the court granted Alcon's Motion for Summary Judgment on Allergan's complaint for patent infringement. In its June 4, 2002, Minute Order, the court stated that "[b]ecause summary judgment has been granted to all Defendants on Plaintiff's claims, it therefore appears that there are no additional issues for this Court." On June 12, 2002, the court entered a Rule 54(b) order of final judgment on both Alcon and Bausch & Lomb's Motions for Summary Judgment of Noninfringement. The May 20, 2003, Order in the case involving the '464 patent specifically grants "Alcon and Bausch & Lomb's motions for summary judgment of noninfringement under 35 U.S.C. § 271(e)(2) and 35 U.S.C. § 271(b)." The ANDA applicants emphasize that the court styled its actions as summary judgment on the issue of noninfringement (rather, presumably, than as dismissal under Rule 12 of the Federal Rules of Civil Procedure).

Bausch & Lomb notes that the court ruled that there was no direct infringement under 271(e)(2), because the ANDA applicants were not seeking approval for the uses claimed in the patents. September 17, 2002 letter from Thomas Scarlett to Daniel E. Troy at 7. Bausch & Lomb also notes that the district court did not reach the issue of induced infringement under 271(e)(2)(A) or 271(b) because it believed that induced infringement claims could not be brought under 271(e)(2). *Id.* at 7-8; Jan. 9, 2003 letter from Thomas Scarlett to Daniel E. Troy at 2-3. Bausch & Lomb asserts that, although the court did not adjudicate the question of induced infringement, the statute does not require the court to resolve all patent infringement claims to be a court decision finding a patent not infringed.

Alcon notes that any question as to whether the court decided the merits of Allergan's claims against it and Bausch & Lomb on the '415 and '741 patents is resolved by the court's statement in the March 20, 2003, Order describing his own action:

> On May 8, 2002, the Court granted Alcon's motion for summary judgment of noninfringement on the merits, holding that the proposed use was not directly infringing and that Alcon's filing of an ANDA was insufficient to support a claim of induced infringement. The Court also granted Bausch & Lomb's motion for summary judgment on identical grounds on June 4, 2002.

April 8, 2003 letter from Peter O. Safir to Elizabeth Dickinson (FDA Office of Chief Counsel) at 3 (quoting *Allergan II* slip opinion at 4).

Finally, both Alcon and Bausch & Lomb also assert that the district court's March 20, 2003, decision on the '464 patent was a decision of noninfringement.

6

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

C.  Analysis

After examining the arguments by the parties, the relevant case law, and the statutory and regulatory provisions, the agency has concluded that the *Allergan I* and *Allergan II* decisions are "court decisions" finding the patents at issue not infringed within the meaning of sections 505(j)(5)(B)(iii)(I) and (j)(5)(B)(iv)(II). These decisions are rulings that the '415, '741, and '464 patents are not infringed by the Alcon and Bausch & Lomb ANDAs, and thus permit ANDA approval under section 505(j)(5)(B)(iii)(I).

In *Allergan I*, Alcon moved for summary judgment, and its motion was granted after an analysis and rejection of a number of infringement theories. First, the court rejected Allergan's argument that the filing of an ANDA is material infringement under 35 U.S.C. 271(e)(2). It found instead that, as described in *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1568 (Fed. Cir. 1997), this section provides patentees with a jurisdictional "hook" in the form of infringement sufficient only to create case or controversy jurisdiction. 200 F. Supp. 2d at 1227. Second, the court ruled that a cause of action for direct infringement under 35 U.S.C. 271(e) is available only for patents claiming uses for which an ANDA applicant is seeking approval, and that the patents at issue do not claim uses for which Alcon is seeking approval. *Id.* at 1230. Finally, the court examined and rejected Allergan's claim that, even if direct infringement could not be shown, by selling a generic brimonidine at some point in the future, Alcon would induce infringement under section 271(e)(2) of the '415 and '741 patents. *Id.* at 1230-33.

With respect to Allergan's inducement to infringe claim, the court found that no cause of action for inducement to infringe is contemplated by section 271(e). Specifically, the court found that "a patent-holder cannot bring a claim under Section 271(e)(2) that the generic drug maker will, upon approval of the patent [sic], induce others to infringe." *Id.* at 1231. The court ruled that the types of claims that accrue upon filing of an ANDA are limited to those that, before the passage of the Hatch-Waxman amendments, would have accrued when the generic manufacturer developed its generic drug.[6] *Id.* Because, even prior to passage of Hatch-Waxman, any inducement to infringe claim would have been "too speculative" to be brought when the generic manufacturer was developing its generic drug, the court held that no cause of action exists for inducement of infringement under section 271(e). *Id.* It further concluded that speculation as to possibly infringing activities by the ANDA holder and by physicians once the ANDA was approved "is not only practically difficult, but constitutionally problematic." *Id.* at 1232. Because there was not sufficient threat of infringement, there is nothing to warrant a judicial determination. Thus, concludes the court, "allowing a

