*Teva Pharmaceuticals USA, Inc. v. FDA*, Case No. 05-1469 (D.D.C.) (JDB)

# EXHIBIT L

# Declaration of William A. Rakoczy

*In support of Apotex Inc.'s Motion For
Injunctive Relief Pending Appeal*



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
NOV 1 5 2005
RECEIVED

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., | ) |
| Plaintiff-Appellee, | ) |
| v. | ) No. 05-5401 |
| FOOD AND DRUG ADMINISTRATION, *et al.*, | ) |
| Defendants, | ) |
| APOTEX INC., | ) |
| Intervenor-Defendant-Appellant. | ) |

### DECLARATION OF TAMMY L. MCINTIRE

I, TAMMY L. MCINTIRE, declare as follows:

1. I am the President of Apotex Corp., which is located in Weston, Florida. Apotex Corp. is the United States marketing and sales affiliate for Apotex Inc., a Canadian-based pharmaceutical company that develops and manufactures generic drugs for sale in the United States and throughout the world. For convenience and clarity, I will refer to Apotex Inc. and Apotex Corp. collectively in this Declaration as "Apotex."

2. I have personal knowledge of the facts set forth herein, or believe them to be true based on my experience in the pharmaceutical industry and information I have received in the course of my duties, and am competent to testify to the same.

3. I submit this Declaration in support of Apotex's emergency motion for a stay pending appeal.

4. In my current position, I am personally involved in the introduction and promotion of new generic drug products for the United States market. As a consequence, I am familiar with the considerable benefits and advantages of so-called "180-day exclusivity," which generally allows one generic company to market and sell its product without other generic competition for 180 days. This exclusive "first-mover advantage" generates significant tangible benefits such as enduring market share, increased sales across all product lines, and higher profit margins, as well as intangible benefits such as improved market position, customer goodwill, and reputation.

5. I am also well aware of the considerable disadvantages and irreparable harm that a company suffers when its approval is delayed by 180-day exclusivity that is improperly granted to another company. These losses include, but are not limited to: significant lost profits and sales across all product lines; an accompanying decrease in overall market share; decreased access to important customers; loss of customer goodwill; and diminished reputation—all of which prevent a company from effectively competing in the ultra-competitive generic drug industry.

6. In short, it would be fair to say that it is virtually impossible for late-comers to the market to overcome the lasting benefits of the first-mover advantage. That is precisely the irreparable harm that Apotex will suffer if Teva Pharmaceuticals USA, Inc. ("Teva") is allowed to launch its pravastatin sodium tablets before this appeal is decided.

## Pravachol® (Pravastatin Sodium)

7.  Bristol-Myers Squibb Company ("BMS") currently markets Pravachol® (pravastatin sodium) tablets, 10 mg, 20 mg, 40 mg, and 80 mg in the United States for the treatment of heart disease.

8.  Pravachol® is an enormously lucrative drug for BMS, with worldwide sales in 2004 exceeding $2.6 billion (USD). According to IMS Health, an industry-recognized source in the pharmaceutical market, BMS's total Pravachol® sales for 2004 in the United States alone were more than $2 billion (USD). Given the size of the brand market, pravastatin sodium tablets have an enormous potential for generic sales.

9.  To date, the Food and Drug Administration ("FDA") has not approved any abbreviated new drug applications ("ANDAs") for generic versions of Pravachol®. It is my understanding that such ANDAs will not be eligible for final approval and marketing until the expiration of BMS's basic pravastatin patent on April 20, 2006.

## Generic Pravastatin ANDAs

10. As I understand it, Teva submitted the first so-called "paragraph IV ANDA" for generic pravastatin sodium tablets in 10 mg, 20 mg, and 40 mg strengths, thus making Teva eligible for 180-day exclusivity for these products. According to public statements, it is my understanding that Teva intends to commercially launch its generic pravastatin products immediately upon receiving final approval on or about April 20, 2006.

11. Apotex also submitted a paragraph IV ANDA for generic pravastatin sodium tablets that, like Teva's ANDA, would be eligible for final approval on April 20, 2006, but for the district court's decision below that is the subject of this appeal. In particular, it is my understanding that FDA determined that Teva's 180-day exclusivity had been triggered by a

3

previous court decision and has expired and that, as a consequence, Apotex would be eligible for final approval with Teva and others on April 20, 2006.

12. As I understand it, however, Teva challenged FDA's decision, which the district court below vacated. As a result, even though Apotex is willing and able to launch its pravastatin products once BMS's basic patent protection expires, Apotex and others will not be eligible for final approval until at least 180 days *after* Teva commercially launches it products. Teva, therefore, will enjoy 180 days of marketing exclusivity that FDA previously determined already has expired.

