*Teva Pharmaceuticals USA, Inc. v. FDA*, Case No. 05-1469 (D.D.C.) (JDB)

# EXHIBIT P

# Declaration of William A. Rakoczy

*In support of Apotex Inc.'s Motion For*
*Injunctive Relief Pending Appeal*

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

JUN 2 1 2004

RECEIVED

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| APOTEX INC., ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | No. 04-5211 |
| ) | |
| FOOD AND DRUG ADMINISTRATION, ) | |
| TOMMY G. THOMPSON, Secretary of ) | |
| Health and Human Services, and ) | |
| LESTER M. CRAWFORD, Acting ) | |
| Commissioner of Food and Drugs, ) | |
| ) | |
| Defendants-Appellees, ) | |
| ) | |
| and ) | |
| ) | |
| PUREPAC PHARMACEUTICAL CO., ) | |
| ) | |
| Intervenor-Defendant-Appellee. ) | |

**EMERGENCY MOTION OF PLAINTIFF-APPELLANT
APOTEX INC. FOR INJUNCTIVE RELIEF PENDING APPEAL**

Plaintiff-Appellant Apotex Inc. respectfully moves for emergency injunctive

relief staying final approval of Intervenor Purepac's gabapentin capsule ANDA

and preventing a launch of Purepac's gabapentin product pending a decision on

this appeal, which Apotex—with FDA's consent—has moved to expedite.

Because the district court already denied a similar request in Apotex's motion for

preliminary injunction and stay, it would be impracticable for Apotex to apply to

**B.     Apotex will suffer substantial irreparable harm.**

Absent injunctive relief, Purepac is free to launch its product during this appeal and gain a strangle-hold over the gabapentin market. In light of the recent Teva agreement (A114; A118), it is no longer a matter of "if," but "when" Purepac will launch. This head-start will enable Purepac to tie up distribution channels and access to important customers; enter into long-term sales agreements; increase sales across all product lines; and retain greater market share in the long-term. (A86-A87; A104-A105.) More importantly, it will effectively shut Apotex out of the gabapentin market altogether. (A105.) Even if this Court ultimately concludes that Apotex was entitled to approval, the harm will have been done and this bell cannot be "unrung"—Apotex will never recover its substantial gabapentin investment (over $50 million in research and development, legal fees, and raw materials) or effectively compete in the gabapentin market.

Gabapentin is also a once-in-a-lifetime opportunity for Apotex. If allowed to launch, Apotex would earn at least $193 million in sales, even assuming simultaneous market entry by Purepac and Teva. (A103; A111.) But those sales drop to $24 million if Purepac is permitted to launch during this appeal—that's $169 million in lost sales for Apotex. (A103; A110; A112.)[3] These losses are not

---

[3] Moreover, if both Purepac and Teva were to share in Purepac's "exclusivity" and both marketed their generic gabapentin products during the first 180 days of generic gabapentin competition, Apotex's losses would increase to approximately

only substantial, but irreparable in every sense of the term, *see Teva*

*Pharmaceuticals, USA, Inc. v. FDA,* 182 F.3d 1003, 1012 n.8 (D.C. Cir. 1999), and

can only be prevented by staying approval of Purepac's gabapentin ANDA until

this Court can decide whether Apotex and other applicants are entitled to launch.

### C.    The balance of harms favors injunctive relief.

The balance of harms tips decidedly in favor of injunctive relief. *See Mova,*

140 F.3d at 1066; *Wash. Metro. Area Transit Comm'n,* 559 F.2d at 843. Without

it, Apotex will lose its entire investment and be effectively shut out of the market.

Purepac, on the other hand, will suffer no appreciable harm whatsoever. It has

already received one exclusivity period that has expired; and has waited over a

*year* to launch. (A94; A98.) It will not be harmed by waiting a little while longer

for this Court to decide this appeal. If Purepac prevails, it will have lost nothing

and can still enjoy its purported exclusivity.

### D.    The public interest favors injunctive relief.

The public benefits "in having legal questions decided on the merits, as

correctly and expeditiously as possible." *Wash. Metro. Area Transit Comm'n,* 559

F.2d at 843. But the inconsistent district court rulings have generated only

uncertainty that has delayed the marketing of generic gabapentin. Purepac now

seeks to take advantage of the situation by launching its product prior to a decision

---

$178 million in lost sales during the first year—leaving Apotex with only $15
million in sales during that time. (A103-A104; A106; A109; A112.)

-19-