# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., ) | |
| ) | Case No. 05-1469 (JDB) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FOOD AND DRUG ADMINISTRATION, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| APOTEX INC., ) | |
| ) | |
| Intervenor-Defendant. ) | |
| ) | |
| _____ ) | |

## TEVA PHARMACEUTICALS USA, INC.'S OPPOSITION TO APOTEX INC.'S MOTION FOR INJUNCTIVE RELIEF PENDING APPEAL

<u>Of Counsel:</u>
Richard Egosi
*Senior Vice President & General Counsel*
David M. Stark
*Senior Director, Legal Affairs*
TEVA PHARMACEUTICALS USA, INC.
425 Privet Road
Horsham, PA 19044-8005
(215) 293-6400

Jay P. Lefkowitz (DC 449280)*
Steven A. Engel (DC 484789)
John O'Quinn (DC 485936)
KIRKLAND & ELLIS LLP
655 15th Street NW, Suite 1200
Washington, DC 20005
(202) 879-5000

*Counsel for Teva Pharmaceuticals USA, Inc.*

November 29, 2005

*\* Counsel of Record*

Plaintiff Teva Pharmaceuticals USA, Inc. respectfully opposes Apotex Inc.'s motion to stay this Court's judgment pending appeal. Apotex did not seek reconsideration of this Court's well-founded decision, yet every one of its arguments depends on the premise that the prior judgment was mistaken. Apotex itself originally moved for a stay in the D.C. Circuit, and it has now filed in this Court only because the Court of Appeals required it to do so. Because this Court's decision was correct, Apotex's motion should be denied. Yet the case for a stay is even weaker than that, because with the support of all parties, the D.C. Circuit has set an expedited briefing schedule, which provides that briefing will be concluded by February 6, 2006. *See* Nov. 22, 2005 Order, *Teva Pharms. USA, Inc.*, No. 05-1469 (D.C. Cir.) (Ex. A). The Court of Appeals therefore can easily decide this matter, or grant a stay were it to choose to do so, well in advance of the April 20, 2006 launch date for generic pravastatin, upon which Apotex has premised its claim of irreparable harm.

Although little more need be said, in light of the fact that Apotex has devoted nineteen pages to re-arguing the merits of this case, Teva will briefly provide its response.

## BACKGROUND

The Court set out the relevant background in its October 21 opinion. *See* Oct. 21, 2005 Memorandum Opinion ("Mem. Op.") at 2-5. Briefly stated, Teva is the first filer of Paragraph IV certifications for three patents for pravastatin sodium. *See id.* at 2-3. On April 15, 2004, Apotex—one of seven subsequent filers—brought a declaratory judgment action against the patentee, Bristol-Myers Squibb Company ("BMS"). *See id.* at 4. The district court never ruled on any disputed matter in the case; "[r]ather, Apotex … withdrew its lawsuit by procuring a joint stipulation of dismissal, which stated that the action was to be dismissed for lack of subject matter jurisdiction." *Id.* at 5. The district court signed the stipulation and dismissed the case.

The question here is whether Apotex's dismissal of its lawsuit, on stipulation, constituted a judicial "decision" "holding" that BMS' patents are "invalid or not infringed." This Court, in its October 21 opinion, answered that question in the negative, explaining that under the Federal Rules of Civil Procedure—as interpreted by both the Second Circuit (the venue in which the stipulation was signed) and the D.C. Circuit—Apotex's stipulated dismissal of the lawsuit automatically terminated the case, and the district court's signature on the stipulation did not adopt its contents. Mem. Op. at 21-23. The dismissal therefore lacked sufficient judicial imprimatur to constitute the judicial decision necessary to trigger the running of the statutory exclusivity period under the Hatch-Waxman Act.

Apotex did not move for reconsideration; rather, it filed a notice of appeal. More than three weeks after the Court's decision, Apotex filed in the D.C. Circuit motions to expedite the appeal and to stay this Court's injunction. Teva did not oppose Apotex's motion to expedite, and the D.C. Circuit set an expedited briefing schedule, providing that briefing be completed by February 6, 2006, and that oral argument be set before the first available panel thereafter. With respect to the motion for a stay, the D.C. Circuit summarily denied the motion because Apotex failed first to seek that relief in this Court. Apotex then filed this motion for a stay.

## ARGUMENT

## I.     THE MOTION FOR "INJUNCTIVE RELIEF PENDING APPEAL" SHOULD BE DENIED.

Apotex admits that the standard for staying this Court's injunction is identical to the standard for granting preliminary injunctive relief. *See* Mem. in Support of Apotex Inc.'s Mot. for Injunctive Relief Pending Appeal ("Mot. for Stay") at 7; *see also Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 199 n. 11 (D.D.C. 2005). To merit a stay, Apotex must establish (1) a substantial likelihood of success on appeal, (2) irreparable injury absent the stay, (3) injury that outweighs

the harm to Teva, and (4) the furtherance of the public interest.  *See United States v. Philip Morris Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003).