---

[6] Before passage of Hatch-Waxman, innovator companies could bring patent infringement claims based on activities of ANDA applicants in developing generic drug products. Specifically, in *Roche Products v. Bolar Pharmaceutical Co.*, 733 F.2d 858 (Fed. Cir. 1984) ("*Bolar*"), the Federal Circuit held that there was no experimental use defense to patent infringement. In response to the *Bolar* decision, 35 U.S.C. §271(e) was added as part of the Hatch-Waxman amendments. It provides, "It shall not be an act of infringement to make, use, or sell a patented invention . . . solely for uses reasonably related to the development and submission of information under a federal law which regulates the manufacture, use, or sale of drugs . . . ."

7

patentee to bring a claim for inducing infringement under section 271(e)(2) runs afoul of the 'case or controversy' requirement" for Article III jurisdiction. *Id.*

Therefore, the court found no infringement by Alcon on any theory: no material infringement under 271(e)(2) by Alcon's filing of an ANDA, no direct infringement under 271(e)(2), and no inducement to infringe under 271(e)(2). The subsequent grant of summary judgment on June 4, 2002, to Bausch & Lomb referenced the court's summary judgment with respect to Allergan's claims against Alcon.

Likewise, the court found in *Allergan II* that the '464 patent did not claim an approved use of brimonidine. Thus, because the ANDA applicants were not seeking approval for the use claimed in the patent, there was no cause of action for infringement under section 271(e)(2). The court granted Alcon and Bausch & Lomb's motion for summary judgment of non-infringement, citing the Federal Circuit decision in *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed. Cir. 2003). *Allergan II*, slip op. at 9. In addition, the court analyzed Allergan's inducement to infringe theory under 271(b) and the Declaratory Judgment Act, and rejected that argument as well. The court awarded summary judgment of non-infringement under 271(b) to Alcon and Bausch & Lomb. *Id.* at 14.

FDA disagrees with Allergan that these decisions should be considered "non-preclusive" under the standard set by the court in *Teva Pharm. v. FDA*, 182 F.3d 1003 (D.C. Cir. 1999), *on appeal from remand*, 2000 U.S. App. LEXIS 38667 (D.C. Cir. 2000) ("*Teva*"). In *Teva*, a decision that did not appear to meet the statutory requirement for a "court decision" was found by the D.C. Circuit to meet the requirements for such a decision. Here, Allergan asks us to apply the *Teva* analysis in reverse to find that decisions that appear to fit the statutory term, in fact do not.

In *Teva*, Teva Pharmaceuticals sued FDA for a final approval, alleging that a particular court decision had triggered 180-day exclusivity for ticlopidine. Teva had filed an ANDA for ticlopidine and had not received final approval because a previous applicant's 180-day exclusivity had not been triggered. Teva's ANDA included a paragraph IV certification for a patent that Syntex, the NDA holder, had listed for ticlopidine. When Syntex did not sue Teva for patent infringement, Teva brought a declaratory judgment action in California seeking a "court decision" that would find Syntex's patent invalid or not infringed and would trigger the 180-day period of market exclusivity under section 505(j)(5)(B)(iv)(II). The California court dismissed Teva's declaratory judgment action after finding that Syntex had expressly stated that Teva's formulation of ticlopidine did not infringe Syntex's patent and that it would not sue Teva for patent infringement. In light of Syntex's statements, the California court held that Teva lacked a reasonable apprehension of suit. Therefore, the court concluded that no justiciable case or controversy existed and the court lacked subject matter jurisdiction to hear the case.

Teva contended that the California court's dismissal of its declaratory judgment action for lack of case or controversy was the functional equivalent of a final decision of

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

a court finding the patent invalid or not infringed. Accordingly, Teva argued to FDA that the California dismissal should trigger 180-day exclusivity for ticlopidine. FDA disagreed and determined that the California dismissal did not decide that the patent was "invalid or not infringed" and therefore was not a decision of a court "holding the patent which is the subject of the certification to be invalid or not infringed," as required by section 505(j)(5)(B)(iv)(II). Accordingly, it informed Teva that exclusivity for ticlopidine had not been triggered.