### Irreparable Harm to Apotex

13. Unless this appeal is decided before Teva launches, Apotex will suffer devastating and irreparable harm.

14. As an initial matter, if Apotex is delayed and Teva is permitted to launch its product with 180-day exclusivity, the long-term financial losses to Apotex will be substantial and unrecoverable, even if Apotex is successful in this appeal.

15. My experience with other drug products has shown that there are enormous—often incalculable—benefits to receiving 180-day exclusivity and being the first generic entrant to the market. The first-mover (here, Teva) establishes market dominance that is virtually impossible for other, subsequent entrants like Apotex to overcome. The period of 180-day exclusivity also allows the first-mover to recover its investment and earn profits prior to others entering the market, all of which can then be used for developing and marketing new products. Conversely, subsequent entrants to the market find it difficult to find prospective customers, much less recoup product investments and obtain any significant market share to speak of.

4

16. According to FDA's "Drugs@FDA" website, there are currently eight (8) ANDA applicants that are tentatively approved for pravastatin tablets, including Apotex and Teva, which would be eligible for final approval on April 20, 2006, were it not for the district court's decision below finding that Teva is still entitled to 180-day exclusivity.

17. I have analyzed the potential market share for generic pravastatin during the first 12 months of competition with Pravachol®, based on IMS data showing Pravachol®'s U.S. sales from 2004 and 2005. If Apotex prevails in its appeal and is allowed to launch at the same time as the other seven (7) approvable pravastatin applicants as FDA previously determined, Apotex projects that it will earn at least $13.51 million in the first 12 months of generic pravastatin competition. However, if Teva is allowed to launch during this appeal with six (6) months of exclusivity prior to all other applicants, Apotex projects that it will earn less than $924,000 in the first 12 months of generic pravastatin competition. This translates into a total loss of at least $12,586,000 in sales.

18. It is my understanding that Apotex has no remedy against FDA to recover Apotex's losses if Teva is allowed to commercially launch with exclusivity during this appeal. This is true even if Apotex prevails in this appeal.

19. The effects of an exclusive launch by Teva, however, extend well beyond the unrecoverable loss of sales, market share, and profits. This is because the first company to commercially market a generic drug product generally reaps a long-term benefit that extends well beyond the period of time when it may have the only FDA-approved generic product. This occurs because the first company to reach the marketplace in essence fills the pipeline and is able to enter into long-term contracts with most, if not all, of the major customers. In other words, if Teva is first to hit the market alone, it will be able to tie up valuable distribution channels so that,

even after the six-month head-start, the loss of access to major customers would still foreclose Apotex from effectively competing in the pravastatin market.

20. Apart from the lost opportunity for pravastatin sales (over $12.5 million during the first year of generic pravastatin sales alone) and decreased access to major customers, Apotex also risks losing sales across all of its other generic product lines. When companies like Teva have the opportunity to exclusively launch a blockbuster drug such as a generic equivalent to Pravachol® tablets, they have significant leverage to sell other products that they manufacture. The presence of an exclusive blockbuster in the product line is perhaps the single most effective way to increase sales across all product lines. Conversely, subsequent entrants to the market like Apotex have no such leverage. This leads to a loss of market share across all products, which is also irreparable.

## Conclusion

21. In sum, without injunctive relief and/or expedited consideration from this Court, if Teva exclusively launches its pravastatin tablets during this appeal, Apotex will irreparably lose sales over $12.5 million and significant market share for this and other products, as well as customer goodwill and access to major customers.

Dated: November 15, 2005

I, TAMMY L. MCINTIRE, hereby declare, under penalty of perjury under 28 U.S.C. § 1746 and the laws of the United States of America, that the foregoing Declaration is true and correct.

*Tammy McIntire*
TAMMY L. MCINTIRE

## CERTIFICATE OF SERVICE

I, Arthur Y. Tsien, HEREBY CERTIFY that on this 15th day of November 2005, a true and correct copy of the foregoing DECLARATION OF TAMMY L. MCINTIRE, submitted in support of Apotex Inc.'s Emergency Motion For A Stay Pending Appeal, was served via hand-delivery upon the following counsel:

>Jay P. Lefkowitz
>John C. O'Quinn
>Steven A. Engel
>KIRKLAND & ELLIS LLP
>655 15th Street, NW
>Suite 1200
>Washington, D.C. 20005
>
>*Counsel for Teva Pharmaceuticals USA, Inc.*
>
>Andrew E. Clark
>U.S. Department of Justice,
>Office of Consumer Litigation
>Room 950 North
>1331 Pennsylvania Ave., NW
>Washington, D.C. 20004
>
>Jeffrey Bucholtz
>U.S. Department of Justice
>950 Pennsylvania Ave., NW
>Washington, D.C. 20530
>
>*Counsel for U.S. Food and Drug Administration*

_____
Arthur Y. Tsien
*Counsel for Apotex Inc.*