       **A.**       **Apotex Cannot Demonstrate A Likelihood Of Success On The Merits.**

          **1.**       **The Teva Decisions Do Not Control The Outcome Of This Case.**

Apotex's primary argument against this Court's decision rests on the premise that *Teva Pharmaceuticals, USA, Inc. v. FDA* (*Teva I*), 182 F.3d 1003 (D.C. Cir. 1999), "controls the outcome of this case."  Mot. for Stay at 8.  But as this Court has recognized, that is hardly the case.  *See* Mem. Op. at 23-24.  In *Teva I*, the D.C. Circuit addressed whether a district court's grant of a motion to dismiss for lack of subject-matter jurisdiction, which was based on an implicit finding of non-infringement, could be regarded as "holding" that the patent "invalid or not infringed" under the Hatch-Waxman Act.[1]  The district court in that case had ***adjudicated*** a motion to dismiss and explained its reasons in a short opinion.  Thus, the parties did not dispute that the court's opinion constituted a judicial "decision" with a "holding."  What they disputed was whether the dismissal for lack of subject-matter jurisdiction could constitute a holding on the question of non-infringement.  In concluding that the dismissal could be so understood, the D.C. Circuit had no occasion to address the question upon which this case turned, whether a dismissal on stipulation might constitute a judicial trigger under the Hatch-Waxman Act.

Apotex claims that the D.C. Circuit held that "the ***only*** 'relevant consideration is the estoppel of the patent holder from later claiming that the ANDA applicant is liable for patent infringement.'"  Mot. for Stay at 8-9 (quoting *Teva I*, 182 F.3d at 1008-09) (emphasis added).  It

---

[1] The precise question before the D.C. Circuit was whether the FDA had provided an adequate explanation for distinguishing between the dismissal for lack of subject-matter jurisdiction and a partial grant of summary judgment in another case.  *See Teva I*, 182 F.3d at 1012.  The D.C. Circuit held that the FDA had acted arbitrary and capriciously by failing to provide a rational explanation for the difference between the two decisions.  *See id.*

is Apotex who puts the word, "only," in the D.C. Circuit's mouth; the Court of Appeals said no such thing. But what is clear is that the Court of Appeals emphasized the estoppel effect of the decision in a case in which no one disputed that a court had issued a "decision" with a "holding." Despite Apotex's claim that the "only" thing that matters under the statute is whether the patentee would be barred from filing a future suit, the D.C. Circuit clearly did not hold that absent any court action at all, a private agreement among the parties could constitute a judicial-decision trigger, so long as it precluded a future suit. That would read the words "decision" and "holding" right out of the statute. Likewise, *Teva I* did not resolve whether the parties' voluntary dismissal—even one with estoppel effect—would carry with it sufficient judicial imprimatur to constitute a judicial-decision trigger under the statute.

### 2.    Apotex's Voluntary Dismissal Of The Case, On Stipulation, Was Not A "Decision" Of The Court.

As this Court recognized, the stipulated dismissal of the *Apotex* lawsuit was in no way a "decision" of the court. Indeed, under controlling caselaw, the terms of the stipulation were little more than a private contract. Federal Rule of Civil Procedure 41(a)(1) gives the plaintiff an absolute right to dismiss the case, with or without judicial approval. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139 (2d Cir. 2004); *In re Wolf*, 842 F.2d 464, 466 (D.C. Cir. 1988). The parties effected that dismissal simply by filing the stipulation, and therefore, the dismissal was a decision of the parties, not a "decision" of the court.

In its motion for a stay, Apotex argues that the dismissal became a "decision" of the court, because the parties submitted the stipulation to the court for its signature. Mot. for Stay at 12. But as this Court already recognized, that argument runs head-on into the Second Circuit's decision in *Hester Industries, Inc. v. Tyson Food, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998). *See* Mem. Op. at 20. There, as here, the parties submitted the stipulation to the court, "for review,

4

approval and signature," and the court approved the stipulation through a short written order. *Hester Indus.*, 160 F.3d at 916. After the plaintiff sought contempt sanctions for an alleged violation of the "Stipulated Order of Dismissal," the Second Circuit rejected the argument that the judge's approval of the stipulation made the settlement an order of the court. *Id.* at 912-13, 916. "Because the dismissal was effectuated by stipulation of the parties," it was necessarily a Rule 41(a)(1) dismissal, not an "order of the district court." *Id.* at 916. *Hester Industries* thus makes crystal clear that the district court's approval of the stipulation did not transform the stipulation into a court "decision"—as this Court has already recognized. *See* Mem. Op. at 20. Indeed, the D.C. Circuit has reached the same conclusion. *E.g.*, *Oil, Chemical and Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 457-58 (D.C. Cir. 2002).