Teva sued FDA, and the D.C. Circuit ruled in favor of Teva. The court held that "court decisions" can take many forms, including a dismissal for lack of subject matter jurisdiction. 182 F.3d at 1008. The court noted that the basis for the California dismissal was Syntex's declaration that Teva's product would not infringe its patent and its express disavowal of its intent to sue Teva. Id. The court further explained:

> [T]he California dismissal appears to meet the requirements of a triggering 'court decision' because that court had to make a predicate finding with respect to whether Syntex would ever sue Teva for infringement in order to conclude that there was no case or controversy between the parties. In dismissing Teva's complaint for lack of subject matter jurisdiction, the California court expressly found that Teva 'lacks a reasonable apprehension of suit by Syntex for infringement of [its patent].' . . . Although the dismissal was not a judgment on the merits after consideration of evidence presented by the parties, there was no need for such a procedure here because the dismissal sufficed to estop Syntex from suing Teva for patent infringement. This is the result that appears to be the purpose of the triggering 'court decision' provision.

Id. at 1009 (citations omitted). Thus, the preclusive effect of the California dismissal was a crucial factor in the court's decision that the California dismissal was a "court decision" that triggered exclusivity.

Additionally, the Teva court was concerned that FDA's interpretation of the California dismissal permitted the innovator to manipulate the starting of exclusivity by ensuring that no court decision would issue and the "court decision" trigger under the statute would never be pulled. If an innovator could obtain dismissal of an ANDA applicant's declaratory judgment action merely by stating that the proposed product would not infringe its patents, it could prevent the issuance of a triggering court decision, even if one or more generic companies were ready, willing, and able to manufacture. Id. at 1009, 1011.

On remand, FDA argued for reasons of administrative convenience and limited resources that it could not look behind dismissals for lack of subject matter jurisdiction to determine if the dismissals constituted "court decisions." The Court of Appeals rejected this argument, holding that the agency had failed to provide reasoned decisionmaking for its conclusion. The court held that the Agency must undertake "[s]ome degree of legal analysis" in determining whether the "court decision" trigger had been satisfied. 2000 U.S. App. LEXIS 38667.

9

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

In light of the *Teva* court's directive, and because Allergan has requested we do so, FDA has "looked behind" the court's grants of summary judgment in the *Allergan* cases to see whether these are, in fact, court decisions within the meaning of sections 505(j)(5)(B)(iii)(I) and (j)(5)(B)(iv)(II). The parties disagree over precisely what the court decided on May 8, 2002, and on what grounds.

Allergan makes much of the court's reference to the "case or controversy" problem with an inducement to infringe claim under section 271(e)(2) where the applicant is not seeking ANDA approval for the patented use, and states that "the district court dismissed Allergan's action as a jurisdictional matter." June 4, 2002 letter from Terry G. Mahn to Fred Ansell (FDA Office of Chief Counsel) at 3. Allergan further argues that the district court never reached a decision on the merits of infringement. It argues that Judge Carter's decision, unlike the dismissal in *Teva*, has no preclusive or estoppel effect that would prevent Allergan from suing the ANDA applicants for patent infringement at some later date, either based upon an appellate determination that section 271(e)(2) will support a claim for infringement of a patent claiming a use for which the ANDA applicant does not seek approval, or after the ANDA is approved.[7] Thus, Allergan contends, the district court's decision cannot be a decision finding noninfringement.

Allergan's argument goes too far. First, the court's reference to "case or controversy" does not change the substance of its decisions. The court found that the ANDA applications did not infringe the listed patents. Second, Allergan misconstrues the import of the *Teva* decision. The narrow inquiry in *Teva* was whether a dismissal, which appeared to have no preclusive effect because the court lacked authority to hear the case, actually involved a predicate - and preclusive - finding of fact. The *Teva* court's analysis focused on Syntex's disavowal of intent to sue Teva. The court determined that such disavowal estopped Syntex from suing Teva for infringement, and thus the dismissal had the effect of a judgment of non-infringement. 182 F.2d at 1009. Because of the unusual posture of that case, the critical factor for the court was whether the dismissal had preclusive effect.

That does not mean the reverse it true. Contrary to Allergan's assertion, the *Teva* decision did not add a new requirement to sections 505(j)(5)(B)(iii)(I) and (j)(5)(B)(iv)(II) such that, for a court decision to be considered effective, it must permanently foreclose a suit by the innovator for patent infringement (that is, by addressing "each and every" theory of patent infringement). Such a reading would be

---

[7] Allergan also argues that the decision is non-preclusive because "it explicitly envisions that Allergan will be able to file a lawsuit upon ANDA approval." September 5, 2002 letter from Terry G. Mahn to Fred Ansell. Allergan notes that – with respect to Alcon – the court found that, if there were a cause of action under 271(e)(2) and 271(b) when an ANDA applicant seeks approval only for approved uses of a drug not claimed by a patent, the record is sufficient to present a triable issue of fact – or at least to permit discovery. *Allergan I* at 1225. That such a case might be brought at some point in the future is immaterial to whether the district court found the patents infringed at the time of its decision.