### 3.    The Terms Of The Stipulation Were Not A "Holding" Of The Court.

Apotex also is mistaken in arguing that the dismissal of this case reflected the district court's "holding" that there was no subject-matter jurisdiction. Mot. for Stay at 13. Indeed, Apotex goes so far as to argue that "no meaningful difference exists between the Syntex-Teva and BMS-Apotex dismissal orders." *Id.* That is fanciful. First and most clearly, in the Syntex-Teva case, the district court issued an order ruling that it lacked subject-matter jurisdiction. *See Teva I*, 182 F.3d at 1004. By contrast, the BMS-Apotex stipulation contains only a single representation addressing subject-matter jurisdiction, and that representation is made not by the district court, but by Apotex: "*Apotex* hereby stipulates that Apotex's complaint seeking a declaratory judgment … be, and hereby is, dismissed, for lack of subject matter jurisdiction," Stipulation and Order at 3, *Apotex, Inc. v. Bristol-Myers Squibb Co.*, No. 1:04-CV-2922 (S.D.N.Y.) (Ex. B) (emphasis added). Thus, in stark contrast to the Syntex-Teva case, the Apotex-BMS stipulation in no way purports to speak for the district court.

Second, even if the stipulation were not clear on its own terms, the district court's endorsement of the stipulation did not adopt its contents.  Stipulations are "like contracts" and a "district court that 'so orders' a stipulated settlement is not, strictly speaking, a party to the contract."  *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000); *see also Dart Drug Corp. v. Schering Corp.*, 320 F.2d 745, 749 (D.C. Cir. 1963) (the words of the stipulation "represent the agreement of the parties, and not the independent examination … by the court"). Courts may retain jurisdiction where the stipulation expressly provides for it or where the terms of the dismissal presuppose court enforcement.  But where the district court does nothing but write "so ordered" on the bottom of the stipulation, the court's action does not "carry with it a sufficient judicial imprimatur" to constitute a "holding" of the court.  *See Torres v. Walker*, 356 F.3d 238, 243-44 (2d Cir. 2004) (quotation omitted); *see also Dart Drug*, 320 F.2d at 749.

### 4.     Apotex's "Judicial Estoppel" Argument Is Meritless.

Apotex also cannot succeed on its alternative argument that, even if the Court correctly interpreted the Hatch-Waxman Act, the judgment should be reversed because of the legal arguments Teva made in prior litigation.  Mot. for Stay at 15-16.  FDA itself disclaimed any intent to assert judicial estoppel at oral argument, *see* Sept. 26, 2005 Hearing Tr. at 27, and as this Court observed, the doctrine of judicial estoppel simply has no application here.  *See* Mem. Op. at 11 n.4.  Moreover, because estoppel only applies to representations that a court affirmatively adopts in prior litigation, the question here is ***not*** what Teva argued in past briefs, but what the Court of Appeals actually ***held*** in *Teva I* and *Teva II*.  *E.g.*, *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 782 (3d Cir. 2001); *Folio v. City of Clarksburg*, 134 F.3d 1211, 1217-18 (4th Cir. 1998).  As noted, *Teva I & II* addressed factual circumstance in which no party disputed that the dismissal was a "decision" with a "holding," and therefore,

6

neither the Court of Appeals (nor any of the parties) had occasion to address the actual grounds upon which this Court rested its decision.

**B.    Apotex Cannot Demonstrate Any Of The Other Requirements For Injunctive Relief.**

Apotex's assertion of irreparable injury and its purported "balancing" of harms adds nothing to the analysis because it is entirely dependent on the claim of error in this Court's holding.  Apotex glibly asserts that Teva will suffer no appreciable harm.  *See* Mot. for Stay at 18.  Yet, the only basis for that rather astonishing assertion is that "Teva's 180-day exclusivity for pravastatin has expired."  *Id.*  Similarly, Apotex argues that it will be irreparably harmed solely because of the exclusivity advantage improperly granted to Teva.  *See id.* at 17.  And it contends that a stay is in the public interest because of "the public's interest lies in the 'faithful application of the laws.'"  *Id.* at 18.  These assertions, of course, assume a conclusion that this Court has squarely rejected and, thus, provide no basis for staying this case pending appeal.

Moreover, in light of the D.C. Circuit's recent order granting an expedited briefing schedule, Apotex can demonstrate little cause to upset the legal status quo.  Apotex's irreparable harm argument rests entirely on the premise that Teva would launch its generic product on April 20, 2006, while the case was pending on appeal.  *See* Mot. for Stay at 17.  The D.C. Circuit, however, will have briefing by February 6, 2006, and has ordered oral argument set before the first available panel thereafter.  Because the Court of Appeals will have the chance to consider the merits of this appeal, on full briefing, well in advance of April 2006, a stay is unwarranted.