10

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

inconsistent with the plain language of the statute and with the decisions that the district court decision of non-infringement *or* invalidity is an adequate trigger. *See* fn 4. For example, generally, section 271(e) related patent infringement actions involve a claim by the patentee that the generic product infringes the patent. A standard defense or counterclaim is that the patent is invalid. The district court could agree with the claim of invalidity and issue a final judgment on that basis without reaching the question of whether the ANDA applicant's actions would infringe the patent if the patent were valid. If the finding of invalidity were reversed on appeal, the patentee could still maintain an action for infringement against the ANDA applicant. Nevertheless, a district court decision of invalidity permits approval of an ANDA. Section 505(j)(5)(B)(iii) and 21 CFR 314.107.

Similarly, a district court decision squarely finding the patent not infringed is a court decision under the statute and applicable case law, even if a reversal on appeal could result in a district court finding infringement on remand. A district court decision for which an appeal can yet be taken does not have the kind of factually preclusive effect that the court contemplated in *Teva*. The court in *Mylan* appeared to understand that when it ruled that such a district court decision was nonetheless effective under section 505(j). 81 F. Supp. 2d at 40-42.

Third, to the extent Allergan argues that it has patent rights that may yet be infringed, Allergan can be assured that other remedies are available to protect its interests. If FDA approves the Alcon and Bausch & Lomb ANDAs, and the Federal Circuit reverses Judge Carter's decision, Allergan may seek an injunction against the ANDA holders in district court or an award of substantial damages if it establishes infringement. In addition, the court could order that any ANDA approval be withdrawn or stayed. 35 U.S.C. 271(e)(4). Moreover, whether Alcon or Bausch & Lomb would even be willing to market its approved product in an environment of legal uncertainty remains to be seen.

IV.   Conclusion

After reviewing the arguments made by Allergan, Alcon, and Bausch & Lomb, and the court's opinions and orders in this matter, the agency has concluded that these decisions qualify as court decisions finding the '415, '741, and '464 patents were not infringed by the Alcon and Bausch & Lomb ANDAs. The fundamental finding by Judge Carter is that neither 35 U.S.C. 271(b) nor 271(e)(2) supports a claim for patent infringement when an ANDA applicant is seeking approval only for uses not claimed in the patents. *Allergan I* at 1230; *Allergan II* at 10, 14. For purposes of the district court litigation, there was no dispute that Alcon and Bausch & Lomb are not seeking approval for ANDAs labeled for the uses protected by Allergan's '415, '741, and '464 patents. Thus, these patents are not infringed.

FDA also finds it persuasive that Judge Carter specifically asserts that the summary judgment decisions were decisions on the merits of noninfringement. *Allergan*

11

Alphagan (Brimonidine Tartrate) Ophthalmic Solution 0.2%
Court Decisions

*II* at 4. Under the circumstances, we are not willing to superimpose a different interpretation of these decisions over that of the court.

It is worth noting that part of the difficulty with this case springs from the fact that, as described above in Section II, a district court decision finding a patent invalid or not infringed will permit approval of an ANDA and begin the running of exclusivity, even if the patent owner is vigorously defending its patent rights on appeal. Allergan is correct that the applicability of section 271(e)(2) to patents on unapproved uses presents a novel issue of law. Allergan is also correct that if a rehearing is granted on the appeal and Judge Carter's position is ultimately reversed by the Federal Circuit, Allergan may be able to pursue its claims of patent infringement against the ANDA applicants. Unlike Syntex, in the *Teva* litigation, Allergan believes that its patents are or will be infringed; Allergan's submissions leave little doubt it will continue to aggressively protect its patent rights for brimonidine. Nevertheless, neither the novelty of the issue, nor the ongoing nature of the patent dispute, is a basis for delaying ANDA approval. *See Mylan Pharm., Inc.*, 81 F. Supp. 2d at 40-41.

Because the May 8, 2002, June 4, 2002, and March 20, 2003, district court decisions were effective court decisions under section 505(j)(5)(B)(iii)(I) and (j)(5)(B)(iv)(II), the agency will refer to those dates for lifting the 30 month stay and calculating 180-day exclusivity for the Alcon and Bausch & Lomb ANDAs.

Sincerely,

*/s/ Robert West for/*

Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research

cc: Daniel E. Troy, Chief Counsel