A stay would be particularly inappropriate because Teva has a far greater risk of irreparable injury from delay than Apotex.  No matter whether the stay issued, if a final decision has not been entered by the Court of Appeals by April 2006, then either Teva or Apotex run the risk of injury.  The balance of hardships, however, tilts decidedly toward Teva rather than

Apotex.  Teva claims the exclusive right to market three doses of generic pravastatin after April 2006, in contrast to Apotex which claims no more than the right to be one of eight companies to enter the market at that time.  According to Apotex, if Teva erroneously received six-month exclusivity for generic pravastatin, then the intervenor would lose $12.5 million.  *See* Mot. for Stay at 17-18.  But if Teva were erroneously deprived of its statutory right, then the plaintiff would lose several hundred million dollars.  *See* Mem. in Support of Application for Preliminary Injunction at 30.  Given that Teva prevailed in this action, and that the irreparable harm to Teva from an improper decision would be ***over ten times*** more costly than an improper decision against Apotex, Teva should not be saddled with the risk pending appeal.

Indeed, the fact that a stay would permit other companies to launch products in April 2006—during Teva's 180 days of exclusivity—distinguishes this case from the *Apotex v. FDA* stay order cited in Apotex's brief.  *See* Mot. for Stay at 3, 17 (citing July 26, 2004 Order, *Apotex v. FDA*, No. 04-5211 (D.C. Cir.)).  In the *Apotex v. FDA* appeal, unlike here, there was no blocking patent or 30-month stay that prevented the first-filer (Purepac) from launching its product.  *See* Mot. for Stay Ex. P. at 18.  Rather, the first filer could launch at any time but had not chosen to do so.  Enjoining Purepac from launching its product did not change the existing market, because the FDA had determined that Purepac enjoyed 180 days of exclusivity—the award that Apotex challenged.  Here, however, because the FDA initially denied Teva exclusivity, a stay would wrongly subject Teva to competition in April 2006, assuming the D.C. Circuit had not affirmed prior to then.  Indeed, Purepac successfully obtained a vacatur of the stay from the D.C. Circuit precisely because it faced competition from another generic company whose approval of a closely related product was not stayed by Purepac's exclusivity.  *See* Emergency Mot. of Purepac Pharm. to Vacate Stay of Final Regulatory Approval, *Apotex v.*

*FDA*, No. 04-5211 (D.C. Cir.) (Ex. C); Sep. 16, 2004 Order Vacating Stay, *Apotex v. FDA*, No. 04-5211 (D.C. Cir.) (Ex. D). It should also be noted, that despite its bold assertions that it was likely to succeed on the merits, Apotex ultimately lost the appeal. *See Apotex v. FDA*, 393 F.3d 210 (D.C. Cir. 2004).

Finally, the public interest is decidedly against granting a stay pending appeal. Any transient benefit that might come from introducing more generic competition for pravastatin before the end of the 180-day exclusivity period would be greatly outweighed by the damage to the incentive scheme that Congress established to encourage generic drug companies to challenge pharmaceutical patents. Moreover, as Apotex itself acknowledges, the public interest requires a court to give proper application to the laws that Congress has enacted. *See* Mot. to Stay at 18. The public interest thus favors the enforcement of this Court's interpretation of the Hatch-Waxman Act.[2]

---

[2] Although Apotex cannot make a case for a stay, if the Court were to consider granting the motion, it should do so on the condition that Apotex put its money where its mouth is and post a bond to guarantee that Teva would suffer no irreparable harm. *See* Fed. R. Civ. P. 62(a). As the losing party below (and the likely loser before the Court of Appeals), Apotex—rather than Teva—should bear the risk of any harm that staying this Court's judgment might cause.

## CONCLUSION

For these reasons, Apotex's request for injunctive relief pending appeal should be denied.

Respectfully submitted,

<u>Of Counsel:</u>
Richard Egosi
*Senior Vice President & General Counsel*
David M. Stark
*Senior Director, Legal Affairs*
TEVA PHARMACEUTICALS USA, INC.
425 Privet Road
Horsham, PA  19044-8005
(215) 293-6400

November 29, 2005

    <u>/s/</u>
Jay P. Lefkowitz (DC 449280)*
Steven A. Engel (DC 484789)
John O'Quinn (DC 485936)
KIRKLAND & ELLIS LLP
655 15th Street NW, Suite 1200
Washington, DC  20005
(202) 879-5000

*Counsel for Teva Pharmaceuticals USA, Inc.*

* *Counsel of Record*